JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors
and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF THE DEBTORS, PURSUANT TO SECTIONS 105(a), 363(b), 507(a) AND 541 OF THE BANKRUPTCY CODE, FOR INTERIM AND FINAL ORDERS AUTHORIZING THEM TO PAY CERTAIN PREPETITION TAXES

Alpha Natural Resources, Inc. ("<u>ANR</u>") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully

represent as follows:

### <u>Background</u>

1.     On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>").  By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only

and administered jointly.

2.       The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.       A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the declarations of (a) Kevin S. Crutchfield, Chief Executive Officer and Chairman of the Board of Directors of ANR, and (b) Philip J. Cavatoni, Executive Vice President and Chief Financial and Strategy Officer of ANR in support of the Debtors' "first day" pleadings (together, the "First Day Declarations"), which were filed contemporaneously herewith and which are incorporated by reference.

### Jurisdiction

4.       This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

5.       Pursuant to sections 105(a), 363(b), 507(a) and 541 of the Bankruptcy Code, the Debtors hereby seek the entry of an interim order in the form attached hereto as Exhibit A (the "Interim Order") and a final order in the form attached hereto as Exhibit B (the "Final Order"):  (a) authorizing the Debtors, in their discretion, to the extent permitted by any interim or final order approving the Debtors' postpetition use of cash collateral or debtor in possession financing, to pay all prepetition production taxes, black lung excise taxes, sales and use taxes, franchise taxes, environmental and safety taxes, fees and penalties, and certain other taxes or fees that may be necessary for the Debtors to continue to conduct business or for which there may be personal liability for responsible officers or directors (collectively, the "Prepetition

Taxes"), owed by the Debtors to certain taxing authorities (collectively, the "Taxing

Authorities"), including all Prepetition Taxes subsequently determined upon audit to be owed for

periods prior to the Petition Date, by whatever means the Debtors may deem appropriate,

including, without limitation, the issuance of postpetition checks and electronic transfers of funds;

and (b) granting related relief.

### Certain Taxes Paid by the Debtors

6.      The Debtors, in the ordinary course of their business, incur various tax and

other liabilities to governmental entities, including, among others, production taxes, black lung

excise taxes, sales and use taxes, franchise taxes, environmental and safety taxes, fees and

penalties, and certain other taxes, assessments and fees.  Prior to the Petition Date, the Debtors

generally paid their tax obligations as they became due.

*Production Taxes*

7.      The Debtors are required to pay certain severance taxes – i.e., taxes related

to the value or quantity of coal "severed" from the ground – and other production taxes related to

the extraction of coal (collectively, the "Production Taxes").  The Debtors pay severance taxes to

Taxing Authorities in West Virginia, Wyoming, Kentucky and Virginia.  Although the

methodologies for calculating the amount of severance taxes owed vary by state (and, in some

cases, are complex),[1] in each of the states where the Debtors pay severance taxes, the amount of

severance tax owed by the Debtors is directly linked to the revenues attributable to, or the value

of, coal mined in the relevant state.  The consequences arising from the nonpayment of severance

taxes can be severe.  In most of the jurisdictions in which the Debtors pay severance taxes,

---

[1]      For example, in West Virginia, the applicable severance tax rate is determined according to the thickness of
the coal seam from which the coal is extracted.  Wyoming, in contrast, applies a single severance tax rate to
the "mine mouth" value of extracted coal, i.e., the value of coal if sold at the mine from which it was
extracted.

penalties for nonpayment include the revocation of business licenses and/or the imposition of

personal liability on directors and officers, as discussed in greater detail below.  In 2014, the

Debtors paid severance taxes totaling approximately $64 million in West Virginia, $23 million in

Wyoming, $12 million in Kentucky and $8 million in Virginia.

8.      In West Virginia, the Debtors are required to pay an additional "privilege"

tax, which is a Production Tax of $0.56 per ton of coal produced in West Virginia.  In 2014, the

Debtors paid West Virginia privilege taxes totaling approximately $13 million.  In addition,

Wyoming requires coal producers, including the Debtors, to pay county gross products taxes,

consisting of *ad valorem* taxes on the mine mouth value of coal extracted and sold by the

taxpayer during the immediately preceding year.  In 2014, the Debtors paid approximately

$25 million in Wyoming gross products taxes.

9.      As of the Petition Date, the Debtors estimate that the aggregate amount of

Production Taxes owing to the Taxing Authorities is approximately $45 million.

***Black Lung Excise Taxes***

10.      Pursuant to Section 4121 of the Internal Revenue Code, the Debtors are

required to pay federal black lung excise taxes (the "Black Lung Excise Taxes"), the proceeds of

which are held in trust by the federal government and used to compensate coal miners who

develop pneumoconiosis, also known as "black lung disease."  Black Lung Excise Taxes consist

of taxes on each ton of coal sold in the United States, at rates equal to the lesser of:  (a) $0.55 per

ton of surface coal, and $1.10 per ton of underground coal, sold; and (b) 4.4% of the actual

purchase price of such coal.  Black Lung Excise Taxes are assessed upon the first sale or use of

the subject coal, and estimated payments are paid by the Debtors on a semi-monthly basis.

In 2014, the Debtors paid approximately $46 million in Black Lung Excise Taxes.  As of the

Petition Date, the Debtors estimate that the aggregate amount of Black Lung Excise Taxes owing

to the federal government is approximately $1.5 million.

*Sales and Use Taxes*

11.     The Debtors are required to pay certain sales taxes, gross receipts taxes

and other similar taxes in connection with the sale of coal to their customers and purchases of

tangible personal property (collectively, the "Sales Taxes").  For example, on a quarterly basis,

the Debtors pay a commercial activity tax to Ohio Taxing Authorities on coal sales to customers

located in Ohio, and the Debtors are required to pay Sales Taxes on purchases of taxable tangible

personal property in the states in which they operate.  The Debtors are also required to pay use

taxes (collectively, the "Use Taxes" and together with the Sales Taxes, the "Sales and Use

Taxes") when they make certain purchases of tangible personal property from an

out-of-jurisdiction vendor.  If the vendor has no business operations within the jurisdiction, it has

no legal obligation to charge or remit sales tax for sales to parties within such jurisdiction.

Nevertheless, under these circumstances, various state and local laws require the Debtors to

self-assess the amount of sales taxes that would have been owed on purchases from

out-of-jurisdiction vendors and pay these amounts as Use Taxes to the relevant Taxing

Authorities.  The timing and amount of the Debtors' payments on account of Sales and Use

Taxes varies by jurisdiction, but in many jurisdictions occurs on a monthly or quarterly basis.

Although the availability of certain exemptions reduces the amount of Sales and Use Taxes owed

by the Debtors, such exemptions do not entirely eliminate the Debtors' Sales and Use Tax

liability.  In 2014, the Debtors paid approximately $15 million in Sales and Use Taxes,

principally to Taxing Authorities in Wyoming, Kentucky and Pennsylvania (with lesser amounts

paid to Taxing Authorities in West Virginia and Virginia, which states have enacted broad

exemption provisions).  As of the Petition Date, the Debtors estimate that the aggregate amount

of Sales and Use Taxes owing to the Taxing Authorities is less than $1 million.

### *Franchise Taxes*

12.     The Debtors pay franchise taxes to certain of the Taxing Authorities to

maintain the right to operate their business in the relevant taxing jurisdictions (collectively,

the "Franchise Taxes").  The Debtors are required to pay Franchise Taxes, based on the net worth

of the relevant businesses, to Taxing Authorities in South Carolina, Louisiana, Pennsylvania and

Tennessee.  The Debtors also pay Franchise Taxes in Kentucky, where such taxes are calculated

based on gross profits or gross receipts.  Some states impose personal liability on responsible

officers of a corporation if that corporation fails to pay Franchise Taxes.  Moreover, certain

states will refuse to qualify a debtor to do business in a state or issue certificates of good standing

or other documents if Franchise Taxes have not been paid.  In 2014, the Debtors paid

approximately $2 million in Franchise Taxes.   The Debtors estimate that the aggregate amount

of prepetition Franchise Taxes owing to the Taxing Authorities is less than $300,000.

### *Environmental and Safety Charges*

13.     In the ordinary course of business, the Debtors pay (a) certain taxes and

fees owing to federal and state Taxing Authorities (collectively, the "Reclamation Taxes"), the

proceeds of which are used to reclaim abandoned mine sites, and (b) various fees, penalties and

assessments to governmental authorities as part of the Debtors' obligations to comply with

environmental, health and safety laws and regulations (the "Environmental and Safety Fees and

Assessments" and, together with the Reclamation Taxes, the "Environmental and Safety

Charges").

14.     Pursuant to the federal Surface Mining Control and Reclamation Act, the Debtors are required to pay, on a quarterly basis, federal taxes consisting of a tax of $0.28 per ton of surface coal sold, and a tax of $0.12 per ton of underground coal sold.  In 2014, the Debtors paid approximately $17 million in federal Reclamation Taxes.  In West Virginia, the Debtors also pay a special reclamation tax consisting of two components:  (a) a tax of $0.27 per ton of coal produced in the state and (b) a tax of $0.02 per ton of coal extracted in West Virginia and sold anywhere.  In 2014, the Debtors paid approximately $7 million in West Virginia reclamation taxes.  In addition, the Debtors pay certain Reclamation Taxes related to the Debtors' reclamation bonding status – i.e., the Debtors' provision of bonding to the states in which they operate, as required to maintain necessary mining permits – in certain states.  In Virginia and Kentucky, the Debtors participate in reclamation bonding programs, known as "pool bond" programs, pursuant to which the Debtors are required to pay tonnage fees and/or fees for newly-permitted, idle or inactive acreage owned within such states.  In 2014, the Debtors paid approximately $300,000 in pool bond Reclamation Taxes.  The Debtors estimate that the aggregate amount of prepetition Reclamation Taxes owing to the Taxing Authorities is less than $2 million.

15.     The Environmental and Safety Fees and Assessments consist of, among other things, assessments, fees and penalties related to alleged prepetition violations of state and federal environmental and safety-related laws and regulations.  For example, the federal Mine Safety and Health Administration regularly inspects coal mines, including those operated by the Debtors, and is empowered to assess fines for violations of the Federal Mine Safety and Health Act of 1977 (the "Mine Safety Act").  Although some of the Debtors' currently-outstanding

Environmental and Safety Fees and Assessments are being contested,[2] the Debtors estimate that

that a total of approximately $12.3 million in Environmental and Safety Fees and Assessments

are outstanding as of the Petition Date.  The Debtors estimate that the aggregate amount of

Environmental and Safety Charges owing to the Taxing Authorities as of the Petition Date is

approximately $14.3 million.

*Other Taxes*

16.     In addition to the Prepetition Taxes described above, the Debtors pay

certain miscellaneous taxes to the Taxing Authorities, including (but not limited to) fuel excise

taxes, heavy vehicle taxes and explosives taxes assessed by federal and certain state Taxing

Authorities (collectively, the "Other Taxes").  The Debtors estimate that the aggregate amount of

prepetition Other Taxes owing to the Taxing Authorities is less than $1 million.

### Argument

17.     The Debtors respectfully submit that the Court should authorize the

payment of the Prepetition Taxes because:  (a) certain of the Prepetition Taxes do not constitute

property of the Debtors' chapter 11 estates; (b) some of the Prepetition Taxes constitute secured

or priority claims the payment of which will not prejudice general unsecured creditors; (c) the

failure to pay certain of the Prepetition Taxes may impact the Debtors' ability to conduct

business in certain jurisdictions and consummate certain necessary postpetition transactions;

(d) the Debtors' officers or directors may face personal liability and, possibly, criminal charges if

---

[2]      Under applicable law, the Debtors may appeal certain types of Environmental and Safety Fees and
Assessments, e.g., penalties for alleged violations of environmental or safety-related statutes or regulations.
It is an open question whether such appeals – to the extent they relate to alleged prepetition violations – are
subject to the automatic stay.  Out of an abundance of caution, the Debtors request limited relief from the
automatic stay under section 362 of the Bankruptcy Code (to the extent it applies) to prosecute appeals of
any Environmental and Safety Fees and Assessments during the pendency of these chapter 11 cases, and to
enter into compromises with governmental authorities as the Debtors, in their sole discretion, deem
appropriate.

certain of the Prepetition Taxes are not paid; and (e) liability for certain unpaid taxes levied in Wyoming may be asserted against the Debtors' customers.  The Debtors have ample cash on hand to pay any Prepetition Taxes they might owe.  Accordingly, the Debtors have filed this Motion to avoid potential disruptions or distractions that could arise as a result of a failure to pay the Prepetition Taxes.

### Sections 105(a) and 363(b) of the Bankruptcy Code and the Doctrine of Necessity Provide a Basis for Payment of the Prepetition Taxes

18.     Section 363(b) of the Bankruptcy Code allows a debtor, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon a sound business purpose.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); In re W.A. Mallory Co., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)); see also In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992) (holding that the use, sale or lease of property of the estate is justified if it is supported by a good business reason); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a motion pursuant to section 363(b) of the Bankruptcy Code is "a good business reason").

19.     Courts in this and other districts have consistently and appropriately been reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion."  Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985);

see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated

Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992). Here, the Debtors believe, in their business

judgment, that payment of the Prepetition Taxes, in the Debtors' discretion, is sound and prudent.

        20.      Further, the Court may authorize payment of the Prepetition Taxes

pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity. Section 105(a)

of the Bankruptcy Code empowers a bankruptcy court to issue "any order, process, or judgment

that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C.

§ 105. The purpose of section 105 of the Bankruptcy Code is to ensure the bankruptcy court has

the power to take whatever action "is appropriate or necessary in aid of the exercise of [its]

jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2015). "Under [section 105 of the Bankruptcy Code,] the court can permit pre-plan

payment of a pre-petition obligation when essential to the continued operation of the debtor."

In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc.,

98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)).

        21.      In addition, under the "doctrine of necessity," courts allow the immediate

payment of prepetition claims where such payment is essential to the debtor's continued

operations. See In re United Am., Inc., 327 B.R. 776, 782 (Bankr. E.D. Va. 2005)

(acknowledging the existence of the doctrine of necessity "because otherwise there will be no

reorganization and no creditor will have an opportunity to recoup any part of its prepetition

claim"); accord In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the

existence of a judicial power to authorize trustees to pay claims for goods and services that are

indispensably necessary to the debtors' continued operation).

22.      Several courts apply the doctrine of necessity where payment of a

prepetition claim (a) is "necessary for the successful reorganization of the debtor," (b) falls

within "the sound business judgment of the debtor" and (c) will not "prejudice other unsecured

creditors." United Am., 327 B.R. at 782; see also In re Universal Fin., Inc., 493 B.R. 735,

739-40 (Bankr. M.D.N.C. 2013) (applying the United American three-part test); In re Corner

Home Care, Inc., 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).

23.      As set forth below, the Debtors have ample business justifications to pay

Prepetition Taxes.  Thus, the relief requested in this Motion should be granted pursuant to

section 363(b) of the Bankruptcy Code or, in the alternative, section 105(a) of the Bankruptcy

Code and the doctrine of necessity.

24.      First, the Debtors believe that some of the Prepetition Taxes would be

priority claims under section 507(a)(8) of the Bankruptcy Code.  See 11 U.S.C. § 507(a)(8)

(according priority status to certain "allowed unsecured claims of governmental units").

As priority claims, these taxes must be paid in full before the Debtors may obtain confirmation

of a chapter 11 plan or make distributions to general unsecured creditors.  See 11 U.S.C.

§ 1129(a)(9)(C).  In addition, some of the Prepetition Taxes give rise to secured obligations, such

as statutory liens that arise upon nonpayment.  Accordingly, the proposed relief will only affect

the timing of the payment of the Prepetition Taxes and not whether such amounts ultimately will

be paid.  As such, payment of the Prepetition Taxes will not prejudice the rights of general

unsecured creditors.

25.      In addition, certain of the Prepetition Taxes, such as the Sales and Use

Taxes, are "trust fund taxes" that, by definition, are held by the Debtors in trust for the benefit of

those third parties to whom payment is owed or on behalf of whom such payment is being made.

Section 541(d) of the Bankruptcy Code excludes "property in which the debtor holds, as of the

commencement of the case, only legal title and not an equitable interest" from the debtor's estate.

11 U.S.C. § 541(d).  As such, these prepetition "trust fund taxes" are not property of the Debtors'

estates within the meaning of section 541 of the Bankruptcy Code.  See Begier v. IRS,

496 U.S. 53, 57-60 (1990) (taxes held by a debtor in trust for another do not constitute property

of its estate); In re Calabrese, 689 F.3d 312, 321 (3d Cir. 2012) (sales taxes are "trust fund"

taxes); DeChiaro v. N.Y. State Tax Comm'n, 760 F.2d 432, 433 (2d Cir. 1985) (same).  Because

the Prepetition Taxes that are trust fund taxes do not constitute property of the Debtors' estates,

these amounts will not otherwise be available for distribution to the Debtors' creditors.  Thus, the

payment of these Prepetition Taxes will not adversely affect the Debtors' estates or creditors.

      26.     Certain of the Debtors are required to pay the Prepetition Taxes to

maintain their good standing and to continue operating in the jurisdictions in which they do

business.  State authorities in Kentucky and West Virginia, and county authorities in Virginia,

are statutorily empowered to revoke the business license or certificate of registration of any

company that fails to pay severance taxes.  See Ky. Rev. Stat. § 143.030(3) (providing for the

revocation of a taxpayer's certificate of registration if severance taxes are not paid); W. Va. Code

§ 11-13A-16(e) (providing that the state may (a) require a taxpayer to post a bond if severance

taxes are unpaid and (b) enjoin a taxpayer's business operations if the taxpayer then fails to post

the required bond); Buchanan Cnty. (Va.) Code § 88-31 (providing that county authorities may

revoke, or refuse to renew, a coal producer's license to operate in the event that severance taxes

are unpaid); Dickenson Cnty. Va. Coal, Gas, and Oil Severance Tax Ordinance § 5(E) (same);

Tazewell Cnty. (Va.) Code of Ordinances § 10-115(b) (same); Wise Cnty. (Va.) Code § 19-37(e)

(same).  Moreover, the Debtors expect that during the course of these chapter 11 cases they could

be required to make representations about their good standing in the jurisdictions where they

have operated or maintain assets.  If the Prepetition Taxes are not paid, Taxing Authorities may

refuse to issue good standing certificates.  Likewise, these Taxing Authorities may refuse to take

other actions requested by the Debtors during these chapter 11 cases, including processing

mergers or corporate name changes that may be helpful to enhance the value of any postpetition

transactions pursued by the Debtors.

27.     Finally, Taxing Authorities may impose personal liability on responsible

officers or directors of the Debtors for the failure to pay certain Prepetition Taxes.

See, e.g., Va. Code Ann. §§ 58.1-1813, 58.1-1815 (imposing personal civil and criminal liability

on corporate directors and officers for willful failure to remit sales and use taxes owed upon

termination of a corporation); Buchanan Cnty. (Va.) Code § 88-38.1 (imposing criminal liability

on officers and directors if a coal producer continues to operate following license revocation for

unpaid taxes); Dickenson Cnty. (Va.) Coal, Gas, and Oil Severance Tax Ordinance §§ 15(A)(2),

15(B)(2) (imposing criminal liability on officers if a company fails to pay required taxes or

continues to operate following license revocation); Tazewell Cnty. (Va.) Code of Ordinances

§ 10-116 (imposing criminal liability for the operation of a business following license

revocation); Wise Cnty. (Va.) Code §§ 19-50(a), 19-50(b) (imposing criminal liability on

officers if a company fails to pay required taxes or continues to operate following license

revocation); W. Va. Code § 11-15-17 (providing that corporate officers are jointly and severally

liable for unpaid corporate taxes); Ky. Rev. Stat. §§ 143.030, 143.085 (providing that corporate

officers are jointly and severally liable for unpaid corporate taxes; imposing criminal liability for

operating a business without a certificate of registration); 30 U.S.C. § 820(c), (d) (imposing civil

and criminal penalties on corporate directors, officers and agents with respect to certain types of

violations of the Mine Safety Act).  In addition, under Wyoming law, if a taxpayer fails to pay a

Wyoming coal severance tax, "the purchaser of the produced valuable deposit shall withhold and

remit to the department the taxpayer's subsequently accruing taxes on the produced valuable

deposit acquired by the purchaser."  Wyo. Stat. § 39-14-108(a)(ii).

   28.  Thus, if certain Prepetition Taxes remain unpaid, the Debtors' officers or

directors may be subject to lawsuits or even criminal prosecution on account of such nonpayment

during the pendency of these chapter 11 cases.  Contesting the imposition of such individual

penalties in lawsuits or administrative proceedings would constitute a significant distraction for

the Debtors' officers and directors at a time when they should be focused on the Debtors' efforts

to stabilize their postpetition businesses operations, maximize stakeholder value and formulate

and implement a successful chapter 11 strategy.  Moreover, if the Debtors fail to pay Wyoming

coal severance taxes, purchasers of coal mined by the Debtors in Wyoming may be held liable

for the Debtors' unpaid taxes, as noted above.  In such a circumstance, the Debtors' relationships

with their customers could suffer irreparable harm at a time when maintaining "business as

usual" relations with customers is critical to the Debtors' effort to successfully reorganize.

   29.  Bankruptcy courts in this District have entered interim and final orders

authorizing chapter 11 debtors to pay prepetition taxes in numerous other cases.  See, e.g.,

In re Health Diagnostic Lab., Inc., No. 15-32919 (Bankr. E.D. Va. June 10, 2015 and

July 1, 2015) (interim and final orders authorizing the debtors to pay certain prepetition taxes);

In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va. May 13, 2015 and June 4, 2015)

(interim and final orders authorizing the debtors to pay certain prepetition taxes, including

production taxes, excise taxes, sales and use taxes and environmental and safety fees and

assessments); In re James River Coal Co., No. 14-31848 (Bankr. E.D. Va. Apr. 10, 2014 and

May 13, 2014) (same); <u>In re AMF Bowling Worldwide, Inc.</u>, No. 12-36495 (Bankr. E.D. Va.

Nov. 14, 2012) (order authorizing the debtors to pay certain prepetition taxes); <u>In re Movie</u>

<u>Gallery, Inc.</u>, No. 10-30696 (Bankr. E.D. Va. Feb. 8, 2010) (same); <u>In re Chesapeake Corp.</u>,

No. 08-36642 (Bankr. E.D. Va. Dec. 30, 2008) (same); <u>In re Circuit City Stores, Inc.</u>,

No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008) (same).[3]

***Request for Authority for Banks to Honor and Pay Checks***
***Issued and Fund Transfers with Respect to the Prepetition Taxes***

30.    In addition, by this Motion, the Debtors request that all applicable banks

and other financial institutions (collectively, the "<u>Banks</u>") be authorized but not directed, when

requested by the Debtors, in the Debtors' discretion, to receive, process, honor and pay any and

all checks presented for payment of, and to honor all fund transfer requests made by the Debtors

related to, Prepetition Taxes, whether such checks were presented or fund transfer requests

submitted prior to or after the Petition Date, provided that sufficient funds are available in the

applicable accounts to cover such checks and fund transfers.  Under the Debtors' existing cash

management system, the Debtors can readily identify checks and wire transfer requests that

relate to payment made on account of any Prepetition Taxes as may be authorized by the Court.

Accordingly, the Debtors believe that checks and wire transfer requests other than those relating

to authorized payments will not be honored inadvertently.

***Tax Payment Matrix***

31.    The Debtors intend to maintain a matrix (the "<u>Tax Payment Matrix</u>")

containing (a) the name of each Taxing Authority that receives a payment on account of

Prepetition Taxes, (b) the amount of each such payment and (c) the type of Prepetition Tax paid.

---

[3]    The unreported orders cited herein are not attached to this Motion.  Copies of these orders will be made
available to the Court or other parties upon request made to the Debtors' counsel.

The Debtors will provide the Tax Payment Matrix to (a) the United States Trustee for the Eastern

District of Virginia, (b) counsel to any official committee of unsecured creditors that may be

appointed in these chapter 11 cases, (c) Davis Polk & Wardwell LLP and McGuireWoods LLP,

as co-counsel to Citibank, N.A., as administrative and collateral agent under the Debtors'

proposed postpetition credit facility and (d) Kirkland and Ellis, as counsel to the Second Lien

Noteholder Group, (x) bi-weekly, one week in arrears, until a final order is entered granting the

relief requested herein and (y) monthly, one week in arrears, thereafter.  Recipients of the Tax

Payment Matrix shall keep the Tax Payment Matrix strictly confidential and shall not disclose

the Tax Payment Matrix or any portion thereof to any individual or entity without the Debtors'

prior written consent.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

32.     Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") empowers the Court to grant the relief requested in this Motion within the first 21 days

after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable

harm." Fed. R. Bankr. P. 6003.  For the reasons set forth above, the payment of the Prepetition

Taxes is necessary to prevent the immediate and irreparable damage to the Debtors' estates that

would result from the failure to (a) maintain good standing within the jurisdictions in which they

conduct their businesses or (b) protect their responsible officers and directors from personal

liability and potential criminal charges.  Accordingly, the Debtors submit that ample cause exists

to justify the immediate entry of the Interim Order pursuant to Bankruptcy Rule 6003(b).

### Waiver of Bankruptcy Rules 2002(a)(2), 6004(a) and 6004(h)

33.     Pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6004(h), the

Debtors also seek, to the extent they apply:  (a) a waiver of the notice requirements under

-16-

Document     Page 17 of 33

Bankruptcy Rules 2002(a)(2) and 6004(a); and (b) a waiver of any stay of the effectiveness of

the Interim Order and the Final Order under Bankruptcy Rule 6004(h).

34.     Bankruptcy Rules 2002(a)(2) and 6004(a) require 21 days' notice by mail

of the proposed use of property outside the ordinary course of business, unless the Court orders

otherwise for cause shown.  See Fed. R. Bankr. P. 2002(a)(2), 6004(a).  Bankruptcy Rule 6004(h)

provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral

is stayed until the expiration of 14 days after entry of the order, unless the court orders

otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth above, the payment of Prepetition Taxes is

necessary to prevent immediate and irreparable damage to the Debtors' estates.  Accordingly, the

Debtors submit that ample cause exists to justify:  (a) shortened and limited notice of the Motion

with respect to the relief to be granted by the Interim Order; (b) the immediate entry of the

Interim Order granting certain of the relief sought herein pursuant to Bankruptcy Rule 6003(b);

and (c) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it

applies, with respect to both the Interim Order and the Final Order.

### Waiver of Separate Memorandum of Points and Authorities

35.     The Debtors respectfully request that the Court regard any argument and

citations set forth herein as a written memorandum of facts, reasons and authorities that has been

combined with the relief requested herein, as permitted by Local Bankruptcy Rule 9013-1(G)(1).

Alternatively, the Debtors respectfully request that the Court waive any requirement set forth in

Local Bankruptcy Rule 9013-1(G)(1) that this Motion be accompanied by such a written

memorandum.

### Notice

36.     Notice of this Motion has been given to:  (a) the Office of the United

States Trustee for the Eastern District of Virginia; (b) Davis Polk & Wardwell LLP and

McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent

under the proposed postpetition credit facility, and Citicorp North America, Inc., as

administrative and collateral agent under the Debtors' prepetition secured credit facility;

(c) Kirkland and Ellis LLP, as counsel to the Second Lien Noteholder Group; (d) the indenture

trustees for the Debtors' secured and unsecured notes (and counsel, where known); (e) counsel to

General Electric Credit Corporation, as administrative agent under the Debtors' prepetition

secured accounts receivable facility; (f) the creditors holding the 50 largest unsecured claims

against the Debtors' estates on a consolidated basis; (g) the United Mine Workers of America;

and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of

service (collectively, the "Notice Parties").  In light of the nature of the relief requested, the

Debtors submit that no further notice is necessary.

### No Prior Request

37.    No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter the

Interim Order substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested

herein on an interim basis; (ii) enter the Final Order substantially in the form attached hereto as

<u>Exhibit B</u>, granting the relief requested herein on a final basis; and (iii) grant such other and

further relief to the Debtors as the Court may deem proper.


Dated: August 3, 2015
      Richmond, Virginia

Respectfully submitted,

  /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## **Exhibit A**

Proposed Interim Order

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

Alpha Natural Resources, Inc., et al.,

Debtors.

Chapter 11

Case No. 15-_____ (___)

(Joint Administration Requested)

## INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 507(a)
## AND 541 OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS
## AND DEBTORS IN POSSESSION TO PAY CERTAIN PREPETITION TAXES

This matter coming before the Court on the *Motion of the Debtors, Pursuant to*

*Sections 105(a), 363(b), 507(a) and 541 of the Bankruptcy Code, for Interim and Final Orders*

*Authorizing Them to Pay Certain Prepetition Taxes* (the "Motion"),[1] filed by the debtors and

debtors in possession in the above-captioned cases (collectively, the "Debtors"); the Court

having reviewed the Motion and the First Day Declarations and having considered the statements

of counsel with respect to the Motion at a hearing before the Court (the "Hearing"); the Court

having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1]        Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and

the Hearing was sufficient under the circumstances, (d) there is good cause to waive the 14-day

stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable and (e) the payment of

the Prepetition Taxes on the terms and conditions described in the Motion is necessary and

appropriate to prevent immediate and irreparable harm to the Debtors' business operations and

will serve to protect and preserve the Debtors' estates for the benefit of all stakeholders; and the

Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, in their discretion, to the extent permitted by

any interim or final order approving the Debtors' postpetition use of cash collateral or debtor in

possession financing, to pay the Prepetition Taxes, including any taxes subsequently determined

upon audit to be owed for periods prior to the Petition Date, in the ordinary course of business

(a) to the extent that they are currently due and payable or become due and payable prior to the

entry of the Final Order or (b) that the Debtors attempted to pay prior to the Petition Date but for

which the checks issued or fund transfers initiated by the Debtors failed to clear the Banks prior

to the Petition Date.

3.      The Banks are authorized but not directed, when requested by the Debtors

in the Debtors' discretion, to receive, process, honor and pay all checks presented for payment of,

and to honor all fund transfer requests made by the Debtors related to, Prepetition Taxes,

whether such checks were presented or fund transfer requests were submitted prior to or after the

Petition Date, provided that sufficient funds are available in the applicable accounts to cover

such checks and fund transfers.  The Banks are authorized to rely on the Debtors' designation of

any particular check or fund transfer as approved by this Interim Order.

4.      Nothing in the Motion or this Interim Order, nor the Debtors' payment of

any claim, fee or penalty pursuant to this Interim Order, shall be deemed or construed as:  (a) an

admission as to the validity or priority of any claim, fee or penalty against the Debtors; (b) a

waiver of the Debtors' or any other party in interest's rights to dispute any claim, fee or penalty

on any grounds or to seek a refund or abatement of any taxes; (c) a promise to pay any claim, fee

or penalty; or (d) an implication or admission that any particular claim, fee or penalty is a claim

for Prepetition Taxes.

5.      To the extent necessary, the Debtors are hereby granted relief pursuant to

section 362(d) of the Bankruptcy Code to prosecute appeals of Environmental and Safety Fees

and Assessments, and to enter into compromises with governmental authorities regarding

Environmental and Safety Fees and Assessments, in their sole discretion.

6.      Any objection to the granting of the relief requested by the Motion on a

final basis shall be filed with the Court on or before _____ _.m. Eastern Time on

_____, 2015 (the "Objection Deadline"), and served, so as to be received by the

Objection Deadline, upon:  (a) the Office of the United States Trustee for the Eastern District of

Virginia, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219 (Attn: Robert B.

Van Arsdale, Esq. and Hugh M. Bernstein, Esq.); (b) (i) the Debtors, c/o Alpha Natural

Resources, Inc., One Alpha Place, P.O. Box 16429, Bristol, Virginia 24209 (Attn: Richard H.

Verheij, Esq., General Counsel); (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland,

Ohio 44114 (Attn: Carl E. Black, Esq. and Thomas A. Wilson, Esq.); and (iii) Hunton &

Williams LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219

(Attn: Tyler P. Brown, Esq.); (c) co-counsel to the administrative and collateral agent under the proposed postpetition credit facility and the administrative and collateral agent under the Debtors' prepetition secured credit facility, (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq. and Damon P. Meyer, Esq.) and (ii) McGuireWoods LLP, Gateway Plaza, 800 East Canal Street, Richmond, Virginia 23219 (Attn: Dion W. Hayes, Esq., Sarah B. Boehm, Esq. and K. Elizabeth Sieg, Esq.); and (d) counsel to the Second Lien Noteholder Group, Kirkland & Ellis LLP, (i) 601 Lexington Avenue, New York, New York 10022 (Attn: Stephen E. Hessler, Esq. and Brian E. Schartz, Esq.) and (ii) 300 North LaSalle, Chicago, Illinois 60654 (Attn: Gregory F. Pesce, Esq.).

7.      The Debtors shall, within two business days of the date of entry of this Interim Order, serve by United States mail, first class postage prepaid, copies of the Motion and this Interim Order on (a) the U.S. Trustee and (b) the Notice Parties.  A final hearing on the Motion (the "Final Hearing") will be held on _____, 201_ at _____ _.m. Eastern Time in the United States Bankruptcy Court for the Eastern District of Virginia, Courtroom ____, 701 East Broad Street, 5th Floor, Richmond, Virginia 23219.

8.      The Debtors shall maintain a matrix (the "Tax Payment Matrix") containing (a) the name of each Taxing Authority that receives a payment on account of Prepetition Taxes, (b) the amount of each such payment and (c) the type of Prepetition Tax paid. The Debtors shall provide the Tax Payment Matrix to (a) the United States Trustee for the Eastern District of Virginia, (b) counsel to any official committee of unsecured creditors that may be appointed in these chapter 11 cases, (c) Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent under the Debtors' proposed postpetition credit facility and (d) Kirkland and Ellis, as counsel to

the Second Lien Noteholder Group, (x) bi-weekly, one week in arrears, until a final order is

entered granting the relief requested in the Motion and (y) monthly, one week in arrears,

thereafter.  Recipients of the Tax Payment Matrix shall keep the Tax Payment Matrix strictly

confidential and shall not disclose the Tax Payment Matrix or any portion thereof to any

individual or entity without the Debtors' prior written consent.

9.      A reply to any objection may be filed by no later than 4:00 p.m. on the

date that is two days prior to the date of the Final Hearing.

10.      If no objections are timely filed and served as set forth herein, the Debtors

shall, on or after the Objection Deadline, submit to the Court a final order substantially in the

form of the Final Order attached to the Motion, which Final Order may be entered with no

further notice or opportunity to be heard afforded to any party.

11.      Pursuant to Bankruptcy Rule 6004(h), this Interim Order shall be

immediately effective and enforceable upon its entry.

12.      For the avoidance of doubt, nothing herein shall modify, alter or otherwise

affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in

possession financing facility or be deemed to authorize the Debtors to violate any terms of such

financing facility.

13.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a

memorandum of law in connection with the Motion is hereby waived to the extent necessary.

14.      The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Interim Order.

15.     This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Interim Order.


Dated: _____, 2015          _____
          Richmond, Virginia                    UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

    /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

    /s/  Henry P. (Toby) Long, III

**<u>Exhibit B</u>**

Proposed Final Order

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

*Proposed Attorneys for Debtors
and Debtors in Possession*

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

In re:

Alpha Natural Resources, Inc., et al.,

Debtors.

Chapter 11

Case No. 15-_____ (___)

(Joint Administration Requested)

**FINAL ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 507(a)
AND 541 OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS
AND DEBTORS IN POSSESSION TO PAY CERTAIN PREPETITION TAXES**

This matter coming before the Court on the *Motion of the Debtors, Pursuant to Sections 105(a), 363(b), 507(a) and 541 of the Bankruptcy Code, for Interim and Final Orders Authorizing Them to Pay Certain Prepetition Taxes* (the "Motion"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Motion and the First Day Declarations and having considered the statements of counsel with respect to the Motion at a hearing before the Court (the "Hearing"); the Court having entered an order granting the relief requested in the Motion on an interim basis and

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and

the Hearing was sufficient under the circumstances, (d) there is good cause to waive the 14-day

stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable and (e) the payment of

the Prepetition Taxes on the terms and conditions described in the Motion is necessary and

appropriate to prevent disruptions to the Debtors' business operations and will serve to protect

and preserve the Debtors' estates for the benefit of all stakeholders; and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, in their discretion, to the extent permitted by

any interim or final order approving the Debtors' postpetition use of cash collateral or debtor in

possession financing, to pay the Prepetition Taxes, including any taxes subsequently determined

upon audit to be owed for periods prior to the Petition Date, in the ordinary course of business.

3.      The Banks are authorized but not directed, when requested by the Debtors

in the Debtors' discretion, to receive, process, honor and pay all checks presented for payment of,

and to honor all fund transfer requests made by the Debtors related to, Prepetition Taxes,

whether such checks were presented or fund transfer requests were submitted prior to or after the

Petition Date, provided that sufficient funds are available in the applicable accounts to cover

such checks and fund transfers.  The Banks are authorized to rely on the Debtors' designation of

any particular check or fund transfer as approved by this Order.

4.      Nothing in the Motion or this Order, nor the Debtors' payment of any claim, fee or penalty pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim, fee or penalty against the Debtors; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim, fee or penalty on any grounds or to seek a refund or abatement of any taxes; (c) a promise to pay any claim, fee or penalty; or (d) an implication or admission that any particular claim, fee or penalty is a claim for Prepetition Taxes.

5.      To the extent necessary, the Debtors are hereby granted relief pursuant to section 362(d) of the Bankruptcy Code to prosecute appeals of Environmental and Safety Fees and Assessments, and to enter into compromises with governmental authorities regarding Environmental and Safety Fees and Assessments, in their sole discretion.

6.      The Debtors shall maintain a matrix (the "Tax Payment Matrix") containing (a) the name of each Taxing Authority that receives a payment on account of Prepetition Taxes, (b) the amount of each such payment and (c) the type of Prepetition Tax paid. The Debtors shall provide the Tax Payment Matrix to (a) the United States Trustee for the Eastern District of Virginia, (b) counsel to any official committee of unsecured creditors that may be appointed in these chapter 11 cases, (c) Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent under the Debtors' proposed postpetition credit facility and (d) Kirkland and Ellis, as counsel to the Second Lien Noteholder Group, on a monthly basis, one week in arrears.  Recipients of the Tax Payment Matrix shall keep the Tax Payment Matrix strictly confidential and shall not disclose the Tax Payment Matrix or any portion thereof to any individual or entity without the Debtors' prior written consent.

7.      Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately

effective and enforceable upon its entry.

8.      For the avoidance of doubt, nothing herein shall modify, alter or otherwise

affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in

possession financing facility or be deemed to authorize the Debtors to violate any terms of such

financing facility.

9.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a

memorandum of law in connection with the Motion is hereby waived to the extent necessary.

10.     The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

11.     This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Order.


Dated: _____, 2015           _____
        Richmond, Virginia             UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

    /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

        Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                                    /s/  Henry P. (Toby) Long, III