JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

*Proposed Attorneys for Debtors
and Debtors in Possession*

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO: (A) MAINTAIN, CONTINUE AND RENEW THEIR PROPERTY, CASUALTY, LIABILITY, WORKERS' COMPENSATION AND OTHER INSURANCE PROGRAMS, POLICIES AND AGREEMENTS; AND (B) HONOR ALL OBLIGATIONS IN RESPECT THEREOF

Alpha Natural Resources, Inc. ("<u>ANR</u>") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully

represent as follows:

### Background

1.      On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"). By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only

and administered jointly.  The Debtors are authorized to continue to operate their business and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

2.    A comprehensive description of the Debtors' businesses and operations,

capital structure and the events leading to the commencement of these chapter 11 cases can be

found in the declarations of (a) Kevin S. Crutchfield, Chief Executive Officer and Chairman of

the Board of Directors of ANR, and (b) Philip J. Cavatoni, Executive Vice President and Chief

Financial and Strategy Officer of ANR in support of the Debtors' "first day" pleadings (together,

the "First Day Declarations"), which were filed contemporaneously herewith and which are

incorporated by reference.

### Jurisdiction

3.    This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4.    By this Motion, the Debtors seek entry of an interim order (the "Interim

Order"), substantially in the form attached hereto as Exhibit A, and a final order (the "Final

Order"), substantially in the form attached hereto as Exhibit B:  (a) authorizing them to maintain,

obtain, continue, supplement, amend, extend, renew and/or replace, without further court

approval, their Insurance Policies and Workers' Compensation Program (as such terms are

defined below), including by entering into insurance premium financing arrangements, as

necessary, and honor all of their prepetition and postpetition obligations thereunder (collectively,

the "Insurance Obligations"), including the payment of claims, premiums, deductibles, fees,

retention amounts or other amounts arising thereunder or in connection therewith; and

(b) authorizing, but not directing, all applicable banks and other financial institutions (collectively, the "Banks") to receive, process, honor and pay all related checks and electronic payment requests, whether such checks or electronic payment requests were presented before or after the Petition Date, provided that sufficient funds are available in the applicable accounts to cover such checks and fund transfers.  Any such Banks may rely on the representations of such Debtors as to which checks are issued or wire transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.  The Debtors further request that each order be enforceable immediately upon entry.

## Facts Relevant to This Motion

### The Debtors' General Insurance Policies

5.      In the ordinary course of their business, the Debtors maintain numerous insurance policies that provide coverage for, among other things, general commercial liability, property damage, environmental liability, automobile damage and liability, aviation and marine liability, directors and officers liability, transit damage, crime and fiduciary liability and employment practices liability (collectively, as such policies may be supplemented, amended, extended, renewed and/or replaced, the "Insurance Policies").[1]  The Insurance Policies are essential to preserve the Debtors' business and are, in some cases, required by various laws, regulations and contracts that govern the Debtors' business.

6.      The Debtors maintain the Insurance Policies through several different insurance carriers (collectively, the "Insurance Carriers").  The names of the Insurance Policies,

---

[1]      The Debtors also carry insurance coverage with respect to their Workers' Compensation Program and related obligations, which is more fully described below.

the Insurance Carriers, the lines of coverage and the coverage periods are set forth on Exhibit C,

attached hereto.[2]

7.      The Debtors pay approximately $14 million in aggregate annual premiums

for the Insurance Policies, which premiums generally are paid annually in advance.[3]  Although

the majority of the Debtors' Insurance Policies will not expire in the days and weeks immediately

following the Petition Date, the Debtors anticipate that they likely will have to begin renewing or

replacing expiring Insurance Policies as early as August 31, 2015.  The Debtors do not believe

they have any outstanding prepetition obligations under any Insurance Policies, nor do the

Debtors believe there are any prepetition payment defaults under any of the Insurance Policies.

In addition, although certain of the Insurance Policies require payment of certain deductibles

with respect to certain covered claims, the Debtors do not believe they currently owe any

amounts with respect to such deductibles.

8.      The Debtors employ Aon Risk Services Central, Inc. ("Aon") and Willis

of Tennessee, Inc. ("Willis" and, together with Aon, the "Brokers") as their insurance brokers to

assist them with the procurement and negotiation of their Insurance Policies.  In exchange for the

Brokers' services, the Debtors pay them certain fees (collectively, the "Broker Fees").

The Debtors pay Aon, which serves as Broker with respect to the majority of the Debtors'

Insurance Policies in addition to the Debtors' Workers' Compensation Policies (as defined below)

approximately $850,000 in annual Broker Fees, payable in equal installments at the end of each

---

[2]      The Insurance Policies summarized on Exhibit C are representative only and are not intended to restrict
the Debtors from changing carriers or programs or adding different types of insurance in the reasonable
exercise of the Debtors' business judgment in the ordinary course of business.

[3]      As set forth on Exhibit C, premiums for:  (a) ANR's contingent ocean cargo policy with Starr Indemnity &
Liability Company ("Starr") are payable quarterly; and (b) ANR's business travel policies with Federal
Insurance Company and Starr are payable once every three years.

calendar quarter.  The Debtors pay Willis annual Broker Fees in the amount of approximately $90,000, payable annually on June 30.  The Debtors believe that all prepetition Broker Fees have been fully paid as of the Petition Date.  The Debtors intend to continue to utilize the services provided by the Brokers during these bankruptcy cases and believe the continued use of the Brokers' services is in the best interests of their creditors and estates.

9.      The Debtors request that the Court enter an order expressly authorizing them to maintain the Insurance Policies and to pay all prepetition or postpetition amounts arising in connection therewith, including the Broker Fees, according to the Debtors' normal business practices.[4]

***The Workers' Compensation Program***

10.      The Debtors provide workers' compensation coverage (the "Workers' Compensation Program") for their employees at the level required by statute for each state in which the Debtors have employees, including coverage for occupational pneumoconiosis (also known as "black lung") claims under applicable state law and the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 901–45 (the "Black Lung Benefits Act").  The Debtors satisfy their statutory obligations either on a self-insured basis or pursuant to workers' compensation insurance policies, as set forth below.

11.      The Self-Insurance Programs.  The Debtors currently operate as self-insured employers with respect to their Workers' Compensation Program obligations (other than their obligations under the Black Lung Benefits Act) only in West Virginia.  However, the Debtors have pre-existing self-insurance obligations in Kentucky, Illinois, Pennsylvania and

---

[4]      Although the Debtors believe that, as of the Petition Date, they do not owe any such liabilities, they nevertheless request authorization to pay such amounts out of an abundance of caution.

Utah (collectively, the "Former Self-Insurance States"), where they previously were self-insured but now maintain insurance coverage.  The Debtors pay applicable workers' compensation claims and employer liability claims and related assessment fees (collectively, the "Self-Insured State Claims") under their current and former self-insured workers' compensation programs (collectively, the "State Self-Insurance Programs") as such Self-Insured State Claims arise, up to a maximum of no more than $2 million per claim (the "Self-Insured Maximum"), depending on the jurisdiction.

12.     The Debtors maintain excess workers' compensation and employer liability insurance with Zurich American Insurance Company ("Zurich") for Self-Insured State Claims exceeding the applicable Self-Insured Maximum (the "Self-Insured Excess Policy").[5] The Debtors make quarterly premium payments to Zurich on account of the Self-Insured Excess Policy, which payments total approximately $1.5 million on an annual basis (the "Self-Insured Excess Premium").  No Self-Insured Excess Premiums are due as of the Petition Date.[6]

13.     The Debtors are also a qualified self-insurer with respect to certain claims (together with the Self-Insured State Claims, the "Self-Insured Claims") under the Black Lung Benefits Act on a site-by-site basis (together with the State Self-Insurance Programs, the "Self-Insurance Programs").  In particular, the Debtors' Black Lung Benefits Act obligations are self-insured with respect to all of their current and certain of their former operations in Pennsylvania and Wyoming and certain such operations in Kentucky and West Virginia.

14.     The Debtors incur approximately $25 million in annual obligations for Self-Insured Claims, in addition to the Self-Insured Excess Premium.  The Debtors and invoiced

---

[5]     The Debtors also have tail coverage for residual liabilities under expired policies in certain Former Self-Insurance States.  The Debtors no longer pay any premiums with respect to such policies, however.

[6]     The next Self-Insured Excess Premium payment is due on October 1, 2015.

and pay for the funding of Self-Insured Claims on a weekly basis in arrears.  As of the Petition

Date, the Debtors therefore have one week of unpaid funding requirements for the Self-Insured

Claims, which the Debtors estimate amounts to be approximately $500,000 based upon historical

experience,[7] approximately one third of which likely relates to self-insured liabilities under the

Black Lung Benefits Act.

15.    <u>Insured Programs</u>.  The Debtors maintain insurance coverage (collectively,

the "<u>Insured Programs</u>") with respect to workers' compensation, employers' liability, Black Lung

Benefits Act, Jones Act, Longshore and Harbor Workers' Compensation Act and Federal

Employers' Liability Act claims for which they are not self-insured.[8]  The Debtors maintain the

Insured Programs through policies (collectively with the Excess Policy, the "<u>Workers'

Compensation Policies</u>")[9] with Brickstreet Mutual Insurance Company (including its subsidiary

SummitPoint Insurance Company) and Argonaut Insurance Company (collectively,

the "<u>Workers' Compensation Carriers</u>").[10]  The Workers' Compensation Policies are a

combination of (a) guaranteed-cost policies offering first-dollar coverage with respect to covered

liabilities and (b) high deductible policies providing the Debtors with coverage in excess of a

deductible of up to $1 million per occurrence.

---

[7]    This number is an average based upon the Debtors' past experience.  Because the Debtors are self-insured with respect to these workers' compensation obligations, the actual liabilities they incur during the interim period may be substantially lower or higher than the estimated amount.

[8]    With respect to state workers' compensation and employers' liability claims, the Insured Programs, therefore, apply to claims in Colorado, Indiana, Maryland, Minnesota, South Carolina, Tennessee, Texas, Utah, Virginia, Wisconsin and the District of Columbia in addition to claims in Kentucky, Illinois and Pennsylvania for which the Debtors are not self-insured (collectively, the "<u>Insured States</u>").

[9]    A schedule of the Workers' Compensation Policies is attached hereto as <u>Exhibit D</u>.

[10]    In addition to the Workers' Compensation Policies provided by the Workers' Compensation Carriers, the Debtors have *de minimis* liabilities under certain expired Workers' Compensation Policies relating to acquired entities.

16.     On average, the Debtors pay approximately $22 million per year in premiums and related fees (collectively, the "Insured Program Premiums") to the Workers' Compensation Carriers in connection with the Insured Programs.  The Debtors believe that, as of the Petition Date, they do not owe any amounts on account of the Insured Program Premiums.

17.     The Debtors pay an average of approximately $4 million per year in deductible costs in connection with claims asserted under the Insured Programs (collectively, the "Insured Claims" and, together with the Self-Insured Claims, the "Workers' Compensation Claims").  Based on historical experience, the Debtors estimate that the aggregate amount of Deductible Costs accrued but not yet paid as of the Petition Date was approximately $300,000.

18.     The Debtors employ HealthSmart Benefit Solutions ("HealthSmart") as a third-party administrator to collect and process claims submitted pursuant to the Workers' Compensation Programs in exchange for administrative fees (collectively, the "Workers' Compensation Administrative Fees").  The Debtors pay the Workers' Compensation Administrative Fees monthly in arrears based upon the number of claims submitted during the prior month.  On average, the Debtors pay HealthSmart approximately $100,000 per month in Workers' Compensation Administrative Fees.[11]  As of the Petition Date, the Debtors estimate that have approximately $75,000 in accrued and unpaid Workers' Compensation Administrative Fees, all of which will come due and owing within the 21-day period immediately following the Petition Date (the "Interim Period").

19.     The Cash Collateral.  The Debtors have posted various forms of cash collateral to secure their obligations under the Workers' Compensation Program, as required by

---

[11]     The Debtors also pay HealthSmart approximately $20,000 per year to compensate Healthsmart for its administration of the Debtors' general liability policies.

the applicable insurers or regulators.  In particular, the Debtors have posted certain cash collateralized letters of credit (collectively, the "Letters of Credit").  As of the Petition Date, the Debtors maintain Letters of Credit in the aggregate amount of approximately $129 million with respect to the Workers' Compensation Program.[12]  The Debtors pay approximately $4 million per year in fees to the issuers of the Letters of Credit (collectively, the "L/C Fees").  The Debtors estimate that have approximately $30,000 in L/C Fees are due as of the Petition Date or will become due during the Interim Period, which the Debtors request authorization to pay.

In addition to the Letters of Credit, the Debtors maintain approximately $12 million in trust (held in treasury notes and cash) to secure certain of their obligations under the Black Lung Benefits Act and have posted approximately $9 million in treasury bills and approximately $4 million in surety bonds with respect to certain of their workers' compensation obligations in West Virginia.

20.    Continuation of the Workers' Compensation Program.  Certain Workers' Compensation Claims may have been incurred or asserted prior to the Petition Date but not yet resolved or paid (collectively, the "Unpaid Workers' Compensation Claims").  For the claims administration process to operate in an efficient manner and to ensure that the Debtors comply with their contractual obligations, the Debtors must continue to assess, determine and adjudicate Unpaid Workers' Compensation Claims during these chapter 11 cases.  In addition, to the extent any of the Debtors' employees assert Workers' Compensation Claims, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit such employees to proceed with such claims under the Workers' Compensation Program.

---

[12]    In particular, the Debtors have posted Letters of Credit in the amount of:  (a) $58.8 million, with respect to the Debtors' workers' compensation liabilities in West Virginia; (b) $53.0 million, with respect to such liabilities in Kentucky; (c) $14.2 million, with respect to such liabilities in Pennsylvania; (d) $1.5 million with respect to such liabilities in Utah; and (e) $1.0 million, with respect to such liabilities in Utah. The Debtors reserve all of their rights with respect to such Letters of Credit.

This requested modification of the automatic stay pertains solely to the assertion of Workers' Compensation Claims.

21.     The Debtors request that the Court enter an order authorizing them to maintain the Workers' Compensation Program and to continue processing Workers' Compensation Claims in the ordinary course.  In addition, the Debtors request that the Court grant them authority to continue paying the Self-Insured Claims up to the Self-Insured Maximum and the Deductible Costs arising under the Insured Claims.  Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the reorganization process. Thus, pursuant to the Interim Order, the Debtors seek authority, but not direction, to: (a) continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis; (b) modify the automatic stay solely to the extent necessary to allow employees to assert Workers' Compensation Claims; (c) pay any unpaid Workers' Compensation Administrative Fees and L/C Fees accrued in the ordinary course of business that come due during the Interim Period (approximately $110,000 in the aggregate); and (d) pay all prepetition liabilities arising under the Workers' Compensation Program that come due during the Interim Period (approximately $2.4 million in the aggregate).

22.     Pursuant to the Final Order, the Debtors seek (a) substantially the same relief as requested in the Interim Order and (b) to pay all liabilities arising under the Workers' Compensation Program (the "Workers' Compensation Liabilities"), including without limitation, the Self-Insured Claims, the Self-Insured Excess Premiums, the Deductible Costs, the Insured Program Premiums, the Workers' Compensation Administrative Fees and the L/C Fees accrued in the ordinary course of business as they come due on a postpetition basis.

~~~~~~~~~~~~~~~~~~

23.     Although the Debtors do not believe that Court approval is required to maintain their existing Insurance Policies and Workers' Compensation Program following the Petition Date, or to obtain, supplement, amend, extend, renew and/or replace the Insurance Policies and Workers' Compensation Policies in the ordinary course of business, this relief is being sought out of an abundance of caution.  The Insurance Carriers, Workers' Compensation Carriers, Brokers and HealthSmart may be reluctant to engage in ordinary course transactions with the Debtors absent an order eliminating any uncertainty as to whether the Debtors have the requisite authority to engage in such transactions.  Similarly, although in many cases the Debtors do not believe they have any outstanding prepetition obligations or payment defaults with respect to their Insurance Obligations, the Debtors are seeking authority to pay any such amounts to ensure continuing insurance coverage during these bankruptcy cases.

### Argument

24.     It is essential to the Debtors' business that they receive authority to: (a) maintain their Insurance Policies and insurance programs (including their Workers' Compensation Program);[13] (b) renew or replace their Insurance Policies and Workers' Compensation Policies in the ordinary course of business during the pendency of these chapter 11 cases; (c) pay, in their discretion, any Insurance Obligations, in each instance in the ordinary course of the Debtors' business; and (d) liquidate in an appropriate forum or settle prepetition and postpetition Workers' Compensation Claims, as necessary.

---

[13]     Although the Debtors do not currently finance any of their insurance programs, by this Motion, the Debtors request authority to enter into insurance premium financing transactions in the future, to the extent the Debtors deem it appropriate, in their business discretion, subject to compliance with any limitations contained in the Debtors' postpetition secured debtor in possession financing.

***Section 363 of the Bankruptcy Code Provides the Basis***
***to Allow the Debtors to Maintain their Insurance Policies and***
***Workers Compensation Policies and Renew Such Policies During These Cases***

25.     Section 363 of the Bankruptcy Code provides the Court with authority to grant the requested relief.  Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtors the authority to enter into transactions and use estate property in the ordinary course of business without notice or a hearing.  The Debtors believe they are permitted to pay all postpetition Insurance Obligations during these bankruptcy cases, as such actions would be in the ordinary course of the Debtors' business.

26.     In the alternative, section 363(b) of the Bankruptcy Code allows the debtors, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon a sound business purpose.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); In re W.A. Mallory Co., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)); see also In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992) (holding that the use sale or lease of property of the estate is justified if it is supported by a good business reason); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a motion pursuant to section 363(b) of the Bankruptcy Code is "a good business reason").

27.     Courts in this and other districts have consistently and appropriately been reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." Lubrizol

Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985); see also

Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),

147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (internal

quotations omitted).

28.     The Debtors believe, in their business judgment, that payment of

postpetition Insurance Obligations is sound and prudent.  For example, the Debtors are required

by applicable state laws and the Black Lung Benefits Act to maintain their Workers'

Compensation Program.  Failure to comply with this requirement can result in criminal liability

and, possibly, suspension of the Debtors' ability to continue their business operations.  Also, the

Chapter 11 Guidelines (the "Guidelines") of the Office of the United States Trustee for the

Eastern District of Virginia (the "U.S. Trustee") require the Debtors to maintain "appropriate

insurance coverage" throughout these chapter 11 cases.  See Guidelines, at § 3(b).  In addition,

section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate

insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or

dismissal of a chapter 11 case.  See 11 U.S.C. § 1112(b)(4)(C).

29.     Even where coverage is not expressly required by law, the Debtors are

nevertheless compelled by sound business practice to maintain essential insurance coverage.

Any interruption in such coverage would expose the Debtors to a variety of risks, including:

(a) the possible incurrence of direct liability for the payment of claims that otherwise would have

been covered by the Insurance Policies or the Workers' Compensation Policies; (b) the possible

incurrence of material costs and other losses that otherwise would have been reimbursed, such as

attorneys' fees for certain covered claims; (c) the possible inability to obtain similar types and

levels of insurance coverage; and (d) the possible incurrence of higher costs for re-establishing lapsed policies or obtaining new insurance coverage.

30.     Thus, to the extent the supplementation, amendment, extension, renewal and/or replacement of the Insurance Policies and Workers' Compensation Policies and any and all payments related thereto are outside the ordinary course of business, the Debtors submit that such actions may nevertheless be approved under section 363(b) of the Bankruptcy Code.

***The Payment of Prepetition Insurance Obligations Is Appropriate Under
Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity***

31.     Here, the Court may authorize payment of prepetition Insurance Obligations pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity. Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105.  The purpose of section 105 of the Bankruptcy Code is to ensure the bankruptcy court has the power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015).  "Under [section 105 of the Bankruptcy Code,] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)).

32.     In addition, under the "doctrine of necessity," courts allow the immediate payment of prepetition claims where such payment is essential to the debtor's continued operations.  See In re United Am., Inc., 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the existence of the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its prepetition

claim"); accord In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).

33.    Several courts apply the doctrine of necessity where payment of a prepetition claim (a) is "necessary for the successful reorganization of the debtor," (b) falls within "the sound business judgment of the debtor" and (c) will not "prejudice other unsecured creditors." United Am., 327 B.R. at 782; see also In re Universal Fin., Inc., 493 B.R. 735, 739-40 (Bankr. M.D.N.C. 2013) (applying the United American three-part test); In re Corner Home Care, Inc., 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).

34.    The Debtors' ability to maintain and honor their Insurance Obligations in a timely manner is critical to the ongoing operation of their business, as discussed above, and therefore necessary to their successful reorganization.  The Debtors believe that any amounts that they will pay in respect of prepetition Insurance Obligations would be small relative to the size of the Debtors' estates and the critical benefits provided by the Insurance Policies.  As noted above, interruption of the Debtors' insurance coverage could, among other things, expose the Debtors to direct liability for significant claims that otherwise would be covered by insurance, thus potentially diminishing substantially the value of the Debtors' estates.  For the Debtors to pay what would be relatively small prepetition Insurance Obligations to avoid such an occurrence is in the best interests of the Debtors and their estates.  Thus, continuation of the Insurance Policies and the Workers' Compensation Program and the payment of prepetition Insurance Obligations falls within the sound business judgment of the Debtors and will benefit, rather than prejudice, the Debtors' creditors by preserving the property of the Debtors' estates.

The Debtors submit that the relief requested herein is appropriate under the doctrine of necessity and section 105(a) of the Bankruptcy Code.

35.     Courts in this district have routinely granted relief similar to that requested herein, including the payment of prepetition amounts that may be due with respect to a debtor's insurance and workers' compensation coverage.  See, e.g., In re Health Diagnostic Lab., Inc., No. 15-32919 (Bankr. E.D. Va. July 1, 2015) (orders authorizing continuation and renewal of insurance and workers' compensation programs, including payment of certain prepetition amounts); In re Patriot Coal Corp., No 15-32450 (Bankr. E.D. Va. Jun. 4, 2015) (same); In re James River Coal Co., No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014) (same); In re Workflow Mgmt., Inc., No. 10-74617 (SCS) (Bankr. E.D. Va. Oct. 8, 2010) (same); In re Bear Island Paper Co., L.L.C., No. 10-31202 (DOT) (Bankr. E.D. Va. Feb. 26, 2010 and Mar. 25, 2010) (same).[14]

***Authority for Banks to Honor and Pay Checks In Connection Herewith Is Appropriate***

36.     In addition, by this Motion, the Debtors request that the Banks be authorized, but not directed, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the Insurance Obligations, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to cover such checks and fund transfers.  Any such Banks may rely on the representations of such Debtors as to which checks are issued or wire transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and

---

[14]     The unreported orders listed in the text above are not attached to this Motion.  Copies of these orders will be made available to the Court and other parties upon request made to counsel to the Debtors.

without liability for following the Debtors' instructions.  The Debtors represent that their cash

reserves are sufficient to pay any Insurance Obligations that may become due.  Also, under the

Debtors' existing cash management system, the Debtors can readily identify checks and wire

transfer requests that relate to payment made on account of any Insurance Obligations as may be

authorized by the Court.  Accordingly, the Debtors believe that checks and wire transfer requests

other than those relating to authorized payments will not be honored inadvertently.

### Requests for Immediate Relief and Waiver of Bankruptcy Rule 6004(h) Are Warranted

37.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek the entry of the Interim Order granting the

relief requested by this Motion on an interim basis and, to the extent it applies, a waiver of any

stay of the effectiveness of such Interim Order.  The Debtors further seek, to the extent it applies,

a waiver of any stay of the effectiveness of the Final Order.

38.    Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the

extent that relief is necessary to avoid immediate and irreparable harm, the court shall not,

within 21 days after the filing of the petition, issue an order granting … a motion to use, sell,

lease or otherwise incur an obligation regarding property of the estate including a motion to pay

all or part of a claim that arose before the filing of the petition."  Fed. R. Bankr. P. 6003(b).

In other words, where the failure to grant any such requested relief would result in immediate

and irreparable harm to the Debtors' estates, the Court may authorize the relief prior to the

twenty-second day following the Petition Date.  Bankruptcy Rule 6004(h) provides that

"[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until

the expiration of 14 days after entry of the order, unless the court orders otherwise."

39.    As set forth above and in the First Day Declarations, the payment of

prepetition Insurance Obligations with respect to the Debtors' Workers' Compensation Program

that become due in the ordinary course of business in the first 21 days following the Petition

Date is necessary to prevent immediate and irreparable damage to the Debtors' estates.

Accordingly, the Debtors submit that ample cause exists to justify (a) the immediate entry of an

order granting the relief sought herein and (b) a waiver of the 14-day stay imposed by

Bankruptcy Rule 6004(h), to the extent that it applies.

### Reservation of Rights

40.     Nothing contained herein or in the proposed Interim Order and Final

Order is intended or should be construed as:  (a) an admission as to the validity or priority of any

claim against the Debtors; (b) a waiver of the Debtors' or any other party in interest's rights to

dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or

admission that any particular claim is a claim covered by any Insurance Policy; or (e) a request

to assume or reject any executory contract or unexpired lease pursuant to section 365 of the

Bankruptcy Code.  The Debtors expressly reserve the right to contest any claims related to the

Insurance Policies under applicable non-bankruptcy law.

### Waiver of Separate Memorandum of Points and Authorities

41.     The Debtors respectfully request that the Court regard any argument and

citations set forth herein as a written memorandum of facts, reasons and authorities that has been

combined with the relief requested herein, as permitted by Local Bankruptcy Rule 9013-1(G)(1).

Alternatively, the Debtors respectfully request that the Court waive any requirement set forth in

Local Bankruptcy Rule 9013-1(G)(1) that this Motion be accompanied by such a written

memorandum.

### Notice

42.     Notice of this Motion has been given to:  Notice of this Motion has been

given to:  (a) the Office of the United States Trustee for the Eastern District of Virginia;

(b) Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel to Citibank, N.A., as

administrative and collateral agent under the Debtors' proposed postpetition secured credit

facility, and Citicorp North America, Inc., as administrative and collateral agent under the

Debtors' prepetition secured credit facility; (c) Kirkland & Ellis LLP, as counsel to the Second

Lien Noteholder Group; (d) the indenture trustees for the Debtors' secured and unsecured notes

(and counsel, where known); (e) counsel to General Electric Credit Corporation, as

administrative agent under the Debtors' prepetition secured accounts receivable facility; (f) the

creditors holding the 50 largest unsecured claims against the Debtors' estates on a consolidated

basis; (g) the United Mine Workers of America; (h) the Insurance Carriers; (i) the Workers'

Compensation Carriers; and (j) any party that has requested notice pursuant to Bankruptcy Rule

2002 as of the time of service.  In light of the nature of the relief requested, the Debtors submit

that no further notice is necessary.

## No Prior Request

43.      No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter the

Interim Order substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested

herein on an interim basis; (ii) enter the Final Order substantially in the form attached hereto as

<u>Exhibit B</u>, granting the relief requested herein on a final basis; and (iii) grant such other and

further relief to the Debtors as the Court may deem proper.

Dated: August 3, 2015               Respectfully submitted,
     Richmond, Virginia

    <u>/s/   Henry P. (Toby) Long, III</u>
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## EXHIBIT A

**Proposed Interim Order**

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., et al., | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO:  (A) MAINTAIN,
CONTINUE AND RENEW THEIR PROPERTY, CASUALTY, LIABILITY,
WORKERS' COMPENSATION AND OTHER INSURANCE PROGRAMS, POLICIES
AND AGREEMENTS; AND (B) HONOR ALL OBLIGATIONS IN RESPECT THEREOF**

This matter coming before the Court on the Motion of Debtors for Interim and Final

Orders Authorizing the Debtors to:  (A) Maintain, Continue and Renew Their Property, Casualty,

Liability, Workers' Compensation and Other Insurance Programs, Policies and Agreements; and

(B) Honor All Obligations in Respect Thereof (the "Motion"),[1] filed by the debtors and debtors

in possession in the above-captioned cases (collectively, the "Debtors"); the Court having

reviewed the Motion and the First Day Declarations and having considered the statements of

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

counsel with respect to the Motion at a hearing before the Court (the "Hearing"); and the Court

having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) notice of the Motion and

the Hearing was sufficient under the circumstances; (d) the relief sought in the Motion is in the

best interests of the Debtors' estates and creditors and is an exercise of the Debtors' reasonable

business judgment; (e) sound business reasons exist justifying the relief granted herein, including

the payment of the Insurance Obligations; (f) the payment of the Insurance Obligations is

necessary and appropriate to prevent immediate and irreparable harm to the Debtors' business

operations and will serve to protect and preserve the Debtors' estates for the benefit of all

stakeholders and, thus, cause exists to permit the Debtors to immediately continue paying the

Insurance Obligations notwithstanding Bankruptcy Rule 6003; and (g) there is good cause to

waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; and the

Court having determined that the legal and factual bases set forth in the Motion and the First Day

Declarations and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED on an interim basis as set forth herein.

2.    The Debtors are authorized, but not directed, in their reasonable discretion

to maintain, obtain, continue, supplement, amend, extend, renew and/or replace their Insurance

Policies and Workers' Compensation Program and to continue to honor all of their Insurance

Obligations that are due as of the Petition Date or that come due in the ordinary course of the

Debtors' business during the Interim Period, including, but not limited to, the payment of any

prepetition and postpetition claims, premiums, deductibles, fees (including the Broker Fees, the

L/C Fees and the Workers' Compensation Administrative Fees), retention amounts or other

amounts arising thereunder or in connection therewith and to enter into insurance premium

financing transactions in the Debtors' business discretion.

3.      The automatic stay under section 362 of the Bankruptcy Code is modified

solely to the extent necessary to permit employees to proceed with claims under the Workers'

Compensation Program.

4.      The Debtors' banks and other financial institutions (collectively,

the "Banks") are authorized, but not directed, when requested by the Debtors, in the Debtors'

discretion, to receive, process, honor and pay all checks presented for payment of, and to honor

all fund transfer requests made by the Debtors related to, Insurance Obligations, whether such

checks were presented or fund transfer requests were submitted prior to or after the Petition Date,

provided that funds are available in the Debtors' accounts to cover such checks and fund transfers.

The Banks are authorized to rely on the Debtors' designation of any particular check or funds

transfer as approved by this Interim Order, and shall have no duty of inquiry nor any liability for

relying on such representations following the Debtors' instructions.

5.      Nothing contained in the Motion or this Interim Order shall be deemed or

construed as:  (a) an admission as to the validity or priority of any claim against the Debtors;

(b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any

grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim

is a claim covered by any Insurance Policy; or (e) a request to assume or reject any executory

contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.  The Debtors' or

any other party in interest's right to contest any claims related to the Insurance Policies and the

Workers' Compensation Program under applicable non-bankruptcy law is expressly reserved.

6.      For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in possession financing facility or be deemed to authorize the Debtors to violate the terms of such financing facility.

7.      A final hearing on the Motion (the "Final Hearing") will be held on [_____], 2015 at __:__ _.m. (ET).  The Debtors shall, within two business days of the date of entry of this Interim Order, serve by United States mail, first-class postage prepaid, copies of the Motion and this Interim Order on (a) the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee"); (b) the Insurance Carriers; (c) the Workers' Compensation Carriers; (d) Zurich; (e) the Brokers; (f) HealthSmart; (g) the Banks; (h) Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent under the Debtors' proposed postpetition secured credit facility, and Citicorp North America, Inc., as administrative and collateral agent under the Debtors' prepetition secured credit facility; (i) Kirkland & Ellis LLP, as counsel to the Second Lien Noteholder Group; (j) the indenture trustees for the Debtors' secured and unsecured notes (and counsel, where known); (k) counsel to General Electric Credit Corporation, as administrative agent under the Debtors' prepetition secured accounts receivable facility; (l) the creditors holding the 50 largest unsecured claims against the Debtors' estates on a consolidated basis; (m) the United Mine Workers of America; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

8.      Any objection to granting the relief requested by the Motion on a permanent basis (an "Objection") shall be filed with the Court and served so as to be received by 4:00 p.m. (ET), on or before _____, 2015 (the "Objection Deadline"), upon:

(a) the Office of the United States Trustee for the Eastern District of Virginia, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219 (Attn: Robert Van Arsdale, Esq. and Hugh M. Bernstein, Esq.); (b)(i) the Debtors, c/o Alpha Natural Resources, Inc., One Alpha Place, P.O. Box 16429, Bristol, Virginia 24209 (Attn: Richard H. Verheij, Esq., General Counsel); (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn: Carl E. Black, Esq. and Thomas A. Wilson, Esq.); and (iii) Hunton & Williams LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219 (Attn: Tyler P. Brown, Esq.); (c) co-counsel to the administrative and collateral agent under the proposed postpetition credit facility and the administrative and collateral agent under the Debtors' prepetition secured credit facility, (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq. and Damon P. Meyer, Esq.) and (ii) McGuireWoods LLP, Gateway Plaza, 800 East Canal Street, Richmond, Virginia 23219 (Attn: Dion W. Hayes, Esq., Sarah B. Boehm, Esq. and K. Elizabeth Sieg, Esq.); and (d) counsel to the Second Lien Noteholder Group, Kirkland & Ellis LLP, (i) 601 Lexington Avenue, New York, New York 10022 (Attn: Stephen E. Hessler, Esq. and Brian E. Schartz, Esq.) and (ii) 300 North LaSalle, Chicago, Illinois 60654 (Attn: Gregory F. Pesce, Esq.).

9.    A reply to any Objection may be filed by no later than 4:00 p.m. on the date that is two days prior to the date of the Final Hearing.

10.    If no objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of the Final Order attached to the Motion, which Order may be entered with no further notice or opportunity to be heard afforded to any party.

11.     Pursuant to Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

12.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived to the extent necessary.

13.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

14.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Interim Order.

Dated: _____, 2015
        Richmond, Virginia

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,


   /s/      Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.


   /s/      Henry P. (Toby) Long, III

## **EXHIBIT B**

**Proposed Final Order**

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**FINAL ORDER AUTHORIZING THE DEBTORS TO:  (A) MAINTAIN,
CONTINUE AND RENEW THEIR PROPERTY, CASUALTY, LIABILITY,
WORKERS' COMPENSATION AND OTHER INSURANCE PROGRAMS, POLICIES
<u>AND AGREEMENTS; AND (B) HONOR ALL OBLIGATIONS IN RESPECT THEREOF</u>**

This matter coming before the Court on the Motion of Debtors for Interim and Final

Orders Authorizing the Debtors to:  (A) Maintain, Continue and Renew Their Property, Casualty,

Liability, Workers' Compensation and Other Insurance Programs, Policies and Agreements; and

(B) Honor All Obligations in Respect Thereof (the "<u>Motion</u>"),[1] filed by the debtors and debtors

in possession in the above-captioned cases (collectively, the "<u>Debtors</u>"); the Court having

reviewed the Motion and the First Day Declarations and having considered the statements of

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the
Motion.

counsel with respect to the Motion at a hearing before the Court (the "Hearing"); and the Court

having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) notice of the Motion and

the Hearing was sufficient under the circumstances; (d) the relief sought in the Motion is in the

best interests of the Debtors' estates and creditors and is an exercise of the Debtors' reasonable

business judgment; (e) sound business reasons exist justifying the relief granted herein, including

the payment of the Insurance Obligations; and (f) there is good cause to waive the 14-day stay

imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; and the Court having

determined that the legal and factual bases set forth in the Motion and the First Day Declarations

and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED on a final basis as set forth herein.

2.    The Debtors are authorized, but not directed, in their reasonable discretion,

to maintain, obtain, continue, supplement, amend, extend, renew and/or replace their Insurance

Policies and Workers' Compensation Program and to continue to honor all of their Insurance

Obligations including, but not limited to, the payment of any prepetition and postpetition claims,

premiums, deductibles, fees (including the Broker Fees, the L/C Fees and the Workers'

Compensation Administrative Fees), retention amounts or other amounts arising thereunder or in

connection therewith and to enter into insurance premium financing transactions in the Debtors'

business discretion.

3.    The automatic stay under section 362 of the Bankruptcy Code is modified

solely to the extent necessary to permit employees to proceed with claims under the Workers'

Compensation Program.

-2-

4.      The Debtors' banks and other financial institutions (collectively, the "Banks") are authorized, but not directed, when requested by the Debtors, in the Debtors' discretion, to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, Insurance Obligations, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and fund transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Final Order, and shall have no duty of further inquiry nor any liability for relying on such representations following the Debtors instructions.

5.      Nothing contained in the Motion or this Final Order is intended or should be construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is a claim covered by any Insurance Policy; or (e) a request to assume or reject any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.  The Debtors' or any other party in interest's right to contest any claims related to the Insurance Policies and the Workers' Compensation Program under applicable non-bankruptcy law is expressly reserved.

6.      For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in possession financing facility or be deemed to authorize the Debtors to violate any terms of such financing facility.

7.      The terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

8.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a

memorandum of law in connection with the Motion is hereby waived to the extent necessary.

9.      The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Final Order.

10.     This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Final Order.


Dated: _____, 2015           _____
        Richmond, Virginia                      UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

   /s/    Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors
and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

   /s/        Henry P. (Toby) Long, III

## EXHIBIT C

**Schedule of Insurance Policies**

## SCHEDULE OF INSURANCE POLICIES

| INSURANCE CARRIER | TYPE OF COVERAGE | TERM OF POLICY | POLICY NUMBER |
|---|---|---|---|
| ACE American Ins. Co. | Foreign General, Automobile and Employer Liability | 9/17/2012 - 9/16/2015 | PHFD36860856 |
| Ace Bermuda | Excess Property | 12/13/2014 - 12/12/2015 | 67167868 |
| AIG Specialty Insurance Company | Underground Storage Tank Liability (VA) | 8/31/2014 - 8/30/2015 | 0307-3526 |
| Allied World | Property | 12/13/2014 - 12/12/2015 | AEC980573303 |
| Allied World Assurance Company | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | WE1400892 |
| American Guarantee & Liability (Zurich) | Excess Liability | 12/13/2014 - 12/12/2015 | 11BTA8328500 |
| Apollo Liability Consortium 9984 | Excess Liability | 12/13/2014 - 12/12/2015 | MLX 7600403 01 |
| Arch | Mine Rescue Team Blanket Travel Accident | 3/26/2015 - 3/25/2016 | MBN758096/01/2015 |
| Argonaut Insurance Company | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | V1371F150301 |
| Ariel Re | Excess Property | 12/13/2014 - 12/12/2015 | V13714150301 |
| Aspen Specialty | Property | 12/13/2014 - 12/12/2015 | 00 FA 0262171 13 |
| Axis E&S | Property | 12/13/2014 - 12/12/2015 | PLS2178095 |
| Axis Insurance Company | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | PLC001926727 |
| Beazley Insurance Company | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | 425665870 |
| Beazley Insurance Company | Employment Practices Liability | 2/28/2015 - 2/27/2016 | DOX10003890402 |
| Berkley | Employee Dishonesty | 5/28/2014 - 2/28/2016 | SC5DO00090-151 |
| Chartis Specialty Insurance Company | Pollution Legal Liability | 12/13/2012 - 12/12/2015 | 82370653 |

| INSURANCE CARRIER | TYPE OF COVERAGE | TERM OF POLICY | POLICY NUMBER |
|---|---|---|---|
| Commerce and Industry Insurance Co. | Underground Storage Tank Liability (Maxxim Rebuild) | 3/31/2015 - 3/30/2016 | 8171-1399 |
| Continental Casualty Company | Directors and Officers | 2/28/2015 - 2/27/2016 | XMF1501655 |
| Endurance American Insurance Company | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | 38332003/4043022 |
| Everest National Insurance Company | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | 12000180 |
| Federal Insurance Company | Fiduciary Liability | 2/28/2015 - 2/27/2016 | 40SBAZU6658 |
| Federal Insurance Co. | Business Travel | 9/18/2013 - 9/17/2016 | 40SBAIR2790 |
| Freedom Specialty Insurance Co. | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | 1535902 |
| Gard Assuranceforeningen | Time Charter Vessel | 2/20/2015 - 2/19/2016 | 21375485 |
| Global Aerospace | Aviation Liability & Hull Coverage | 8/1/2014 - 7/31/2015 | 62785327 |
| Hartford Casualty Ins. Co. | Business Owners Property | 10/29/2014 - 10/28/2015 | WE1400890 |
| Hartford Casualty Insurance Co. | Office Package | 3/21/2015 - 3/20/2016 | WE1400889 |
| Interhannover | Property | 12/13/2014 - 12/12/2015 | GL 643 21 05 |
| Ironshore Insurance Ltd | Excess Property | 12/13/2014 - 12/12/2015 | CA 195 96 55 |
| Ironshore Insurance Ltd. | Property | 12/13/2014 - 12/12/2015 | GL6576413 |
| Ironshore Specialty Ins Co. | Excess Liability | 12/13/2014 - 12/12/2015 | 04-177-80-85 |
| Lexington Insurance Co. | Excess Liability | 12/13/2014 - 12/12/2015 | 04-171-06-60 |
| Lexington Insurance Co. (US) | Excess Liability | 12/13/2014 - 12/12/2015 | 04-177-80-93 |
| Liberty Mutual Insurance Europe Ltd | Excess Liability | 12/13/2014 - 12/12/2015 | PT15DOL0A4EC0NV |

| INSURANCE CARRIER | TYPE OF COVERAGE | TERM OF POLICY | POLICY NUMBER |
|---|---|---|---|
| Lloyd's London | Excess Liability | 12/13/2014 - 12/12/2015 | MASICNY0147US15 |
| Lloyd's Syndicate #2001(Amlin) | Property | 12/13/2014 - 12/12/2015 | SISIXFL21210015 |
| Lloyd's Syndicate #2987(Brit) | Excess Property | 12/13/2014 - 12/12/2015 | BTA003731 |
| Markel Bermuda Ltd. | Property | 12/13/2014 - 12/12/2015 | WE1400888 |
| Munich Re | Property | 12/13/2014 - 12/12/2015 | ZOL11TO199514ND |
| Nation Union Fire Ins. Co. of Pittsburgh | Owners & Contractors Protective | 12/13/2014 - 12/12/2015 | ZOH11TO196A43ND |
| National Union | Property | 12/13/2014 - 12/12/2015 | 40 DA 0241156 15 |
| National Union Fire Ins. Co. of Pittsburgh | Automobile Liability | 12/13/2014 - 12/12/2015 | 40 IA 0277802 15 |
| National Union Fire Ins. Co. of Pittsburgh | General Liability | 12/13/2014 – 12/12/2015 | Various |
| National Union Fire Insurance Co. of PA (AIG) | Side A / Difference in Conditions | 2/28/2015 - 2/27/2016 | G21979727010 |
| National Union Fire Insurance Co. of Pittsburgh, PA | Excess Directors and Officers | 2/28/2014 - 2/27/2015 | WE1400891 |
| National Union Fire Insurance Co. of Pittsburgh, PA | Independent Directors Liability | 2/28/2015 - 2/27/2016 | ELU138057-15 |
| Navigators Insurance Co. | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | ELU138060-15 |
| RSUI | Property | 12/13/2014 - 12/12/2015 | WB1401318 |
| Starr Indemnity & Liability Co. | Ocean Cargo | 3/31/2015 - 3/30/2016 | NHT390222 |
| Starr Indemnity & Liability Co. | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | MNG655833805 |
| Starr Indemnity Liability Co. | Business Travel Accident | 1/1/2014 - 1/1/2017 | WB1401320 |
| Swiss Re International SE | Excess Liability | 12/13/2014 - 12/12/2015 | PR3663114 |

| INSURANCE CARRIER | TYPE OF COVERAGE | TERM OF POLICY | POLICY NUMBER |
|---|---|---|---|
| Swiss Re International SE | Excess Property | 12/13/2014 - 12/12/2015 | D3589536A012 |
| Travelers Property Cas. Co. of America | Wharfingers / Stevedore / TOLL / Charters Legal | 10/1/2014 - 9/30/2015 | WB1401321 |
| Travelers Property Cas. Co. of America | Hull / Protection & Indemnity | 10/1/2014 - 9/30/2015 | EAF74938214 |
| Twin City Fire Insurance Co. | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | 20786677 |
| Twin City Fire Insurance Co. (Hartford) | Excess Fiduciary | 2/28/2015 - 2/27/2016 | P001347/013 |
| Various US, Bermuda & London Insurers | Property | 12/13/2014 - 12/12/2015 | 443111814A |
| Westchester | Property | 12/13/2014 - 12/12/2015 | 1323668-6941-PRMAN 2014 |
| Westchester Fire Ins. Co. | Umbrella Liability | 12/13/2014 - 12/12/2015 | ALPHA 00929P09 |
| XL Insurance Co. SE‑Irish Branch | Excess Liability | 12/13/2014 - 12/12/2015 | P123969 |
| XL Specialty Insurance Co. | Excess Directors and Officers | 2/28/2015 - 2/27/2016 | PD1057300 |
| XL Specialty Insurance Co. | Side A / Difference in Conditions | 2/28/2015 - 2/27/2016 | WB1401322 |
| Zurich | Property | 12/13/2014 - 12/12/2015 | 443111814B |

## **EXHIBIT D**

**Schedule of Workers' Compensation Policies**

## SCHEDULE OF WORKERS' COMPENSATION POLICIES

| CARRIER | INSURANCE POLICY / LINE OF COVERAGE | TERM | POLICY NUMBER |
|---|---|---|---|
| American Longshore Mutual Association, LTD (ALMA) | US Longshore & Harbor | 2/10/2015 - 2/9/2016 | ALMA01362-01 |
| Argonaut Insurance Co | Workers' Compensation (CO, WI, TN, UT, MD, MN, DC, SC, TX) Maritime/Jones Act and FELA | 12/13/2014 - 12/12/2015 | WC9279723552 |
| BrickStreet Mutual Insurance Co. | Federal Black Lung (KY, WV, TN) | 12/13/2014 - 12/12/2015 | WCS1000002 |
| SummitPoint Insurance Company | Workers' Compensation PA | 12/13/2014 - 12/12/2015 | WCS3001050 |
| SummitPoint Insurance Company | Workers' Compensation PA | 12/13/2014 - 12/12/2015 | WCS3001051 |
| SummitPoint Insurance Company | Workers' Compensation VA & KY | 12/13/14 – 12/12/2015 | WCS3001052 |
| SummitPoint Insurance Company | Workers' Compensation Employers' Liability Master WC IN, IL, TN, WV, PA | 12/13/2014 – 12/12/2015 | WCS3001053 |
| SummitPoint Insurance Company | Workers' Compensation Federal Black Lung (VA) | 12/13/14- 12/13/15 | WCS3001056 |
| Zurich American Insurance Company | Excess Workers Compensation/Employers' Liability | 4/1/2015 - 3/31/2016 | EWS 9482905-03 |