JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

### MOTION OF THE DEBTORS, PURSUANT TO SECTIONS 105(a), 363(b) AND 503(b)(9) OF THE BANKRUPTCY CODE, FOR INTERIM AND FINAL ORDERS AUTHORIZING THEM TO PAY PREPETITION <u>CLAIMS OF CERTAIN ESSENTIAL SUPPLIERS AND SERVICE PROVIDERS</u>

Alpha Natural Resources, Inc. ("<u>ANR</u>") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully represent as follows:

### <u>Background</u>

1.    On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2.       The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.       A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the declarations of (a) Kevin S. Crutchfield, Chief Executive Officer and Chairman of the Board of Directors of ANR, and (b) Philip J. Cavatoni, Executive Vice President and Chief Financial and Strategy Officer of ANR in support of the Debtors' "first day" pleadings (together, the "First Day Declarations"), which were filed contemporaneously herewith and which are incorporated by reference.

## Jurisdiction

4.       This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.       Pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, the Debtors hereby seek the entry of interim and final orders:  (a) authorizing them, in their discretion and subject to the terms and conditions set forth herein, to pay, in the ordinary course of the Debtors' business, certain prepetition claims (collectively, the "Essential Supplier Claims") of certain parties who supply goods or services essential to the continued operation of the Debtors' business, in an aggregate amount not to exceed $44.5 million; (b) approving a

procedure to address those vendors who repudiate and refuse to honor their contractual

obligations to the Debtors; and (c) granting certain related relief.

### The Essential Supplier Claims

*Overview of the Need for Relief*

6.      The Debtors are highly mindful of their fiduciary obligations to seek to

preserve and maximize the value of their estates.  Accordingly, the preservation and

maximization of the value of the Debtors' businesses, including the preservation of key business

relationships, are among management's primary goals as the Debtors transition into chapter 11.

Providing seamless service to the Debtors' customers is key to meeting those goals.  For these

reasons, the Debtors seek to minimize the adverse business effects – as well as the cash flow

impact – of their chapter 11 filing to the fullest extent possible by obtaining authority to pay

certain vendors and service providers that are of paramount importance to their business

operations.

7.      It is imperative that the Debtors obtain authority to make payments to key

suppliers to preserve the Debtors' supplier base.  The Debtors' business of mining and processing

coal cannot function without the specially-designed (and, in some cases, unique) equipment,

parts and supplies provided by suppliers that are not readily replaceable.  The Debtors also rely

on daily shipments of diesel fuel, lubricants and specialized coal processing chemicals and

minerals to their mines and processing facilities.  Even if alternative suppliers of fuel, lubricant,

chemicals and minerals could be located (which is uncertain), the Debtors likely would incur

significant costs and delays if forced to suddenly change vendors (e.g., the Debtors would have

to test any newly-sourced lubricants or chemicals to ensure their quality and safety prior to use).

In addition, the Debtors' operations could not continue to function, and would not be able to meet

critical safety and regulatory requirements, without the continuing services of specialized service

providers, including providers of environmental and engineering services.  Finally, it is critical

that the Debtors obtain authorization to pay the prepetition claims of certain coal companies from

which the Debtors purchase particular types of coal required by the Debtors to meet the quality

and blend specifications demanded by their customers.  The Debtors rely on as-needed shipments

from these suppliers to meet their own contractual coal sales obligations.  The proposed

payments to such suppliers and service providers thus constitute an essential component of

preserving the value of the Debtors' estates and are necessary for the Debtors' successful

reorganization.  In addition, because approximately 25% of the Essential Supplier Claims will be

entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code (to the

extent they are allowed claims), the payment of such claims would not prejudice the Debtors'

unsecured creditors.

    8.  Accordingly, and as discussed in greater detail below, certain vendors and

service providers are essential to the continued and timely production and delivery of coal upon

which the Debtors' viability depends.  Refusal to deliver goods or services by any one of such

vendors could severely disrupt the production process and jeopardize critical business

relationships.  Disruptions to the Debtors' coal production and delivery operations would have an

immediate and harmful impact on revenues while simultaneously eroding customer relations and

goodwill.

    9.  The Debtors are making every effort to avoid production and delivery

interruptions and the adverse effects that even a temporary disruption could have on their

businesses.  However, some vendors may make credible (though actionable) threats that, unless

paid on account of their prepetition debt, they will cease to supply the Debtors with the goods

and services necessary to maintain the operation of the Debtors' businesses.  In most instances,

the Debtors intend to resist these threats and to take action to enforce their purchase orders and other supply agreements under the procedures set forth in paragraphs 26 through 29 below. The Debtors expect, however, that in some cases such actions may be unavailing or counterproductive.  As a result, the Debtors may need to make payments on account of the Essential Supplier Claims of certain essential vendors as required in the exercise of their business judgment, and subject to appropriate terms and conditions, to preserve the value of their businesses.

***The Essential Suppliers***

10.     The Debtors seek to avoid interruptions to their production and delivery of coal by identifying the limited number of vendors that provide goods and services that are essential to the Debtors' operations (the "Essential Suppliers").  The Essential Suppliers generally fall into the following categories:

11.     Safety Equipment and Service Suppliers.  These suppliers provide specialized equipment and services that are necessary for the Debtors to maintain safe working conditions at their mines and to comply with governmental safety regulations.  Mine safety is of paramount importance to the Debtors, the Debtors' employees and governmental mine regulators. To ensure the safety of their employees, the Debtors require specialized equipment, goods and parts, such as industry-specific roof bolts and structural supports that meet rigorous regulatory standards.  Large quantities of limestone rock dust also are required on a daily basis to prevent mine explosions.  The suppliers of these goods and the other specialized equipment, parts and supplies the Debtors require operate in a niche market, and few, if any, alternative suppliers are available for many such items.  For example, the large, specialized machines used by the Debtors to install roof bolts in underground mines are obtained from, and replacement parts are sold

exclusively by, a sole-source supplier.  Many of the Debtors' other necessary safety supplies –

including certain equipment and parts essential to maintaining the structural integrity of the roofs

in the Debtors' underground mines – are available only on a single-source basis (i.e., where, due

to considerations of price, quality and/or availability, it is impracticable for the Debtors to source

such supplies from alternative vendors).

12.     If any suppliers of essential safety equipment and services refused to do

business with the Debtors, the Debtors (a) would be required to invest significant time in

obtaining necessary safety-related goods from alternative providers, (b) likely would pay

significantly more for such goods (assuming alternative suppliers were available) and (c) could

be forced to idle mines until replacement goods are obtained.  Moreover, even if replacement

goods were available, substituting a supplier of certain types of safety-related goods would

require the Debtors to obtain new regulatory approvals.  For example, replacing a supplier of

structural supports used in the Debtors' underground mines would require the Debtors to revise

mine structural plans, submit such revised plans to governmental regulators and wait for

regulatory approval.  The Debtors simply cannot afford the costs and delays they would incur if

their existing relationships with suppliers of safety-related goods and services were compromised.

The Debtors estimate that the total amount owing to the Debtors' safety equipment and service

providers, as of the Petition Date, is approximately $7.8 million.

13.     Environmental Service Providers.  These service providers assist the

Debtors in reclaiming inactive coal mines and restoring formerly-mined sites to their pre-mining

condition.  The Debtors are required to undertake such reclamation and restoration activities

under applicable state and federal laws and regulations, and pursuant to a consent decree entered

in the case of United States, et al. v. Alpha Natural Resources, Inc., et al., No. 2:14-CV-11609

(S.D. W. Va. Nov. 26, 2014) to which several of the Debtors are subject.  Few companies exist

that are qualified to undertake reclamation and restoration activities on the scale required by the

Debtors' operations, and the companies with whom the Debtors currently contract have extensive

and highly-specialized knowledge that is essential to providing these necessary environmental

services.  Without the continuation of the Debtors' business relationships with their

environmental service providers, the Debtors would not be able to maintain compliance with

statutory, regulatory and judicial mandates and, as a result, they could not continue to operate.

The Debtors estimate that the total amount owing to the Debtors' environmental service

providers, as of the Petition Date, is approximately $10.3 million.

14.    Fuel, Lubricant, Chemical and Mineral Suppliers.  The Debtors' coal

mines depend on daily deliveries of fuel, lubricant and specialized chemicals and minerals used

in coal processing.  Mining operations consume vast quantities of diesel fuel, and the Debtors

estimate that they use approximately 50 million gallons of diesel fuel annually.  Large quantities

of fuel and lubricants are required to operate and maintain the working condition of the Debtors'

vehicles, heavy equipment and other mining machinery.  Few suppliers can supply the quantities

of diesel fuel and lubricant the Debtors require, and even fewer are equipped to deliver such

quantities to remote mine locations on a daily basis.  Even if alternative suppliers of fuel capable

of delivering the quantities required by the Debtors could be located, such alternative suppliers

likely would charge significantly higher rates than the Debtors currently pay.

15.    The Debtors' mines also require a steady supply of certain chemicals and

minerals used in coal processing.  For example, large quantities of the mineral magnetite are

required to separate waste material from coal, a process that is particularly important in the

preparation of metallurgical coal.  The Debtors would incur burdensome costs and delays if

forced to locate alternative suppliers of lubricants or coal processing chemicals, because any chemicals or lubricants provided by a new supplier would have to be extensively tested by the Debtors prior to use (e.g., to ensure that a newly-sourced lubricant would not damage valuable heavy machinery).  For all of these reasons, it is critical that the Debtors' relationships with existing fuel, lubricant, chemical and mineral suppliers are maintained to prevent the idling of mining and coal production operations that would occur if the delivery of these necessary supplies were interrupted.  The Debtors estimate that the total amount owing to the Debtors' fuel, lubricant, chemical and mineral suppliers, as of the Petition Date, is approximately $5.6 million.

   16. <u>Suppliers of Specialized Goods, and Providers of Specialized Services, Required for Coal Production and Processing</u>.  The Debtors have longstanding business relationships with certain suppliers of highly-specialized mining equipment, parts and supplies – such as engines, heavy machinery, conveyor belts, explosives, tires, batteries, drill bits, electrical cable, communications equipment, mining tools and parts for specialized mining equipment and machines – that are essential to the Debtors' operations.  Most of these items are available only from single-source or limited-source suppliers – such as original equipment manufacturers – and nearly all of the Debtors' purchases of such items occur on a one-off basis.  Many of these items are not only industry-specific, but are unique.  The Debtors' suppliers customize mining equipment and parts to meet the requirements of the Debtors' mines and produce equipment tailored to the specific coal seam heights and geological conditions of the Debtors' mines. In addition, as with safety-related supplies, many of the specialized machines and parts used by the Debtors to mine and process coal are subject to regulatory approval, meaning that substituting any supplier (if any substitute were available) would give rise to costs and delays the Debtors are ill-equipped to incur.

17.      The Debtors' ability to pay their explosives suppliers on an ongoing basis also is critically important. As part of their surface mining operations, the Debtors regularly use explosives to remove large quantities of overburden and provide access to coal seams. The safe and effective use of explosives requires the technical expertise and experience of crews provided by the Debtors' explosives vendors. In many locations, the Debtors' explosives vendors provide "turnkey" services whereby the vendor handles all aspects of the explosives work to be performed; in other locations, such vendors provide a crew to advise and assist the Debtors' personnel in using the necessary explosives. These arrangements confer the additional benefit of mitigating the Debtors' liability risks associated with the use of explosives, because the Debtors' explosives vendors contractually share in the insurance liability for such operations.

18.      In many cases, the Debtors have worked with their suppliers of mining equipment, parts and supplies over a number of years and, as a result, the Debtors' suppliers have detailed knowledge regarding the Debtors' mines and machinery. Even if it were possible to replace these suppliers, it would take months, if not years, for replacement suppliers to provide the same levels of service the Debtors receive from their current suppliers. It is thus essential that the Debtors maintain their existing business relationships with suppliers of specialized mining equipment, parts and supplies.

19.      In addition, under many of the Debtors' coal sales contracts, the Debtors are obligated to engage the services of specific providers of specialized services related to coal production and processing. For example, the Debtors frequently are required to engage particular laboratories selected by the Debtors' customers, for purposes of testing samples of purchased coal to ensure compliance with the coal quality provisions set forth in the relevant coal sales contracts. If the Debtors were unable to timely pay providers of specialized services

related to coal production and processing, such as laboratories specified by the Debtors'

customers, such non-payment could compromise the Debtors' ability to fully perform under the

terms of their existing coal sales contracts and could damage valuable customer relationships.

       20.    The Debtors estimate that the total amount owing to the Debtors' suppliers

of specialized goods, and providers of specialized services, required for the Debtors' coal

production and processing operations, as of the Petition Date, is approximately $19.1 million.

       21.    <u>Suppliers of Coal Necessary for the Debtors to Satisfy Their Customer</u>

<u>Obligations</u>.  To meet their obligations under coal sales contracts, the Debtors regularly purchase

particular types of coal from other mining companies for blending and other purposes.

The Debtors require the ability to purchase coal from these suppliers on an as-needed basis to

create the specific blends of coal the Debtors' customers demand, and which the Debtors are

contractually obligated to provide.  Any interruption in the Debtors' ability to procure coal from

these coal producers, therefore, could negatively impact the Debtors' ability to satisfy their

customer obligations at a time when maintaining business-as-usual relationships with customers

is of paramount importance.  Moreover, because the Debtors' coal suppliers are subject to the

same economic headwinds currently affecting the domestic coal industry as a whole, the Debtors'

inability to pay such suppliers for prepetition coal shipments, even for a short period, could

threaten the viability of these coal companies.  Thus, although the Debtors' purchases of coal for

resale represent a very small portion of the Debtors' annual expenditures on goods and services,

the Debtors' ability to pay their coal suppliers as usual is critically important to the Debtors'

operations and long-term viability.  The Debtors estimate that the total amount owing to the

Debtors' suppliers of coal for blending and other purposes, as of the Petition Date, is

approximately $1.7 million.

*Necessity of Payment of the Essential Suppliers*

22.     All Essential Suppliers provide goods and services necessary to the

Debtors' operations and their ability to preserve supplier and customer confidence.  The refusal

of an Essential Supplier to ship goods or provide services to the Debtors could have a deleterious

impact on the Debtors' ability to successfully transition into these chapter 11 cases and,

ultimately, to undertake a successful reorganization.  The absence of any of these Essential

Suppliers' goods or services could interrupt coal production and cause costly delays in the

delivery of coal to customers.  As a result, the Debtors could suffer reduced sales, reduced cash

flow and a loss of customer confidence.  Moreover, some of the Debtors' Essential Suppliers

have experienced losses in other recent coal industry bankruptcies and are (a) aware of their

market power and their importance to the Debtors' business operations and (b) educated

regarding their rights in the chapter 11 context.  This increased awareness and sophistication

combined with previous losses may create a particular unwillingness to work with or supply the

Debtors without making prepetition payments to the Essential Suppliers.

23.     Certain of the Essential Suppliers have precarious financial situations, are

highly dependent upon the Debtors for their continued viability and can ill afford any loss of

operating revenue.  With limited or no access to additional capital, the nonpayment of the

Essential Supplier Claims could result in some of the Essential Suppliers suffering work

stoppages or other business disruptions and might ultimately result in such vendors ceasing

operations altogether or filing insolvency proceedings.  If that occurred, the Debtors could

potentially suffer damaging interruptions in their supply of essential goods and services.

24.     Accordingly, the Debtors have determined, in the exercise of their

business judgment, that obtaining authority to pay the Essential Suppliers in their discretion is

critical to avoid a significant diminution in the value of their estates and to achieve a successful

reorganization.  The Debtors' management and employees, in consultation with their

professionals, have held numerous internal meetings and have exercised high levels of care in

reviewing the facts and circumstances of their Essential Suppliers.  As a result of these meetings

and analysis, the Debtors have identified the vendors (a) that would constitute Essential

Suppliers under the descriptions set forth above and (b) the payment of whom would benefit the

Debtors' chapter 11 estates by promoting the successful reorganization.  The Debtors intend to

require clear prospective commitments from these vendors to supply the Debtors in exchange for,

and as a condition to, the payment of the Essential Supplier Claims, as discussed in detail below.

*The Essential Suppliers Cap*

25.    The Debtors' management and employees have identified a limited

number of vendors and service providers that constitute Essential Suppliers.  The Debtors intend

to pay only certain of these suppliers – and, even then, in as limited an amount as possible – and

to require postpetition commitments in exchange for, and as a condition to, the payment of

Essential Supplier Claims (as discussed in detail below).  The Debtors therefore seek authority,

in their discretion, to the extent permitted by any interim or final order approving the Debtors'

postpetition use of cash collateral or debtor in possession financing, to pay Essential Supplier

Claims, up to the maximum aggregate amount of $44.5 million (the "Essential Suppliers Cap"),

an amount equal to approximately 1% of the Debtors' historical annual expenditures on goods

and services.  Of this amount, the Debtors estimate that claims totaling approximately

$11.5 million – an amount equal to approximately 25% of all Essential Supplier Claims – will be

entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code  (to the

extent that such claims are allowed).  Accordingly, the Debtors' payment of such claims would

-12-

not prejudice the Debtors' unsecured creditors.  Given the potential impairment to the value of

their businesses that could result from nonpayment of any Essential Suppliers, and the substantial

percentage of Essential Supplier Claims that may be entitled to administrative priority treatment,

the Debtors submit that the Essential Suppliers Cap is a reasonable and appropriate cap on the

expenditure of estate funds.

***Conditions on Payment of Essential Supplier Claims***

26.     In an effort to ensure that the payment of each Essential Supplier Claim

provides the Debtors with a benefit to their estates, the Debtors propose that each recipient of

payment upon any portion of an Essential Supplier Claim (an "Essential Supplier Payment") be

required, to the extent applicable, to provide the Debtors with:  (a) the continuance of the parties'

existing business relationship, including, but not limited to, the acceptance and fulfillment

(including the production and delivery of goods) of purchase orders and releases under such

purchase orders; (b) other business terms on a postpetition basis (consistent with past practices),

including the pricing of goods and services and the provision of equivalent levels of service, on

terms at least as favorable as those extended prior to the Petition Date, or on such other terms

that are acceptable to the Debtors in their discretion; and (c) the release to the Debtors as

requested of goods (or goods on which services were performed) or other assets of the Debtors in

the Essential Supplier's possession (collectively, the "Trade Terms").  The Trade Terms shall be

applicable throughout the pendency of the Debtors' chapter 11 cases.

27.     If an Essential Supplier accepts an Essential Supplier Payment and fails to

provide the Debtors with the requisite Trade Terms, then:  (a) any Essential Supplier Payment

received by the Essential Supplier will be deemed an unauthorized postpetition transfer under

section 549 of the Bankruptcy Code that the Debtors may (i) recover from the Essential Supplier

in cash or goods or (ii) at the Debtors' option, apply against any outstanding administrative claim

held by such Essential Supplier; and (b) upon recovery of any Essential Supplier Payment, the

corresponding Essential Supplier Claim will be reinstated in the amount recovered by the

Debtors.

28.     The Debtors shall implement and provide notice of the conditions set forth

in paragraphs 26 and 27 above through the following procedures:

(a)     The Debtors may require an Essential Supplier to execute an
agreement (a "Trade Agreement") prior to its receipt of an
Essential Supplier Payment that (i) confirms that the Essential
Supplier agrees to be bound by the terms set forth above,
(ii) confirms that the Essential Supplier has received and agrees to
be bound by the order granting this Motion and (iii) contains such
other terms and conditions as the Debtors believe proper, including
confidentiality provisions.

(b)     If no Trade Agreement is executed, any payment pursuant to which
an Essential Supplier Payment is made will be accompanied by
(i) notice from the Debtors explaining that acceptance of the
payment by the Essential Supplier constitutes its agreement to
provide the Trade Terms and explaining the consequences of its
failure to comply with such agreement and (ii) a copy of the order
granting this Motion.

29.     The Debtors will maintain a matrix (the "Essential Supplier Payment

Matrix") containing (a) the name of each Essential Supplier that receives an Essential Supplier

Payment, (b) the amount of each such payment and (c) a brief description of the goods or

services provided by the Essential Supplier for which the Essential Supplier Payment was made.

The Debtors will provide the Essential Supplier Payment Matrix to (a) the United States Trustee

for the Eastern District of Virginia, (b) counsel to any official committee of unsecured creditors

that may be appointed in these chapter 11 cases, (c) Davis Polk & Wardwell LLP and

McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent

under the Debtors' proposed postpetition credit facility and (d) Kirkland and Ellis, as counsel to

the Second Lien Noteholder Group, (x) bi-weekly, one week in arrears, until a final order is

entered granting the relief requested herein and (y) monthly, one week in arrears, thereafter.

Recipients of the Essential Supplier Payment Matrix shall keep the Essential Supplier Payment

Matrix strictly confidential and shall not disclose the Essential Supplier Payment Matrix or any

portion thereof to any individual or entity without the Debtors' prior written consent.

***Request for Approval of Repudiating Vendor Procedures***

       30.    Given the vulnerability of the Debtors' business and operations to

immediate disruption if certain vital suppliers refuse to provide goods and services, the Debtors

seek authority to implement a process to address such vital suppliers that refuse to honor their

contractual obligations by shipping goods and providing services to the Debtors on a postpetition

basis (collectively, the "Repudiating Vendors").  As part of the implementation of this process,

the Debtors seek authority to pay, on a conditional basis, certain claims of Repudiating Vendors

that seek to withhold performance on a postpetition basis in an effort to extract the payment of

prepetition claims from the Debtors.  In light of the severity of the disruptions that could be

caused by such refusal, the Debtors seek authority to pay such Repudiating Vendors on a

conditional basis to avoid such disruptions.  If such a payment is made, the Debtors propose that

the following procedures (the "Repudiating Vendor Procedures") be implemented:

> (a)    If a Repudiating Vendor refuses to perform its postpetition
> obligations pursuant to an executory contract with one or more of
> the Debtors in violation of the Bankruptcy Code because the
> Debtors have failed to pay its prepetition claim, the Debtors are
> authorized to pay such claim provisionally (and such payment will
> not count against the Essential Suppliers Cap) (a "Provisional
> Payment").

> (b)    If a Repudiating Vendor refuses to perform its postpetition
> obligations pursuant to an executory contract with one or more of
> the Debtors in violation of the Bankruptcy Code, the Debtors may
> (whether or not they make the Provisional Payment described
> above):  (i) file a notice (a "Notice of Repudiating Vendor"),

substantially in the form attached hereto as <u>Exhibit A</u>, setting forth the Debtors' belief that the vendor is in violation of the Bankruptcy Code through its failure to perform under a prepetition agreement, identifying the name of the vendor, the identity of the agreement in question and, if any Provisional Payments were made, the amounts and dates of such payments; and (ii) seek the entry of an order (an "<u>Order to Show Cause</u>"), substantially in the form attached hereto as <u>Exhibit B</u>, requiring the Repudiating Vendor to appear before the Court and show cause why it should not be found to have willfully violated sections 362 and 365 of the Bankruptcy Code and why it should not be required to return any Provisional Payment made to it by the Debtors plus any accumulated interest.

<u>**Argument**</u>

31.     The payment of Essential Supplier Claims on the terms described above is warranted under sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code and case law in this District and elsewhere.

***The Payment of Essential Supplier Claims Is a***
***Permissible and Appropriate Exercise of the Debtors' Business Judgment***
***Under Sections 105(a) and 363(b) of the Bankruptcy Code and the Doctrine of Necessity***

32.     Section 363(b) of the Bankruptcy Code allows the debtors, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon a sound business purpose.  <u>See</u> <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); <u>In re W.A. Mallory Co.</u>, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing <u>In re WBQ P'ship</u>, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)); <u>see also</u> <u>In re Chateaugay Corp.</u>, 973 F.2d 141, 143 (2d Cir. 1992) (holding that the use sale or lease of property of the estate is justified if it is supported by a good business reason); <u>In re Ionosphere Clubs, Inc.</u>, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989)

(noting that the standard for determining a motion pursuant to section 363(b) of the Bankruptcy Code is "a good business reason").

33.     Courts in this and other districts have consistently and appropriately been reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985); see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992). Here, the Debtors believe, in their business judgment, that payment of Essential Supplier Claims, in the Debtors' discretion, is sound and prudent.

34.     Further, the Court may authorize payment of the Essential Supplier Claims pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity. Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105. The purpose of section 105 of the Bankruptcy Code is to ensure the bankruptcy court has the power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015). "Under [section 105 of the Bankruptcy Code,] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)).

35.     In addition, under the "doctrine of necessity," courts allow the immediate payment of prepetition claims where such payment is essential to the debtor's continued

operations.  See In re United Am., Inc., 327 B.R. 776, 782 (Bankr. E.D. Va. 2005)

(acknowledging the existence of the doctrine of necessity "because otherwise there will be no

reorganization and no creditor will have an opportunity to recoup any part of its prepetition

claim"); accord In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the

existence of a judicial power to authorize trustees to pay claims for goods and services that are

indispensably necessary to the debtors' continued operation).

36.    Several courts apply the doctrine of necessity where payment of a

prepetition claim (1) is "necessary for the successful reorganization of the debtor," (2) falls

within "the sound business judgment of the debtor" and (3) will not "prejudice other unsecured

creditors."  United Am., 327 B.R. at 782; see also In re Universal Fin., Inc., 493 B.R. 735,

739-40 (Bankr. M.D.N.C. 2013) (applying the United American three-part test); In re Corner

Home Care, Inc., 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).

37.    The Debtors' ability to pay Essential Supplier Claims, in the Debtors'

discretion, is critical to the ongoing operation of their business, as discussed above, and,

therefore, necessary to their successful reorganization.  The specific rationale for considering

each category of suppliers and service providers as essential is set forth in detail above.  In the

case of nearly all of the Essential Suppliers, if the Debtors lose their supplier relationships,

production could be threatened, revenue could suffer and operations may be placed in jeopardy.

38.    The Debtors' mines require regular and reliable delivery of specialized –

and, in many cases, unique – equipment, parts and supplies provided by highly-specialized

suppliers operating in a niche market.  Without these supplies, the Debtors could not operate or

maintain compliance with statutory, regulatory and judicial requirements regarding mine safety

and environmental protection.  The Debtors also rely on daily deliveries of large quantities of

fuel, lubricant and coal processing chemicals and minerals, without which supplies the Debtors'

mines and coal processing facilities would fall idle.  Replacing any of these suppliers would

force the Debtors to incur costs and delays they can ill afford and, in some cases, substituting

suppliers would require the Debtors to obtain new regulatory approvals.  The Debtors also could

not continue to operate without the services provided by their environmental and engineering

service providers whose expertise and assistance is necessary for the Debtors to maintain

compliance with legal, regulatory and judicial mandates regarding mine safety and

environmental protection.  In addition, the Debtors' ability to create the specific blends of coal

their customers require, and which the Debtors are contractually obligated to deliver, depends on

the Debtors' ability to source particular types of coal from certain other coal producers on an

as-needed basis.  Under these circumstances, the Debtors believe, in their business judgment,

that authorization to pay Essential Suppliers, under the terms and conditions set forth herein, is

necessary to ensure that the Debtors' operations will not suffer interruptions, and to preserve the

value of the Debtors' estates.

       39.    Absent the relief requested herein, the Debtors' stakeholders may question

the Debtors' ability to maintain "business as usual" operations and relationships with their

stakeholders during the duration of these chapter 11 cases.  The Debtors' continued success

depends on maintaining the confidence of their key stakeholder groups.  Any loss of confidence

among these stakeholders could jeopardize important and valuable employee, customer and

vendor relationships and harm the Debtors' chapter 11 estates.   Under these circumstances,

approval of the requested relief is appropriate and is necessary to avoid irreparable harm to the

Debtors' estates.

40.    Bankruptcy courts in this District and elsewhere have entered interim and

final orders authorizing chapter 11 debtors to pay prepetition claims of essential suppliers in

numerous other cases.  See, e.g., In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va.

May 13, 2015 and June 4, 2015) (interim and final orders authorizing the debtors to pay the

prepetition claims of essential suppliers); In re James River Coal Co., No. 14-31848

(Bankr. E.D. Va. Apr. 10, 2014 and May 9, 2014) (same); In re OnCure Holdings, Inc.,

No. 13-11540 (Bankr. D. Del. June 19, 2013 and July 24, 2013) (same); In re Sch. Specialty, Inc.,

No. 13-10125 (Bankr. D. Del. Jan. 30, 2013 and Feb. 25, 2013) (same); In re Patriot Coal Corp.,

No. 12-12900 (Bankr. S.D.N.Y. July 16, 2012 and Aug. 2, 2012) (same); In re AMR Corp.,

No. 11-15463 (Bankr. S.D.N.Y. Nov. 29, 2011 and Dec. 23, 2011) (same); In re Great Atl. & Pac.

Tea Co., No. 10-24549 (Bankr. S.D.N.Y. Dec. 14, 2010 and Jan. 13, 2011) (same); In re Chrysler

LLC, No. 09-50002 (Bankr. S.D.N.Y. May 6, 2009 and May 20, 2009) (same).[1]

***Additional Authority Supporting Payment of Essential Supplier Claims
Entitled to Priority Status Under Section 503(b)(9) of the Bankruptcy Code***

41.    Under section 503(b)(9) of the Bankruptcy Code, claims for the value of

goods received by the Debtors in the ordinary course of their businesses during the 20-day period

prior to the Petition Date are entitled to administrative priority status (the "Twenty-Day

Administrative Claims").  See 11 U.S.C. § 503(b)(9).  As administrative claims incurred in the

ordinary course of the Debtors' businesses, the Debtors arguably are authorized to pay

Twenty-Day Administrative Claims pursuant to section 363(c)(1) of the Bankruptcy Code

without the need for court approval.  See 11 U.S.C. § 363(c)(1) (providing, in relevant part and

subject to certain limitations, that "[i]f the business of the debtor is authorized to be operated

---

[1]    The unreported orders cited herein are not attached to this Motion.  Copies of these orders will be made
available to the Court or other parties upon request from the Debtors' counsel.

under section … 1108 … of this title and unless the court orders otherwise, the trustee may …

use the property of the estate in the ordinary course of business without notice or a hearing.").

      42.     Many courts in this District and elsewhere have approved debtors'

payments of such claims in the Debtors' discretion.  See, e.g., In re Patriot Coal Corp.,

No. 15-32450 (Bankr. E.D. Va. May 13, 2015 and June 4, 2015) (interim and final orders

authorizing the debtors to pay 20-day administrative claims in their sole discretion without the

need for further court approval); In re James River Coal Co., No. 14-31848 (Bankr. E.D. Va.

Apr. 10, 2014 and May 9, 2014) (same); In re AMF Bowling Worldwide, Inc., No. 12-36495

(Bankr. E.D. Va. Nov. 14, 2012) (order authorizing the debtors to pay 20-day administrative

claims in their discretion without the need for further court approval); In re Patriot Coal Corp.,

No. 12-12900 (Bankr. S.D.N.Y. July 16, 2012 and Aug. 2, 2012) (interim and final orders

authorizing the debtors to pay 20-day administrative claims in their discretion without the need

for further court approval); In re Sbarro, Inc., No. 11-11527 (Bankr. S.D.N.Y. Apr. 5, 2011 and

May 5, 2011) (interim and final orders authorizing the debtors to pay 20-day administrative

claims in their discretion without the need for further court approval); In re Great Atl. & Pac.

Tea Co., No. 10 24549 (Bankr. S.D.N.Y. Dec. 14, 2010 and Jan. 13, 2011) (same); In re Chrysler

LLC, No. 09-50002 (Bankr. S.D.N.Y. May 5, 2009 and May 20, 2009) (same).

      43.     As Twenty-Day Administrative Claims are prepetition claims, however,

the Debtors also believe that they are not required to reconcile or pay the Twenty-Day

Administrative Claims prior to the conclusion of these cases.[2]  The Debtors do not intend to pay

---

[2]     Contemporaneously with the filing of this Motion, the Debtors filed the *Motion of the Debtors, Pursuant to Sections 105(a) and 503 of the Bankruptcy Code and Bankruptcy Rules 3002 and 3003, for an Order Establishing Procedures to Resolve Claims Arising Under Section 503(b)(9) of the Bankruptcy Code*, by which the Debtors have requested an order establishing an orderly process for the assertion and adjudication of Twenty-Day Administrative Claims.

Twenty-Day Administrative Claims on a blanket basis.  Instead, the Debtors intend to pay

Twenty-Day Administrative Claims of parties if they are Essential Suppliers under the standards

set forth above.  The Debtors believe, however, that the priority status of many of the Essential

Supplier Claims that will be paid – an amount estimated to constitute approximately 25% of all

Essential Supplier Claims – is an additional reason in support of the relief requested herein, as

the payment of such claims will cause no prejudice to holders of general unsecured claims.[3]

***The Repudiating Vendor Procedures Should Be Authorized***

44.    The Debtors further request authorization to implement the Repudiating

Vendor Procedures.  A number of the Debtors' suppliers, including some of the Debtors' largest

suppliers, are parties to supply agreements with the Debtors.  Under section 365 of the

Bankruptcy Code, a debtor can "force others to continue doing business with it when the

bankruptcy filing might otherwise make them reluctant to do so … thus … making the debtor's

rehabilitation more likely."  City of Covington v. Covington Landing Ltd. P'ship, 71 F.3d 1221,

1226 (6th Cir. 1995) (quoting Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303,

1310 (5th Cir. 1985)); CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway

Airlines Corp.), 406 F.3d 229, 234 (4th Cir. 2005) (stating that "the trustee can force the lessor to

continue performing under the lease"); United States Postal Serv. v. Dewey Freight Sys., Inc.,

31 F.3d 620, 624-25 (8th Cir. 1994) ("After a debtor commences a Chapter 11 proceeding, but

before the executory contracts are assumed or rejected under § 365, those contracts remain in

existence, *enforceable by the debtor, but not against the debtor*.") (emphasis in original);

---

[3]    In addition to the justifications described above, certain of the Essential Suppliers might assert that they have valid reclamation claims under section 546(c) of the Bankruptcy Code for goods delivered during the 45 days prior to the Petition Date.  Accordingly, to the extent that such assertions are correct (and the Essential Supplier Claims are entitled to reclamation claim status), the payment of such claims would not deplete the assets available to other non-priority creditors.  Nothing herein should be construed as an agreement to or admission of the validity of any asserted reclamation claim.

Newman Grill Sys., LLC v. Ducane Gas Grills, Inc. (In re Ducane Gas Grills, Inc.),

320 B.R. 341, 353 (Bankr. D.S.C. 2004) (same); Gwinnett Prado, L.P. v. Rhodes, Inc.

(In re Rhodes, Inc.), 321 B.R. 80, 91 (Bankr. N.D. Ga. 2005) ("As a general proposition, the

non-debtor party to an unexpired lease or other executory contract is obliged to perform it until it

is assumed or rejected."); In re Nat'l Steel Corp., 316 B.R. 287, 305 (Bankr. N.D. Ill. 2004)

(stating that "most courts agree that before an executory contract is assumed or rejected under

§ 365(a), that contract continues to exist, enforceable by the debtor-in-possession, but not

enforceable against the debtor-in-possession."); Interstate Gas Supply, Inc. v. Wheeling

Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.), 283 B.R. 231, 238 (Bankr. N.D. Ohio

2002) ("Until an executory contract has been rejected, generally a non-debtor must continue to

perform.  This Court has previously stated that postpetition: 'the non-debtor party cannot

terminate the contract by reason of the debtor's defaults thereunder.' … It … follows that the

non-debtor party cannot unilaterally elect to cease performance on an executory contract prior to

its assumption or rejection.") (citations omitted; modifications in original); Krafsur v. UOP

(In re El Paso Refinery, L.P.), 196 B.R. 58, 72 (Bankr. W.D. Tex. 1996) ("The [Bankruptcy]

Code places an independent duty on the nondebtor to continue the performance of an executory

contract until it is assumed or rejected.… *Whether the debtor performs or not, the non-debtor*

*must perform until assumption or rejection.*") (emphasis added).[4]

       45.    Notwithstanding the above, it is expected that some contract parties –

i.e., the Repudiating Vendors – may threaten to refuse to perform their contractual obligations

---

[4]    In addition, a refusal by a nondebtor to perform postpetition under a prepetition executory contract also
may be a violation of the automatic stay, pursuant to section 362 of the Bankruptcy Code.  See generally
3 Collier on Bankruptcy ¶ 362.03[5][a] (Alan N. Resnick and Henry J. Sommer eds., 16th ed. rev. 2015)
("As property of the estate, the debtor's interests in … [executory] contracts or leases are protected against
termination or other interference that would have the effect of removing or hindering the debtor's rights in
violation of section 362(a)(3).").

unless the Debtors first pay their prepetition claims.  In light of the severity of the disruptions

that could be caused by such refusal, the Debtors seek authority for approval of the Repudiating

Vendor Procedures as set forth herein.

46.    Bankruptcy Courts in this District and elsewhere have granted relief

similar to that requested herein with respect to the Repudiating Vendor Procedures.

See, e.g., In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va. May 13, 2015 and

June 4, 2015) (entering interim and final orders authorizing repudiating vendor procedures);

In re James River Coal Co., No. 14-31848 (Bankr. E.D. Va. Apr. 10, 2014 and May 9, 2014)

(same); In re Patriot Coal Corp., No. 12-12900 (Bankr. S.D.N.Y. July 16, 2012 and Aug. 2, 2012)

(same); In re Hostess Brands, Inc., No. 12-22052 (Bankr. S.D.N.Y. Jan. 13, 2012 and

Jan. 27, 2012) (same); In re OTC Holdings Corp., No. 10-12636 (BLS) (Bankr. D. Del.

Aug. 27, 2010 and Sept. 17, 2010) (same); In re Chrysler LLC, No. 09-50002 (Bankr. S.D.N.Y.

May 6, 2009 and May 20, 2009) (same).

***Request for Authority for Banks to Honor and Pay***
***Checks and Funds Transfers Related to Essential Supplier Claims***

47.    In addition, by this Motion, the Debtors request that all applicable banks

and other financial institutions be authorized but not directed, when requested by the Debtors in

the Debtors' discretion, to receive, process, honor and pay any and all checks presented for

payment of, and to honor all fund transfer requests made by the Debtors related to, Essential

Supplier Claims, whether such checks were presented or fund transfer requests were submitted

prior to or after the Petition Date, provided that sufficient funds are available in the applicable

accounts to cover such checks and fund transfers.  The Debtors represent that these checks are

drawn on identifiable disbursement accounts and can be readily identified as relating directly to

the authorized payment of Essential Supplier Claims.  Accordingly, the Debtors believe that

checks other than those relating to authorized payments will not be honored inadvertently.

Any such financial institution may rely on the representations of such Debtors as to which

checks are issued or wire transfers are made and authorized to be paid in accordance with this

Motion without any duty of further inquiry and without liability for relying on such

representations.

48.     Nothing contained herein is intended or should be construed as:  (a) an

admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any

other party in interest's rights to dispute any claim on any grounds; (c) a promise to pay any

claim; (d) an implication or admission that any particular claim constitutes an Essential Supplier

Claim, a Twenty-Day Administrative Claim or a valid reclamation claim; or (e) a request to

assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy

Code.

***Requests for Immediate Relief and Waiver of Stay***

49.     Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek:  (a) immediate entry of an order granting

the Debtors the authority to pay the Essential Supplier Claims, provided, however, that in the

first 21 days following the Petition Date, the Debtors will pay only those Essential Supplier

Claims that the Debtors deem necessary to prevent immediate and irreparable harm to the

Debtors' estates (the "Interim Essential Supplier Claims"); and (b) a waiver of any stay of the

effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that

"[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court

shall not, within 21 days after the filing of the petition, issue an order granting … a motion to

pay all or part of a claim that arose before the filing of the petition."  Fed. R. Bankr. P. 6003(b).

Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may authorize the Debtors to pay all or part of a claim that arose before the Petition Date at this time.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

50.    As set forth above and in the First Day Declarations, the honoring and payment of the Interim Essential Supplier Claims is necessary to prevent the immediate and irreparable damage to the Debtors' coal production and processing operations, going-concern value and ability to reorganize should the Essential Suppliers refuse to supply the Debtors with indispensable goods and services.  Accordingly, the Debtors submit that ample cause exists to justify:  (a) the immediate entry of an order granting the relief sought herein; and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Waiver of Separate Memorandum of Points and Authorities

51.    The Debtors respectfully request that the Court regard any argument and citations set forth herein as a written memorandum of facts, reasons and authorities that has been combined with the relief requested herein, as permitted by Local Bankruptcy Rule 9013-1(G)(1). Alternatively, the Debtors respectfully request that the Court waive any requirement set forth in Local Bankruptcy Rule 9013-1(G)(1) that this Motion be accompanied by such a written memorandum.

### Notice

52.    Notice of this Motion has been given to:  (a) the Office of the United States Trustee for the Eastern District of Virginia; (b) Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent

under the proposed postpetition credit facility, and Citicorp North America, Inc., as

administrative and collateral agent under the Debtors' prepetition secured credit facility;

(c) Kirkland and Ellis LLP, as counsel to the Second Lien Noteholder Group; (d) the indenture

trustees for the Debtors' secured and unsecured notes (and counsel, where known); (e) counsel to

General Electric Credit Corporation, as administrative agent under the Debtors' prepetition

secured accounts receivable facility; (f) the creditors holding the 50 largest unsecured claims

against the Debtors' estates on a consolidated basis; (g) the United Mine Workers of America;

and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of

service (collectively, the "Notice Parties").  In light of the nature of the relief requested, the

Debtors submit that no further notice is necessary.

### No Prior Request

53.     No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter an interim order substantially in the form attached hereto as Exhibit C, granting the relief requested herein on an interim basis; (ii) enter a final order substantially in the form attached hereto as Exhibit D, granting the relief requested herein; and (iii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: August 3, 2015
      Richmond, Virginia

Respectfully submitted,

   /s/   Henry P. (Toby) Long, III         
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**<u>Exhibit A</u>**

Notice of Repudiating Vendor

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors
and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**<u>NOTICE OF REPUDIATING VENDOR</u>**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On August 3, 2015, the above-captioned debtors (collectively,
the "<u>Debtors</u>") filed their *Motion of the Debtors, Pursuant to Sections 105(a), 363(b) and
503(b)(9) of the Bankruptcy Code, for Interim and Final Orders Authorizing Them to Pay
Prepetition Claims of Certain Essential Suppliers and Service Providers* (the "<u>Motion</u>").
On _____, 2015, the United States Bankruptcy Court for the Eastern District of
Virginia (the "<u>Bankruptcy Court</u>") entered an order granting the relief requested in the Motion
(D.I. _____) (the "<u>Order</u>").

2.    Pursuant to paragraph ___ of the Order, the Debtors have identified
_____ (the "<u>Vendor</u>") as a Repudiating Vendor (as such term is defined in the

Motion) due to Vendor's refusal to perform its obligations under the **[Agreement]**.

**[Accordingly, the Debtors have conditionally paid the Vendor's claim in the amount of $[_____], on [_____], 201[_] (the "<u>Provisional Payment</u>").]**

        3.      Contemporaneously herewith, the Debtors are filing a proposed Order to Show Cause requesting that the Bankruptcy Court order the Vendor to appear before the Bankruptcy Court at a hearing to be held at ____ __.m., Eastern Time, on _____, 201_, before the Honorable _____, United States Bankruptcy Judge, in the Bankruptcy Court, Courtroom ____, 701 East Broad Street, 5th Floor, Richmond, Virginia 23219, and demonstrate why the Vendor should not be held in violation of sections 362 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 362, 365 **[and why the Vendor should not be required to return the Provisional Payment]**.

Dated: **[DATE]**, 2015
      Richmond, Virginia

Respectfully submitted,

_/s/_____

Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**Exhibit B**

Order to Show Cause

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

Alpha Natural Resources, Inc., et al.,

                              Debtors.

Chapter 11

Case No. 15-_____ (___)

(Joint Administration Requested)

## ORDER TO SHOW CAUSE

            This matter coming before the Court on the Notice of Repudiating Vendor dated

_____, 20___ (D.I. ____) (the "Notice") filed by the debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Notice and

the **[Interim/Final]** *Order, Pursuant to Sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy*

*Code, Authorizing the Debtors to Pay Prepetition Claims of Certain Essential Suppliers and*

*Service Providers* (the "Order") pursuant to which the Notice was filed; and the Court having

found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

(ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) the Notice provided for herein

is sufficient under the circumstances and (iv) the Debtors have complied with the terms and

conditions set forth in the Order;

IT IS HEREBY ORDERED THAT:

1.        _____, who is identified by the Debtors as a Repudiating Vendor

in the Notice (the "Vendor"), is hereby ordered, at a hearing to be conducted before this Court at

_____ __.m., Eastern Time on _____, 201_, before the Honorable _____,

United States Bankruptcy Judge, in the Bankruptcy Court, Courtroom ___, 701 East Broad Street,

5th Floor, Richmond, Virginia 23219 (the "Hearing"), to show cause why the Vendor should not

be (a) held in violation of sections 362 and 365 of the Bankruptcy Code for willfully threatening

to withhold essential goods or services from the Debtors under one or more contracts between

the Debtors and Vendor, as identified in the Notice, and (b) required to return any Provisional

Payment(s) (as such term is defined in the Order) made to it by the Debtors, plus any

accumulated interest.

2.        Service of this Order to Show Cause is to be made by the Debtors upon

(a) the Vendor, (b) the Office of the United States Trustee and (c) counsel for any official

committee of unsecured creditors appointed in these cases pursuant to section 1102 of the

Bankruptcy Code.

3.        This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.


Dated: _____, 2015        _____
         Richmond, Virginia          UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

  /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

     Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

  /s/  Henry P. (Toby) Long, III

## **Exhibit C**

Proposed Interim Order

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors
and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## INTERIM ORDER, PURSUANT TO
## SECTIONS 105(a), 363(b) AND 503(b)(9) OF THE BANKRUPTCY
## CODE, AUTHORIZING THE DEBTORS TO PAY PREPETITION
## <u>CLAIMS OF CERTAIN ESSENTIAL SUPPLIERS AND SERVICE PROVIDERS</u>

This matter coming before the Court on the *Motion of the Debtors, Pursuant to Sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, for Interim and Final Orders Authorizing Them to Pay Prepetition Claims of Certain Essential Suppliers and Service Providers* (the "<u>Motion</u>"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>"); the Court having reviewed the Motion and the First Day Declarations and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "<u>Hearing</u>"); the Court having found that

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

(i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) notice of the Motion and the Hearing was sufficient under the circumstances, (iv) there is good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable and (v) the payment of the Essential Supplier Claims on the terms and conditions set forth herein is necessary and appropriate to (A) prevent serious disruptions to the Debtors' business operations that would cause potentially immediate and irreparable harm thereto and (B) preserve the going concern value of the Debtors' businesses and the Debtors' estates for the benefit of all stakeholders; and the Court having determined that the legal and factual bases set forth in the Motion and the First Day Declarations, and at the Hearing, establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.        The Motion is GRANTED on an interim basis as set forth herein.

2.        The Debtors are authorized, but not required, to pay, in their discretion, to the extent permitted by any interim or final order approving the Debtors' postpetition use of cash collateral or debtor in possession financing, and in the ordinary course of their businesses, the Essential Supplier Claims in an aggregate amount not to exceed $44.5 million; provided, however, that in the first 21 days following the Petition Date, the Debtors shall pay Essential Supplier Claims only to the extent such obligations are currently due and owing and as necessary to prevent immediate and irreparable harm to the Debtors' estates.  Nothing in this paragraph shall be construed as requiring the Debtors to make a payment to a particular creditor or claimant.

3.        Each recipient of an Essential Supplier Payment shall be required, to the extent applicable, to:  (a) continue, without interruption, its existing business relationship with the Debtors, including, but not limited to, the acceptance and fulfillment of current and future

purchase orders; (b) continue to extend normalized trade credit and provide other business terms

on a postpetition basis (consistent with past practices), including with respect to any applicable

credit limits, the pricing of goods and services and the provision of equivalent levels of service;

and (c) agree to release to the Debtors as requested goods or other assets of the Debtors in the

Essential Supplier's possession, all on terms at least as favorable as those extended prepetition or

on such other terms that are acceptable to the Debtors in their business judgment, until the

Debtors emerge from chapter 11 (collectively, the "Trade Terms").

        4.       If an Essential Supplier accepts an Essential Supplier Payment and fails to

provide the Debtors with the requisite Trade Terms, then:  (a) any Essential Supplier Payment

received by the Essential Supplier shall be deemed an unauthorized postpetition transfer under

section 549 of the Bankruptcy Code that the Debtors may either (i) recover from the Essential

Supplier in cash or goods or (ii) at the Debtors' option, apply against any outstanding

administrative claim held by such Essential Supplier; and (b) upon recovery of any Essential

Supplier Payment, the corresponding prepetition claim of the Essential Supplier will be

reinstated in the amount recovered by the Debtors.

        5.       The Debtors shall implement and provide notice of the conditions set forth

in paragraphs 3 and 4 above as follows:

        (a)       The Debtors may require an Essential Supplier to execute an agreement (a "Trade Agreement") prior to its receipt of an Essential Supplier Payment that (i) confirms that the Essential Supplier agrees to be bound by the terms set forth above, (ii) confirms that the Essential Supplier has received and agrees to be bound by this Order and (iii) contains such other terms and conditions as the Debtors believe proper, including confidentiality provisions.

        (b)       If no Trade Agreement is executed, any payment pursuant to which an Essential Supplier Payment is made will be accompanied by (i) a notice from the Debtors explaining that acceptance of the payment by the Essential Supplier constitutes its agreement to

provide the Trade Terms and explaining the consequences of its failure to comply with such agreement and (ii) a copy of this Order.

6.      The Debtors shall maintain a matrix (the "Essential Supplier Payment Matrix") containing (a) the name of each Essential Supplier that receives an Essential Supplier Payment, (b) the amount of each such payment and (c) a brief description of the goods or services provided by the Essential Supplier for which the Essential Supplier Payment was made. The Debtors shall provide the Essential Supplier Payment Matrix to (a) the United States Trustee for the Eastern District of Virginia, (b) counsel to any official committee of unsecured creditors that may be appointed in these chapter 11 cases, (c) Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent under the Debtors' proposed postpetition credit facility and (d) Kirkland and Ellis, as counsel to the Second Lien Noteholder Group, (x) bi-weekly, one week in arrears, until a final order is entered granting the relief requested in the Motion and (y) monthly, one week in arrears, thereafter.  Recipients of the Essential Supplier Payment Matrix shall keep the Essential Supplier Payment Matrix strictly confidential and shall not disclose the Essential Supplier Payment Matrix or any portion thereof to any individual or entity without the Debtors' prior written consent.

7.      If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors in violation of the Bankruptcy Code because the Debtors have failed to pay the vendor's prepetition claim, the Debtors are authorized to pay such claim provisionally (and such payment will not count against the Essential Suppliers Cap) (a "Provisional Payment"), provided that, within 10 business days of payment, the Debtors file a Notice of Repudiating Vendor and seek the entry of an Order to Show Cause as set forth in paragraph 8 below.

-4-

8.      If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors in violation of the Bankruptcy Code, the Debtors may (whether or not they made a Provisional Payment as described above): (a) file a Notice of Repudiating Vendor, substantially in the form of the notice attached to the Motion as Exhibit A, (i) setting forth the Debtors' belief that the vendor is in violation of the Bankruptcy Code through its failure to perform under a prepetition agreement, (ii) identifying the name of the vendor and the identity of the agreement in question and (iii) if any Provisional Payments were made, stating the amounts and date of such Provisional Payments; and (b) seek the entry of an Order to Show Cause, substantially in the form attached to the Motion as Exhibit B, which shall require the Repudiating Vendor to appear before the Court to show why it should not be (i) found to have willfully violated sections 362 and 365 of the Bankruptcy Code and (ii) required to return any Provisional Payment made by the Debtors.

9.      The Debtors' banks and financial institutions (collectively, the "Banks") are authorized but not directed, when requested by the Debtors in the Debtors' discretion, to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, Essential Supplier Payments and Provisional Payments, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to cover such checks and fund transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or fund transfer as approved by this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

10.      Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or

priority of any claim against the Debtors; (b) a waiver of the Debtors' or any other party in

interest's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an

implication or admission that any particular claim would constitute an Essential Supplier Claim,

a Twenty-Day Administrative Claim or a valid reclamation claim; or (e) a request to assume any

executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

      11.    Any objection to the granting of the relief requested by the Motion on a

final basis shall be filed with the Court on or before _____ _.m. Eastern Time on

_____, 2015 (the "Objection Deadline"), and served, so as to be received by the

Objection Deadline, upon:  (a) the Office of the United States Trustee for the Eastern District of

Virginia, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219 (Attn: Robert B.

Van Arsdale, Esq. and Hugh M. Bernstein, Esq.); (b) (i) the Debtors, c/o Alpha Natural

Resources, Inc., One Alpha Place, P.O. Box 16429, Bristol, Virginia 24209 (Attn: Richard H.

Verheij, Esq., General Counsel); (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland,

Ohio 44114 (Attn: Carl E. Black, Esq. and Thomas A. Wilson, Esq.); and (iii) Hunton &

Williams LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219

(Attn: Tyler P. Brown, Esq.); (c) co-counsel to the administrative and collateral agent under the

proposed postpetition credit facility and the administrative and collateral agent under the

Debtors' prepetition secured credit facility, (i) Davis Polk & Wardwell LLP, 450 Lexington

Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq. and Damon P. Meyer,

Esq.) and (ii) McGuireWoods LLP, Gateway Plaza, 800 East Canal Street, Richmond, Virginia

23219 (Attn: Dion W. Hayes, Esq., Sarah B. Boehm, Esq. and K. Elizabeth Sieg, Esq.); and

(d) counsel to the Second Lien Noteholder Group, Kirkland & Ellis LLP, (i) 601 Lexington

-344

Avenue, New York, New York 10022 (Attn: Stephen E. Hessler, Esq. and Brian E. Schartz, Esq.)

and (ii) 300 North LaSalle, Chicago, Illinois 60654 (Attn: Gregory F. Pesce, Esq.).

12.     The Debtors shall, within two business days of the date of entry of this

Interim Order, serve by United States mail, first class postage prepaid, copies of the Motion and

this Interim Order on (a) the U.S. Trustee and (b) the Notice Parties.  A final hearing on the

Motion (the "Final Hearing") will be held on _____, 201_ at _____ _.m. Eastern

Time in the United States Bankruptcy Court for the Eastern District of Virginia, Courtroom _____,

701 East Broad Street, 5th Floor, Richmond, Virginia 23219.

13.     A reply to any objection may be filed by no later than 4:00 p.m. on the

date that is two days prior to the date of the Final Hearing.

14.     If no objections are timely filed and served as set forth herein, the Debtors

shall, on or after the Objection Deadline, submit to the Court a final order substantially in the

form of the Final Order attached to the Motion, which Order may be entered with no further

notice or opportunity to be heard afforded to any party.

15.     For the avoidance of doubt, nothing herein shall modify, alter or otherwise

affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in

possession financing facility or be deemed to authorize the Debtors to violate any terms of such

financing facility.

16.     Pursuant to Bankruptcy Rule 6004(h), this Interim Order shall be

immediately effective and enforceable upon its entry.

17.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a

memorandum of law in connection with the Motion is hereby waived to the extent necessary.

-7-

18.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

19.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Interim Order.

Dated: _____, 2015
      Richmond, Virginia                                   _____
                                        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

    /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors
and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

    /s/  Henry P. (Toby) Long, III

**<u>Exhibit D</u>**

Proposed Final Order

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

*Proposed Attorneys for Debtors
and Debtors in Possession*

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## FINAL ORDER, PURSUANT TO
## SECTIONS 105(a), 363(b) AND 503(b)(9) OF THE BANKRUPTCY
## CODE, AUTHORIZING THE DEBTORS TO PAY PREPETITION
## <u>CLAIMS OF CERTAIN ESSENTIAL SUPPLIERS AND SERVICE PROVIDERS</u>

This matter coming before the Court on the *Motion of the Debtors, Pursuant to Sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, for Interim and Final Orders Authorizing Them to Pay Prepetition Claims of Certain Essential Suppliers and Service Providers* (the "<u>Motion</u>"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>"); the Court having reviewed the Motion and the First Day Declarations and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "<u>Hearing</u>"); the Court having found that

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

(i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) notice of the Motion and the Hearing was sufficient under the circumstances, (iv) there is good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable and (v) the payment of the Essential Supplier Claims on the terms and conditions set forth herein is necessary and appropriate to (A) prevent serious disruptions to the Debtors' business operations and (B) preserve the going concern value of the Debtors' businesses and the Debtors' estates for the benefit of all stakeholders; and the Court having determined that the legal and factual bases set forth in the Motion and the First Day Declarations and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not required, to pay, in their discretion, to the extent permitted by any interim or final order approving the Debtors' postpetition use of cash collateral or debtor in possession financing, and in the ordinary course of their businesses, the Essential Supplier Claims in an aggregate amount not to exceed $44.5 million.  Nothing in this paragraph shall be construed as requiring the Debtors to make a payment to a particular creditor or claimant.

3.      Each recipient of an Essential Supplier Payment shall be required, to the extent applicable, to provide the Debtors with:  (a) the continuance of the parties' existing business relationship, including, but not limited to, the acceptance and fulfillment (including the manufacture and delivery of goods) of purchase orders and releases under such purchase orders; (b) other business terms on a postpetition basis (consistent with past practices), including the

-2-

pricing of goods and services and the provision of equivalent levels of service, on terms at least

as favorable as those extended prior to the Petition Date, or on such other terms that are

acceptable to the Debtors in their discretion; and (c) the release to the Debtors as requested goods

(or goods on which services were performed) or other assets of the Debtors in the Essential

Supplier's possession (collectively, the "Trade Terms").  The Trade Terms shall be applicable

throughout the pendency of the Debtors' chapter 11 cases.

       4.     If an Essential Supplier accepts an Essential Supplier Payment and fails to

provide the Debtors with the requisite Trade Terms, then:  (a) any Essential Supplier Payment

received by the Essential Supplier shall be deemed an unauthorized postpetition transfer under

section 549 of the Bankruptcy Code that the Debtors may either (i) recover from the Essential

Supplier in cash or goods or (ii) at the Debtors' option, apply against any outstanding

administrative claim held by such Essential Supplier; and (b) upon recovery of any Essential

Supplier Payment, the corresponding prepetition claim of the Essential Supplier will be

reinstated in the amount recovered by the Debtors.

       5.     The Debtors shall implement and provide notice of the conditions set forth

in paragraphs 3 and 4 above as follows:

    (a)     The Debtors may require an Essential Supplier to execute an agreement (a "Trade Agreement") prior to its receipt of an Essential Supplier Payment that (i) confirms that the Essential Supplier agrees to be bound by the terms set forth above, (ii) confirms that the Essential Supplier has received and agrees to be bound by this Order and (iii) contains such other terms and conditions as the Debtors believe proper, including confidentiality provisions.

    (b)     If no Trade Agreement is executed, any payment pursuant to which an Essential Supplier Payment is made will be accompanied by (i) a notice from the Debtors explaining that acceptance of the payment by the Essential Supplier constitutes its agreement to provide the Trade Terms and explaining the consequences of its failure to comply with such agreement and (ii) a copy of this Order.

-3-

6.    The Debtors shall maintain a matrix (the "Essential Supplier Payment Matrix") containing (a) the name of each Essential Supplier that receives an Essential Supplier Payment, (b) the amount of each such payment and (c) a brief description of the goods or services provided by the Essential Supplier for which the Essential Supplier Payment was made. The Debtors shall provide the Essential Supplier Payment Matrix to (a) the United States Trustee for the Eastern District of Virginia, (b) counsel to any official committee of unsecured creditors that may be appointed in these chapter 11 cases, (c) Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent under the Debtors' proposed postpetition credit facility and (d) Kirkland and Ellis, as counsel to the Second Lien Noteholder Group, on a monthly basis, one week in arrears.  Recipients of the Essential Supplier Payment Matrix shall keep the Essential Supplier Payment Matrix strictly confidential and shall not disclose the Essential Supplier Payment Matrix or any portion thereof to any individual or entity without the Debtors' prior written consent.

7.    If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors in violation of the Bankruptcy Code because the Debtors have failed to pay the vendor's prepetition claim, the Debtors are authorized to pay such claim provisionally (and such payment will not count against the Essential Suppliers Cap) (a "Provisional Payment") and file a Notice of Repudiating Vendor and seek the entry of an Order to Show Cause as set forth in paragraph 8 below.

8.    If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors in violation of the Bankruptcy Code, the Debtors may (whether or not they made a Provisional Payment as described above): (a) file a Notice of Repudiating Vendor, substantially in the form of the notice attached to the

-4-

Motion as Exhibit A, (i) setting forth the Debtors' belief that the vendor is in violation of the Bankruptcy Code through its failure to perform under a prepetition agreement, (ii) identifying the name of the vendor and the identity of the agreement in question and (iii) if any Provisional Payments were made, stating the amounts and date of such Provisional Payments; and (b) seek the entry of an Order to Show Cause, substantially in the form attached to the Motion as Exhibit B, which shall require the Repudiating Vendor to appear before the Court to show why it should not be (i) found to have willfully violated sections 362 and 365 of the Bankruptcy Code and (ii) required to return any Provisional Payment(s) made by the Debtors.

9.      The Debtors' banks and financial institutions (collectively, the "<u>Banks</u>") are authorized but not directed, when requested by the Debtors in the Debtors' discretion, to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, Essential Supplier Claims and Provisional Payments, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to cover such checks and fund transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or fund transfer as approved by this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

10.     Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an Essential Supplier Claim,

a Twenty-Day Administrative Claim or a valid reclamation claim; or (e) a request to assume any

executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

    11.  For the avoidance of doubt, nothing herein shall modify, alter or otherwise

affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in

possession financing facility or be deemed to authorize the Debtors to violate any terms of such

financing facility.

    12.  Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately

effective and enforceable upon its entry.

    13.  The requirement under Local Bankruptcy Rule 9013-1(G) to file a

memorandum of law in connection with the Motion is hereby waived to the extent necessary.

    14.  The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

    15.  This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Order.


Dated: _____, 2015   _____
   Richmond, Virginia     UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

  /s/ Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

  /s/ Henry P. (Toby) Long, III