JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

*Proposed Attorneys for Debtors
and Debtors in Possession*

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS, PURSUANT TO SECTIONS 345,
363(c)(1), 503(b)(1) AND 553 OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 6003(b) AND 6004(h), FOR INTERIM
AND FINAL ORDERS:  (A) APPROVING THE CONTINUED USE OF
THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS
AND BUSINESS FORMS; (B) GRANTING AN INTERIM WAIVER OF THE
REQUIREMENTS OF SECTION 345(b) AND CERTAIN OF THE U.S. TRUSTEE'S
OPERATING GUIDELINES; (C) PERMITTING CONTINUED INTERCOMPANY
TRANSACTIONS; (D) PRESERVING AND PERMITTING THE EXERCISE OF
INTERCOMPANY SETOFF RIGHTS; AND (E) AUTHORIZING BANKS TO HONOR
<u>CERTAIN TRANSFERS AND CHARGE CERTAIN FEES AND OTHER AMOUNTS</u>**

Alpha Natural Resources, Inc. ("<u>ANR</u>") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully

represent as follows:

## Background

1.      On the date hereof (the "Petition Date"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code").  By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only

and administered jointly.  The Debtors are authorized to continue to operate their business and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

2.      A comprehensive description of the Debtors' businesses and operations,

capital structure and the events leading to the commencement of these chapter 11 cases can be

found in the declarations of (a) Kevin S. Crutchfield, Chief Executive Officer and Chairman of

the Board of Directors of ANR, and (b) Philip J. Cavatoni, Executive Vice President and Chief

Financial and Strategy Officer of ANR in support of the Debtors' "first day" pleadings (together,

the "First Day Declarations"), which were filed contemporaneously herewith and which are

incorporated by reference.

## Jurisdiction

3.      This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4.      Pursuant to sections 345, 363(c)(1), 503(b)(1) and 553 of the Bankruptcy

Code, the Debtors hereby seek the entry of an interim order (the "Interim Order") and a final

order (the "Final Order"), substantially in the forms attached hereto as Exhibit C and Exhibit D:

(a)     Approving the Debtors' continued use of (i) their current cash
management system, as it may be modified by any interim or final order
approving the Debtors' continued use of cash collateral or proposed
postpetition secured debtor in possession financing (the "<u>DIP Facility</u>")[1],
(ii) certain of their existing bank accounts (collectively, the "<u>Bank
Accounts</u>") (as well as authorizing the Debtors to open and close bank
accounts, including as necessary or appropriate in connection with the
DIP Facility) and (iii) their business forms, each as modified to the
extent described herein;

(b)     Granting the Debtors a 45-day interim waiver of the requirements of
section 345(b) of the Bankruptcy Code with respect to the Debtors'
deposit practices and certain requirements in the Chapter 11 Guidelines
(the "<u>UST Operating Guidelines</u>") maintained by the Office of the
United States Trustee for Region 4 (the "<u>U.S. Trustee</u>") with respect to
certain of the Bank Accounts;

(c)     Permitting continued intercompany funding through the Debtors' cash
management system and granting super-priority administrative expense
status to all postpetition claims arising from Inter-Debtor Transactions
(as defined below) subject only to claims with a higher priority by any
interim or final order approving the Debtors' postpetition use of cash
collateral or the DIP Facility;

(d)     Permitting the Debtors to reconcile and set off any mutual prepetition
and mutual postpetition obligations between Debtors arising from
Intercompany Transactions (as defined below) through the cash
management system described below; and

(e)     Authorizing, but not directing, all banks participating in the Debtors'
cash management system to honor certain transfers provided that
sufficient funds are available in the applicable accounts to cover such
transfers and charge Bank Fees (as defined below) and certain other
amounts.

**<u>Facts Relevant to This Motion</u>**

5.      As set forth in the First Day Declarations, ANR is the direct or indirect

parent of each of the other Debtors and the Debtors' domestic and foreign non-debtor affiliates

(collectively, the "<u>Non-Debtor Affiliates</u>" and, together with the Debtors, the "<u>ANR Entities</u>").

Accordingly, the Debtors are "affiliates" within the meaning of section 101(2) of the Bankruptcy

---

[1]      On the date hereof, the Debtors filed a motion seeking interim and final approval of the DIP Facility.

Code.  The Debtors, as affiliated entities, have historically used a consolidated cash management system (as it may be modified, the "Cash Management System") in the day-to-day operation of their business.  The Debtors make and receive thousands of payments per week, and over $5 billion in cash flows through the Cash Management System annually.  The Cash Management System provides a well established mechanism for the collection, concentration, management and disbursement of funds used in the Debtors' business and provides a system by which the Debtors can accurately record all transactions made.

6.      In connection with the Cash Management System, as of the Petition Date, the Debtors maintained 57 domestic and 4 foreign bank accounts in the ordinary course of their business, including concentration accounts, depository accounts, investment accounts and disbursement accounts (collectively, the "Bank Accounts"), out of which the Debtors manage cash receipts and disbursements.  The principal components of the Cash Management System and the flow of funds through the Bank Accounts in that system, as they existed prior to the Petition Date, are described below.

***Deposits and Receivables***

7.      In 2014, the Debtors received approximately $5.2 billion in payments from customers on account of coal sales and from other sources.  Payments are received from these sources via checks, cash, automated clearing house ("ACH") and wire transfer.  The vast majority of these receipts flow through a main concentration account (the "Main Concentration Account") maintained by Debtor ANR at Bank of America, N.A. ("BAML").[2]  As set forth in greater detail below, the Debtors use the centralized Cash Management System to facilitate the

---

[2]      In addition, Debtor Alpha Natural Resources LLC ("ANR LLC") maintains a second concentration account with an average daily balance of approximately $47,000, which is used solely to support Debtor Maxxim Rebuild Company LLC ("Maxxim Rebuild").

flow of funds collected to the Main Concentration Account.  As of August 1, 2015, the balance

in the Main Concentration Account was approximately $87 million.  Historically, however, the

Debtors generally have maintained a balance in the Main Concentration Account in excess of

approximately $140 million, which balance provides sufficient yield to offset the fees BAML

charges the Debtors with respect to the Main Concentration Account.  Overnight balances in the

Main Concentration Account in excess of this amount are swept into the Money Market Account

(as defined below) and automatically transferred back to the Main Concentration Account at the

opening of each business day.

8.      Depository Accounts.  As of the Petition Date, the Cash Management

System featured three, zero-balance lockbox accounts (collectively, the "ZBA Lockbox

Accounts"), each of which is held at BAML, including:  (a) a blocked ZBA Lockbox Account

held by Debtor ANR LLC for most receipts from coal sales (the "Qualifying Coal Sales Lockbox

Account"); (b) a ZBA Lockbox Account held by Debtor ANR for certain coal sales receipts that

cannot be assigned pursuant to the terms of contracts between the Debtors and approximately six

of their customers, most of which are foreign entities (the "Non-Qualifying Coal Sales Lockbox

Account"); and (c) a ZBA Lockbox Account for receipts other than coal sales receipts

(the "Non-Coal Sales Lockbox Account").

9.      Every day, receipts into the Non-Qualifying Coal Sales Lockbox Account

and the Non-Coal Sales Lockbox Account are swept directly into the Main Concentration

Account.  In contrast, the contents of the Qualifying Coal Sales Lockbox Account are

automatically swept each day into a restricted account (the "A/R Facility Account") held at

BAML by Non-Debtor Affiliate ANR Second Receivables Funding, LLC ("ANR Second

Receivables Funding").[3]  The A/R Facility Account maintains a balance of $1 million securing the obligations of ANR Second Receivables Funding under the A/R Facility (as such term is defined in the First Day Declarations).  Any fees due with respect to the A/R Facility Account are deducted from the funds received from the Qualifying Coal Sales Lockbox Account, which are then swept into the Main Concentration Account.  Among other modifications to the Cash Management System that may be required in connection any interim or final order approving the Debtors' continued use of cash collateral or the DIP Facility, the Debtors anticipate that the A/R Facility will be terminated and ownership of the A/R Facility Account transferred to one of the Debtors.

***Disbursements and Payables***

10.    Payroll.  The Debtors administer payroll internally.  They pay approximately 20% to 25% of their employees by check and the remainder via ACH transfer. Payroll is funded through distributions made from the Main Concentration Account into nine separate zero-balance payroll accounts (collectively, the "ZBA Payroll Accounts").  One such ZBA Payroll Account, which is held by Debtor Alpha Natural Resources Services, LLC ("ANR Services"), funds payroll for all of the Debtors' approximately 7,000 nonrepresented employees. The remaining ZBA Payroll Accounts are held by eight Debtor operating subsidiaries and are used to fund payroll for UMWA-represented employees at the location operated by the applicable subsidiary.

11.    Operating Accounts.  The Debtors maintain a zero-balance master disbursement account at BAML (the "ZBA Master Disbursement Account").  The ZBA Master

---

[3]    ANR Second Receivables Funding is a bankruptcy-remote special purpose entity established under the laws of Delaware.

Disbursement Account funds substantially all of Debtors' ordinary course domestic operations. Approximately $4.5 billion flows through the ZBA Master Disbursement Account on an annual basis.

12.     The Debtors also maintain eight other stand-alone operating accounts for various discrete purposes (collectively with the ZBA Master Disbursement Account, the "Operating Accounts").  Debtor Foundation PA Coal Company, LLC maintains an Operating Account at BAML (the "Rice Proceeds Account") into which the Debtors have deposited the proceeds of certain sales of shares owned by ANR in Rice Energy, Inc. ("Rice Energy").  As of the Petition Date, the balance in the Rice Proceeds Account was approximately $39.4 million.[4] Debtors Pennsylvania Land Resources LLC ("PLR") and Coal Gas Recovery II, LLC ("CGR")[5] each maintain an Operating Account at Wells Fargo to support their respective operations, including (a) payments to EDF under the transition services agreement among the parties, (b) the payment of management fees, (c) the collection of royalty payments and (d) payments to vendors. As of the Petition Date, the balance in (a) the PLR Operating Account was approximately $9.8 million and (b) the CGR Operating Account was approximately $600,000.

13.     In addition to the foregoing accounts, Debtor Maxxim Rebuild maintains an Operating Account at Branch Banking and Trust Company ("BB&T") that supports Maxxim Rebuild's credit card receipts (the "Maxxim Operating Account").  As of the Petition Date, the balance in the Maxxim Operating Account was approximately $300,000.  In addition, Debtor New River Energy Corporation ("New River") maintains an Operating Account with a balance as

---

[4]    In addition to the cash held in the Rice Proceeds Account, as of the Petition Date, the Debtors retained approximately $80.4 million in shares of Rice Energy.

[5]    On July 1, 2015, the Debtors completed the acquisition of PLR and CGR with respect to which they had previously been 50% owners with EDF Trading Resources, LLC ("EDF").

of the Petition Date of approximately $26,000, which account supports the operations of New River's gas well operations, among other things.  The Debtors' remaining Operating Accounts consist of a zero balance account maintained by Debtor Alpha India, LLC and two Operating Accounts maintained by Debtor ANR LLC with no balance and no recent activity.

14.     Investment Accounts.  As of the Petition Date, Debtor ANR LLC maintains five investment accounts (collectively, the "Investment Accounts") consisting of:  (a) a money market account at BAML with a balance of approximately $300.0 million (the "Money Market Account"); (b) a time deposit account held at BB&T with a balance of approximately $60.2 million that bears interest at a rate of 0.35%, and from which ANR LLC may make up to six withdrawals per month (the "BB&T Time Deposit"); (c) a $20,000,000 time deposit at Crédit Agricole CIB that bears interest at a rate of 0.67% and matures on August 17, 2015 (the "Crédit Agricole Time Deposit"); (d) a $20,000,000 time deposit at Sumitomo Mitsui Banking Corporation that bears interest at a rate of 0.52% and matures on November 5, 2015 (the "SMBC Time Deposit" and, collectively with the BB&T Time Deposit and the Crédit Agricole Time Deposit, the "Time Deposit Accounts"); and (e) an inactive account at BAML with a balance of $0.00.  Upon maturity of each of the Time Deposit Accounts, the proceeds of the applicable account will be transferred into the Main Concentration Account.

15.     Managed Securities Accounts.  Wells Fargo Bank, N.A. serves as securities intermediary with respect to approximately $452.0 million in marketable securities held by the Debtors as of the Petition Date in five accounts (collectively, the "Managed Securities Accounts").[6]  Funds in the Managed Securities Accounts have been invested in

---

[6]     The assets in the Managed Securities Accounts are invested by, respectively, BAML, Deutsche Bank, Morgan Stanley, PNC Bank and Sterling Capital Management.

securities by the applicable banking institutions in accordance with an investment policy

(the "Investment Policy") approved by the Board of Directors of ANR (the "Board").

The Investment Policy permits investments in a range of securities within specified parameters

that allow the Debtors to (a) preserve principal, (b) maintain a high degree of liquidity and

(c) deliver competitive after-tax returns subject to prevailing market conditions.

16.    Foreign Accounts.  Debtor Alpha European Sales, Inc. maintains three

foreign accounts (collectively, the "Foreign Accounts") at UBS Bank ("UBS") in Switzerland.[7]

The Foreign Accounts (one each denominated in United States dollars, Swiss francs and Euros)

are used to fund certain operations of the Debtors' foreign Non-Debtor Affiliates pursuant to the

terms of service agreements between the parties.  The Debtors maintain relatively de minimis

balances in the Foreign Accounts, generally less than approximately $60,000 in the aggregate.

17.    Petty Cash Accounts.  The Debtors maintain approximately 19 petty cash

accounts (collectively, the "Petty Cash Accounts").  The Debtors fund the Petty Cash Accounts

on an as-needed basis for certain of their operations in the United States.   Petty cash is used to

pay for, among other things:  (a) sundry obligations; (b) certain costs relating to immediate

permitting needs; and (c) certain employee-related obligations, including overtime adjustments

and final paychecks for certain terminated employees.  As of the Petition Date, the aggregate

balance across all Petty Cash Accounts was approximately $190,000.

18.    Other Accounts.  In addition to the Bank Accounts described above, the

Debtors maintain six other accounts, including:  (a) an account with a balance of approximately

$500,000 held by ANR at BAML, which was established to administer early retiree reinsurance

---

[7]    In addition, Debtor Alpha Natural Resources International, LLC (as successor to Alpha Australia LLC)
holds a dormant Foreign Account with a balance of $0.00 at ANZ Bank in Australia.

program (also known as "ERRP") benefits under the Patient Protection and Affordable Care Act of 2010; (b) two captive insurance accounts with balances of approximately $10 million and $2 million, respectively; (c) two escrow accounts relating to environmental reclamation work to be performed by certain mining contractors; and (d) a dormant account with a *de minimis* balance that relates to an inactive corporation.

19.     A chart summarizing the Debtors' Cash Management System, as it existed as of the Petition Date, and a schedule of the Debtors' prepetition Bank Accounts (the "Account Schedule") are attached hereto as Exhibit A and Exhibit B, respectively, and incorporated herein by reference.[8]

***Transactions Among the Debtors***

20.     In the ordinary course of their business prior to the Petition Date the Debtors provided goods and services to, and engaged in intercompany financial transactions with, (a) each other (collectively, the "Inter-Debtor Transactions") and (b) the Debtors' Non-Debtor Affiliates (collectively, the "Inter-Affiliate Transactions" and, together with the Inter-Debtor Transactions, the "Intercompany Transactions").  As set forth above, the Debtors manage their expenses and revenues through a consolidated Cash Management System.  The Debtors, however, maintain records sufficient to track Intercompany Transactions such that these transactions should be permitted to continue after the commencement of these cases.

21.     In particular, certain of the ANR Entities provide services to, and engage in commercial Intercompany Transactions with, each other in the ordinary course of their business.  For example, certain ANR Entities operate coal mines on property owned or leased by

---

[8]     The Account Schedule attached as Exhibit B is intended to be inclusive but the Debtors may inadvertently have omitted certain Bank Accounts.  The Debtors reserve the right to supplement the schedule and, in any event, request authority to maintain all of their Bank Accounts, whether or not identified on the Account Schedule.

certain other ANR Entities, which coal is then sold to customers by certain other ANR Entities

with the proceeds being directed to the Main Concentration Account, which is held by Debtor

ANR.  During the year, the Debtors do not immediately record the Intercompany Transactions

contemporaneously with such transactions.  The Debtors do, however, maintain

contemporaneous records of all transactions and assign costs and revenues associated with all

transactions to particular ANR Entities.

22.    At the end of each fiscal year, the Debtors review these records and

determine the amounts owed among the ANR Entities, based upon the Intercompany

Transactions.  Cash collected by one ANR Entity and used by another would give rise to a

certain liability for one ANR Entity and asset for another; whereas, the provision of goods or

services from one ANR Entity to another likewise creates an asset for one ANR Entity and a

liability for another.  The ANR Entities use various methods to price Intercompany Transactions.

The pricing of certain transactions includes a reasonable mark up (some of which arrangements

are outlined in agreements among the applicable ANR Entities).  These transactions include, for

example, transactions under service agreements, trucking and loading transactions, processing

transactions, certain labor transfers overhead transactions, repairs and maintenance provided by

Maxxim Rebuild.[9]  After all records have been reviewed and any Intercompany Transactions

accounted for, any mutual balances between ANR Entities are netted against one another, with

the remaining intercompany balance carried over into the following year.

23.    The Intercompany Transactions are necessary due to the corporate

structure of the ANR Entities.  Any discontinuation of the Intercompany Transactions would be

---

[9]    The ANR Entities do not impose or pay, as applicable, mark ups on Intercompany Transactions arising
solely from the flow of cash through their Cash Management System, although certain interest is charged
on any intercompany loans.

detrimental to the Debtors' estates because the ANR Entities are dependent upon each other for goods, services and funding for their operations.  The Debtors, thus, submit that continuing the Intercompany Transactions is essential and is to the benefit of the Debtors' respective estates and creditors.[10]

24.    If this Court authorizes the continuation of Intercompany Transactions amounts will be owed from one ANR Entity to another, creating postpetition intercompany claims.  The Debtors will continue to maintain records as they did prior to the Petition Date such that any Intercompany Transaction can be properly accounted for if and as necessary.[11]  To ensure that each individual Debtor will not, at the expense of its particular creditors, fund the operations of another Debtor, the Debtors request that the Court confirm the super-priority administrative expense status of claims among Debtors arising from Inter-Debtor Transactions, subject only to claims with a higher priority pursuant to any interim or final order approving the Debtors' continued use of cash collateral or the DIP Facility.  In addition, the Debtors request that the Court confirm the authority of the ANR Entities to set off mutual prepetition and mutual postpetition claims arising from Intercompany Transactions.

## Argument

### *Continued Use of a Cash Management System Is Warranted*

25.    The Debtors hereby seek authority to continue the collection, concentration, disbursement and investment of cash pursuant to their Cash Management System.

---

[10]    If the Court approves the relief requested in this Motion, each of the Debtors will continue to pay its own obligations consistent with such Debtor's past practice with respect to Intercompany Transactions, and in no event will any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors inconsistent with such past practices.

[11]    In addition, the Debtors will put in place account procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions and provide reasonable access to such records to Citibank, N.A. as administrative agent for the DIP Facility (the "Administrative Agent").

Bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management systems as such Cash Management System may be modified consistent with the DIP Facility, generally treating requests for such relief as a relatively "simple matter." In re Baldwin United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in relevant part, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." Columbia Gas, 997 F.2d at 1061; see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"); Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (holding that the debtors' postpetition use of their prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code).[12]

26.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in those transactions that make up

---

[12]    Because orders approving the continued use of preexisting cash management systems generally are entered at the time of or shortly after the commencement of a bankruptcy case, and because the benefits to affiliated debtors of such systems are widely recognized, few if any requests for the entry of such orders are ever contested. In fact, references to court orders authorizing the continued use of centralized cash management systems generally are found in opinions regarding collateral proceedings, rather than in reported decisions approving or disapproving the use of a particular system. See, e.g., In re FRG, Inc., 107 B.R. 461, 465 (Bankr. S.D.N.Y. 1989) (involving motion to transfer venue, but referring to an order authorizing the debtors to continue to utilize their prepetition cash management system).

the bulk of its day-to-day operations without incurring the excessive monitoring costs that would

result from the need to provide notice of, and obtain approval for, such ordinary course activities.

See, e.g., In re Dornier Aviation (N. Am.), Inc., No. 02-82003 (SSM), 2002 WL 31999222,

at *7–8 (Bankr. E.D. Va. Dec. 18, 2002) (citing In re Roth Am., Inc., 975 F.2d 949, 952

(3d Cir. 1992)); see also Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379,

384 (2d Cir. 1997).

27.    Within the purview of section 363(c) of the Bankruptcy Code, a debtor in

possession is authorized to continue the "routine transactions" associated with its cash

management system.  Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d

1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) of

the Bankruptcy Code to continue the collection, concentration, investment and disbursement of

cash pursuant to the Cash Management System.

28.    The Cash Management System constitutes an ordinary course and

essential business practice of the Debtors.  It provides significant benefits to the Debtors' estates

including, among other things, the ability to (a) control and monitor corporate funds, (b) invest

idle cash, (c) ensure the maximum availability of funds when and where necessary and

(d) reduce costs and administrative expenses by facilitating the movement of funds and the

development of timely and accurate account balance and presentment information.  The smooth

operation of the Debtors' business requires the continuation of the Cash Management System

during the pendency of these chapter 11 cases.

29.    Moreover, as a practical matter, it would be difficult, expensive, disruptive

and administratively burdensome to require the Debtors to close all of their existing Bank

Accounts and open new, segmented debtor-in-possession bank accounts for each Debtor entity at

the very outset of these bankruptcy cases as required by the UST Operating Guidelines.[13]
To protect against the possible inadvertent payment of prepetition claims, the Debtors
immediately will advise their banks not to honor checks issued prior to the Petition Date, except
as otherwise expressly permitted by an order of the Court and directed by the Debtors.
The Debtors, moreover, have the capacity to draw the necessary distinctions between prepetition
and postpetition obligations and payments without closing all of their Bank Accounts and
opening new ones.

30.   In addition, preserving a "business as usual" atmosphere and avoiding the
unnecessary distractions that inevitably would be associated with any substantial disruption of
the Cash Management System will (a) facilitate the Debtors' stabilization of their postpetition
operations and (b) maximize value for stakeholders by allowing the Debtors and the Operating
Companies to continue their operations without disruption.  Accordingly, maintaining the
existing Cash Management System is not only essential, but is in the best interest of creditors
and other parties in interest.[14]

31.   The continued postpetition use of cash management systems similar to that
requested here has been approved as a routine matter in other chapter 11 cases in this District.
See, e.g., In re Health Diagnostic Lab., Inc., No. 15-32919 (KRH) (Bankr. E.D. Va. July 1, 2015);
In re Patriot Coal Corp., No. 15-32450 (KLP) (Bankr. E.D. Va. May 13, 2015); In re James
River Coal Co., No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 15, 2014); In re AMF Bowling

---

[13]   Under the UST Operating Guidelines, "[t]he debtor in possession must immediately close its existing bank accounts and establish three new accounts as of the date of the filing of the bankruptcy case."  These three accounts consist of a general expense account, a payroll account and a tax escrow account.  UST Operating Guidelines, at 4.

[14]   As a matter of course, the Debtors will continue to maintain current records with respect to all transfers of cash, so that all transactions can be readily ascertained, traced and recorded properly on applicable intercompany accounts.

Worldwide, Inc., No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); In re RoomStore, Inc.,

No. 11-37790 (DOT) (Bankr. E.D. Va. Dec. 14, 2011); In re Workflow Mgmt., Inc.,

No. 10-74617 (SCS) (Bankr. E.D. Va. Sept. 30, 2010); In re Bear Island Paper Co.,

No. 10-31202 (DOT) (Bankr. E.D. Va. Apr. 21, 2010); In re Movie Gallery, Inc., No. 10-30696

(DOT) (Bankr. E.D. Va. Feb. 3, 2010); In re Canal Corp. f/k/a Chesapeake Corp., No. 08-36642

(DOT) (Bankr. E.D. Va. Dec. 30, 2008); In re Circuit City Stores, Inc., No. 08-35653 (KRH)

(Bankr. E.D. Va. Nov. 10, 2008); In re US Airways, Inc., No. 04-13819 (SSM) (Bankr. E.D. Va.

Sept. 14, 2004).[15]

***Request for Interim Waiver of the Requirements of Section 345 of the Bankruptcy Code***

32.     Section 345 of the Bankruptcy Code governs a debtor's cash deposits

during a chapter 11 case and authorizes deposits of money as "will yield the maximum

reasonable net return on such money, taking into account the safety of such deposit or

investment." 11 U.S.C. § 345(a). For deposits that are not "insured or guaranteed by the United

States or by a department, agency, or instrumentality of the United States or backed by the full

faith and credit of the United States," section 345(b) of the Bankruptcy Code requires the estate

to obtain from the entity with which the money is deposited a bond in favor of the United States

and secured by the undertaking of an adequate corporate surety, unless the Court for cause orders

otherwise.[16] In addition, the UST Operating Guidelines require, among other things, that a

---

[15]     The unreported orders listed in the text above are not attached to this Motion. Copies of these orders will
be made available to the Court and other parties upon request made to counsel to the Debtors.

[16]     In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C.
§ 9303. Section 9303 provides that when a person is required by law to give a surety bond, that person, in
lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the
Treasury, as an acceptable substitute for a surety bond.

debtor maintain its postpetition bank accounts at depository institutions on a pre-approved list

issued by the U.S. Trustee (collectively, the "Authorized Depository Institutions").[17]

33.     In 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated

debtors," Congress amended section 345(b) of the Bankruptcy Code to provide that its strict

investment requirements may be waived or modified if the Court so orders "for just cause."

140 Cong. Rec. H 10,767 (Oct. 4, 1994), 1994 WL 545773.  In In re Serv. Merch. Co.,

240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999), the court identified a number of factors to be

considered when determining whether cause exists to waive the requirements of section 345(b)

of the Bankruptcy Code, including:  (a) the sophistication of the debtor's business; (b) the bank

ratings of the financial institutions where the debtor's funds are held; and (c) the benefit to the

debtor of current practices.  See Service Merch., 240 B.R. at 896.

34.     The Debtors believe that cause exists justifying a waiver of section 345(b)

of the Bankruptcy Code in this case.  Substantially all of the Debtors' Concentration Accounts,

Lockbox Accounts, Payroll Accounts and Operating Accounts and the majority of the Debtors'

Investment Accounts, Petty Cash Accounts and Other Accounts are held at Authorized

Depository Institutions, including BAML, BB&T and PNC Bank, among others.  Moreover, with

the exception of the Managed Securities Accounts, all of the Debtors' domestic Bank Accounts

are insured by the United States through the Federal Deposit Insurance Corporation (the "FDIC").

In addition, the Banks generally are large, well-known and well-capitalized institutions.

35.     As noted above, the Debtors maintain Foreign Accounts in Switzerland to

support the operations of their foreign Non-Debtor Affiliates, pursuant to the terms of service

---

[17]     It is the Debtors' understanding that Authorized Depository Institutions generally have agreed to comply
with the bonding requirements of section 345 of the Bankruptcy Code pursuant to depository agreements
with the U.S. Trustee.

agreements among the Debtors and the foreign Non-Debtor Affiliates.  In the ordinary course of

their business, the Debtors typically maintain relatively small balances in the Foreign Accounts,

generally less than $60,000 in the aggregate.  Moreover, just as with respect to their domestic

Bank Accounts, UBS, the Bank that holds the Debtors' active Foreign Accounts is large, well

known and well capitalized.  In fact, UBS is the 20th largest bank in the world according to

Forbes, has existed for more than 150 years and operates in 56 countries globally.  Given the

relatively de minimis amount involved, the Debtors submit that cause exists to waive the

applicable requirements of section 345 of the Bankruptcy Code and the UST Operating

Guidelines with respect to the Debtors' Foreign Accounts.

36.    Although the Money Market Account is federally insured, the balance in

the Money Market Account routinely exceeds the $250,000 limit of insurance coverage provided

by the FDIC.  Nevertheless, the Debtors believe that cause exists justifying the Debtors'

continued use of the Money Market Account.  Funds in the Money Market Account are invested

prudently in accordance with the Board-approved Investment Policy, which specifies parameters

designed to (a) preserve principal, (b) maintain a high degree of liquidity and (c) deliver

competitive after-tax returns subject to prevailing market conditions.  In other words, an

investment in the Money Market Account carries minimal credit risk.  Moreover, the Debtors are

part of a large, sophisticated enterprise and have an experienced treasury team in place that has

determined that investment in the Money Market Account pursuant to the Investment Policy will

benefit the Debtors and the value of the Debtors' estates.

37.    For the reasons set forth above, the Debtors believe that "cause" exists to

waive the applicable requirements of section 345 of the Bankruptcy Code and the relevant

provisions of the UST Operating Guidelines with respect to any of their Bank Accounts that are

not, as a technical matter, compliant with section 345 of the Bankruptcy Code or held at

Authorized Depository Institutions.  Nevertheless, by this Motion, the Debtors request only that

they be granted an interim waiver of 45 days to comply with the requirements of section 345 of

the Bankruptcy Code or else to seek further relief from the Court.

***Permitting Continued Intercompany Transactions
and Granting Super-Priority Administrative Expense Status
to Amounts Arising from Inter-Debtor Transactions is Appropriate***

38.    As described above, central to the Debtors' operations are a variety of

ordinary course Intercompany Transactions.  It is, therefore, imperative that the Debtors be

permitted to continue to engage in the Intercompany Transactions during these bankruptcy cases.

In particular, if ANR cannot continue to provide funding to certain of the other ANR Entities

from the Main Concentration Account:  (a) they will lack sufficient funds to pay the costs

associated with their operations, including paying their employees and providing the shared

services necessary to the operation of the Debtors' business; and (b) they may not have sufficient

funds to maintain their corporate existence.

39.    If this Court authorizes the continuation of the Intercompany Transactions,

at any given time there may be balances due and owing from one ANR Entity to another.

These balances represent extensions of intercompany credit.  The Debtors will continue to

maintain records of all Intercompany Transactions, including records of all investments by ANR

in other ANR Entities, if any, and current intercompany accounts receivable and payable.

In addition, as set forth above, the Debtors will put in place account procedures to identify and

distinguish between prepetition and postpetition Intercompany Transactions and provide

reasonable access to such records to the Administrative Agent.

40.    In addition, the Debtors respectfully request that, pursuant to

section 503(b)(1) of the Bankruptcy Code, all claims arising from Inter-Debtor Transactions

occurring after the Petition Date be accorded super-priority administrative expense status, subject

only to claims with a higher priority pursuant to any interim or final order approving the Debtors'

continued use of cash collateral or the DIP Facility.  According such status to claims arising from

Inter-Debtor Transactions will ensure that each separate Debtor will continue to bear ultimate

payment responsibility for its respective liabilities.[18]

41.    Finally, the Bankruptcy Code also provides a debtor in possession the

freedom to obtain unsecured credit and incur unsecured debt in the ordinary course of business

without a notice and a hearing. 11 U.S.C. § 364(a); see also In re Amdura Corp., 75 F.3d at 1453

("The freedom to continue operation includes the freedom to obtain unsecured credit and to incur

unsecured debt in the ordinary course of business."); In re Lite Coal Mining Co., 122 B.R. 692,

695 (W.D. Va. 1990).  The Debtors therefore seek authorization, to the extent necessary, to

obtain unsecured credit in connection with the Inter-Debtor Transactions and incur unsecured

debt in connection with the Inter-Debtor Transactions and the Inter-Affiliate Transactions in the

ordinary operation of their Cash Management System.

42.    The continuation of intercompany transactions, including intercompany

transactions with non-debtor affiliates to preserve and protect the value of a debtor's enterprise,

and granting administrative expense or super-priority administrative expense status for such

transactions, as requested here, has been granted in other chapter 11 cases in this District.

See, e.g., In re Health Diagnostic Lab., Inc., No. 15-32919 (KRH) (Bankr. E.D. Va. July 1, 2015)

(authorizing the continuation of intercompany transactions and granting administrative expense

priority to intercompany claims); In re Patriot Coal Corp., No. 15-32450-KLP (Bankr. E.D. Va.

_____

[18]    By this Motion, the Debtors do not request that claims of Non-Debtor Affiliates on account of
Inter-Affiliate Transactions be accorded administrative expense status.  The relief requested herein is not
intended to affect the rights of the Non-Debtor Affiliates to seek administrative expense status for claims
arising from Inter-Affiliate Transactions, which rights shall be fully preserved.

May 13, 2015) (same); <u>In re James River Coal Co.</u>, No. 14-31848 (Bankr. E.D. Va. Apr. 10,

2014) (authorizing the continuation of intercompany transactions and granting super-priority

administrative expense status to postpetition intercompany claims); <u>In re Movie Gallery, Inc.</u>,

No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010) (authorizing the continuation of

intercompany transactions including among nondebtor subsidiaries and granting administrative

expense status to intercompany claims); <u>In re Canal Corp. f/k/a Chesapeake Corp.</u>, No. 08-36642

(DOT) (Bankr. E.D. Va. Dec. 30, 2008) (authorizing the continuation of intercompany

transactions including among foreign nondebtor subsidiaries and granting administrative expense

status to intercompany claims); <u>In re Circuit City Stores, Inc.</u>, No. 08-35653 (KRH) (Bankr. E.D.

Va. Nov. 10, 2008) (authorizing the continuation of intercompany transactions including among

nondebtor subsidiaries and granting super-priority administrative expense status to intercompany

claims).

### *Preserving and Permitting the Exercise of*
### *Intercompany Setoff Rights is Appropriate*

43.     The Debtors also seek authorization to preserve and exercise setoff rights

among ANR Entities that arise through the operation of their Cash Management System.

Section 553(a) of the Bankruptcy Code provides that:

> Except as otherwise provided in this section and in sections 362
> and 363 of this title, this title does not affect any right of a creditor
> to offset a mutual debt owing by such creditor to the debtor that
> arose before the commencement of the case under this title against
> a claim of such creditor against the debtor that arose before the
> commencement of the case ….

11 U.S.C. § 553(a).

44.     To enforce a right of set-off, a creditor need establish only two facts:

mutuality and timing.  <u>See</u> <u>Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co.</u>

<u>(In re The Bennett Funding Group, Inc.)</u>, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997); <u>In re Lehman</u>

Bros. Inc., 458 B.R. 134, 139-40 (Bankr. S.D.N.Y. 2011); In re Koch, 224 B.R. 572, 576 (Bankr.

E.D. Va. 1998); In re Grannan, No. 01-51154-S, 2002 WL 1760824, at *2 (Bankr. E.D. Va. June

20, 2002); see also In re Verco Indus., 704 F.2d 1134, 1139 (9th Cir. 1983); In re Lundell Farms,

86 B.R. 582, 584 (Bankr. W.D. Wis. 1988).  Although courts have not uniformly defined the

elements of mutuality, most courts require that the debts are owed (a) between the same parties

and (b) in the same right or capacity.  See 5 Collier on Bankruptcy ¶ 553.03[3] (Alan N. Resnick

& Henry J. Sommer eds., 16th ed. rev. 2010); Koch, 224 B.R. at 576; Lubman v. Sovran

Bank, N.A. (In re A & B Homes, Ltd.), 98 B.R. 243, 248 (Bankr. E.D. Va. 1989); see also Cohen

v. Savs. Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54,

57 (3d Cir. 1990) (explaining that the right of setoff depends on the existence of mutual debts

and claims between the creditor and debtor).  Timing requires that both claims arise prepetition.

E.g., Koch, 224 B.R. at 576; Cooper Jarrett, Inc. v. Cent. Transp., Inc., 726 F.2d 93, 96

(3d Cir. 1984) (noting that a creditor may not [setoff] its prepetition claims against a debt owed

to a debtor which came into existence after filing the bankruptcy petition).  In other words,

"a creditor may not set off a prepetition claim against a post-petition debt it owes the debtor, and

likewise it may not set off a post-petition claim that it has against a prepetition debt it owes to a

debtor." Arnold M. Quittner, Setoff & Recoupment, 715 PLI/Comm 663, 694 (1995) (citing

Metco Mining & Minerals, Inc. v. PBS Coals, Inc. (In re Metco Mining and Minerals, Inc.),

171 B.R. 210 (Bankr. W.D. Pa. 1994)); see also Westchester Structures, 181 B.R. at 739.

　　　　45.　　The Cash Management System and related controls allow the Debtors to

track all obligations owing between related entities and thereby ensure that setoffs will meet both

the mutuality and timing requirements of section 553 of the Bankruptcy Code.  Accordingly, the

Debtors respectfully request that the ANR Entities expressly be authorized to set off mutual

prepetition and mutual postpetition obligations relating to Intercompany Transactions.

***Continued Use of Business Forms, as Modified Hereunder, Is Warranted***

46.     In the ordinary course of their business, the Debtors use a variety of

checks and other business forms (collectively, and as they may be modified, the "Business

Forms").  To avoid a significant disruption to their business operations that would result from a

disruption of the Cash Management System and to avoid unnecessary expense, the Debtors

request that they be authorized to continue to use their Business Forms substantially in the forms

existing immediately before the Petition Date.  In the absence of such relief, the estates will be

required to bear a potentially significant expense that the Debtors respectfully submit is

unwarranted.

47.     Authority to continue the use of business forms as proposed by the

Debtors here, has been granted in numerous other chapter 11 cases in this District.  See, e.g.,

In re Health Diagnostic Lab., Inc., No. 15-32919 (Bankr. E.D. Va. June 10, 2015) (authorizing

the continued use of business forms without reference to the debtors' status as debtors in

possession); In re James River Coal Co., No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 15, 2014)

(same); In re AMF Bowling Worldwide, Inc., No. 12-36495 (KRH) (Bankr. E.D. Va. November

14, 2012) (same); In re Workflow Mgmt., Inc., Case No. 10-74617 (SCS) (Bankr. E.D. Va.

Sept. 30, 2010) (same) In re Bear Island Paper Co., L.L.C., No. 10-31202 (DOT) (Bankr. E.D.

Va. Feb. 25, 2010) (same); In re Canal Corp. f/k/a Chesapeake Corp., No. 08-36642 (KLP)

(Bankr. E.D. Va. Dec. 3, 2008); (same); In re Circuit City Stores, Inc., No. 08-35653 (KRH)

(Bankr. E.D. Va. November 12, 2008) (same).

***Authorization of (A) Banks to Charge Back Returned
Items and (B) the Debtors to Pay Bank Fees Is Warranted***

48.     Concurrently with the filing of this Motion, the Debtors have filed motions

requesting authority to pay, in their discretion and in the ordinary course of their business,

certain prepetition obligations to employees, taxing authorities and other entities.  With respect

to some of this debt, prior to the Petition Date, the Debtors issued checks or initiated drafts, wires

or ACH transfers that may have yet to clear the banking system.  In other cases, the Debtors

would issue the relevant checks or authorize the transfers postpetition on account of such

prepetition debt once the Court entered an order permitting the Debtors to do so.  The Debtors

intend to inform their banks which prepetition checks, drafts, wires or ACH transfers should be

honored pursuant to orders of the Court authorizing such payment.

49.     As a result of the foregoing, the Debtors request their banks and financial

institutions (collectively, the "Banks") be authorized, but not directed, to accept and honor all

representations from the Debtors as to which checks, drafts, wires or ACH transfers should be

honored or dishonored consistent with any order(s) of this Court and governing law, whether

such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition

Date and provided that sufficient funds are available in the applicable accounts to cover such

checks and fund transfers.  Pursuant to the relief requested in this Motion, the Banks shall not be

liable to any party on account of (a) following the Debtors' instructions or representations as to

any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief

that the Court has authorized such prepetition check or item to be honored or (c) an innocent

mistake made despite implementation of reasonable item handling procedures.  Such relief is

reasonable and appropriate because the Banks are not in a position to independently verify or

audit whether a particular item may be paid in accordance with the Court's order or otherwise.

50.     Finally, the Debtors request authority for the Banks to charge and the

Debtors to pay or honor both prepetition and postpetition service and other fees (not including

professional fees), costs, charges and expenses to which the Banks may be entitled under the

terms of and in accordance with their contractual arrangements with the Debtors (collectively,

the "Bank Fees").[19]   The Debtors also request that the Banks be authorized to charge back

returned items to the Bank Accounts in the normal course of business.

51.     The Debtors require this relief to minimize the disruption of the Cash

Management System and their Bank Accounts and to assist them in accomplishing a smooth

transition to operating in chapter 11.  Authority for debtors to pay bank fees and banks to charge

back returned items has been routinely granted in other chapter 11 cases in this District.  See, e.g.,

In re Patriot Coal Corp., No. 15-32450-KLP (Bankr. E.D. Va. May 13, 2015); In re James River

Coal Co., No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 15, 2014); In re AMF Bowling

Worldwide, Inc., No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); In re RoomStore, Inc.,

No. 11-37790 (DOT) (Bankr. E.D. Va. Dec. 14, 2011); In re Bear Island Paper Co.,

No. 10-31202 (DOT) (Bankr. E.D. Va. Apr. 21, 2010); In re Movie Gallery, Inc.,

No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); In re Canal Corp. f/k/a Chesapeake Corp.,

No. 08-36642 (DOT) (Bankr. E.D. Va. Dec. 30, 2008).

**Requests for Immediate Relief and Waiver of Stay**

52.     Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") empowers the Court to grant the relief requested in this Motion within the first 21 days

---

[19]     Total Bank Fees charged to the Debtors by BAML range from $30,000 to $40,000 each year.  These Bank
Fees have historically been offset, however, by the earnings credit rate on the Main Concentration Account,
as described above.

after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable

harm."  Fed. R. Bankr. P. 6003.

53.     As set forth above, the immediate continued use of the Bank Accounts,

Cash Management System and Business Forms and related relief is essential to prevent

immediate and potentially irreparable damage to the Debtors' operations.  Accordingly, the

Debtors submit that ample cause exists to justify immediate payment of any claims as set forth in

this Motion under Bankruptcy Rule 6003.

54.     Pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6004(h), the

Debtors also seek, to the extent they apply, (a) a waiver of the notice requirements under

Bankruptcy Rules 2002(a)(2) and 6004(a) and (b) a waiver of any stay of the effectiveness of the

Interim Order and the Final Order under Bankruptcy Rule 6004(h).

55.     Bankruptcy Rules 2002(a)(2) and 6004(a) require 21 days' notice by mail

of the proposed use of property outside the ordinary course of business, unless the Court orders

otherwise for cause shown.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the

use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days

after entry of the order, unless the court orders otherwise."  As set forth above, any disruption to

the Cash Management System or to Intercompany Transactions likely would cause irreparable

harm to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify:

(a) shortened and limited notice of the Motion with respect to the relief to be granted by the

Interim Order; (b) the immediate entry of the Interim Order granting certain of the relief sought

herein pursuant to Bankruptcy Rule 6003(b); and (c) a waiver of the 14-day stay imposed by

Bankruptcy Rule 6004(h), to the extent that it applies, with respect to both the Interim Order and

the Final Order.

**Debtors' Reservation of Rights**

56.     Nothing contained herein is intended or should be construed as:  (a) an

admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any

other party in interest's rights to dispute any claim on any grounds; (c) a promise to pay any

claim; or (d) a request to assume any executory contract or unexpired lease pursuant to

section 365 of the Bankruptcy Code.

57.     Notwithstanding anything set forth in this Motion, including, without

limitation, the Debtors' request for authority to engage in post-petition Intercompany

Transactions, nothing herein shall constitute a request for a determination regarding the priority

or validity of any prepetition intercompany obligations between and among the ANR Entities,

including without limitation, whether such claims should be recharacterized as equity

contributions.  Nothing in this Motion shall constitute a waiver of any rights, claims or defenses

with respect thereto, all of which are specifically reserved hereby.

**Waiver of Separate Memorandum of Points and Authorities**

58.     The Debtors respectfully request that the Court regard any argument and

citations set forth herein as a written memorandum of facts, reasons and authorities that has been

combined with the relief requested herein, as permitted by Rule 9013-1(G)(1) of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Virginia

(the "Local Bankruptcy Rules").  Alternatively, the Debtors respectfully request that the Court

waive any requirement set forth in Local Bankruptcy Rule 9013-1(G)(1) that this Motion be

accompanied by such a written memorandum.

**Notice**

59.     Notice of this Motion has been given to:  (a) the Office of the United

States Trustee for the Eastern District of Virginia; (b) Davis Polk & Wardwell LLP and

McGuireWoods LLP, as co-counsel to Citibank, N.A., as administrative and collateral agent

under the Debtors' proposed postpetition secured credit facility, and Citicorp North America, Inc.,

as administrative and collateral agent under the Debtors' prepetition secured credit facility;

(c) Kirkland & Ellis LLP, as counsel to the Second Lien Noteholder Group; (d) the indenture

trustees for the Debtors' secured and unsecured notes (and counsel, where known); (e) counsel to

General Electric Credit Corporation, as administrative agent under the Debtors' prepetition

secured accounts receivable facility; (f) the creditors holding the 50 largest unsecured claims

against the Debtors' estates on a consolidated basis; (g) the United Mine Workers of America;

and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of

service.  In light of the nature of the relief requested, the Debtors submit that no further notice is

necessary.

## **No Prior Request**

60.     No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (a) enter the

Interim Order substantially in the form attached hereto as Exhibit C and the Final Order

substantially in the form attached hereto as Exhibit D, granting the relief requested herein; and

(b) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: August 3, 2015               Respectfully submitted,
      Richmond, Virginia

    /s/   Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## <u>EXHIBIT A</u>

**Chart Summarizing the Debtors' Cash Management System**



# **EXHIBIT B**

**Schedule of Prepetition Bank Accounts**

## SCHEDULE OF PREPETITION BANK ACCOUNTS

| NO. | ACCOUNT TYPE | DEBTOR PARTY TO ACCOUNT | BANK[1] | LAST 4 DIGITS OF ACCOUNT NUMBER |
|---|---|---|---|---|
| 1 | Main Concentration Account | ANR | BAML* | 8595 |
| 2 | Maxxim Rebuild concentration account | ANR LLC | BB&T* | 0601 |
| 3 | ZBA Lockbox Account | ANR LLC | BAML* | 8603 |
| 4 | ZBA Lockbox Account | ANR | BAML* | 3314 |
| 5 | ZBA Lockbox Account | ANR | BAML* | 8967 |
| 6 | ZBA Payroll Account | ANR Services | BAML* | 7851 |
| 7 | ZBA Payroll Account | Bandmill Coal Corp. | BAML* | 0891 |
| 8 | ZBA Payroll Account | Cumberland Coal Resources LP | BAML* | 7899 |
| 9 | ZBA Payroll Account | Dickenson Russell Coal Co. LLC | BAML* | 7912 |
| 10 | ZBA Payroll Account | Emerald Coal Resources LP | BAML* | 7931 |
| 11 | ZBA Payroll Account | Goals Coal Co. | BAML* | 0896 |
| 12 | ZBA Payroll Account | Litwar Processing Co. LLC | BAML* | 7979 |
| 13 | ZBA Payroll Account | Omar Mining Co. | BAML* | 0914 |
| 14 | ZBA Payroll Account | Power Mountain Coal Co. | BAML* | 0919 |
| 15 | ZBA Master Disbursement Account | ANR Services | BAML* | 9502 |
| 16 | Maxxim Operating Account | Maxxim Rebuild Co. LLC | BB&T* | 2706 |
| 17 | Rice Proceeds Account | Foundation PA Coal Co., LLC | BAML* | 7254 |
| 18 | Operating Account | ANR LLC | BAML* | 9311 |
| 19 | Operating Account | ANR LLC | BAML* | 9316 |
| 20 | Operating Account | Alpha India, LLC | BAML* | 5585 |
| 21 | Operating Account | New River Energy Corp. | First Community Bank | 6945 |

---

[1]   An asterisk indicates that the bank or financial institution is an authorized depository institution under the UST Operating Guidelines.

| NO. | ACCOUNT TYPE | DEBTOR PARTY TO ACCOUNT | BANK[1] | LAST 4 DIGITS OF ACCOUNT NUMBER |
|---|---|---|---|---|
| 22 | Operating Account | Pennsylvania Land Resources LLC | Wells Fargo* | 7130 |
| 23 | Operating Account | Coal Gas Recovery II, LLC | Wells Fargo* | 7155 |
| 24 | Money Market Account | ANR | BAML* | 0A10 |
| 25 | BB&T Time Deposit | ANR LLC | BB&T* | 1714 |
| 26 | Crédit Agricole Time Deposit | ANR LLC | Crédit Agricole | 3692 |
| 27 | SMBC Time Deposit | ANR LLC | SMBC | 6622 |
| 28 | Investment Account (inactive) | ANR | BAML* | 8906 |
| 29 | Managed Securities Account | ANR LLC | Wells Fargo* | 2600 |
| 30 | Managed Securities Account | ANR LLC | Wells Fargo* | 2602 |
| 31 | Managed Securities Account | ANR LLC | Wells Fargo* | 2605 |
| 32 | Managed Securities Account | ANR LLC | Wells Fargo* | 2606 |
| 33 | Managed Securities Account | ANR LLC | Wells Fargo* | 2607 |
| 34 | Foreign Account | Alpha Natural Resources International, LLC (as successor to Alpha Australia LLC) | ANZ | 5768 |
| 35 | Foreign Account | Alpha European Sales, Inc. | UBS | 1501T |
| 36 | Foreign Account | Alpha European Sales, Inc. | UBS | 1560W |
| 37 | Foreign Account | Alpha European Sales, Inc. | UBS | 1561Q |
| 38 | Petty Cash Account | Alpha Appalachia Services, Inc. | BB&T* | 3914 |
| 39 | Petty Cash Account | Alpha Appalachia Services, Inc. | BB&T* | 3949 |
| 40 | Petty Cash Account | Alpha Appalachia Services, Inc. | United Bank | 1965 |
| 41 | Petty Cash Account | Alpha Coal West Inc. | First National Bank | 1657 |
| 42 | Petty Cash Account | ANR | Bancorp Bank | 9506 |
| 43 | Petty Cash Account | ANR Services | BAML* | 5234 |
| 44 | Petty Cash Account | Logan Cnty Mine Servs, Inc. | BB&T* | 3930 |

| NO. | ACCOUNT TYPE | DEBTOR PARTY TO ACCOUNT | BANK[1] | LAST 4 DIGITS OF ACCOUNT NUMBER |
|---|---|---|---|---|
| 45 | Petty Cash Account | Brooks Run South Mining, LLC | JP Morgan Chase* | 3496 |
| 46 | Petty Cash Account | Brooks Run Mining Co., LLC | First Community | 2576 |
| 47 | Petty Cash Account | Marfork Coal Co. | BB&T* | 3957 |
| 48 | Petty Cash Account | Cumberland Coal Resources, LP | First Federal | 3816 |
| 49 | Petty Cash Account | Elk Run Coal Co., Inc. | Whitesville State Bank | 9690 |
| 50 | Petty Cash Account | Alpha Appalachia Services, Inc. | BB&T* | 3922 |
| 51 | Petty Cash Account | Kingston Mining, Inc. | BB&T* | 1972 |
| 52 | Petty Cash Account | Kingwood Mining Co. | ClearMountain Bank | 7670 |
| 53 | Petty Cash Account | Knox Creek Coal Corp. | BB&T* | 1794 |
| 54 | Petty Cash Account | Maxxim Shared Services, LLC | BB&T* | 6712 |
| 55 | Petty Cash Account | Rockspring Development Inc. | JP Morgan Chase* | 8085 |
| 56 | Other Account (ERRP) | ANR | BAML* | 0946 |
| 57 | Other Account (de minimis payables) | DRIH Corporation | BB&T* | 1730 |
| 58 | Other Account (captive insurance) | Gray Hawk Insurance Co. | PNC Bank* | 2261 |
| 59 | Other Account (captive insurance) | Gray Hawk Insurance Co. | PNC Bank* | 4689 |
| 60 | Other Account (reclamation escrow) | Tri State Leasing Cop Escrow Account | BAML* | 7734 |
| 61 | Other Account (reclamation escrow) | Tri State Leasing Cop Escrow Account | BAML* | 2452 |
| 62 | Other Account (reclamation escrow) | Brooks Run Mining Co. LLC | BB&T* | 1786 |

## **EXHIBIT C**

**Proposed Interim Order**

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

*Proposed Attorneys for Debtors
and Debtors in Possession*

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| In re:<br><br>Alpha Natural Resources, Inc., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-_____ (___)<br><br>(Joint Administration Requested) |

**INTERIM ORDER, PURSUANT TO SECTIONS 345, 363(c)(1), 503(b)(1) AND 553 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003(b) AND 6004(h):  (A) APPROVING THE CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS; (B) GRANTING A WAIVER OF THE REQUIREMENTS OF SECTION 345(b) AND CERTAIN OF THE U.S. TRUSTEE'S OPERATING GUIDELINES; (C) PERMITTING CONTINUED INTERCOMPANY TRANSACTIONS; (D) PRESERVING AND PERMITTING THE EXERCISE OF INTERCOMPANY SETOFF RIGHTS; AND (E) AUTHORIZING BANKS TO HONOR CERTAIN TRANSFERS AND CHARGE CERTAIN FEES AND OTHER AMOUNTS**

This matter coming before the Court on the Motion of Debtors and Debtors in

Possession, Pursuant to Sections 345, 363(c)(1), 503(b)(1) and 553 of the Bankruptcy Code and

Bankruptcy Rules 6003(b) and 6004(h), for Interim and Final Orders:  (A) Approving the

Continued Use of the Debtors' Cash Management System, Bank Accounts and Business Forms;

(B) Granting a Waiver of the Requirements of Section 345(b) and Certain of the U.S. Trustee's

Operating Guidelines; (C) Permitting Continued Intercompany Transactions; (D) Preserving and

Permitting the Exercise of Intercompany Setoff Rights; and (E) Authorizing Banks to Honor

Certain Transfers and Charge Certain Fees and Other Amounts (the "Motion"),[1] filed by the

debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); the

Court having reviewed the Motion and the First Day Declarations and having considered the

statements of counsel with respect to the Motion at a hearing before the Court (the "Hearing");

and the Court having found that (a) the Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) cause exists,

within the meaning of section 345(b) of the Bankruptcy Code, to permit the Debtors to deposit

and invest funds in accordance with their prepetition deposit practices, (e) payment of any

amounts on the terms and conditions described in the Motion, and the continuation of all

Intercompany Transactions, as described in the Motion, is necessary and appropriate to prevent

immediate and irreparable harm to the Debtors' business operations and will serve to protect and

preserve the Debtors' estates for the benefit of all stakeholders and, thus, cause exists to permit

such payments to be made and transactions effectuated immediately notwithstanding Bankruptcy

Rule 6003 and (f) there is good cause to waive the 14-day stay imposed by Bankruptcy

Rule 6004(h) to the extent it is applicable; and the Court having determined that the legal and

factual bases set forth in the Motion and the First Day Declarations and at the Hearing establish

just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2.    The Debtors are authorized to:  (a) maintain the Cash Management System, in substantially the same form as the Cash Management System described in the Motion as it may be modified by the DIP Facility; (b) implement other ordinary course changes to their Cash Management System to the extent permitted by the DIP Facility; provided, however, that no such changes shall authorize the payment by any of the Debtors of prepetition or postpetition obligations owed by any of the other Debtors inconsistent with the Debtors' past practice with respect to intercompany transfers and obligations; and (c) open and close bank accounts, including as necessary or appropriate in connection with the DIP Facility; provided, however, that the Debtors shall open new Bank Accounts only with Authorized Depository Institutions; provided further that the Debtor shall obtain the prior consent of the Administrative Agent of all requests to close any Bank Accounts or open any Bank Accounts while the DIP Facility is still in effect.

3.    The Debtors are authorized, in their reasonable discretion, from and after the Petition Date, to continue to engage in Intercompany Transactions in the ordinary course of business and consistent with the practices in place prior to the Petition Date; provided, however, that each Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to intercompany transfers and obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors inconsistent with such past practices, (b) shall put in place accounting procedures to identify and distinguish between prepetition and postpetition intercompany transactions and (c) shall provide reasonable access to such records to the Administrative Agent.

4.    Pursuant to section 503(b)(1) of the Bankruptcy Code, all claims after the Petition Date from Inter-Debtor Transactions shall be accorded super-priority administrative

expense status, subject only to claims with a higher priority pursuant to any interim or final order

approving the Debtors' continued use of cash collateral or the DIP Facility.  The Debtors shall

continue to maintain current records with respect to all transfers of cash so that all transactions,

including Intercompany Transactions, may be readily ascertained, traced and recorded properly

on applicable intercompany accounts.

5.     Pursuant to section 553 of the Bankruptcy Code, the Debtors are

authorized to set off (a) mutual prepetition obligations relating to Intercompany Transactions and

the Cash Management System and (b) mutual postpetition obligations relating to Intercompany

Transactions through the Cash Management System.

6.     The Debtors are authorized to continue to use their Business Forms

substantially in the forms existing immediately before the Petition Date.  The Debtors are

authorized to utilize their current business forms without reference to their status as debtors in

possession.

7.     Except as provided in paragraph 8 below, the Debtors are authorized to

deposit and hold their funds in accordance with their prepetition deposit practices, as they may

be modified in connection with the DIP Facility, and the Debtors' banks (the "Banks") are

authorized, but not directed, to honor the Debtors' request to invest the Debtors' funds in

accordance with their prepetition deposit practices, provided that sufficient funds are available in

the applicable accounts to cover such request.

8.     The Debtors shall have 45 days to comply with the requirements of

section 345 of the Bankruptcy Code; provided that the Debtors must comply with section 345 of

the Bankruptcy Code only to the extent that any of the Debtors' cash is not held either in (a) a

Bank Account that is not an Authorized Depository under the UST Operating Guidelines or (b) a

Bank Account that is not insured by the FDIC or the cash in a Bank Account that is not an

Authorized Depository exceeds at any point in time the applicable FDIC insurance limits.

Within 45 days of the entry of this Interim Order, if the requirements of section 345 of the

Bankruptcy Code have not been met with respect to any Bank Account, the Debtors shall seek

further relief from the Court to the extent necessary.

9.      The Banks are authorized, but not directed, to accept and honor all

representations from the Debtors as to which checks, drafts, wires or ACH transfers should be

honored or dishonored consistent with any order(s) of this Court and governing law, whether

such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition

Date provided that sufficient funds are available with such Bank to make the payments.

The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or

representations as to any order of this Court, (b) the honoring of any prepetition check or item in

a good faith belief that the Court has authorized such prepetition check or item to be honored or

(c) an innocent mistake made despite implementation of reasonable item handling procedures.

10.      The Banks are authorized to charge, and the Debtors are authorized to pay

or honor the Bank Fees.  The Banks also are authorized to charge back returned items to the

Bank Accounts in the normal course of business, regardless of whether such items were

deposited prepetition or postpetition or relate to prepetition or postpetition items.  The Debtors

shall reimburse the Banks for any claim arising prior to or after the Petition Date in connection

with any items returned to the Bank Accounts in the normal course of business.

11.      Nothing in the Motion or this Interim Order, nor the Debtors' payment of

claims pursuant to this Interim Order, shall be deemed or construed as:  (a) an admission as to

the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in

interest's rights to dispute any claim on any grounds; (c) a promise to pay any claim; or (d) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

12.    Notwithstanding anything set forth in the Motion or this Interim Order, including, without limitation, the authority granted to the Debtors to engage in postpetition Intercompany Transactions pursuant to this Interim Order, nothing in this Interim Order shall constitute a finding or determination regarding the validity of any prepetition intercompany obligations between and among the ANR Entities, including, without limitation, whether such claims should be recharacterized as equity contributions.  Nothing in this Interim Order shall constitute a waiver of any rights, claims or defenses with respect thereto, all of which are specifically reserved hereby.

13.    Any payment from a Bank Account at the request of the Debtors made by any of the Banks prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued prior to the Petition Date by any of the Banks on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from such Bank Account prepetition.

14.    All obligations of the Debtors and any of their non-Debtor subsidiaries or affiliates incurred to any of the Banks or the Debtors' proposed postpetition secured lenders or any of their respective affiliates (each a "Senior Obligee") before or after the Petition Date that result from ordinary course transactions under the Cash Management System shall continue to be secured by any cash collateral to the extent provided for in any account agreements between the Debtors and any Senior Obligee.

15.     Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall, for the purposes of this Interim Order, be deemed a prepetition Bank Account (as if it had been opened prior to the Petition Date and listed in Exhibit B), any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Interim Order.

16.     Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

17.     To the extent any of the Banks have valid and enforceable rights of setoff or liens in cash present in a Bank Account on the Petition Date, and to the extent such cash is thereafter used by such Debtor subject to further agreement between the Debtor and such Bank, such Bank will receive adequate protection as set forth in the DIP Order.

18.     For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in possession financing facility or be deemed to authorize the Debtors to violate the terms of such financing facility.

19.     As soon as practicable after the entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on those Banks that make disbursements pursuant to the Debtors' Cash Management System and counsel for the Administrative Agent.

20.     The Debtors shall, within two business days of the date of entry of this Interim Order, serve by United States mail, first-class postage prepaid, copies of the Motion, this Interim Order and a notice of the final hearing on the Motion (the "Final Hearing") to be held on [_____], 2015 at __:__ _.m. (ET) on (a) the Office of the United States Trustee for the

Eastern District of Virginia; (b) Davis Polk & Wardwell LLP and McGuireWoods LLP, as

co-counsel to Citibank, N.A., as administrative and collateral agent under the Debtors' proposed

postpetition secured credit facility, and Citicorp North America, Inc., as administrative and

collateral agent under the Debtors' prepetition secured credit facility; (c) Kirkland & Ellis LLP,

as counsel to the Second Lien Noteholder Group; (d) the indenture trustees for the Debtors'

secured and unsecured notes (and counsel, where known); (e) counsel to General Electric Credit

Corporation, as administrative agent under the Debtors' prepetition secured accounts receivable

facility; (f) the creditors holding the 50 largest unsecured claims against the Debtors' estates on a

consolidated basis; (g) the United Mine Workers of America; and (h) any party that has

requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

21.    Any objection to granting of the relief requested by the Motion on a final

basis (an "Objection") shall be filed with the Court and served so as to be received by

4:00 p.m. (ET), on or before _____, 2015 (the "Objection Deadline"), upon:

(a) the Office of the United States Trustee for the Eastern District of Virginia 701 East Broad

Street, Suite 4304, Richmond, Virginia  23219 (Attn:  Robert Van Arsdale, Esq. and Hugh M.

Bernstein, Esq.); (b)(i) the Debtors, c/o Alpha Natural Resources, Inc., One Alpha Place,

P.O. Box 16429, Bristol, Virginia  24209 (Attn:  Richard H. Verheij, Esq., General Counsel);

(ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio  44114 (Attn:  Carl E.

Black, Esq. and Thomas A. Wilson, Esq.); and (iii) Hunton & Williams LLP, Riverfront Plaza,

East Tower, 951 East Byrd Street, Richmond, Virginia  23219 (Attn:  Tyler P. Brown, Esq.);

(c) co-counsel to the administrative and collateral agent under the proposed postpetition credit

facility and the administrative and collateral agent under the Debtors' prepetition secured credit

facility, (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York  10017

(Attn:  Damian S. Schaible, Esq. and Damon P. Meyer, Esq.) and (ii) McGuireWoods LLP,

Gateway Plaza, 800 East Canal Street, Richmond, Virginia  23219 (Attn:  Dion W. Hayes, Esq.,

Sarah B. Boehm, Esq. and K. Elizabeth Sieg, Esq.); and (d) counsel to the Second Lien

Noteholder Group, Kirkland & Ellis LLP, (i) 601 Lexington Avenue, New York,

New York  10022 (Attn:  Stephen E. Hessler, Esq. and Brian E. Schartz, Esq.) and (ii) 300 North

LaSalle, Chicago, Illinois  60654 (Attn:  Gregory F. Pesce, Esq.).

   22.  A reply to any Objection may be filed by no later than 4:00 p.m. on the

date that is two days prior to the date of the Final Hearing.

   23.  If no objections are timely filed and served as set forth herein, the Debtors

shall, on or after the Objection Deadline, submit to the Court a final order substantially in the

form of the Final Order attached to the Motion, which Order may be entered with no further

notice or opportunity to be heard afforded to any party.

   24.  The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

   25.  Notwithstanding the possible applicability of Bankruptcy Rule 6004(h),

this Interim Order shall be immediately effective and enforceable upon its entry.

   26.  The requirement under Local Bankruptcy Rule 9013-1(G) to file a

memorandum of law in connection with the Motion is hereby waived to the extent necessary.

   27.  The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Interim Order.

28.    This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Interim Order.


Dated: _____, 2015
      Richmond, Virginia                                    _____
                                UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

   /s/   Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

   /s/   Henry P. (Toby) Long, III

-11-

## EXHIBIT D

**Proposed Final Order**

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)

*Proposed Attorneys for Debtors
and Debtors in Possession*

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**FINAL ORDER, PURSUANT TO SECTIONS 345,
363(c)(1), 503(b)(1) AND 553 OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 6003(b) AND 6004(h): (A) APPROVING
THE CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM,
BANK ACCOUNTS AND BUSINESS FORMS; (B) GRANTING A WAIVER OF THE
REQUIREMENTS OF SECTION 345(b) AND CERTAIN OF THE U.S. TRUSTEE'S
OPERATING GUIDELINES; (C) PERMITTING CONTINUED INTERCOMPANY
TRANSACTIONS; (D) PRESERVING AND PERMITTING THE EXERCISE OF
INTERCOMPANY SETOFF RIGHTS; AND (E) AUTHORIZING BANKS TO HONOR
CERTAIN TRANSFERS AND CHARGE CERTAIN FEES AND OTHER AMOUNTS**

This matter coming before the Court on the Motion of Debtors and Debtors in

Possession, Pursuant to Sections 345, 363(c)(1), 503(b)(1) and 553 of the Bankruptcy Code and

Bankruptcy Rules 6003(b) and 6004(h), for Interim and Final Orders: (A) Approving the

Continued Use of the Debtors' Cash Management System, Bank Accounts and Business Forms;

(B) Granting a Waiver of the Requirements of Section 345(b) and Certain of the U.S. Trustee's

Operating Guidelines; (C) Permitting Continued Intercompany Transactions; (D) Preserving and

Permitting the Exercise of Intercompany Setoff Rights; and (E) Authorizing Banks to Honor

Certain Transfers and Charge Certain Fees and Other Amounts (the "Motion"),[1] filed by the

debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); the

Court having reviewed the Motion and the First Day Declarations and having considered the

statements of counsel with respect to the Motion at a hearing before the Court (the "Hearing");

and the Court having found that (a) the Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) cause exists,

within the meaning of section 345(b) of the Bankruptcy Code, to permit the Debtors to deposit

and invest funds in accordance with their prepetition deposit practices, (e) payment of any

amounts on the terms and conditions described in the Motion, and the continuation of all

Intercompany Transactions as described in the Motion, is necessary and appropriate to prevent

immediate and irreparable harm to the Debtors' business operations and will serve to protect and

preserve the Debtors' estates for the benefit of all stakeholders and (f) there is good cause to

waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; and the

Court having determined that the legal and factual bases set forth in the Motion and the First Day

Declarations and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.       The Motion is GRANTED on a final basis as set forth herein.

2.       The Debtors are authorized to:  (a) maintain the Cash Management System,

in substantially the same form as the Cash Management System described in the Motion as it

---

[1]       Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

may be modified by the DIP Facility; (b) implement other ordinary course changes to their Cash

Management System to the extent permitted by the DIP Facility; provided, however, that no such

changes shall authorize the payment by any of the Debtors of prepetition or postpetition

obligations owed by any of the other Debtors inconsistent with the Debtors' past practice with

respect to intercompany transfers and obligations; and (c) open and close bank accounts,

including as necessary or appropriate in connection with the DIP Facility; provided, however,

that the Debtors shall open new Bank Accounts only with Authorized Depository Institutions;

provided further that the Debtor shall obtain the prior consent of the Administrative Agent of all

requests to close any Bank Accounts or open any Bank Accounts while the DIP Facility is still in

effect.

   3.  The Debtors are authorized, in their reasonable discretion, from and after

the Petition Date, to continue to engage in Intercompany Transactions in the ordinary course of

business and consistent with the practices in place prior to the Petition Date; provided, however,

that each Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past

practice with respect to intercompany transfers and obligations, and in no event shall any of the

Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other

Debtors inconsistent with such past practices, (b) shall put in place accounting procedures to

identify and distinguish between prepetition and postpetition intercompany transactions and

(c) shall provide reasonable access to such records to the Administrative Agent.

   4.  Pursuant to section 503(b)(1) of the Bankruptcy Code, all claims after the

Petition Date from Inter-Debtor Transactions shall be accorded super-priority administrative

expense status, subject only to claims with a higher priority pursuant to any interim or final

orders approving the DIP Facility.  The Debtors shall continue to maintain current records with

respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced and recorded properly on applicable intercompany accounts.

5.      Pursuant to section 553 of the Bankruptcy Code, the Debtors are authorized to set off (a) mutual prepetition obligations relating to Intercompany Transactions and the Cash Management System and (b) mutual postpetition obligations relating to Intercompany Transactions through the Cash Management System.

6.      The Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date.  The Debtors are authorized to utilize their current business forms without reference to their status as debtors in possession.

7.      Except as provided in paragraph 8 below, the Debtors are authorized to deposit and hold their funds in accordance with their prepetition deposit practices, as they may be modified in connection with the DIP Facility, and the Debtors' banks (the "Banks") are authorized, but not directed, to honor the Debtors' request to invest the Debtors' funds in accordance with their prepetition deposit practices, provided that sufficient funds are available in the applicable accounts to cover such request.

8.      The Debtors shall have 45 days from the date of entry of the Interim Order to comply with the requirements of section 345 of the Bankruptcy Code; provided that the Debtors must comply with section 345 of the Bankruptcy Code only to the extent that any of the Debtors' cash is not held either in (a) a Bank Account that is not an Authorized Depository under the UST Operating Guidelines or (b) a Bank Account that is not insured by the FDIC or the cash in a Bank Account that is not an Authorized Depository exceeds at any point in time the applicable FDIC insurance limits.  Within 45 days of the entry of the Interim Order, if the

requirements of section 345 of the Bankruptcy Code have not been met with respect to any Bank

Account, the Debtors shall seek further relief from the Court to the extent necessary.

9.    The Banks are authorized, but not directed, to accept and honor all

representations from the Debtors as to which checks, drafts, wires or ACH transfers should be

honored or dishonored consistent with any order(s) of this Court and governing law, whether

such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition

Date, provided that sufficient funds are available with such Banks to make the payments.

The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or

representations as to any order of this Court, (b) the honoring of any prepetition check or item in

a good faith belief that the Court has authorized such prepetition check or item to be honored or

(c) an innocent mistake made despite implementation of reasonable item handling procedures.

10.    The Banks are authorized to charge, and the Debtors are authorized to pay

or honor the Bank Fees.  The Banks also are authorized to charge back returned items to the

Bank Accounts in the normal course of business, regardless of whether such items were

deposited prepetition or postpetition or relate to prepetition or postpetition items.  The Debtors

shall reimburse the Banks for any claim arising prior to or after the Petition Date in connection

with any items returned to the Bank Accounts in the normal course of business.

11.    Nothing in the Motion or this Final Order, nor the Debtors' payment of

claims pursuant to this Final Order, shall be deemed or construed as:  (a) an admission as to the

validity of any claim against the Debtors; (b) a waiver of the Debtors' or any other party in

interest's rights to dispute any claim on any grounds; (c) a promise to pay any claim; or (d) a

request to assume any executory contract or unexpired lease, pursuant to section 365 of the

Bankruptcy Code.

-5-

12.     Notwithstanding anything set forth in the Motion or this Final Order, including, without limitation, the authority granted to the Debtors to engage in postpetition Intercompany Transactions pursuant to this Final Order, nothing in this Final Order shall constitute a finding or determination regarding the validity of any prepetition intercompany obligations between and among the ANR Entities, including, without limitation, whether such claims should be recharacterized as equity contributions.  Nothing in this Final Order shall constitute a waiver of any rights, claims or defenses with respect thereto, all of which are specifically reserved hereby.

13.     Any payment from a Bank Account at the request of the Debtors made by any of the Banks prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued prior to the Petition Date by any of the Banks on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from such Bank Account prepetition.

14.     All obligations of the Debtors and any of their non-Debtor subsidiaries or affiliates incurred to any of the Banks or the Debtors' proposed postpetition secured lenders or any of their respective affiliates (each a "Senior Obligee") before or after the Petition Date that result from ordinary course transactions under the Cash Management System shall continue to be secured by any cash collateral to the extent provided for in any account agreements between the Debtors and any Senior Obligee.

15.     Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall, for the purposes of this Final Order, be deemed a prepetition Bank Account (as if it had been opened prior to the Petition Date and listed in Exhibit B), any and all Banks at

-6-

which such accounts are opened shall similarly be subject to the rights and obligations of this
Interim Order.

16.     Nothing contained herein shall prevent the Banks from modifying or
terminating any Bank Accounts or related services in accordance with the agreements governing
such accounts or services.

17.     To the extent any of the Banks have valid and enforceable rights of setoff
or liens in cash present in a Bank Account on the Petition Date, and to the extent such cash is
thereafter used by such Debtor subject to further agreement between the Debtor and such Bank,
such Bank will receive adequate protection as set forth in the DIP Order.

18.     For the avoidance of doubt, nothing herein shall modify, alter or otherwise
affect the rights or remedies of the agent or the lenders under the Debtors' postpetition debtor in
possession financing facility.

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h),
this Final Order shall be immediately effective and enforceable upon its entry.

20.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a
memorandum of law in connection with the Motion is hereby waived to the extent necessary

21.     The Debtors are authorized and empowered to take any and all actions
necessary to implement the relief granted in this Final Order.

22.     This Court shall retain exclusive jurisdiction over any and all matters
arising from or related to the implementation or interpretation of this Final Order.


Dated: _____, 2015         _____
       Richmond, Virginia                   UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

____/s/____ Henry P. (Toby) Long, III_____
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218

David G. Heiman (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Thomas A. Wilson (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

____/s/____ Henry P. (Toby) Long, III_____

-8-