JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., et al., | Case No. 15-33896 (KRH) |
| Debtors. | (Jointly Administered) |

## APPLICATION OF THE DEBTORS, PURSUANT TO
## SECTIONS 327(a), 328(a) AND 1107(b) OF THE BANKRUPTCY CODE,
## BANKRUPTCY RULE 2014(a) AND LOCAL BANKRUPTCY RULE 2014-1, FOR
## AN ORDER AUTHORIZING THEM TO RETAIN AND EMPLOY MCKINSEY
## RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS TURNAROUND
## ADVISOR FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

Alpha Natural Resources, Inc. ("ANR") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), respectfully

represent as follows:

### Background

1.      On August 3, 2015 (the "Petition Date"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code").  By order of the Court (Docket No. 129), the

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the amended declarations of (a) Kevin S. Crutchfield, Chief Executive Officer and Chairman of the Board of Directors of ANR (Docket No. 45), and (b) Philip J. Cavatoni, Executive Vice President and Chief Financial and Strategy Officer of ANR (Docket No. 46), each of which was filed on the Petition Date.

## Jurisdiction

3.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4.      Pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code, Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the Eastern District of Virginia (the "Local Bankruptcy Rules"), the Debtors hereby seek the entry of an order (a) authorizing the employment and retention of McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS")[1] as turnaround advisor to the Debtors in these chapter 11 cases, effective as

---

[1]      Members of McKinsey RTS, as such term is used in this Application, include colleagues in McKinsey RTS who provide recovery and transformation services worldwide.

of the Petition Date, in accordance with the terms and conditions set forth in the engagement

letter, dated June 29, 2015, between the Debtors and McKinsey RTS (the "Prepetition

Agreement"), as amended and restated pursuant to a letter agreement, dated August 3, 2015,

between the Debtors and McKinsey RTS (the "Engagement Letter"), a copy of which is attached

hereto as Exhibit A; and (b) approving the terms of McKinsey RTS's employment and retention,

including the fee and expense structure and the indemnification, contribution, reimbursement and

related provisions set forth in the Engagement Letter.  In support of this application

(the "Application"), the Debtors submit the Declaration of Kevin Carmody**,** a Practice Leader of

McKinsey RTS (the "Carmody Declaration"), which is attached hereto as Exhibit B and

incorporated herein by reference.

### Qualifications of McKinsey RTS

5.        The Debtors seek to retain McKinsey RTS as their turnaround advisor in

connection with these chapter 11 cases to continue to assist the Debtors with the development

and refinement of their strategic business plan (the "Business Plan") based on the qualifications,

skill and expertise that McKinsey RTS brings to this task.  McKinsey RTS is a global, full

service turnaround advisory and crisis management firm that draws on unmatched industry and

functional expertise to support companies through all aspects of recovery and transformation.

Its members have extensive experience in improving the operational performance of financially

troubled companies.  McKinsey RTS is deeply experienced in providing chapter 11 advisory

services, which include contingency planning, interim management, cash flow and liquidity

assessment, forecasting and management, analysis and/or development of business and strategic

plans, development and implementation of creditor and/or supplier strategies and development

and implementation of operational and/or financial improvement or turnaround plans.  McKinsey

RTS has been and is currently involved in numerous large and complex restructurings, including

In re Standard Register Company, Inc., No. 15-10541 (Bankr. D. Del. Mar. 12, 2015); In re NII

Holdings, Inc., No. 14-12611 (Bankr. S.D.N.Y. Sept. 15, 2014); In re Edison Mission Energy,

No. 12-49219 (Bankr. N.D. Ill. Dec. 17, 2012); In re AMF Bowling Worldwide, Inc.,

No. 12-36495 (Bankr. E.D. Va. Nov. 12, 2012); In re AMR Corp., No. 11-15463

(Bankr. S.D.N.Y. Nov. 29, 2011); and In re Harry & David Holdings, Inc., No. 11-10844

(Bankr. D. Del. Mar. 28, 2011).

   6. In particular, McKinsey RTS and its affiliates have considerable

experience in the metals and mining industries, as well as experience in the related oil, electric

power, and natural gas industries.  Specifically, McKinsey RTS utilizes the expertise of its

affiliates' global Metals & Mining Practice (the "Metals & Mining Practice"), which has been

engaged by clients on over 1,000 studies in the mining industry over the last five years and

which serves the majority of the world's top major diversified mining companies and many of the

leading specialist mining companies (including many of the top coal producers).  This experience

has given McKinsey RTS and its affiliates a unique understanding of industry trends and of key

strategic operational success factors for the Debtors' business.

   7. The Metals & Mining Practice includes over 500 practice consultants and

experts, including numerous mine engineers, metallurgists, geologists, and business managers,

each with deep operational experience in mining.  The practice is backed by an extensive

program of proprietary research, high-impact management tools, and information experts who

(a) provide insight into industry structure and dynamics (including supply, demand, trade flows,

and future prospects for all major mining commodities) and (b) ensure that consulting teams

have access to the latest thinking, approaches and analyses on financial, market, operational,

organizational and strategic matters.  The Metals & Mining Practice has also implemented

several knowledge development initiatives, including multi-year research projects addressing the most urgent client topics (e.g., a "Cost-Curve Initiative" looking at mining cost-economics of numerous commodities; the Metals & Mining Practice's "Value Pools" research undertaken to help clients compare prospects for commodities), and several proprietary benchmarks (e.g., a benchmark that allows mine operators to assess performance against a broad set of peers; the "McKinsey Mining Productivity Index," which tracks and compares the productivity of worldwide mining operations). These initiatives, projects and benchmarks ensure that the Metals and Mining Practice remains at the forefront of industry information and trends. Accordingly, the combination of McKinsey RTS's and the Metals & Mining Practice's experience offer an extensive knowledge and expert base which will benefit the Debtors in these chapter 11 cases.

8.      McKinsey RTS began assisting the Debtors' senior management with their development of the Business Plan immediately upon the execution of the Prepetition Agreement. As a result of this prepetition work performed on behalf of the Debtors, McKinsey RTS is familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, employee groups, cost structures and related matters. Since McKinsey RTS's engagement began, McKinsey RTS personnel have worked closely with the Debtors' management and other professionals in the development of the Business Plan. In addition, McKinsey RTS (a) supported management in preparing supplemental analyses related to the Business Plan and a potential restructuring and (b) helped management prepare for diligence discussions with various financial advisors to certain of the Debtors' significant creditor constituencies. Consequently, the Debtors believe that McKinsey RTS has developed significant relevant experience and expertise regarding the Debtors and the circumstances of these cases and has the skills, qualifications and expertise necessary to assist the Debtors with respect to the

Business Plan in an effective and cost-efficient manner.  Accordingly, the Debtors submit that

the retention of McKinsey RTS on the terms and conditions set forth herein and in the

Engagement Letter is necessary and appropriate, is in the best interests of the Debtors' estates,

creditors and all other parties in interest, and should be granted in all respects.

### Terms of Engagement

9.     The parties have entered into the Engagement Letter, which letter

(a) amends and restates the Prepetition Agreement and (b) will govern the Debtors' retention of

McKinsey RTS during these bankruptcy cases, except as explicitly set forth in any order granting

this Application.  McKinsey RTS requests approval of the Engagement Letter effective as of the

Petition Date.  The Engagement Letter was negotiated between the Debtors and McKinsey RTS

at arm's length and in good faith and reflects the parties' mutual agreement as to the substantial

efforts that will be required in this engagement.

### *Services to be Provided by McKinsey RTS*

10.     The Debtors anticipate that, subject to further order of this Court and

consistent with the Engagement Letter, McKinsey RTS will provide a range of necessary

services related to the Business Plan.[2]  Such services include the following:

- ▪ *Market Outlook* – Create a domestic (including basin perspective) and seaborne metallurgical and thermal coal market analysis including demand, supply and price scenarios (and North America coal basin perspective).  Perform an assessment of the Debtors' competitive position (position in cost curves).

- ▪ *Business Plan* – Develop/validate a fully integrated business plan for the current and future operating portfolio of the Debtors, including the estimated impact of performance improvement initiatives.  It is anticipated that the business plan will include an outlook for key performance indicators, including

---

[2]     Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the descriptions provided herein.

production and sales tonnage, net realized price per ton, direct and indirect
operating expenses, selling, general and administrative expenses, working
capital, capital budget and debt capacity.

- *Value Creation Plan* – Develop a top-down value creation and performance
  improvement plan for the Debtors' current operating portfolio utilizing
  McKinsey RTS's industry and market expertise, proprietary operations
  databases and comprehensive benchmarking tools.

- *Operations Footprint Assessment* – Prepare a rapid footprint optimization
  assessment for the Debtors considering product demand and market outlook,
  cost positions and cost improvement potential, likely evolution of product
  quality, transport logistics and legacy costs.

- *Pennsylvania Land Resources Holding Company, LLC ("PLR") Business
  Plan* – Develop, along with the Debtors' management, a strategic assessment
  and business plan for PLR.  Provide an assessment of PLR's configuration and
  development plans, prepare a strategic review of forecast operating costs and
  field performance and support evaluation of potential commercial and asset
  strategies.

- *Constituent Management* – Assist in development of supporting diligence
  materials and presentations for use in various stakeholder meetings, attend
  diligence sessions and working meetings with various stakeholders and
  constituents, and provide *ad hoc* support to the management team, including the
  development and preparation of analytics to be used in restructuring discussions.

- *Other Restructuring Services* - As appropriate, assist the Debtors with other
  restructuring matters as may be requested by the Debtors and that are mutually
  agreed upon between McKinsey RTS and the Debtors.

11.     The services that McKinsey RTS will provide to the Debtors are necessary

to enable the Debtors to maximize the value of their estates.  Specifically, the Business Plan

prepared with the assistance of McKinsey RTS, and the further development and analysis thereof

over the course of these chapter 11 cases, will form the foundation for the restructuring of the

Debtors' operations and capital structure.

12.     McKinsey RTS's services will complement, and not duplicate, the services

rendered by other professionals retained in these chapter 11 cases.  The Debtors and McKinsey

RTS will use reasonable efforts to ensure that there is no duplication of services that McKinsey

RTS is being retained to perform.  To the extent that the Debtors request services other than those detailed in the Engagement Letter, the Debtors will seek further approval from the Court of a supplement to McKinsey RTS's retention and any related modifications to the Engagement Letter, and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

***Professional Compensation and Expenses***

13.     Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any fee and expense guidelines of this Court and such other procedures as may be fixed by order of the Court, the Debtors will compensate McKinsey RTS in accordance with the terms and conditions of the Engagement Letter, which provides for the following compensation structure (the "Fee and Expense Structure"):

14.     Hourly rates.  McKinsey RTS's fees are to be based on the hours worked by McKinsey RTS's personnel at the following hourly rates:

| | |
|---|---|
| Practice Leader: | $875-$1,050 |
| Senior Vice President: | $675-$810 |
| Vice President: | $525-$675 |
| Senior Associate | $435-$525 |
| Associate: | $375-$435 |
| Analyst: | $250-$350 |
| Paraprofessional: | $200-$225 |

McKinsey RTS periodically reviews and revises its billing rates indicated above.  Such rates and ranges shall be subject to adjustment at such time as McKinsey RTS adjusts its rates periodically.

15.    <u>Expenses</u>.  McKinsey RTS will be reimbursed for the reasonable

out-of-pocket expenses of McKinsey RTS professionals incurred in connection with this

assignment, such as travel, lodging, case administrators, third party duplications, working meals,

messenger and telephone charges.  All fees and expenses due to McKinsey RTS will be billed in

accordance with any interim compensation orders entered by this Court, and the relevant sections

of the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules.

16.    The Debtors will reimburse McKinsey RTS for all reasonable

out-of-pocket expenses incurred in connection with its engagement, including but not limited to

travel, lodging, case administrators and working meals following McKinsey RTS's standard

expense reporting.  As McKinsey RTS clients frequently request that McKinsey RTS personnel

travel to their offices and work there for extended periods of time, McKinsey RTS has developed

its own official reimbursement policy with respect to its professionals' documentation of

expenses (the "<u>RTS Reimbursement Policy</u>").  More specifically, McKinsey RTS professionals

serving the Debtors will seek reimbursement for expenses over $35.00 that (a) have been

charged on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a

receipt for lodging.  For amounts under $35.00, McKinsey RTS will seek reimbursement when

exact amounts are submitted in lieu of a receipt.  Therefore, the Debtors request that McKinsey

RTS be authorized to maintain detailed documentation of its professionals' actual and necessary

costs and expenses in accordance with the RTS Reimbursement Policy.

17.    <u>Retainer</u>.  Pursuant to the Prepetition Agreement, on June 29, 2015, the

Debtors paid McKinsey RTS a $500,000 retainer (the "<u>Retainer</u>") in connection with services to

be performed by McKinsey RTS on or after such date.  On account of such services (and related

expenses), McKinsey RTS (a) issued invoices to the Debtors reflecting applications against the

Retainer and (b) received funds from the Debtors in replenishment of the Retainer.  As of the

Petition Date, the Retainer balance was $500,000.  The Retainer shall remain in place until work

under the Engagement Letter is concluded, or the Engagement Letter is amended in writing.  All

Retainer balances shall be credited against any outstanding amounts due upon termination of the

engagement, with the remainder to be returned to the Debtors upon satisfaction of all payment

obligations due under the Engagement Letter.

18.    Consistent with the scope of services to be provided by McKinsey RTS

under the Prepetition Agreement (as amended by the Engagement Letter), the Debtors and

McKinsey RTS negotiated and agreed upon the Fee and Expense Structure described above.

The Fee and Expense Structure is comparable to compensation generally charged by other firms

of similar stature to McKinsey RTS for comparable engagements, both in and out of bankruptcy.

The Debtors believe that the Fee and Expense Structure is both reasonable and market-based and

consistent with McKinsey RTS's normal and customary billing levels for comparably sized and

complex cases, both in and out of court, involving the services to be provided in these chapter 11

cases.

*Timekeeping and Fee Applications*

19.    The Debtors understand that McKinsey RTS intends to file interim and

final fee applications for the allowance of compensation for services rendered and

reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any fee and expense guidelines of this

Court and such other procedures as may be fixed by order of the Court.  Such applications will

include time records setting forth, in reasonable detail, a description of the services rendered by

each professional and the amount of time spent on each date by each such individual in rendering

-10-

services on behalf of the Debtors.  McKinsey RTS will maintain and file contemporaneous time

records in half-hour increments.  McKinsey RTS also will maintain detailed records of any

actual and necessary costs and expenses incurred in connection with the services as discussed

above.  McKinsey RTS's applications for compensation and expenses will be paid by the Debtors

pursuant to the terms of the Engagement Letter, in accordance with Local Bankruptcy

Rule 2016-1 and any procedures established by the Court.

***Indemnification Provisions***

20.    As part of the overall compensation payable to McKinsey RTS under the

terms of the Engagement Letter, the Debtors have agreed to certain indemnification and

contribution provisions described in the Engagement Letter (the "Indemnification Provisions").

The Indemnification Provisions provide, among other things, that the Debtors will indemnify,

hold harmless and defend McKinsey RTS, including its past, present and future affiliates, and

each of their directors, officers, managers, shareholders, partners, members, employees, agents,

representatives, advisors and controlling persons (each, an "Indemnified Party") against

liabilities arising out of or in connection with the Engagement Letter and/or McKinsey RTS's

retention by the Debtors in these chapter 11 cases, except for any liabilities judicially determined

by a court of competent jurisdiction to have resulted from the willful misconduct or gross

negligence of any of McKinsey RTS or the other Indemnified Parties in connection with

McKinsey RTS's services provided under the Engagement Letter.  In addition, if indemnification

or reimbursement obligations are held to be unavailable by any court (other than circumstances

where a court determines that liability resulted from the willful misconduct or gross negligence

of the Indemnified Party), the Engagement Letter allocates contribution obligations based on the

relative benefits and faults of McKinsey RTS and the Debtors.  The Engagement Letter further

sets forth that McKinsey RTS's aggregate liability shall be no more than the amount of its fees actually received under the Engagement Letter.

21.    The Debtors believe that the Indemnification Provisions are customary and reasonable for turnaround consulting engagements, both in and out of court, and reflect the qualification and limitation on indemnification provisions that are customary in this District and elsewhere.  See, e.g., Health Diagnostic Lab., Inc., No. 15-32919 (Bankr. E.D. Va. July 16, 2015) (authorizing indemnification of professional advisors by the debtors); In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va. July 9, 2015) (same); In re James River Coal Co., No. 14-31848 (Bankr. E.D. Va. May 7, 2014) (same); In re AMF Bowling Worldwide, Inc., No. 12-36495 (Bankr. E.D. Va. Dec. 20, 2012) (same); In re Bear Island Paper Co., No. 10-31202 (Bankr. E.D. Va. Mar. 25, 2010) (same); In re Chesapeake Corp., No. 08-36642 (Bankr. E.D. Va. Jan. 21, 2009) (same); In re LandAmerica Fin. Grp., Inc., No. 08-35994 (Bankr. E.D. Va. Jan. 16, 2009) (same); In re Circuit City Stores, Inc., No. 08-35653 (Bankr. E.D. Va. Jan. 9, 2009) (same); see also In re AMR Corp., No. 11-15463 (Bankr. S.D.N.Y. Mar. 2, 2012) (authorizing indemnification of McKinsey RTS by the debtors); In re Harry & David Holdings, Inc., No. 11-10884 (Bankr. D. Del. Apr. 26, 2011) (same).

22.    The Debtors respectfully submit that the Indemnification Provisions and other provisions contained in the Engagement Letter, viewed in conjunction with the other terms of McKinsey RTS's proposed retention, are reasonable and should be approved.

**Disclosure Regarding McKinsey RTS's Disinterestedness**

23.    The Carmody Declaration, incorporated herein by reference, discloses McKinsey RTS's connections to the Debtors and parties in interest in these cases.  In reliance on the Carmody Declaration, and except as set forth therein, to the best of the Debtors' knowledge,

information and belief, McKinsey RTS:  (a) is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code; (b) does not hold or represent any interest adverse to

the Debtors' estates; and (c) has no connection to the Debtors, their creditors or their related

parties that would negatively impact McKinsey RTS's disinterestedness.  McKinsey RTS holds

no prepetition claim against the Debtors for services provided or expenses incurred.

24.    Pursuant to the Prepetition Agreement, the Debtors were required to make

certain payments to McKinsey RTS prior to the Petition Date.  In the 90 days immediately

preceding the Petition Date, McKinsey RTS received payments totaling $1,825,000.00 in the

aggregate for services rendered and expenses incurred on behalf of the Debtors.  McKinsey RTS

received no other payments from the Debtors during the 90 days immediately preceding the

Petition Date.  As of the Petition Date, the Debtors did not owe McKinsey RTS for any fees or

expenses incurred prior to the Petition Date.

25.    McKinsey RTS has informed the Debtors that it has not shared or agreed

to share any of its compensation from the Debtors with any other person, other than as permitted

by section 504 of the Bankruptcy Code.

26.    The Debtors understand that McKinsey RTS will conduct an ongoing

review of its files during the pendency of these chapter 11 cases to ensure that no conflicts or

other disqualifying circumstances exist or arise.  In this regard, if McKinsey RTS discovers

additional information that requires disclosure, McKinsey RTS will file supplemental disclosures

with the Court.

**Basis for Relief**

27.    Under section 327(a) of the Bankruptcy Code, a debtor in possession is

authorized to employ professional persons "that do not hold or represent an interest adverse to

the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in

carrying out [its] duties under this title."  11 U.S.C. § 327(a).[3]  Section 1107(b) of the

Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases

under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for

employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely

because of such person's employment by or representation of the debtor before the

commencement of the case."  11 U.S.C. § 1107(b).

        28.     Section 328(a) of the Bankruptcy Code authorizes the employment of a

professional person "on any reasonable terms and conditions of employment, including on a

retainer …."  11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of

McKinsey RTS's retention as described herein, including the Fee and Expense Structure, the

Retainer, and the indemnification terms, are reasonable and in keeping with the terms and

conditions typical for engagements of this size and character.  Since the Debtors will require

substantial assistance with the reorganization process, it is reasonable for the Debtors to seek to

employ and retain McKinsey RTS to serve as their turnaround advisor on the terms and

conditions set forth herein.

---

[3]      Section 101(14) of the Bankruptcy Code defines the phrase "disinterested person" as:

a person that —

    (A)    is not a creditor, an equity security holder, or an insider;

    (B)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    (C)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

29.    As required by Bankruptcy Rule 2014(a)[4] and Local Bankruptcy

Rule 2014-1,[5] the above-described facts set forth in the Application and the information in the

Exhibits attached hereto set forth:  (a) the specific facts showing the necessity for McKinsey

RTS's employment; (b) the reasons for the Debtors' selection of McKinsey RTS as their

turnaround advisor in connection with these chapter 11 cases; (c) the professional services

proposed to be provided by McKinsey RTS; (d) the arrangement between the Debtors and

McKinsey RTS with respect to McKinsey RTS's compensation, including information on

retainers, fees and the reasonableness thereof; and (e) to the best of the Debtors' knowledge, the

extent of McKinsey RTS's connections, if any, to certain parties in interest in these matters.

Accordingly, McKinsey RTS's retention by the Debtors should be approved.

### Waiver of Separate Memorandum of Points and Authorities

30.    The Debtors respectfully request that the Court regard any argument and

citations set forth herein as a written memorandum of facts, reasons and authorities that has been

combined with the relief requested herein, as permitted by Local Bankruptcy Rule 9013-1(G)(1).

---

[4]    Bankruptcy Rule 2014(a) provides that an application seeking the employment of professional persons
pursuant to section 327 of the Bankruptcy Code:

> shall state the specific facts showing the necessity for the employment, the name
> of the person to be employed, the reasons for the selection, the professional
> services to be rendered, any proposed arrangement for compensation, and, to the
> best of the applicant's knowledge, all of the person's connections with the debtor,
> creditors, any other party in interest, their respective attorneys and accountants,
> the United States trustee, or any person employed in the office of the United
> States trustee.  The application shall be accompanied by a verified statement of
> the person to be employed setting forth the person's connections with the debtor,
> creditors, any other party in interest, their respective attorneys and accountants,
> the United States trustee, or any person employed in the office of the United
> States trustee.

[5]    Local Bankruptcy Rule 2014-1 requires a party seeking an order authorizing its retention in a chapter 11
case to file (a) a motion, (b) a declaration regarding compensation and (c) a proposed order, and to serve
such documents upon (v) the U.S. Trustee, (w) any trustee appointed under section 1104 of the Bankruptcy
Code, (x) any existing unsecured creditors' committee, (y) all secured creditors and (z) "any other entity as
the Court may direct."  LBR 2014-1.

Alternatively, the Debtors respectfully request that the Court waive any requirement set forth in Local Bankruptcy Rule 9013-1(G)(1) that this Application be accompanied by such a written memorandum.

### Notice

31.     In accordance with the *Order Establishing Certain Notice, Case Management and Administrative Procedures* (Docket No. 111) (the "Case Management Order"), notice of this Application has been given to (a) all parties on the Master Service List (as defined in the Case Management Order) and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### No Prior Request

32.     No prior request for the relief sought in this Application has been made to this Court or any other court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter an order

substantially in the form attached hereto as Exhibit C, granting the relief requested herein; and

(ii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated:   August 24, 2015          Respectfully submitted,
         Richmond, Virginia

                                  Alpha Natural Resources, Inc., et al.
                                  Debtors and Debtors in Possession


                                     /s/  Richard H. Verheij
                                  Richard H. Verheij
                                  Executive Vice President, General Counsel and
                                     Corporate Secretary
                                  Alpha Natural Resources, Inc.

Filed by:

   /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## <u>EXHIBIT A</u>

**Engagement Letter**

## AMENDED AND RESTATED AGREEMENT

Philip J. Cavatoni
Executive Vice President & Chief Financial and Strategy Officer
Alpha Natural Resources, Inc.
One Alpha Place
P.O. Box 16429
Bristol, VA 24209

Dear Philip:

This amended and restated letter (the "Agreement"), dated August 3, 2015 (the "Effective Date"), is between McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS") and Alpha Natural Resources, Inc. (the "Client"), and amends and restates that certain agreement dated June 29, 2015 between McKinsey RTS and Client (the "Prepetition Agreement") and sets forth the terms of McKinsey RTS's engagement to provide consulting services to the Client as expressly contemplated by this Agreement (the "Engagement"). McKinsey RTS and the Client are collectively referred to in this Agreement as the "Parties," and each a "Party".

    1.   SERVICES.

    (a)   Client hereby agrees to retain McKinsey RTS to provide the services (the "Services") described in this Section 1.

    (b)   To fulfill its responsibilities on a timely basis McKinsey RTS will rely on the Client's timely cooperation regarding the Engagement, including the Client's making available to McKinsey RTS relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying McKinsey RTS of any issues or concerns the Client may have relating to the Services. The Client understands and acknowledges that McKinsey RTS's delivery of the Services and the Fees (as defined below) charged hereunder are dependent upon timely decisions and approvals by the Client and its management.

The general responsibilities of McKinsey RTS will be as follows:

- ■ *Market Outlook* – Create a domestic (including basin perspective) and seaborne metallurgical and thermal coal market analysis including demand, supply and price scenarios (and North America coal basin perspective). Perform an assessment of Client's competitive position (position in cost curves).

- ■ *Business Plan* – Develop/validate a fully integrated business plan for the current and future operating portfolio of the Client, including the estimated impact of performance improvement initiatives. It is anticipated that the business plan will include an outlook for key performance indicators, including production and sales tonnage, net realized price per ton, direct and indirect operating expenses, SG&A, working capital, capital budget and debt capacity.

- ■ ***Value Creation Plan*** – Develop a top-down value creation and performance improvement plan for the current operating portfolio utilizing our industry and market expertise, proprietary operations databases and comprehensive benchmarking tools.

- ■ ***Operations Footprint Assessment*** – Prepare a rapid footprint optimization assessment for the Client considering product demand and market outlook, cost positions and cost improvement potential, likely evolution of product quality, transport logistics and legacy costs.

- ■ ***Pennsylvania Land Resources Holding Company, LLC ("PLR") Business Plan*** – Develop, along with Client management, a strategic assessment and business plan for PLR. Provide an assessment of PLR's configuration and development plans, prepare a strategic review of forecast operating costs and field performance and support evaluation of potential commercial and asset strategies.

- ■ ***Constituent Management*** – Assist in development of supporting diligence materials and presentations for use in various stakeholder meetings, attend diligence sessions and working meetings with various stakeholders and constituents and provide ad hoc support to the management team, including the development and preparation of analytics to be used in restructuring discussions.

- ■ ***Other Restructuring Services*** - As appropriate, assisting the Client with other restructuring matters as may be requested by Client and that are mutually agreed upon between McKinsey RTS and the Client.  Such assistance may include providing advice and assistance to Client and its counsel, Jones Day, in connection with possible restructuring and/or preparing for or conducting litigation and other potential judicial and/or non-judicial proceedings by providing information, and thus to assist Jones Day in rendering legal advice to Client.  Such work of McKinsey RTS, including but not limited to written and oral work product, communications and conclusions may also include and/or reflect the theories, conclusions, opinions or legal theories of Jones Day or otherwise be subject to protection as privileged.  Therefore, in the course of such work, McKinsey RTS will take such reasonable steps as directed by Client or Jones Day as may be necessary to protect and maintain such work product, communications and conclusions as privileged.

(c)    During the term of the Engagement, priorities may shift or unexpected events may occur which will necessitate changes to the Services.  In this event, McKinsey RTS and the Client will jointly discuss the anticipated impact on the Services and agree on any appropriate adjustments, including to the scope of work, timeframe, budget and fees.

(d)    In connection with the Client's chapter 11 proceeding commenced on August 3, 2015 under title 11 of the United States Code (the "Bankruptcy Proceeding"), McKinsey RTS will participate, as necessary, in any proceedings before the bankruptcy court (the "Bankruptcy Court") implicating the Services or this Engagement (which participation may include witness testimony).

2.    <u>COMPENSATION</u>.    The Client shall compensate McKinsey RTS for its professional fees and expenses in connection with the Services (collectively, the "<u>Fees</u>") and hereby agrees to pay McKinsey RTS during the term of this Agreement in accordance with the

terms set forth in Schedule 1 attached hereto. In connection with the $500,000.00 retainer (the "Retainer") provided by the Client to McKinsey RTS pursuant to the Prepetition Agreement, McKinsey RTS and the Client agree that this Agreement shall govern, among other things, the application of the Retainer in the Bankruptcy Proceeding. McKinsey RTS shall bill the Client on a monthly basis and shall be paid in accordance with any interim compensation orders entered by the Bankruptcy Court. The Retainer shall remain in place until work under this Agreement is concluded, or this Agreement is amended in writing. All Retainer balances shall be credited against any outstanding amounts due upon termination of the Engagement, with the remainder to be returned to the Client upon satisfaction of all payment obligations due under this Agreement.

3.    CONFIDENTIALITY.

McKinsey RTS will keep confidential any information furnished by the Company to McKinsey RTS in connection with the Services ("Confidential Information"). McKinsey RTS will disclose Confidential Information only to its employees and agents who have a need to know and are bound to keep it confidential and will use Confidential Information only for purposes of performing the Services and, where the agreed upon Services include benchmarking services, to benchmark and report on sanitized, aggregate trends and metrics without disclosing the Client's Confidential Information and without attribution to the Client. Confidential Information shall not include information that is or becomes publicly available, is already known to McKinsey RTS through means not involving a breach by any party of an obligation to keep such information confidential, is independently acquired by McKinsey RTS or is legally required to be disclosed. In performing the Services, McKinsey RTS will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information. McKinsey RTS will reasonably cooperate with the Client, at its expense, in responding to any legally required disclosure. In performing the Services, McKinsey RTS will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.

4.    USE OF McKINSEY RTS NAME AND DELIVERABLES. In connection with the Engagement, McKinsey RTS may furnish the Client with information, advice, reports, analyses, presentations or other such materials (the "Deliverables"). The Client understands and agrees that any such Deliverables are furnished or presented solely for the Client's internal use and benefit (limited to management and the Board) and may not be furnished or conveyed in whole or in part to any person or entity other than as described in this Section 4 without McKinsey RTS's prior written consent or as required by law. The Client may furnish and convey Deliverables to its management and directors, its legal counsel and other restructuring professionals retained by the Client, and, in the event the Client and/or any of its affiliates commence cases under title 11 of the United States Code ("Chapter 11 Cases"), other parties involved in the administration of such chapter 11 cases (collectively, the "Permitted Recipients"), in each case only if such persons (i) are informed of the confidential nature of the Deliverables and (ii) agree to comply with the restrictions stated in this Section 4. Without limitation of the foregoing, Deliverables branded as "McKinsey RTS" may not be furnished, conveyed or presented to any person or entity other than the Permitted Recipients unless (A) the Client has received McKinsey RTS's oral or written consent to furnish or convey such information, which consent shall not be unreasonably withheld; and (B) such third parties are informed of the

confidential nature of the information and, prior to Client's disclosure, each such person or entity to whom it seeks to disclose such information executes and delivers to McKinsey RTS a letter agreement in a form reasonably acceptable to McKinsey RTS. The Client further agrees that, without McKinsey RTS's prior written consent, it shall not refer to McKinsey RTS or attribute any information to McKinsey RTS in any document or communication external, or reasonably likely to be disseminated externally, to the Client for any purpose, including in press releases and web sites, unless required by law or as reasonably necessary in connection with the Client's Chapter 11 Cases. The Client also agrees that it shall not, and shall not permit its advisors to, refer to McKinsey RTS or attribute any information to McKinsey RTS, either generically or by name, without McKinsey RTS's prior written approval except as required by law or in connection with the Client's Chapter 11 Cases. McKinsey RTS shall not issue any press release which references this Agreement or Client without Client's prior written consent.

     5.    <u>INTELLECTUAL PROPERTY</u>. Upon payment in full of McKinsey RTS's fees, the Client will own all Deliverables furnished by McKinsey RTS to the Client in connection with the Services, save that McKinsey RTS retains ownership of all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by McKinsey RTS in connection with the Services (the "<u>McKinsey Tools</u>"), it being understood that none of the McKinsey Tools will contain the Client's Confidential Information. To the extent the Deliverables include any McKinsey Tools, McKinsey RTS hereby grants the Client a non-exclusive, non-transferable, non-sublicenseable, worldwide, royalty-free license to use and copy the McKinsey Tools solely as part of the Deliverables and subject to the above limitations on the use of McKinsey RTS name and Deliverables.

     5A    Benchmarking Database

     (a)    As part of the Services, McKinsey RTS will utilize distinctive, proprietary benchmarking database(s), and related reports, analyses and other materials (the "Materials"). Client acknowledges that McKinsey RTS and its affiliates retain sole ownership, including all intellectual property rights, in the benchmarking databases and related solutions and the associated Materials and that these are deemed to be "McKinsey Tools" and that these are provided "as is", without any express or implied warranty. In no event will McKinsey RTS be liable to Client for any damages or losses relating to or arising out of the provision of such database solutions and related Materials to Client, including without limitation indirect, consequential, incidental or special damages (including without limitation lost profits).

     (b)    McKinsey RTS and its affiliates will use the data that Client provides in connection with the benchmarking databases to provide Client with information comparing the Client's data to the aggregated or disguised data of other relevant participants. In particular, McKinsey RTS and its affiliates will use Client's data to develop and provide Client with the agreed Materials, to publish reports outlining general conclusions from the databases and to develop, distribute and use aggregated or disguised analyses and results in databases and in our client work. McKinsey RTS may also disclose the names of participants in the applicable benchmark solely to the other existing and prospective participants.

     (c)    McKinsey RTS's work for Client is confidential and intended for Client's internal use only. Client agrees that it will not use McKinsey RTS  name, marks, materials or information

with, or disclose the Materials or refer to McKinsey RTS's work to any external entity other than with McKinsey RTS's prior written consent or as required by law. Notwithstanding the foregoing sentence, Client may share the Materials with Permitted Recipients (defined in Section 4 above) in the manner, and subject to the specific restrictions, described in Section 4 above. This does not prohibit Client from publishing its own conclusions based on the Materials provided that such conclusions do not disclose any data (other than data originally provided by Client) contained in or generated by the Materials and does not make any reference or attribution to McKinsey RTS, except as required by law.

(d)     Materials and related results and recommendations are dependent upon the accuracy of the data, information and other material processed by McKinsey RTS (including the data, information and materials Client provides), as well as upon Client's proper use of the Materials and interpretation of results, and Client agrees that it is duly authorized to provide all such data, information and materials for use as described herein and that Client will remain solely responsible for your decisions, actions and use of all such Materials.

6.     <u>INDEMNIFICATION</u>

(a)     In order to induce McKinsey RTS to provide the Services to the Client, the Client and its affiliates hereby agree (i) to indemnify, hold harmless and defend McKinsey RTS, and its past, present and future affiliates, and each of their respective directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors and controlling persons (collectively, the "<u>Indemnified Parties</u>" and each individually, an "<u>Indemnified Party</u>"), to the fullest extent lawful, from and against any and all losses, claims, penalties, damages or liabilities (or actions in respect thereof), joint or several, caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any services provided to or termination of, any employee benefit plan (including any defined contribution plan)); and (ii) to reimburse each Indemnified Party for the reasonable, actual and documented expenses (including, without limitation, the reasonable, actual and documented fees and expenses of counsel and the reasonable, actual and documented costs of McKinsey RTS's professional time) as and when they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (whether or not such Indemnified Party is a formal party to any such action, suit, dispute, inquiry, investigation or proceeding), caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any services provided to or termination of, any employee benefit plan (including any defined contribution plan)) and in enforcing this Agreement. Notwithstanding the foregoing, neither the Client nor any of its affiliates shall be liable under the foregoing indemnity and reimbursement provisions for any loss, claim, damage, penalty, liability, cost, fee or expense which is finally judicially determined by a court of competent jurisdiction on the merits to have

resulted from the willful misconduct or gross negligence of such Indemnified Party, but pending any such judicial determination, the Client and its affiliates shall continue to be obligated on, and shall continue to perform, its indemnification and reimbursement obligations.

(b)    If for any reason the foregoing indemnification or reimbursement is held by a court of competent jurisdiction to be unavailable to any Indemnified Party or insufficient fully to indemnify or reimburse any such Indemnified Party or to hold it harmless in respect of any losses, claims, damages, penalties, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Client and its affiliates shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, penalties, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Client and its affiliates, on the one hand, and McKinsey RTS, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Client and its affiliates shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Client and its affiliates, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. The Client, its affiliates and McKinsey RTS agree that it would not be just and equitable if contribution pursuant to this Section 6(b) were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above in this Section 6(b). Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of Fees (but not expenses) actually received by McKinsey RTS from the Client and its affiliates pursuant to this Agreement.

(c)    The Client and its affiliates shall not, without the prior written consent of McKinsey RTS, settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification, reimbursement of expenses or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto).

(d)    The Client and its affiliates agree that neither McKinsey RTS nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client, its affiliates or any person or entity asserting claims on behalf of or in right of the Client and its affiliates caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any services provided to or termination of, any employee benefit plan (including any defined contribution plan)), except for losses, claims, damages, penalties or liabilities incurred by the Client and its affiliates which are finally judicially determined by a court of competent jurisdiction on the merits to have resulted from the willful misconduct or gross negligence of McKinsey RTS or any other Indemnified Party. In no event, however, shall McKinsey RTS's or any other Indemnified Party's liability to the Client or its respective

6

affiliates, successors, or any person claiming on behalf of or in right of the Client, including Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors, exceed, when taken together with all losses for which McKinsey RTS or such other Indemnified Party is liable in connection with this Agreement or the Engagement, the amount of Fees actually received by McKinsey RTS in connection with the Engagement.

(e) The indemnity, reimbursement, and other obligations and agreements of the Client and its affiliates set forth in this Section 6: (i) shall apply to any Services provided by McKinsey RTS in connection with the Engagement (whether provided prior to, on or after the Effective Date) and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Client and its affiliates may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Client, its affiliates or any Indemnified Party, or any other person or entity, (iv) shall survive the completion of the Services described in, and any expiration or termination of the relationship established by, this Agreement and (v) shall be binding on any successor or assign of the Client and its affiliates. In no event shall any Indemnified Party be responsible for any loss profits or special, punitive, exemplary, indirect or consequential damages.

7.    CLIENT ACKNOWLEDGMENT. It is McKinsey RTS's long-standing policy to serve competing clients and clients with potentially conflicting interests as well as counter-parties in merger, acquisition and alliance opportunities, and to do so without compromising McKinsey RTS's professional responsibility to maintain the confidentiality of client information.    Consistent with such practice and McKinsey RTS's confidentiality obligations to its other clients, McKinsey RTS is not able to advise or consult with the Client about McKinsey RTS's serving the Client's competitors or other parties. To avoid situations of potential conflict, McKinsey RTS will not assign consultants, who are providing the Services and who receive Confidential Information, to a competitively sensitive project for a significant period of time (typically two years) following an assignment for the Client.

8.    TERM AND TERMINATION.    The Engagement will commence as of the Effective Date and shall continue until the earlier of:    (a) the completion of the Services hereunder or (b) the termination of this Agreement by either Party by giving 30 days' written notice to the other Party.    In the event of any termination, the Client will pay McKinsey RTS's Fees and expenses up to the effective date of termination.

9.    RELATIONSHIP OF THE PARTIES.    The Parties intend that an independent contractor relationship will be created by this Agreement. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create, a fiduciary or agency relationship between McKinsey RTS and the Client, or its Board of Directors. More specifically, for purposes of this Agreement, neither McKinsey RTS, its affiliates, nor any individual consultant providing services to the Client shall be acting as an officer, director, manager, trustee, or in any other agency or fiduciary capacity.    Notwithstanding McKinsey RTS's provision of the Services described in Section 1, none of McKinsey RTS, its affiliates, nor any individual consultant providing services to the Client shall be (i) deemed a fiduciary; or (ii) be required to perform any tasks, actions or functions, and shall not be required to assume any roles, assignments or capacities, that (in any such case) could give rise to fiduciary status to McKinsey RTS, its affiliates or any Indemnified Party with respect of the Client.

10. <u>BANKRUPTCY FILING</u>.   In connection with the filing of the Bankruptcy Proceeding, the Client will apply to the Bankruptcy Court as soon as practicable to obtain approval of McKinsey RTS's retention and Retainer, *nunc pro tunc* to the date of filing.   It is understood that in the Bankruptcy Proceeding, the terms and conditions of this Agreement, particularly the compensation provisions, are subject to (a) prior approval of the Bankruptcy Court to be treated as administrative expenses of the bankruptcy case; and (b) may be subject to a standard of reasonableness.   McKinsey RTS shall file applications for approval of its fees and expenses in accordance with the terms of any interim compensation orders or other orders approved by the Bankruptcy Court.

11. <u>MISCELLANEOUS</u>.   This Agreement and any schedules hereto constitute the entire agreement between the parties, and there are no prior or contemporaneous oral or written representations, understandings or agreements relating to this subject matter that are not fully expressed herein or therein.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of law principles and shall inure to the benefit of and be binding on the successors and assigns of the Client and McKinsey. The following Sections shall survive the completion or any termination of the Services: 3 (Confidentiality), 4 (Use of McKinsey RTS Name and Deliverables), 5 (Intellectual Property), 6 (Indemnification), 7 (Client Acknowledgement), 8 (Term and Termination) and 9 (Relationship of the Parties), 10 (Bankruptcy Filing) and 11 (Miscellaneous) and any other provision which by law or by its nature should survive.   Neither party may assign its rights or obligations under this agreement to any person or entity without the written consent of the other party, which consent, in the case of a proposed assignment to a Party's affiliate, shall not be unreasonably withheld. Assignment shall not relieve either party of its obligations hereunder.

*[Remainder of Page Intentionally Left Blank]*

McKinsey Recovery & Transformation Services U.S., LLC

By:

Name:      Kevin M. Carmody

Title:      Practice Leader

ACCEPTED AND AGREED TO

Alpha Natural Resources, Inc.

By:

Name:   PHILIP CAVATONI

Title:   EVP CHIEF FINANCIAL & STRATEGY OFFICER

Schedule 1

Fees for Services

In exchange for its services, Company will compensate McKinsey RTS in accordance with the terms of this Agreement, which provides for payment of Fees as follows:

(a) Retainer- $500,000 as described in Section 2 of the Agreement

(b) Hourly rates:  Effective as of January 1, 2015: McKinsey RTS's fees are to be based on the hours worked by McKinsey RTS's personnel at the following hourly rates:

| | | |
|---|---|---|
| i. | Practice Leader: | $875-$1,050 |
| ii. | Senior Vice President: | $675-$810 |
| iii. | Vice President: | $525-$675 |
| iv. | Senior Associate | $435-$525 |
| v. | Associate: | $375-$435 |
| vi. | Analyst: | $250-$350 |
| vii. | Paraprofessional: | $200-$225 |

McKinsey RTS periodically reviews and revises its billing rates indicated above.

(c) Expenses:  The Company will reimburse McKinsey RTS for all reasonable out-of-pocket expenses incurred in connection with the Engagement, including but not limited to travel, lodging, case administrators, and working meals.

## EXHIBIT B

**Carmody Declaration**

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-33896 (KRH) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF KEVIN CARMODY IN SUPPORT
OF APPLICATION OF THE DEBTORS, PURSUANT TO
SECTIONS 327(a), 328(a) AND 1107(b) OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 2014(a) AND  LOCAL BANKRUPTCY RULE 2014-1, FOR
AN ORDER AUTHORIZING THEM TO RETAIN AND EMPLOY MCKINSEY
RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS TURNAROUND
ADVISOR FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

I, Kevin Carmody, under penalty of perjury, declare as follows:

1.       I am a Practice Leader in the professional services firm of McKinsey

Recovery & Transformation Services U.S., LLC ("<u>McKinsey RTS</u>")[1] with an office at 55 East

52nd Street, New York, NY 10055.  I am duly authorized to make this Declaration on behalf of

McKinsey RTS in support of the *Application of the Debtors, Pursuant to Sections 327(a), 328(a)*

---

[1]       "Members" of McKinsey RTS, as such term is used in this Declaration, include colleagues in McKinsey
RTS who provide recovery and transformation services worldwide.

*and 1107(b) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Bankruptcy Rule*

*2014-1, for an Order Authorizing Them to Retain and Employ McKinsey Recovery &*

*Transformation Services U.S., LLC as Turnaround Advisor for the Debtors, Effective as of the*

*Petition Date* (the "Application"),[2] filed by the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), under the terms and conditions set forth in the

Engagement Letter, attached to the Application as Exhibit A.  Except as otherwise noted, the

statements set forth herein are as a result of my employment position and diligence undertaken

by me or by professionals working under my direction and, if called and sworn as a witness, I

would testify competently thereto.

## Qualifications of McKinsey RTS

2.     McKinsey RTS is highly qualified to serve as the Debtors' turnaround

advisor in these chapter 11 cases.  Certain employees of McKinsey RTS, along with certain

consultants borrowed from affiliates of McKinsey RTS, are together serving the Debtors and

shall be referred to as the "McKinsey RTS Team" for purposes of this Declaration.  McKinsey

RTS is a global, full service restructuring advisory and crisis management firm that draws on

unmatched industry and functional expertise to support companies through all aspects of

recovery and transformation.  Its members have extensive experience in improving the

operational performance of financially troubled companies.  McKinsey RTS is deeply

experienced in providing chapter 11 advisory services, which include contingency planning,

interim management, cash flow and liquidity assessment, forecasting and management, analysis

and development of business and strategic plans, development and implementation of creditor

---

[2]     All capitalized terms used but not defined herein shall have the meanings set forth in the Application or the
Engagement Letter, as appropriate.

and supplier strategies and development and implementation of operational and financial

improvement and turnaround plans.  McKinsey RTS has been or is currently involved in

numerous large and complex restructurings, including In re Standard Register Company, Inc.,

No. 15-10541 (Bankr. D. Del. Mar. 12, 2015); In re NII Holdings, Inc., No. 14-12611

(Bankr. S.D.N.Y. Sept. 15, 2014); In re Edison Mission Energy, No. 12-49219 (Bankr. N.D. Ill.

Dec. 17, 2012); In re AMF Bowling Worldwide, Inc., No. 12-36495 (Bankr. E.D. Va.

Nov. 12, 2012); In re AMR Corp., No. 11-15463 (Bankr. S.D.N.Y. Nov. 29, 2011); and

In re Harry & David Holdings, Inc., No. 11-10844 (Bankr. D. Del. Mar. 28, 2011).

3.      In particular, McKinsey RTS and its affiliates have considerable

experience in the metals and mining industries, as well as experience in the related oil, electric

power, and natural gas industries.  Specifically, McKinsey RTS utilizes the expertise of its

affiliates' global Metals & Mining Practice (the "Metals & Mining Practice"), which has been

engaged by clients on over 1,000 studies in the mining industry over the last five years and

which serves the majority of the world's top major diversified mining companies and many of the

leading specialist mining companies (including many of the top coal producers).  This experience

has given McKinsey RTS and its affiliates a unique understanding of industry trends and of key

strategic operational success factors for the Debtors' business.

4.      The Metals & Mining Practice includes over 500 practice consultants and

experts, including numerous mine engineers, metallurgists, geologists, and business managers,

each with deep operational experience in mining.  The practice is backed by an extensive

program of proprietary research, high-impact management tools, and information experts who

(a) provide insight into industry structure and dynamics (including supply, demand, trade flows,

and future prospects for all major mining commodities) and (b) ensure that consulting teams

have access to the latest thinking, approaches and analyses on financial, market, operational,
organizational and strategic matters.  The Metals & Mining Practice has also implemented
several knowledge development initiatives, including multi-year research projects addressing the
most urgent client topics (e.g., a "Cost-Curve Initiative" looking at mining cost-economics of
numerous commodities; the Metals & Mining Practice's "Value Pools" research undertaken to
help clients compare prospects for commodities), and several proprietary benchmarks
(e.g., a benchmark that allows mine operators to assess performance against a broad set of peers;
the "McKinsey Mining Productivity Index," which tracks and compares the productivity of
worldwide mining operations).  These initiatives, projects and benchmarks ensure that the Metals
and Mining Practice remains at the forefront of industry information and trends.  Accordingly,
the combination of McKinsey RTS's and the Metals & Mining Practice's experience offer an
extensive knowledge and expert base which will benefit the Debtors in these chapter 11 cases.

   5. McKinsey RTS began assisting the Debtors' senior management with their
development of the Business Plan immediately upon the execution of the Prepetition Agreement.
As a result of this prepetition work performed on behalf of the Debtors, McKinsey RTS is
familiar with the Debtors and their business, including the Debtors' financial affairs, debt
structure, operations, employee groups, cost structures and related matters.  Since McKinsey
RTS's engagement began, McKinsey RTS personnel have worked closely with the Debtors'
management and other professionals in the development of the Business Plan.  In addition,
McKinsey RTS (a) supported management in preparing supplemental analyses related to the
Business Plan and a potential restructuring and (b) helped management prepare for diligence
discussions with various financial advisors to certain of the Debtors' significant creditor
constituencies.  Consequently, McKinsey RTS has developed significant relevant experience and

expertise regarding the Debtors and the circumstances of these cases and has the skills,

qualifications and expertise necessary to assist the Debtors with respect to the Business Plan in

an effective and cost-efficient manner.

### Terms and Scope of Engagement

6.    The parties have entered into the Engagement Letter – which amends and

restates the Prepetition Agreement – with the expectation that the terms of the Engagement

Letter will govern the Debtors' retention of McKinsey RTS during these bankruptcy cases.

The Engagement Letter was negotiated between the Debtors and McKinsey RTS at arm's length

and in good faith, and reflects the parties' mutual agreement as to the substantial efforts that will

be required in this engagement.

7.    McKinsey RTS will provide a range of necessary services related to the

Business Plan.  Such services include the following:[3]

- ▪ *Market Outlook* – Create a domestic (including basin perspective) and seaborne metallurgical and thermal coal market analysis including demand, supply and price scenarios (and North America coal basin perspective).  Perform an assessment of the Debtors' competitive position (position in cost curves).

- ▪ *Business Plan* – Develop/validate a fully integrated business plan for the current and future operating portfolio of the Debtors, including the estimated impact of performance improvement initiatives.  It is anticipated that the business plan will include an outlook for key performance indicators, including production and sales tonnage, net realized price per ton, direct and indirect operating expenses, selling, general and administrative expenses, working capital, capital budget and debt capacity.

- ▪ *Value Creation Plan* – Develop a top-down value creation and performance improvement plan for the Debtors' current operating portfolio utilizing McKinsey RTS's industry and market expertise, proprietary operations databases and comprehensive benchmarking tools.

---

[3]    Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the descriptions provided herein.

- ***Operations Footprint Assessment*** – Prepare a rapid footprint optimization assessment for the Debtors considering product demand and market outlook, cost positions and cost improvement potential, likely evolution of product quality, transport logistics and legacy costs.

- ***Pennsylvania Land Resources Holding Company, LLC ("PLR") Business Plan*** – Develop, along with the Debtors' management, a strategic assessment and business plan for PLR.  Provide an assessment of PLR's configuration and development plans, prepare a strategic review of forecast operating costs and field performance and support evaluation of potential commercial and asset strategies.

- ***Constituent Management –*** Assist in development of supporting diligence materials and presentations for use in various stakeholder meetings, attend diligence sessions and working meetings with various stakeholders and constituents, and provide *ad hoc* support to the management team, including the development and preparation of analytics to be used in restructuring discussions.

- ***Other Restructuring Services -*** As appropriate, assist the Debtors with other restructuring matters as may be requested by the Debtors and that are mutually agreed upon between McKinsey RTS and the Debtors.

8.      The services that McKinsey RTS will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  Specifically, the Business Plan prepared with the assistance of McKinsey RTS, and the further development and analysis thereof over the course of these chapter 11 cases, will form the foundation for the restructuring of the Debtors' operations and capital structure.

9.      McKinsey RTS's services will complement, and not duplicate, the services rendered by other professionals retained in these chapter 11 cases.  The Debtors and McKinsey RTS will use reasonable efforts to ensure that there is no duplication of services that McKinsey RTS is being retained to perform.  To the extent that the Debtors request services other than those detailed in the Engagement Letter, the Debtors will seek further approval from the Court of a supplement to McKinsey RTS's retention and any related modifications to the Engagement

Letter, and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

**Fee and Expense Structure**

10.    Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any fee and expense guidelines of this Court and such other procedures as may be fixed by order of the Court, the Debtors will compensate McKinsey RTS in accordance with the terms and conditions of the Engagement Letter, which provides for the following compensation structure (the "Fee and Expense Structure"):

11.    Hourly rates.  McKinsey RTS's fees are to be based on the hours worked by McKinsey RTS's personnel at the following hourly rates:

| | |
|---|---|
| Practice Leader: | $875-$1,050 |
| Senior Vice President: | $675-$810 |
| Vice President: | $525-$675 |
| Senior Associate | $435-$525 |
| Associate: | $375-$435 |
| Analyst: | $250-$350 |
| Paraprofessional: | $200-$225 |

McKinsey RTS periodically reviews and revises its billing rates indicated above.  Such rates and ranges shall be subject to adjustment at such time as McKinsey RTS adjusts its rates periodically.

12.    Expenses.  McKinsey RTS will be reimbursed for the reasonable out-of-pocket expenses of McKinsey RTS professionals incurred in connection with this assignment, such as travel, lodging, case administrators, third party duplications, working meals, messenger and telephone charges.  All fees and expenses due to McKinsey RTS will be billed in

accordance with any interim compensation orders entered by this Court, and the relevant sections

of the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules.

13.     The Debtors will reimburse McKinsey RTS for all reasonable

out-of-pocket expenses incurred in connection with its engagement, including but not limited to

travel, lodging, case administrators, and working meals following McKinsey RTS's standard

expense reporting.  As McKinsey RTS clients frequently request that McKinsey RTS personnel

travel to their offices and work there for extended periods of time, McKinsey RTS has developed

its own official reimbursement policy with respect to its professionals' documentation of

expenses (the "RTS Reimbursement Policy").  More specifically, McKinsey RTS professionals

serving the Debtors will seek reimbursement for expenses over $35.00 that (a) have been

charged on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a

receipt for lodging.  For amounts under $35.00, McKinsey RTS will seek reimbursement when

exact amounts are submitted in lieu of a receipt.  Therefore, the Debtors request that McKinsey

RTS be authorized to maintain detailed documentation of its professionals' actual and necessary

costs and expenses in accordance with the RTS Reimbursement Policy.

14.     Retainer.  Pursuant to the Prepetition Agreement, on June 29, 2015, the

Debtors paid McKinsey RTS a $500,000 retainer (the "Retainer") in connection with services to

be performed by McKinsey RTS on or after such date.  On account of such services (and related

expenses), McKinsey RTS (a) issued invoices to the Debtors reflecting applications against the

Retainer and (b) received funds from the Debtors in replenishment of the Retainer.  As of the

Petition Date, the Retainer balance was $500,000.   The Retainer shall remain in place until work

under the Engagement Letter is concluded, or the Engagement Letter is amended in writing.  All

Retainer balances shall be credited against any outstanding amounts due upon termination of the

engagement, with the remainder to be returned to the Debtors upon satisfaction of all payment

obligations due under the Engagement Letter.

15.    Consistent with the scope of services to be provided by McKinsey RTS

under the Prepetition Agreement (as amended by the Engagement Letter), the Debtors and

McKinsey RTS negotiated and agreed upon the Fee and Expense Structure described above.

The Fee and Expense Structure is comparable to compensation generally charged by other firms

of similar stature to McKinsey RTS for comparable engagements, both in and out of bankruptcy.

The Debtors believe that the Fee and Expense Structure is both reasonable and market-based and

consistent with McKinsey RTS's normal and customary billing levels for comparably sized and

complex cases, both in and out of court, involving the services to be provided in these chapter 11

cases.

### Timekeeping and Fee Applications

16.    McKinsey RTS intends to file interim and final fee applications for the

allowance of compensation for services rendered and reimbursement of expenses incurred in

accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

Bankruptcy Rules, any fee and expense guidelines of this Court and such other procedures as

may be fixed by order of the Court.  Such applications will include time records setting forth, in

reasonable detail, a description of the services rendered by each professional and the amount of

time spent on each date by each such individual in rendering services on behalf of the Debtors.

McKinsey RTS will maintain and file contemporaneous time records in half-hour increments.

McKinsey RTS also will maintain detailed records of any actual and necessary costs and

expenses incurred in connection with the services as discussed above.  McKinsey RTS's

applications for compensation and expenses will be paid by the Debtors pursuant to the terms of

the Engagement Letter, in accordance with Local Bankruptcy Rule 2016-1 and any procedures

established by the Court.

## **Indemnification Provisions**

17.     As part of the overall compensation payable to McKinsey RTS under the

terms of the Engagement Letter, the Debtors have agreed to certain indemnification and

contribution provisions described in the Engagement Letter (the "Indemnification Provisions").

The Indemnification Provisions provide, among other things, that the Debtors will indemnify,

hold harmless and defend McKinsey RTS, including its past, present and future affiliates, and

each of their directors, officers, managers, shareholders, partners, members, employees, agents,

representatives, advisors and controlling persons (each, an "Indemnified Party") against

liabilities arising out of or in connection with the Engagement Letter and/or McKinsey RTS's

retention by the Debtors in these chapter 11 cases, except for any liabilities judicially determined

by a court of competent jurisdiction to have resulted from the willful misconduct or gross

negligence of any of McKinsey RTS or the other Indemnified Parties in connection with

McKinsey RTS's services provided under the Engagement Letter.  In addition, if indemnification

or reimbursement obligations are held to be unavailable by any court (other than circumstances

where a court determines that liability resulted from the willful misconduct or gross negligence

of the Indemnified Party), the Engagement Letter allocates contribution obligations based on the

relative benefits and faults of McKinsey RTS and the Debtors.  The Engagement Letter further

sets forth that McKinsey RTS's aggregate liability shall be no more than the amount of its fees

actually received under the Engagement Letter.

## **Disclosure Regarding McKinsey RTS's Disinterestedness**

18.     To the best of my knowledge, information and belief, other than as may be

set forth herein, McKinsey RTS (a) is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code, (b) does not hold or represent any interest adverse to

the Debtors' estates and (c) has no connection to the Debtors, their creditors or their related

parties that would negatively impact McKinsey RTS's disinterestedness.  McKinsey RTS holds

no prepetition claim against the Debtors for services provided or expenses incurred.

19.    In anticipation of its proposed retention, McKinsey RTS:  (a) emailed

members of McKinsey RTS and the McKinsey RTS Team and searched its global client database

to determine the existence of any client services provided by such employees within the last

three years to parties in interest (the "Interested Parties") identified on the interested parties list

attached hereto as Schedule 1 (the "Interested Parties List"),[4] (b) emailed members of McKinsey

RTS, the McKinsey RTS Team and partners at affiliates that provide consulting services to

determine the existence of client services provided by employees within the last three years to

any client that focused on a direct commercial relationship or transaction with the Debtors and

(c) emailed all employees of McKinsey RTS and its affiliates to request information on any

relationships with the Debtors, the United States Trustee and the Bankruptcy Court, as well as

equity ownership in the Debtors.

20.    Based upon the research described above, McKinsey RTS has ascertained

that members of McKinsey RTS and its affiliates have served and/or currently serve various

parties on the Interested Parties List, but on matters unrelated to the Debtors and their chapter 11

cases.  More specifically, to the best of my knowledge and belief:

(a)    Members of the McKinsey RTS Team serve or have served in the
last three years one Major Customer but on matters unrelated to the
Debtors and these chapter 11 cases.

---

[4]    The identities of the Interested Parties were provided to McKinsey RTS by the Debtors or the Debtors'
other professional advisors.

(b)     Members of the McKinsey RTS Team serve or have served in the last three years two Major Competitors but in each case such support did not relate to coal and was unrelated to the Debtors and these chapter 11 cases.

(c)     A member of the McKinsey RTS Team attended a proposal meeting and submitted a proposal to a Major Competitor that was not accepted.

(d)     Certain members of the McKinsey RTS Team serve as "Senior Experts" or "Knowledge Specialists" and in connection with such services, in the past three years, provided market data to two Major Competitors one Major Unsecured Noteholder, one Lender Under A/R Facility, three Major Customers, one Revolving Facility Lender, one Other Major Supplier of Goods and Services, one Party to Material Unexpired Leases, and one Party to Joint Ventures.  No members received any confidential information specific to any of such parties except as noted in paragraph "g" herein and in each case such services were unrelated to the Debtors and these chapter 11 cases.

(e)     One member of the McKinsey RTS Team, through past employment by an affiliate of one of the Debtors' Professionals, Consultants and Service Providers in the past three years published daily market reports that were transmitted to various parties on the Interested Parties List.  Such reports involved market information and evaluations pertaining to the market, and no information specific to any of such parties except as noted in paragraph "g" herein.

(f)     One member of the McKinsey RTS Team was previously employed, in the past three years, by an affiliate of one of the Debtors' Parties to Material Unexpired Leases, Major Customers and Major Competitors, but on matters unrelated to the Debtors and these chapter 11 cases.

(g)     Members of the McKinsey RTS Team currently serve or in the past three years have served one Beneficiary of Letters of Credit, one Depository and Disbursement Bank, one Insurer, Insurance Broker and Third-Party Administrator, one Lender Under A/R Facility, one Major Competitor, three Major Customers, one Major Unsecured Noteholder, one Other Major Supplier of Goods and Services, two Parties to Joint Ventures, one Party to Material Unexpired Leases, two Revolving Facility Lenders, and one Significant Utility Provider or affiliates thereof, but in each case on matters unrelated to the Debtors and these chapter 11 cases.

-12-

(h)     Members of McKinsey RTS, in the past three years, have served one Major Customer of the Debtors on procurement in the coal sector generally but with no specific focus on the Debtors or these chapter 11 cases.

(i)     Members of McKinsey RTS serve or in the past three years have served one Major Competitor on matters related to coal but such matters are unrelated to the Debtors and these chapter 11 cases.

(j)     Ten members of McKinsey RTS were previously employed, in the past three years, by three of the Debtors' Professionals, Consultants and Service Providers, but in each case on matters unrelated to the Debtors and these chapter 11 cases.

(k)     Members of McKinsey RTS, in the past three years, served a company in chapter 11 where the Debtors were among the interested parties in that case as a top 50 creditor and over 100K vendor.  Such members of McKinsey RTS provided general analytical support to the client's procurement efforts in, among others, the coal sector, but such service was unrelated to the Debtors and these chapter 11 cases.

(l)     Members of McKinsey RTS currently serve or in the past three years have served one Beneficiary of Letters of Credit; two Largest Unsecured Creditors (Excluding Noteholders); five Professionals, Consultants and Service Providers; five Depository and Disbursement Banks; three Insurers, Insurance Brokers and Third-Party Administrators; one Lender Under A/R Facility; three Major Competitors; three Major Customers; four Major Equity Holders; four Major Unsecured Noteholders; one Material Surety; one Other Major Supplier of Goods and Services; one Party to Joint Ventures; one Party to Material Contracts; four Parties to Material Unexpired Leases; eight Revolving Facility Lenders; one Second Lien Noteholder; nine Secured Term Loan Lenders; and one Significant Utility Provider or affiliates thereof, but in each case on matters unrelated to the Debtors and these chapter 11 cases.

(m)    Members of an affiliate of McKinsey RTS, in the past three years, have served one Major Customer of the Debtors on procurement in the coal sector generally but with no specific focus on the Debtors or these chapter 11 cases.

(n)     An affiliate of McKinsey RTS is providing the Debtors with a proprietary knowledge benchmarking tool which includes confidential operational data and information of members of the mining sector who participate in the benchmarking model ("Benchmarking Confidential Information").  Such McKinsey

-13-

affiliate keeps the Benchmarking Confidential Information strictly confidential and discloses it only to its employees and agents who have a need to know and who are bound to keep it confidential in connection with performing the benchmarking services. The Benchmarking Confidential Information is used to provide participants with information comparing its data to the aggregated or disguised data of other participants in the benchmarking study. Participants' data is kept secure, confidential, and is only used to create aggregated and blinded results that do not allow any individual mine or participant to be identified.

21.     In addition, McKinsey RTS and its affiliates serve clients across a broad range of industries, functions, and geographies, and, within industries, serve competitors and do so in a manner that protects the confidentiality of each client's information (including the confidentiality of the engagement itself).  Thus, McKinsey RTS and certain of its affiliates may have in the past provided services for, may presently be providing services for, and may in the future provide services for entities that are determined to be creditors, lenders, shareholders, insurers, customers, competitors, vendors, or contract counterparties of the Debtors or of Interested Parties named on the Interested Parties List.  However, to the best of my current knowledge, subject to the disclosures set forth herein, such services do not focus on direct commercial relationships or transactions between such companies and the Debtors.

22.     McKinsey RTS and its affiliates do, however, from time to time provide overall strategic analysis and advice to companies that operate in the industries in which the Debtors operate, which analysis and advice could include review and comment on publicly available information and strategic considerations with respect to the Debtors, as well as other companies.  Similarly, certain members of McKinsey RTS and its affiliates may have business associations with certain of the Debtors' creditors, professionals, service providers or other Interested Parties, or interests adverse to such creditors, professionals, service providers or

Interested Parties, which associations, to the best of my knowledge and information, have no

connection with these proceedings.

23.     As noted, McKinsey RTS and its affiliates have a long-standing policy of

serving competing companies, and they do so in a manner that protects the confidentiality of

each client's information.  In fact, McKinsey RTS's expertise which the Debtors desire to utilize

for the purposes described herein, derives from McKinsey RTS's and its affiliates' broad-based

service in many different aspects of the industry and business sectors in which the Debtors

operate.  Because of its practice of serving clients with overlapping or competing interests, these

affiliates do not have in place any centralized conflicts identification process and only have a

central database of clients and engagements performed for those clients, which is kept principally

for record keeping purposes, but does not contain detailed descriptions of the client support.

24.     However, McKinsey RTS completed the following steps in order to make

the representations contained herein:

> (a)     McKinsey RTS made inquiry to all partners or their equivalents at
> its affiliates worldwide that provide consulting services about
> whether they currently provide consulting services to entities that
> focus on a direct commercial relationship or transaction with the
> Debtors.

> (b)     McKinsey RTS made inquiry to the partners or their equivalents at
> its affiliates worldwide that provide consulting services, who are
> responsible for those clients appearing on the Interested Parties
> List, as to whether any services McKinsey RTS or its affiliates
> provided over the past three years or are currently providing to
> such Interested Parties focused or focus on a direct commercial
> relationship or transaction with the Debtors.

> (c)     McKinsey RTS made inquiry of all employees at all of its affiliates
> worldwide, as to whether such employee or a member of his or her
> immediate family is related to or employed by the Debtors, the
> United States Trustee or the Bankruptcy Court.

(d)      McKinsey RTS made inquiry of all employees at all of its affiliates worldwide as to whether such employee or a member of his or her immediate family owns equity securities of the Debtors.

(e)      McKinsey RTS requested that, for the duration of McKinsey RTS's retention by the Debtors, partners of McKinsey RTS and its affiliates worldwide that provide consulting services immediately inform the office of McKinsey RTS's General Counsel if proposed support for any of their clients would focus on a direct commercial relationship with the Debtors.

25.     Based upon the responses to these inquiries, McKinsey RTS and its affiliates serve or have served in the last three years various parties included on the Interested Parties List, but other than as may be described herein, such client service has not focused on a direct commercial relationship or transaction with the Debtors.

26.     Furthermore, based upon responses received to the inquiry of over 18,000 colleagues of McKinsey RTS and its affiliates, no employees of the McKinsey RTS Team or McKinsey RTS have immediate family members that are related to or employed by the Debtors.  In addition, to the best of my knowledge and belief, no employees of the McKinsey RTS Team or McKinsey RTS or their family members hold equity securities of the Debtors.[5]

27.     To the best of my knowledge and belief, no client of McKinsey RTS and its affiliates who is identified on the Interested Parties List accounts for more than one percent of McKinsey RTS's and its affiliates' gross annual revenue on a consolidated basis as of its fiscal year 2014.

---

[5]    In reviewing its records and the relationships of its professionals, McKinsey RTS did not seek information as to whether any employee of McKinsey RTS or its affiliates or member of his or her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain employees have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors; or (b) has engaged in any ordinary course consumer transaction with any party in interest. If any such relationship does exist, I do not believe it would impact McKinsey RTS's disinterestedness or otherwise give rise to a finding that McKinsey RTS holds or represents an interest adverse to the Debtors' estates.

28.     McKinsey RTS has adopted procedures to identify any potential support by McKinsey RTS that focuses on a direct commercial relationship or transaction with the Debtors so that McKinsey RTS may either make disclosure of such potential engagement to the Bankruptcy Court or take other appropriate steps.  If and when retained, McKinsey RTS will again communicate to all partners in McKinsey RTS and its affiliates to notify the office of the General Counsel of any such proposed client engagements.

29.     Finally, as part of its diverse practice, McKinsey RTS and its affiliates are involved in numerous matters and transactions involving many different professionals, including attorneys, accountants and financial consultants, some of which may represent the Debtors or claimants and Interested Parties in the Debtors' chapter 11 cases.  For instance, McKinsey RTS and its affiliates may have in the past been represented by, may currently be represented by, and may in the future be represented by attorneys, law firms or financial advisors who are involved in these proceedings, including law firms and financial advisors representing the Debtors.  Further, McKinsey RTS and its affiliates may in the past have served, may currently serve, and may in the future serve professionals in these cases on matters unrelated to the Debtors' chapter 11 cases.  In addition, McKinsey RTS and its affiliates may in the past have worked with, may currently work with, and likely will in the future work with professionals in these cases on matters unrelated to these cases.  Lastly, McKinsey RTS and its affiliates may have in the past contracted with, may currently contract with, and may in the future contract with certain service providers listed on the Interested Parties List for necessary business services.  Based upon my current knowledge of the professionals involved, to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors herein in matters upon which McKinsey RTS is to be employed, and none are in connection with these cases.

30.     In the 90 days immediately preceding the Petition Date, McKinsey RTS received payments totaling $1,825,000.00 in the aggregate for services rendered and expenses incurred on behalf of the Debtors.  McKinsey RTS received no other payments from the Debtors during the 90 days immediately preceding the Petition Date.  As of the Petition Date, the Debtors did not owe McKinsey RTS for any fees or expenses incurred prior to the Petition Date.

31.     McKinsey RTS has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

32.     McKinsey RTS will conduct an ongoing review of its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  In this regard, if McKinsey RTS discovers additional information that requires disclosure, McKinsey RTS will file supplemental disclosures with the Court.

33.     Based upon the foregoing, I believe that McKinsey RTS does not hold an adverse interest to the Debtors' estates and that McKinsey RTS is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

34.     McKinsey RTS reserves the right to supplement this Declaration in the event it becomes aware of any relationship or other information that requires disclosure.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 24, 2015
        Chicago, Illinois

                                        /s/  Kevin Carmody
                                        Kevin Carmody
                                        Practice Leader

## **<u>SCHEDULE 1</u>**

Interested Parties

# Alpha Natural Resources, Inc., et al.

## Interested Parties

**Debtors**

Alex Energy, Inc.
Alpha American Coal Company LLC
Alpha American Coal Holding LLC
Alpha Appalachia Holdings, Inc.
Alpha Appalachia Services, Inc.
Alpha Coal Resources Company LLC
Alpha Coal Sales Co. LLC
Alpha Coal West, Inc.
Alpha European Sales, Inc.
Alpha India LLC
Alpha Land and Reserves, LLC
Alpha Midwest Holding Company
Alpha Natural Resources, Inc.
Alpha Natural Resources LLC
Alpha Natural Resources International LLC
Alpha Natural Resources Services LLC
Alpha PA Coal Terminal LLC
Alpha Shipping and Chartering LLC
Alpha Sub Eight LLC
Alpha Sub Eleven, Inc.
Alpha Sub Nine LLC
Alpha Sub One, LLC
Alpha Sub Ten, Inc.
Alpha Sub Two LLC
Alpha Terminal Company LLC
Alpha Wyoming Land Company LLC
AMFIRE LLC
AMFIRE Holdings LLC
AMFIRE Mining Company LLC
Appalachia Coal Sales Company, Inc.
Appalachia Holding Company
Aracoma Coal Company, Inc.
Axiom Excavating and Grading Services LLC
Bandmill Coal Corporation
Bandytown Coal Company
Barbara Holdings, Inc.
Barnabus Land Company
Belfry Coal Corporation
Big Bear Mining Company
Black Castle Mining Company, Inc.
Black King Mine Development Company
Black Mountain Cumberland Resources, Inc.
Boone East Development Company
Brooks Run Mining Company LLC
Brooks Run South Mining LLC
Buchanan Energy Company LLC
Castle Gate Holding Company
Clear Fork Coal Company

Coal Gas Recovery II, LLC
Crystal Fuels Company
Cumberland Coal Resources, L.P.
Dehue Coal Company
Delbarton Mining Company
Delta Mine Holding Company
DFDSTE Corporation
Dickenson-Russell Coal Company LLC
Dickenson-Russell Land and Reserves LLC
DRIH Corporation
Duchess Coal Company
Eagle Energy, Inc.
Elk Run Coal Company, Inc.
Emerald Coal Resources, L.P.
Enterprise Mining Company LLC
Esperanza Coal Company LLC
Foundation Mining LLC
Foundation PA Coal Company LLC
Foundation Royalty Company
Freeport Mining LLC
Freeport Resources Company LLC
Goals Coal Company
Gray Hawk Insurance Company
Green Valley Coal Company
Greyeagle Coal Company
Harlan Reclamation Services LLC
Herndon Processing Company LLC
Highland Mining Company
Hopkins Creek Coal Company
Independence Coal Company, Inc.
Jacks Branch Coal Company
Jay Creek Holding LLC
Kanawha Energy Company
Kepler Processing Company LLC
Kingston Mining, Inc.
Kingwood Mining Company LLC
Knox Creek Coal Corporation
Lauren Land Company
Laxare, Inc.
Litwar Processing Company LLC
Logan County Mine Services, Inc.
Long Fork Coal Company
Lynn Branch Coal Company, Inc.
Maple Meadow Mining Company
Marfork Coal Company, Inc.
Martin County Coal Corporation
Maxxim Rebuild Co. LLC
Maxxim Shared Services LLC
Maxxum Carbon Resources LLC
McDowell-Wyoming Coal Company LLC

Mill Branch Coal Corporation
New Ridge Mining Company
New River Energy Corporation
Neweagle Industries, Inc.
Nicewonder Contracting, Inc.
North Fork Coal Corporation
Omar Mining Company
Paramont Coal Company Virginia LLC
Paynter Branch Mining, Inc.
Peerless Eagle Coal Company
Pennsylvania Land Holdings Company LLC
Pennsylvania Land Resources, LLC
Pennsylvania Land Resources Holding
      Company, LLC
Pennsylvania Services Corporation
Performance Coal Company
Peter Cave Mining Company
Pigeon Creek Processing Corporation
Pilgrim Mining Company, Inc.
Pioneer Fuel Corporation
Plateau Mining Corporation
Power Mountain Coal Company
Premium Energy LLC
Rawl Sales & Processing Company
Republic Energy, Inc.
Resource Development LLC
Resource Land Company LLC
River Processing Corporation
Riverside Energy Company LLC
Riverton Coal Production, Inc.
Road Fork Development Company, Inc.
Robinson-Phillips Coal Company
Rockspring Development, Inc.
Rostraver Energy Company
Rum Creek Coal Sales, Inc.
Russell Fork Coal Company
Shannon-Pocahontas Coal Corporation
Shannon-Pocahontas Mining Company
Sidney Coal Company, Inc.
Spartan Mining Company
Stirrat Coal Company
Sycamore Fuels, Inc.
T. C. H. Coal Company
Tennessee Consolidated Coal Company
Thunder Mining Company II, Inc.
Trace Creek Coal Company
Twin Star Mining, Inc.
Wabash Mine Holding Company
Warrick Holding Company
West Kentucky Energy Company
White Buck Coal Company
Williams Mountain Coal Company
Wyomac Coal Company, Inc.

**Non-Debtor Affiliates of the Debtors (Domestic)**

ANR Second Receivables Funding LLC
Dominion Terminal Associates LLP
Marshall Land LLC
Mountaineer Capital, L.P.
Twisted Gun, LLC
Wyoming Quality Healthcare Coalition LLC

**Non-Debtor Affiliates of the Debtors (Foreign)**

Alpha Coal India Private, Ltd.
Alpha Coal Sales International, Ltd.
Excelven Pty, Ltd.

**Recently Dissolved or Divested Entities**

ANR Receivables Funding, LLC
Hanna Land Company LLC
Scarlet Development Company

**Current and Recent Directors, Officers
and Senior Management of the Debtors**

Gary W. Banbury
A. C. Brisimitzakis
Philip J. Cavatoni
G. S. Cole
Kevin S. Crutchfield
William J. Crowley, Jr.
E. Linn Draper, Jr.
G. A. Eisenberg
Deborah M. Fretz
P. Michael Giftos
V. R. Groves
Alan W. Jones, Jr.
Victor K. Hainer
L. Patrick Hassey
J. Scott Kreutzer
Mark M. Manno
William L. Phillips, III
Joel Richards, III
Brian D. Sullivan
Richard H. Verheij
P. H. Vining
F. J. Wood

**Major Current Business
Affiliations of Debtors' Current Directors**

Alliance Data Systems, Inc.
American Coalition for Clean Coal Electricity
Chicago Bridge & Iron Company, N.V.
Coal Industry Advisory Board
Coal Utilization Research Council
Coeur d'Alene Mines Corporation

Coeur Mining, Inc.
Curtis Institute of Music
Eastern Coal Council
Electro Mechanical Corporation
Joel Richards and Associates
JNL Investors Series Trust
JNL Series Trust
JNL Strategic Income Fund
JNL Variable Fund LLC
Kaiser Aluminum Corporation
Kentucky Coal Association
L. Patrick and Marsha L. Hassey Family
    Charitable Foundation
National Mining Association
NorthWestern Corporation
Project Home (Philadelphia)
Ryder System, Inc.
Southwest Virginia Higher Education Center
The Layton Companies, Inc.
Virginia Tech College of Mining and
    Minerals Engineering
Wellmont Foundation
West Virginia Coal Association

**Debtors' Professional
Memberships and Commercial Associations**

Allegheny Conference
American Coalition for Clean Coal Electricity
Beckley-Raleigh (West Virginia) Chamber
    of Commerce
Bristol (Virginia) Chamber of Commerce
Dickinson County (Virginia) Chamber of Commerce
Friends of Coal
International Energy Agency, Coal Industry
    Advisory Board
Kentucky Chamber of Commerce
Kentucky Coal Association
Kentucky Coal Operators and Associates
Logan County (West Virginia) Chamber
    of Commerce
National Association of Manufacturers
National Coal Council
National Mining Association
Pennsylvania Chamber of Business and Industry
Pennsylvania Coal Alliance
Ripon Society
Rotary Club of Charleston (West Virginia)
Southern States Energy Board
Southwestern Virginia Technology Council
U.S. Chamber of Commerce
Utilities, Telecommunication and Energy Coalition
Virginia Chamber of Commerce
Virginia Coal and Energy Alliance
Virginia Manufacturers Association
West Virginia Business and Industry Council

West Virginia Chamber of Commerce
West Virginia Coal Association
West Virginia Manufacturers Association
Wise County (Virginia) Chamber of Commerce
World Coal Association
Wyoming Mining Association

**Revolving Facility Lenders**

Apollo Global Management LLC
Bank of America, N.A.
Bank of Montreal
Barclays Bank PLC
Branch Banking and Trust Company
Citigroup Global Markets
Credit Agricole Corporate and Investment Bank
Deutsche Bank
Goldman Sachs Bank USA
JPMorgan Chase Bank, N.A.
Morgan Stanley Senior Funding, Inc.
PNC Bank, N.A.
RBS Greenwich Capital
Sumitomo Mitsui Banking Corporation
U.S. Bank, National Association
UBS Stamford Branch TRS
Wells Fargo Bank, N.A.

**Lenders Under A/R Facility**

General Electric Capital Corporation
Webster Business Credit Corporation

**Secured Term Loan Lenders**

3i Debt Management US LLC
Aegon USA Investment Management LLC
Allianz Global US
American Money Management
Apollo Global Management
Bank of America, N.A.
Barclays Bank PLC
Black Diamond Capital
BlueMountain Capital
CBRE Inc.
Columbia Management Investment Advisers LLC
Contrarian Funds LLC
Credit Industriel et Commercial
Credit Suisse
Credit Value Partners LP
Deutsche Bank
Eaton Vance Corporation
Fidelity Investments
H.I.G. Whitehorse Capital LLC
Highbridge Capital
JPMorgan Chase Bank, N.A.
KDP Asset Management

Kramer Van Kirk Credit
Midtown Acquisitions LP 1
MJX Asset Management
Morgan Stanley
Napier Park Global Capital LLC
Neuberger Berman
Newcastle Capital
Oak Hill Advisors LP
Octagon Credit Investors
Onex Credit Partners, LLC
Oppenheimer Funds
Pinebridge Investments LLC
PPM America, Inc.
Prudential Insurance
Regiment Capital
Sankaty Advisors, LLC
Thivent Financial
Valcour Capital
Wellington Management Company
Western Asset Management
Zais Group LLC

**Second Lien Noteholders**

BlueMountain Capital Management LLC
Capital Research & Management Company (U.S.)
Franklin Advisers, Inc.
MacKay Shields LLC
Sankaty Advisors LLC
T. Rowe Price Associates, Inc.

**Beneficiaries of Letters of Credit**

Ace American Insurance Co.
Arch Insurance Group
Argonaut Insurance Co.
Aspen American Insurance Co.
Aspen Insurance
Atlantic Specialty Insurance Co.
Chubb & Son
Dominion Transmission
Greater Johnstown Water Authority
Indemnity National Insurance Co.
Insurance Commission of West Virginia
Kentucky Department of Workers' Claims
Liberty Mutual Insurance Co.
National Union Fire Insurance
Northern Continental
Old Republic Insurance Co.
OneBeacon
Pennsylvania Bureau of Workers' Compensation,
    Self-Insurance Division
Steadfast Insurance Co.
SummitPoint Insurance Co.
Travelers

U.S. Department of Labor, Division of Longshore
    and Harbor Workers' Compensation
United Mine Workers of America 1992 Benefit Plan
Westchester Fire Insurance Co.
Western Surety Co.
Zurich American Insurance Co.

**Current Bond Trustees**

Union Bank, N.A., f/k/a
    Union Bank of California
Wilmington Trust Company

**Major Unsecured Noteholders**

Aberdeen Asset Management, Inc. (U.S.)
BlackRock Advisors LLC
BlueMountain Capital Management LLC
Brigade Capital Management, L.P.
Capital Research & Management Company (U.S.)
Fidelity Management & Research Company
Franklin Advisers, Inc.
Hudson Bay Capital Management, L.P.
J.P. Morgan Securities LLC
Kornitzer Capital Management, Inc.
Lazard Asset Management LLC (U.S.)
MacKay Shields LLC
Marathon Asset Management, L.P.
Mason Street Advisors LLC
Neuberger Berman Management LLC
Nomura Corporate Research and Asset Management,
    Inc. (U.S.)
Oaktree Capital Management, L.P.
Phoenix Investment Adviser LLC
Pioneer Investment Management, Inc.
PPM America, Inc.
Regiment Capital Advisors
River Birch Capital LLC
Sankaty Advisors LLC
SG Americas Securities LLC
Silver Point Capital, L.P. (U.S.)
Silver Rock Financial LLC
SMH Capital Advisors, Inc.
State Street Global Advisors (SSgA)
W.R. Huff Asset Management Co. LLC
Wolverine Asset Management LLC

**Depository and Disbursement Banks**

Australia and New Zealand Banking Group Ltd.
    (ANZ)
Bank of America
Branch Banking and Trust Company (BB&T)
ClearMountain Bank
Credit Agricole Bank
Deutsche Bank

First Community Bank
First Federal Savings and Loan Association of
    Greene County
First National Bank of Gillette
JPMorgan Chase & Co., nka JPMorgan Chase,
    National Association
Morgan Stanley
PNC Bank
Sterling Capital Management
Sumitomo Mitsui Banking Corporation (SMBC)
The Bancorp, Inc.
UBS
United Bank
Wells Fargo
Whitesville State Bank

**Debtors' Largest Unsecured
Creditors (Excluding Noteholders)**

Acin LLC
AEP River Operations LLC
Appalachian Power Company
Brake Supply Co., Inc.
Bridgestone Americas Tire Operations
Carter Machinery Co. Inc.
Cecil I. Walker Machinery Company
Cleary Gottlieb Steen & Hamilton LLP
CSXT
D-A Lubricant Co., Inc.
Equitable Oil Purchasing Company
Heitech Corporation
J.H. Fletcher & Co.
Jennmar Corporation
Joy Global Underground Mining LLC
Kinder Morgan Operating, L.P.
Lee Supply Co., Inc.
Mayo Manufacturing Co., Inc.
Monk Mining Supply, Inc.
Nelson Brothers LLC
Norfolk Southern Railway Company
Pension Benefit Guaranty Corporation
Powell Construction Company
Rish Equipment Company
Rowland Land Company
Service Pump & Supply, Inc.
Tramco Services, Inc.
United Central Industrial Supply
United States Department of the Interior, Bureau of
    Land Management
United States Environmental Protection Agency
Viking Explosives LLC
Wyoming Machinery Company
Wyoming Office of State Lands and Investments
Xcoal Energy Resources

**Major Equity Holders**

Anchorage Capital Group LLC
BlackRock Fund Advisors
California Public Employees' Retirement System
Charles Schwab Investment Management, Inc.
Columbia Management Investment Advisers LLC
Contrarian Capital Management LLC
D.C. Capital Advisors, Ltd.
Deutsche Asset Management
    Investmentgesellschaft mbH (DeAM)
Dimensional Fund Advisors, L.P.
Discovery Capital Management LLC
First Washington Corporation
Hudson Bay Capital Management, L.P.
KBC Fund Management, Ltd.
Luminus Management LLC
Michigan Department of Treasury
Nomura Securities Co., Ltd.
Northern Trust Investments, Inc.
RBC Global Asset Management, Inc.
Renaissance Technologies LLC
Sankaty Advisors LLC
SSgA Funds Management, Inc.
Steelhead Partners LLC
Systematic Financial Management, L.P.
UBS Financial Services, Inc.
Vanguard Group, Inc.

**Parties to Joint Ventures with the Debtors**

The Abell Foundation, Inc.
Arch Coal, Inc.
Arch Reclamation Services, Inc.
Frank A. Bonsal, Jr.
Branch Banking & Trust Company
George L. Bunting, Jr.
Charles H. Salisbury Jr. 2005 Grantor Retained
    Annuity Trust
Citadel Advisors, LLC
Citizens Bank of Weston
City National Bank of West Virginia
Cloud Peak Energy Resources LLC
Federal Home Loan Bank of Pittsburgh
Floyd Family LP
Robert Feinstein
Eileen Francis
Walker Friedman
Shawn P. George
Greenbrier Land Co.
Huntington Bank
Jon Hyman
Instigator Investments III, LLC
IRA Custodian for David G. Settle
IRA Custodian for John R. Pfeffer

James L. Hotvet and Jill B. Hotvet Irrevocable Trust
John R. Pfeffer Trust
Charles T. Jones
Lanco Infratech Ltd.
Charlie Mecham
Melinda B. Pfeffer Trust
The Melrose Group, LLC
F. Eric Nelson, Jr.
F. Eric Nelson, Sr.
NGP Energy Capital Management
Nixon Peabody Financial Advisors, LLC
Arnold Palmer
Peabody Energy Corp.
Peabody Holding Co., Inc.
Peabody Powder River Operations, LLC
John R. Pfeffer
Robert B. Priest
Rice Energy Holdings LLC
Rice Energy Management LLC
Jay E. Ricks
Michael Riley
RJ Holdings Ltd.
Charles H. Salisbury, Jr.
Salisbury Family Foundation
David G. Settle
David G. Settle IRA Account
Larry Settle
Peter S. Strange
W.R. Grace & Co.
WesBanco Bank, Inc.
West Virginia Capital Management, LLC
West Virginia Enterprise Advancement Fund, LLC

**Parties to Material Contracts with the Debtors**

4 Way Trucking Inc.
Appalachian Transfer LLC
B & M Repair Inc.
Brake Supply Co. Inc.
Bresee Trucking Co. Inc.
Brians Battery Svc LLC
Bridgestone Americas Tire Operations
Bridgestone Firestone North American Tire LLC
CLDN Cobelfret S.A.
CSXT
D-A Lubricant Co. Inc.
Double R Trucking
Electric Motor Service
Enersys
Equitable Oil Purchasing Co.
Fastenal Co.
Flomin Coal Inc.
Hills Fuel Trucking Inc.
J.H. Fletcher & Co.
Jabo Supply Corp.
Jennmar Corp.

Jennmar McSweeney LLC
Kinder Morgan Operating LP
Laurel Trucking Inc.
Lexycon LLC
Long Run Transport
Maria Trucking Co. Inc.
Mayo Manufacturing Co. Inc.
Medford Trucking LLC
Michelin North America Inc.
Mine Power Systems Inc.
Monk Mining Supply Inc.
Nelson Brothers, LLC
Nexans Amercable Inc.
Norden AS
Norfolk Southern Railway Company
Paccship UK
Pioneer Conveyor LLC
Polydeck Screen Corp.
Quality Magnetite LLC
Rish Equipment Co.
Service Pump & Supply Inc.
State Electric Supply Co Inc.
TC Transport Inc.
Todd Case Trucking Inc.
Tri County Contractors Inc.
Tyler Trucking LLC
United Central Industrial Supply
Veyance Industrial Services
Viking Explosives LLC
W & B Fabricators Inc.

**Parties to Material**
**Unexpired Leases with the Debtors**

Acin LLC
AIG Commercial Equipment Finance
Alpha Rental Properties, LLC
Ark Land Corporation (Arch Coal, Inc.)
Banc of America Leasing & Capital
Bank of the West
Berwind Natural Resources/Berwind Land Company
Bristol Motor Speedway, LLC
Capital One Equipment Leasing & Finance
Caterpillar Financial Services
Jerry Chapman
Cole and Crane Real Estate Trust
Dingess Rum Properties LLC
Eagle Land
Executive Air Terminal, Inc.
Fara Coals
Howard Family LLC
HUB Properties Trust
Industrial Development Authority of Wise County
Jewell Smokeless Coal Corp.
Jimson, Inc.
JRY Natural Resources

Kentucky River Land, L.P.
Kentucky River Properties LLC
Key Equipment Finance
L&H Industrial Inc.
MB LLC
Mountain Trails Real Estate, LLC
National League of Cities
Natural Resources Partners
One Alpha Place, LLC
Pacific Western Equipment Finance
Pardee Minerals LLC
Penn Virginia Operating Company LLC
Pennsylvania Power and Light/
    PP&L Generation LLC
Petitto Mine Equipment Inc.
Pocahontas Land Corporation
Pristine Resources, Inc. (Arcelor Mittal)
Reit Management & Research LLC
Rowland Land Company LLC
Shonk Land Company LLC
Shonk Seng Creek
Siemens Financial Services
SLD Todd LLC
Southern Land Company
SSK Investments, LLC
Staples Advantage
State of Wyoming
T. J. Realty
The Oxbow Corp.
Tri-Cities Airport Commission
U.S. Bancorp Equipment Finance Inc.
United Coal Co.
United Hansel, Inc.
United States Department of the Interior
WBRD LLC
Western Pocahontas Properties
WPP LLC
Wyoming Office of State Lands & Investments
Xcoal Energy Resources

**Permitting/Licensing**
**Authorities, Environmental Regulatory**
**Agencies and Reclamation Bonding Entities**

Buchanan County (Virginia) Health Department
City of Norton (Virginia) Health Department
Dickenson County (Virginia) Health Department
Federal Communications Commission
Illinois Department of Natural Resources
Illinois Environmental Protection Agency
Indiana Department of Natural Resources
Kentucky Cabinet for Health and Family Services,
    Department for Public Health
Kentucky Department for Environmental Protection
Kentucky Department for Natural Resources
Kentucky Division of Mine Safety

Pennsylvania Bureau of Mine Safety
Pennsylvania Department of
    Environmental Protection
Pike County (Kentucky) Health Department
Russell County (Virginia) Health Department
Tennessee Department of Environment and
    Conservation
Tennessee Office of Surface Mining, Reclamation
    and Enforcement
U.S. Army Corps of Engineers
U.S. Bureau of Alcohol, Tobacco, Firearms  and
    Explosives
U.S. Bureau of Land Management
U.S. Environmental Protection Agency
U.S. Mine Safety and Health Administration
U.S. Nuclear Regulatory Commission
U.S. Office of Surface Mining Reclamation and
    Enforcement
Utah Division of Oil, Gas and Mining
Virginia Department of Environmental Quality
Virginia Department of Health
Virginia Department of Mines, Minerals and Energy
Virginia Marine Resources Commission
West Virginia Department of Environmental
    Protection
West Virginia Department of Health and
    Human Resources
West Virginia Division of Natural Resources,
    Office of Land and Streams
West Virginia Office of Mine Health, Safety
    and Training
Wise County (Virginia) Building and Zoning
    Department
Wise County (Virginia) Health Department
Wyoming Department of Environmental Quality
Wyoming Department of Workforce Services –
    Mines Inspection and Safety

**Debtors' Professionals,**
**Consultants and Service Providers**

A & A Services, Inc.
Accountemps
Alvarez & Marsal North America, LLC
Bank of America
Becker Law Firm PLLC
Bloomberg Finance, L.P.
Bloomberg BNA
CG Commercial Finance
Cherry Bekaert LLP
Cleary Gottlieb Steen & Hamilton LLP
Corporate Executive Board
Creditriskmonitorcom
CT Corporation System d/b/a CT Lien Solutions
Davis Polk & Wardwell LLP
Deloitte Tax LLP

Ducera Partners LLC
Ernst & Young
Financial Accounting Standards Board
Hadary Services Company LLC
Hicok Fern Brown & Garcia CPAs
Houlihan Lokey, Inc.
Hunton & Williams LLP
Intax, Inc.
Jackson Kelly PLLC
Jones Day
Keane
KPMG LLP
Kurtzman Carson Consultants LLC
McKinsey & Company, Inc.
Moody's Investors Service
Public Company Accounting Oversight Board
Rothschild, Inc.
Siemens Industry Pace Global
Standard & Poor's
Tax Compliance, Inc.
Thomson Reuters
Thomson Reuters GRC, Inc.
Thomson Tax & Accounting
Towers Watson
Towers Watson Delaware, Inc.
Venture Management International, Ltd.
Willis of New York

**Other Major Suppliers of Goods and Services**

Brayman Construction Corp.
Cecil I. Walker Machinery Co.
Chisler Brothers Contracting LLC
Cramer Security & Investigations Inc.
CSXT
Earth Support Services Inc.
East Fairfield Coal Co.
FLSmidth USA Charleston Operations
GE Fairchild LLC
GMS Mine Repair & Maintenance Inc.
Joy Global Surface Mining Inc.
Joy Global Underground Mining LLC
K & K Steam Cleaning & Contracting Inc.
Lee Supply Co. Inc.
Nalco Co.
Norfolk Southern Railway Company
Powell Construction Co. WV Division LLC
TIC - The Industrial Co
Tramco Services Inc.
Wyoming Machinery Co.

**Major Customers of the Debtors**

American Electric Power/Appalachian Power
      Company
ArcelorMittal Sourcing, S.A.

Carmeuse Lime and Stone, Inc.
Dayton Power & Light Company
Drax Power, Ltd.
Duke Energy/Progress
Dynegy Commercial Asset Management, LLC
Enel Trade SpA
Eregli Demir Ve Celik Fabrikalari T.A.S.
Homer City Generation, L.P.
Ilva S.P.A.
Indiana Michigan Power Company
Kansas City Power & Light Company
Kentucky Power Company
Luminant Energy Company LLC
NRG Power Marketing LLC
Peabody COALTRADE LLC
PPL Coal Supply LLC
Public Service Company of Colorado
Resource Fuels LLC
Santee Cooper
Siderurgica Triestina Srl
SSAB EMEA AB
Steel Authority of India, Ltd.
Steelcom S.A.M.
Tata Steel Global Procurement Co. Pte., Ltd.
United States Steel
Usinas Siderurgicas de Minas Gerais S.A.
Virginia Electric & Power Company
Vitol, Inc.
Westar Energy, Inc.
Xcoal Energy & Resources

**Parties to Material Litigation with the Debtors**

Brian Goe
California State Teachers' Retirement System
Effective Exploration LLC
Harman Development Corporation
Harman Mining Corporation
Helene Hutt
Hugh M. Caperton
International Union of Operating Engineers Pension
      Fund of Eastern Pennsylvania and Delaware
Louisiana Municipal Public Employees' Retirement
      System
New Jersey Building Laborers Pension Fund
Richard Silverman
Sandy Taylor
Sean Ferrell
Sovereign Coal Sales, Inc.

**Insurers, Insurance Brokers
and Third-Party Administrators**

ACE American Insurance Company
ACE Bermuda
AIG Specialty Insurance Company

Allied World Assurance Company, Ltd.
American Guarantee & Liability (Zurich)
American Longshore Mutual Association, Ltd.
Apollo Liability Consortium
Arch Insurance Company
Argonaut Insurance Company
Ariel Re
Aspen Specialty Insurance Company
AXIS Insurance
Beazley Insurance Company
Berkley
BrickStreet Mutual Insurance Company
Chartis Specialty Insurance Company
Commerce and Industry Insurance Company
Continental Casualty Company
Endurance American Insurance Company
Everest National Insurance Company
Federal Insurance Company
Freedom Specialty Insurance Company
Gard Assuranceforeningen
Global Aerospace
Hartford Casualty Insurance Company
Inter Hannover
Ironshore Specialty Insurance Company
Lexington Insurance Company (US)
Liberty Mutual Insurance Europe, Ltd.
Lloyd's London Syndicate
Markel Bermuda
Munich Re
National Union Fire Insurance Company
    of Pittsburgh
Navigators Insurance Company
RSUI
Starr Indemnity & Liability Company
SummitPoint Insurance Company
Swiss Re International SE
Travelers Property Casualty Company of America
Twin City Fire Insurance Company
Westchester Fire Insurance Company
XL Insurance Company SE
XL Specialty Insurance Company
Zurich American Insurance Company

**Material Sureties**

ACE INA Group
Arch Capital Group
Argo Group
Aspen US Insurance Group
Chubb Group of Insurance Companies
CNA Insurance Group
Gray Hawk Insurance Company
Indemnity National Insurance Company
Lexon Insurance Company
Liberty Mutual Insurance Companies
Lyndon Property Insurance Company

OneBeacon Insurance Company
RLI Group
Safeco Insurance Companies
Travelers Insurance Group
Zurich Insurance Group

**Significant Utility Providers**

AT&T
AT&T Mobility
American Electric Power
Appalachian Power Company
Bristol Virginia Utilities (BVU)
Black Hills Energy
CenturyLink
Cumberland Valley Electric
First Energy Solutions
Frontier
Kentucky Power Company
Kentucky Utilities Company
Matheson TRIGAS, Inc.
Mon Power
Mountaineer Gas Company
Nicholas Sanitation, Inc.
Old Dominion Power Company
Penelec
Powder River Energy Corporation
REA Energy
Southwestern Pennsylvania Water Authority
Verizon
Verizon Business
Verizon Wireless
West Penn Power
Windstream

**Major Competitors**

Alliance Resource Partners, L.P./Alliance Coal LLC
Anglo American Plc
ArcelorMittal Princeton
Arch Coal, Inc.
BHP Billiton
Blackhawk Mining LLC
Cloud Peak Energy, Inc.
CONSOL Energy, Inc.
Coronado Coal LLC
Drummond Company, Inc.
Glencore Plc
Integrity Coal Sales, Inc.
Kiewit Mining Group, Inc.
Marshall Resources, Inc.
Murray Energy Corporation
Oxford Resources GP LLC
Patriot Coal Corporation
Peabody Energy, Inc.
Revelation Energy LLC

Rhino Resource Partners, L.P.
Rosebud Mining Company
Teck Resources, Ltd.
TECO Coal
United Coal Company (Metinvest)
Walter Energy, Inc.
Xcoal Energy & Resources

**Attorneys for the United States Trustee's**
**Office for the Eastern District of Virginia**

Jack I. Frankel
Joseph A. Guzinski
Bradley D. Jones
Shannon F. Pecoraro
Judy Robbins
Robert B. Van Arsdale
Cecelia A. Weschler
Kenneth N. Whitehurst, III

**Bankruptcy Judges for the**
**Eastern District of Virginia**

Hon. Kevin R. Huennekens
Hon. Brian F. Kenney
Hon. Robert G. Mayer
Hon. Keith L. Phillips
Hon. Frank J. Santoro
Hon. Stephen C. St. John

## EXHIBIT C

**Proposed Order**

JONES DAY

North Point

901 Lakeside Avenue

Cleveland, Ohio  44114

Telephone:  (216) 586-3939

Facsimile:  (216) 579-0212

David G. Heiman (admitted *pro hac vice*)

Carl E. Black (admitted *pro hac vice*)

Thomas A. Wilson (admitted *pro hac vice*)

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

HUNTON & WILLIAMS LLP

Riverfront Plaza, East Tower

951 East Byrd Street

Richmond, Virginia  23219

Telephone:  (804) 788-8200

Facsimile:  (804) 788-8218

Tyler P. Brown (VSB No. 28072)

J.R. Smith (VSB No. 41913)

Henry P. (Toby) Long, III (VSB No. 75134)

Justin F. Paget (VSB No. 77949)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-33896 (KRH) |
| Debtors. | (Jointly Administered) |

## ORDER, PURSUANT TO SECTIONS 327(a), 328(a)
## AND 1107(b) OF  THE BANKRUPTCY CODE, BANKRUPTCY
## RULE 2014(a) AND LOCAL BANKRUPTCY RULE 2014-1, AUTHORIZING
## THE DEBTORS TO RETAIN AND EMPLOY MCKINSEY RECOVERY &
## TRANSFORMATION SERVICES U.S., LLC AS TURNAROUND
## <u>ADVISOR FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE</u>

This matter coming before the Court on the *Application of the Debtors, Pursuant to Sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1, for an Order Authorizing Them to Retain and Employ McKinsey Recovery & Transformation Services U.S., LLC as Turnaround Advisor for the Debtors, Effective as of the Petition Date* (the "<u>Application</u>"),[1] filed by the debtors and debtors in

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed

the Application and the terms set forth in the Engagement Letter attached to the Application as

Exhibit A; the Court having reviewed the Carmody Declaration; the Court having considered the

statements of counsel with respect to the Application at a hearing before the Court

(the "Hearing"); the Court having found that (a) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to

28 U.S.C. § 157(b), (c) notice of the Application and the Hearing was sufficient under the

circumstances, (d) McKinsey Recovery & Transformation Services U.S., LLC

("McKinsey RTS") is a "disinterested person" as such term is defined under section 101(14) of

the Bankruptcy Code, (e) the terms and conditions of McKinsey RTS's employment, including

the professional compensation and indemnification provisions set forth in the Engagement Letter,

are reasonable as required by section 328(a) of the Bankruptcy Code and (f) the retention of

McKinsey RTS by the Debtors is in the best interests of the Debtors, their estates, their creditors

and other parties in interest; and the Court having determined that the legal and factual bases set

forth in the Application, the Carmody Declaration and at the Hearing establish just cause for the

relief granted herein;

IT IS HEREBY ORDERED THAT:

   1.  The Application is GRANTED as set forth herein.

   2.  Pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code,

Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1, the Debtors are authorized to

employ and retain McKinsey RTS as turnaround advisor to the Debtors, effective as of the

Petition Date, on the terms set forth in the Engagement Letter attached to the Application as

Exhibit A, subject to the terms of this Order.

3.      The terms of the Engagement Letter, including, without limitation, the services to be provided by McKinsey RTS, the compensation provisions addressing the terms and timing of payments and the Indemnification Provisions as modified herein, are reasonable terms and conditions of employment and are hereby approved.

4.      McKinsey RTS shall file fee applications for interim (if necessary) and final allowance of compensation and reimbursement of reasonable and necessary expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, and the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules, any fee and expense guidelines of this Court and such other procedures as may be fixed by order of the Court.  With any interim or final fee applications, McKinsey RTS shall submit together with time records billed in half-hour increments, a narrative summary, by project category, of services rendered and shall identify each professional rendering services, the category of services rendered and the amount of compensation requested.

5.      McKinsey RTS's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, the RTS Reimbursement Policy and any procedures established by the Court, pursuant to an interim compensation order or otherwise.

6.      The Retainer shall remain in place until work under the Engagement Letter is concluded, or the Engagement Letter is amended in writing.  All Retainer balances shall be credited against any outstanding amounts due upon termination of the engagement, with the remainder to be returned to the Debtors upon satisfaction of all payment obligations due under the Engagement Letter.

7.      The indemnification, contribution and reimbursement provisions set forth in the Engagement Letter (the "Indemnification Provisions") are approved; provided, however, that notwithstanding anything to the contrary in the Indemnification Provisions, the Indemnification Provisions are hereby modified as follows:

(a)     All requests by McKinsey RTS on behalf of an Indemnified Party for payment of indemnity pursuant to the Indemnification Provisions shall be made by means of an interim or final application, as applicable, and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Indemnification Provisions and is reasonable based upon the circumstances of the litigation and settlement in respect of which indemnity is sought; provided, however, that in no event shall McKinsey RTS be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct.

(b)     In the event that McKinsey RTS on behalf of an Indemnified Party seeks reimbursement from the Debtors for reasonable attorneys' fees and expenses in connection with a request by McKinsey RTS for payment of indemnity pursuant to the Indemnification Provisions, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in McKinsey RTS's own interim and/or final application(s), as applicable, and such invoices and time records shall be subject to the approval of the Court.

8.      McKinsey RTS shall, in conjunction with the Debtors, use reasonable efforts to ensure that the professional services it provides will not be duplicative of those services provided by the other professionals retained by the Debtors.

9.      To the extent that the Application and/or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

10.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

11.     This Order shall be immediately effective and enforceable upon its entry.

12.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a

memorandum of law in connection with the Application is hereby waived to the extent necessary.

13.     The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

14.     This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Order.


Dated: _____, 2015         _____
        Richmond, Virginia                  UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

   /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

and

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Proposed Counsel to the Debtors*
*and Debtors in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.


   /s/  Henry P. (Toby) Long, III