| | |
|---|---|
| LOWENSTEIN SANDLER LLP | KAPLAN VOEKLER CUNNINGHAM & FRANK, PLC |
| Sharon L. Levine (*pro hac vice pending*) | Troy Savenko (Va. Bar No. 44516) |
| Paul Kizel (*pro hac vice pending*) | 1401 East Cary Street |
| Wojciech F. Jung (*pro hac vice pending*) | Richmond, VA  23219 |
| Philip J. Gross (*pro hac vice pending*) | (804) 823-4000 |
| 65 Livingston Avenue | |
| Roseland, New Jersey 07068 | *Local Counsel to the United Mine Workers of America* |
| (973)  597- 2500 | |

*Counsel to the United Mine Workers of America*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Alpha Natural Resources, Inc., *et al*., | ) | Case No. 15-33896 (KRH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**THE UNITED MINE WORKERS OF AMERICA'S OBJECTION**
**TO DEBTORS' EMPLOYEE BONUS MOTION**

The United Mine Workers of America ("UMWA"), the representative of the interests of both active and laid-off employees at the above-captioned Debtors' mining complexes and various retirees and dependents, by and through its undersigned counsel, hereby objects (the "Objection") to the *Motion Of The Debtors For An Order (I) Confirming Their Authority To Continue Prepetition Retention Programs For Non-Insider Employees In The Ordinary Course Of Business, (II) Establishing A Discretionary Pool For The Payment Of Future Retention Obligations To Non-Insider Employees And (III) Granting Certain Related Relief* [Docket No. 267] (the "Motion").  In support of its Objection, the UMWA respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  The UMWA objects to the Motion to the extent the Debtors seek *carte blanche* authority to (i) enter into new Retention Agreements[1] with Key Employees and (ii) establish a Discretionary Pool to satisfy their obligations under the new Retention Agreements.  While the UMWA is sympathetic to the Debtors' desire to lock-up their employees to long term employment contracts, such request must be based on actual facts and circumstances present at the time of a particular employee's threat of departure.  Section 503(c) calls for rigorous scrutiny of key employee retention plans and, as such, a pre-authorization of bonus payments for events that may arise, if at all, months or years in the future is not appropriate.  For the same reasons, the Debtors' request to "reserve" $1.5 million in Discretionary Pool funds is not well founded, and it seeks to provide financial security for the selected few Key Employees at the expense of other non Key Employees.

**STATEMENT OF FACTS**

2.  On August 3, 2015 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.  On August 28, 2015, the Debtors filed the Motion.  The Motion seeks entry of an order (a) confirming the Debtors' authority to continue their prepetition Retention Programs solely with respect to Key Employees; (b) confirming the Debtors' authority to renew/replace expiring Retention Agreements (or enter into new Retention Agreements) with the Key

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Employees; and (c) authorizing the Debtors to establish a Discretionary Pool to satisfy their obligations with respect to such new Retention Agreements.

4. The 143 Key Employees consist of: (a) mining and production supervisors, primarily with respect to the Debtors' Pennsylvania operations; (b) information technology and accounting professionals; and (c) key managerial, sales and administrative personnel.

5. According to the Motion, a typical Retention Agreement provides for periodic cash payments (e.g., every six months or annually), ranging from approximately 10% to 50% of the applicable Key Employee's base salary on an annualized basis, which are only payable if the Key Employee remains employed on the payment date, or on a pro rata basis if the Key Employee is terminated other than for cause prior to the payment date. See Motion, ¶ 9.

6. Furthermore, the Debtors request permission to create a reserve of $1.5 million dedicated to payment of retention bonuses of up to $100,000 per employee (without Court or other approval) to existing Key Employees or new Key Employees. See Motion, ¶ 18. The Debtors do not know how much of the reserve will be necessary, or which new Key Employees they may seek to bind to new Retention Agreements. Id..

## OBJECTION

7. The UMWA objects to the Motion to the extent it seeks authority for non-ordinary course relief. While the Motion states that the Debtors have in the past entered into Retention Agreements with Key Employees and that the Debtors decided to abide by those agreements post petition, the Debtors concede that the creation of a Discretionary Pool of funds in connection with new Retention Agreements is a totally new request. Similarly, entering into new Retention Agreements without an individual showing of necessity and reasonableness, as well as the creation of a $1.5 million reserve (not offered to other employees) is not justified by

the facts and circumstances of the chapter 11 case as required by Bankruptcy Code section 503(c)(3), and/or are not a sound exercise of the Debtors' business judgment under section 363(b).

8. Section 503(c)(3) of the Bankruptcy Code states that notwithstanding section 503(b) (which provides for payment of administrative expenses), there shall neither be allowed, nor paid-

> other transfers of obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3) (emphasis added).

9. Some courts hold that the "facts and circumstances" test under section 503(c)(3) is essentially no different than the lower threshold "business judgment" test that courts apply in determining whether to approve a debtor's transactions outside of the ordinary course of business under section 363(b)(1). See, e.g., In re Borders Grp., Inc., 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011). However, other courts reject this approach and hold debtors to a higher standard. See In re Pilgrim's Pride Corp., 401 B.R. 229, 236–37 (Bankr. N.D. Tex. 2009) (standard for approval under section 503(c)(3) is higher than the business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of section 503(c)(3) would be rendered meaningless) (citations omitted).

10. The UMWA submits that the Debtors should be required not only to show that there is a valid business reason for the proposed bonus payments to any new Key Employee, which they have failed to do beyond conclusory statements, but also to demonstrate that any new bonus payments are justified in these cases and will serve the interests of the Debtors' estates and

creditors. See Pilgrim's Pride, 401 B.R. at 237 ("[E]ven if a good business reason can be articulated for a transaction, the court must still determine that the proposed transfer or obligation is justified in the case before it. The court … must make its own determination that the transaction will serve the interests of creditors and the debtor's estate. Put another way, when a transaction is proposed between a debtor and its insiders, the court cannot simply rely on the debtor's business judgment to ensure creditors and the debtor's estate are being properly cared for.").

11.     The Debtors should not be blessed with unfettered authority to enter into new Retention Agreements. Such agreements, if any, must be subject to Bankruptcy Court approval based on the then present need, not on speculations which may themselves trigger bonus requests from employees. At the very least, new Retention Agreements should be vetted by parties with financial stake in the Debtors prior to the Debtors' entry into such agreements, such as the official committee of unsecured creditors.

12.     Further, even if the Debtors believe that this bankruptcy creates a stressful situation for some of their employees necessitating a KERP, as recently recognized, the bonusing of employees through difficult restructurings should extend to all of the Debtors' employees, including those represented by the UMWA. For example, in In re Great Atlantic & Pacific Tea Company, Inc., the Court conditioned approval of the Debtors' KERP motion upon the Debtors' payment of various obligations to their union and non-union employees, who are not participants in the KERP. See Order Pursuant To 11 U.S.C. §§ 363(b)(1) And 503(c)(3) Approving Debtors' Key Employee Retention Plan For Certain Non-Insider Employees, dated September 11, 2015 [Docket No. 912]; http://www.northjersey.com/news/business/a-p-manager-bonuses-ok-d-1.1409843 (last visited Sept. 28, 2015).

13. The relief sought in the Motion is not dissimilar to the relief sought in the Debtors' critical vendor motion [Docket Nos. 19, 20]. As with such request, the request to enter into new Retention Agreement which includes bonus payments must be based upon a particularized showing for the need of the new Retention Agreement and the reasonableness thereof. A relief may not be granted absent evidence that payment of the proposed bonuses is truly necessary for retention of employees that are important to the success of the Debtors' business and will maximize value for the Debtors' estates and creditors. See, e.g., In re Regensteiner Printing Co., 122 B.R. 323, 326 (N.D. Ill. 1990) ("Employees did not meet their burden of proving that their bonus payments were necessary to preserve the estate. . . . At a minimum, there should have been testimony to support findings as to whether the Employees would have rendered the necessary services without the bonuses.").

14. Finally, it is unclear whether all of the proposed recipients are non-insiders and further whether the new or added recipients under the Discretionary Pool will be insiders or non-insiders. The KERP should not be approved under section 503(c)(3) of the Bankruptcy Code absent evidence rebutting the presumption that KERP Participants holding officer titles participate in management. *In re Foothills Texas, Inc.*, 408 B.R. 573, 584-585 (Bankr. D. Del. 2009). And, importantly, new recipients under the Discretionary Pool must not be insiders either.

15. Because the Motion seeks unfettered authority for the Debtors to enter into new Retention Agreements without further scrutiny of the Court or parties-in-interest, and because the creation of a Discretionary Pool (a type of reserve) does not comport with the Debtors' past practice and is otherwise not needed for the Debtors to accomplish their stated goals, the UMWA objects to the relief sought in the Motion.

## RESERVATION OF RIGHTS

16.     The UMWA reserves the right to supplement this Objection at any time prior to the hearing on the Motion. The UMWA also reserves its rights to raise additional or further objections to the Motion, as well as to join in and adopt as its own, other objections, at or prior to the hearing on any subsequent hearing.

## CONCLUSION

**WHEREFORE**, the UMWA respectfully requests that the Court (i) deny the Motion and (ii) grant such other and further relief as is just and appropriate.

Dated: September 28, 2015                                    Respectfully Submitted,

Sharon L. Levine (*pro hac vice pending*)
Paul Kizel (*pro hac vice pending*)
Wojciech F. Jung (*pro hac vice pending*)
Philip J. Gross (*pro hac vice pending*)
LOWENSTEIN SANDLER LLP
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500

*Counsel for the United Mine Workers of America*

-and-

/s/ Troy Savenko
Troy Savenko (Va. Bar No. 44516)
KAPLAN VOEKLER CUNNINGHAM
& FRANK, PLC
1401 East Cary Street
Richmond, VA   23219
(804) 823-4000

*Local Counsel for the United Mine Workers of America*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 28, 2015, I caused a copy of the foregoing to be (a) electronically filed with the Clerk of the Court for the Eastern District of Virginia, using the CM/ECF system, which thereby caused the above to be served electronically on all registered users of the ECF system that have filed notices of appearance in this matter, and (b) served by e-mail to all parties with registered e-mail addresses on the Service List maintained by the Claims and Noticing Agent.

                                              /s/ Troy Savenko