JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Attorneys for Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-33896 (KRH) |
| Debtors. | (Jointly Administered) |

## MOTION OF THE DEBTORS, PURSUANT TO BANKRUPTCY
## RULE 9019, FOR ENTRY OF AN ORDER CONCERNING RECLAMATION
## <u>BONDING OF THEIR SURFACE COAL MINING OPERATIONS IN WEST VIRGINIA</u>

Alpha Natural Resources, Inc. ("<u>ANR</u>") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully

represent as follows:

### <u>Background</u>

1.      On August 3, 2015 (the "<u>Petition Date</u>"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>").  By order of the Court (Docket No. 129), the

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

jointly administered.  The Debtors are authorized to continue to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

2.     A comprehensive description of the Debtors' businesses and operations,

capital structure and the events leading to the commencement of these chapter 11 cases can be

found in the amended declarations of (a) Kevin S. Crutchfield, Chief Executive Officer and

Chairman of the Board of Directors of ANR (Docket No. 45), and (b) Philip J. Cavatoni,

Executive Vice President and Chief Financial and Strategy Officer of ANR (Docket No. 46),

each of which was filed on the Petition Date.

### Jurisdiction

3.     This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue

is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4.     Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), the Debtors hereby seek the entry of an order in the form attached

hereto as Exhibit A (the "Order"):  (a) approving the Debtors' entry into a consent order

(the "Consent Order"), a copy of which is attached to the Order as Annex I, memorializing the

terms of the Debtors' resolution (the "Bonding Resolution") of certain issues with the West

Virginia Department of Environmental Protection ("DEP" and, together with the Debtors,

the "Parties") regarding the Debtors' reclamation bonding of their surface coal mining operations

in the State of West Virginia ("West Virginia"); and (b) granting certain related relief.

### Facts Relevant to This Motion

5.     In the mining context, environmental reclamation is the process whereby a

mining company is required, once mining operations have ceased, to return the mined land to an

environmentally safe, aesthetically pleasing and sustainable state.  The Debtors have reclamation

obligations that arise pursuant to state and federal law with respect to all of their mining

operations.  Governing statutes generally require that property upon which such mining

operations have been conducted be restored in accordance with specified standards and an

approved reclamation plan.  Standards for mine reclamation have been established by various

state and federal regulatory agencies that dictate the reclamation requirements at the Debtors'

mining properties.  The Debtors' reclamation obligations consist principally of costs necessary to

(a) reclaim refuse and slurry ponds, (b) reclaim the pit and support acreage at surface mines,

(c) seal portals at deep mines and (d) treat water from mining operations.

***The Debtors' West Virginia Operations***

       6.      Certain of the Debtors operate coal mines in West Virginia, consisting of

surface mines, underground mines, haul roads, preparation plants and loadouts (collectively,

the "West Virginia Mines").  Some of these sites are associated with active operations, while

others have reserves remaining to be mined but are currently idled.  At some sites, the permitted

mining activity has concluded and only reclamation remains.  The Debtors hold more than

500 mining permits for the West Virginia Mines.  The Debtors' West Virginia operations employ

approximately 4,100 people, and the West Virginia Mines shipped approximately

24.8 million tons of coal in 2014.  The Debtors believe that they currently are in compliance with,

and are continuing to fulfill, their ongoing obligations to perform reclamation under applicable

law and as required by 28 U.S.C. § 959(b), and anticipate remaining so for the duration of these

chapter 11 cases.

***Permitting and Bonding Requirements Under West Virginia Law***

       7.      Under the West Virginia Surface Mining and Reclamation Act, W. Va.

Code § 22-3-1, et seq. (the "Act"), each surface coal mining operation in West Virginia is

required to obtain a mining permit from DEP prior to commencing operations.  See W. Va. Code § 22-3-8.  In accordance with the Act, after the Director of the Division of Mining and Reclamation (the "Director") approves a surface mining permit, but before the Director issues such permit, the applicable operator must furnish a bond, payable to the State of West Virginia, securing the operator's obligations to comply with the requirements of the Act and the operator's surface mining permits, including any provisions relating to environmental reclamation.  See W. Va. Code § 22-3-11(a).  The amount of the bond is required to be between $1,000 and $5,000 per acre or fraction thereof.  Id.  The term of the bond commences with the issuance of the applicable permit and "continues for the full term of the permit plus any additional period necessary to achieve compliance with the requirements in the reclamation plan of the permit."  W. Va. Code § 22-3-11(b).

8.  The Director may accept a bond of the permit applicant itself without separate surety (any such bond, a "Self-Bond") if the applicant demonstrates to the satisfaction of the Director, among other things, a history of financial solvency and continuous operation sufficient for authorization to self-insure.  W. Va. Code § 22-3-11(d).  Regulations concerning reclamation self-bonding are provided for in title 38, Series 2 of the West Virginia Code of State Rules (the "Rule").  See W. Va. Code R. § 38-2-11.3.d (setting forth certain requirements regarding self-bonding of reclamation obligations).

9.  If the Director determines that a pattern of violations of the Act, the Rule or the conditions of any permit exists or has existed, and if the operator fails to show cause as to why the applicable permits should not be revoked, the Director is required to immediately revoke the operator's mining permits and to initiate procedures to forfeit the entire amount of the operator's bond.  See W. Va. Code § 22-3-17(b).  Following the revocation of an operator's

permits or forfeiture of the operator's bond or other security, the Director may not issue new permits to the operator unless (a) the operator pays additional sums into a special reclamation fund sufficient to reclaim the affected area, (b) the violations that resulted in the revocation or forfeiture have not caused irreparable damage to the environment and (c) the Director is otherwise satisfied that the operator will comply with the Act in the future.  See W. Va. Code § 22-3-18(c).

***The Debtors' Bonding of Their West Virginia Reclamation Obligations***

10.    The Debtors identified in Exhibit 1 to the Consent Order (collectively, the "ANR Subsidiaries" and, collectively with ANR, "Alpha") currently hold mining permits (collectively, the "Permits") issued by the Director for coal mines and related facilities in West Virginia.

11.    The Director has calculated that the Debtors' reclamation bonding requirements in West Virginia are approximately $317,798,455 in the aggregate as of October 1, 2015.  Of that amount, certain of the Debtors have posted or caused to be posted commercial surety bonds totaling approximately $73,422,621.  The Debtors have issued Self-Bonds (collectively, the "Alpha Self-Bonds") to cover the remainder of their reclamation bonding obligations in West Virginia, in accordance with the Rule, in the total amount of approximately $244,375,833.

12.    The Parties agree that the Debtors are in general compliance with, and are continuing to perform their ongoing reclamation obligations in accordance with, the Act, the Rule and all of their permits.

*The West Virginia Substitution Demand*

13.     By a letter dated August 5, 2015, the Debtors advised the Director that

they may no longer satisfy one or more of the criteria for self-bonding under the Act and the

Rule.

14.     By a letter dated September 1, 2015 (the "Substitution Demand"), the

Director advised the Debtors that, within 90 days of receipt thereof, the Debtors must post an

alternate form of bond in the total amount of the Alpha Self-Bonds.  The posting of commercial

bonds in the amount of more than $244 million to support the performance of the Debtors'

reclamation obligations and permit the continuation of their West Virginia operations, however,

would require the Debtors to post an equivalent amount of collateral to support such bonds,

which (a) would impose a significant burden on the Debtors' liquidity and (b) is not authorized

under the terms of the Debtors' debtor in possession credit agreement dated as of August 6, 2015

(as amended, and as it may be further modified or amended, the "Credit Agreement"), which was

approved on a final basis by an order of this Court entered on September 17, 2015 (Docket

No. 465) (the "DIP Order").

*Provisions of the DIP Order Regarding the Bonding Request*

15.     The DIP Order provides for an accommodation facility (the "Bonding

Accommodation") for governmental authorities that make any demand, request or requirement,

such as the Substitution Demand, for any surety bond, letter of credit or other financial assurance

pursuant to applicable law, to the extent such surety bond, letter of credit or other financial

assurance is to satisfy or replace an amount for which a Debtor is self-bonded (any such demand,

request or requirement, a "Bonding Request").  Pursuant to the Bonding Accommodation, the

Debtors are authorized to provide financial assurance to such governmental authorities in the

form of (or any combination of) (a) collateralized letters of credit (a "Bonding Letter of Credit")

or (b) a claim (a "Bonding Superpriority Claim") against the Term Facility Collateral having

priority over any or all administrative expenses of the kind specified in section 503(b) of the

Bankruptcy Code in an aggregate stated amount of up to $100 million (the "Bonding

Accommodation Cap").

16.    Pursuant to a stipulation and order entered on October 8, 2015 (Docket

No. 628) (the "Wyoming Order"), the Court approved a resolution of certain reclamation

bonding issues among the Debtors, the State of Wyoming ("Wyoming") and the Wyoming

Department of Environmental Quality (the "WDEQ"), in response to a Bonding Request from

the WDEQ.  Pursuant to the Wyoming Order, the Court granted Wyoming a Bonding

Superpriority Claim in the amount of $61 million for the duration of the Compliance Plan Period

(as defined in the Wyoming Order) in satisfaction of WDEQ's Bonding Request.  Accordingly,

as of the date of this Motion, $39 million of the Bonding Accommodation Cap remains to satisfy

West Virginia's Substitution Demand.

17.    The Debtors believe that the ability of DEP to require the Debtors to post

the demanded commercial bond or collateral is stayed under, or otherwise prohibited by, the

Bankruptcy Code.  DEP, however, does not agree that such actions are stayed or otherwise

prohibited.  Absent a resolution of this dispute, upon the expiration or termination of the stay, the

Director likely would seek to revoke the Permits and to block the issuance of new or amended

permits to the ANR Subsidiaries under the Act, which could, in turn, lead to permitting issues in

other states.  After extensive negotiations, however, the Parties have reached a resolution of this

dispute as set forth in the Consent Order.

*The Terms of the Consent Order*

18.    The principal terms of the Consent Order are summarized below.[1]

(a)    Through the term of the Consent Order, Alpha will follow a schedule of compliance and take specific steps to reduce the Alpha Self-Bonds.

(b)    By no later than the date (the "Effective Date") that is five business after the Court's approval of the Consent Order, Alpha shall post a collateral bond in the amount of $15 million (the "Collateral Bond"), collateralized by a Bonding Letter of Credit, that may be applied upon revocation of any issued or outstanding Permits.

(c)    As of the Court's approval of the Consent Order, West Virginia shall have, pursuant to, as applicable, sections 105, 364 and 503 of the Bankruptcy Code, and solely in the manner and to the extent permitted as a Bonding Superpriority Claim under the DIP Order, an allowed superpriority claim having priority over any or all administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code in the amount of $24 million (the "DEP Superpriority Claim") against the estates of ANR and each of the ANR Subsidiaries.  The DEP Superpriority Claim shall apply to all or any portion of the ANR Subsidiaries' self-bonded reclamation obligations under all issued and outstanding Permits until the ANR Subsidiaries have replaced the Alpha Self-Bonds with commercial bonds, and the DEP Superpriority Claim will not be terminated, as permitted under the DIP Order or otherwise, except in accordance with the Consent Order.

Upon the revocation of any self-bonded Permit and declaration of forfeiture and demand for payment of the associated Alpha Self-Bond in accordance with applicable law and the Consent Order, DEP shall be entitled to payment of the DEP Superpriority Claim, solely to the extent of the self-bonded obligations owing under such Permit, within five business days after the delivery by the Director to Alpha of a notice of declaration of forfeiture and demand for payment of such self-bonded obligations in accordance with the Act and the rules promulgated thereunder and without further notice or order.

---

[1]    The terms of the Bonding Resolution summarized herein are qualified in their entirety by the Consent Order.  In the event of any conflict between the terms of this Motion and the Consent Order, the terms of the Consent Order shall govern.

(d)    Beginning on the Effective Date, the ANR Subsidiaries shall use their reasonable best efforts to reduce the total amount of the Alpha Self-Bonds by $10 million.

(e)    The ANR Subsidiaries shall evaluate Permits that are currently categorized as inactive by DEP within 60 days of the Effective Date.  A minimum of one such Permit shall be selected and, after consultation with the Director, reclamation shall commence on such Permit(s) prior to the expiration of the applicable inactive status period(s).  Alpha shall provide the Director with quarterly updates of progress with respect to such reclamation.

(f)    The Consent Order is without prejudice to (a) any claims or causes of action that DEP may assert over and above the Collateral Bond and DEP Superpriority Claim against the Debtors on account of reclamation obligations and (b) any defenses or objections to such claims or causes of action by the Debtors or other parties.

(g)    Until the ANR Subsidiaries have replaced all of the Alpha Self-Bonds with commercial bonds, the Director will not approve new permits, amendments or incidental boundary revisions absent submission of an acceptable commercial bond.

(h)    Until the ANR Subsidiaries have replaced all of the Alpha Self-Bonds with commercial bonds, upon notification from the Director that:

(i)    any ANR Subsidiary is not in compliance with applicable reclamation standards with respect to any Permit, (1) the applicable ANR Subsidiary shall not create any new disturbances with respect to such Permit and (2) within ten days of such notification, such ANR Subsidiary shall submit a plan to bring such Permit back into compliance with reclamation standards; and

(ii)    the Director has a good faith belief that an ANR Subsidiary is likely to fall out of compliance with respect to any active self-bonded Permit, within 30 days of such notification, the applicable ANR Subsidiary shall submit an updated mining and reclamation plan identifying anticipated activity during the term of the Consent Order.

(i)    With respect to any self-bonded Permit pursuant to which mining activity has not commenced as of the date of the Consent Order, the relevant ANR Subsidiary shall submit an acceptable commercial bond before commencing mining activity.

(j)     Except under certain circumstances set forth in the Consent Order, the Consent Order and the DEP Superpriority Claim shall terminate in accordance with paragraphs 13 through 15 of the Consent Order and, in any event, by no later than one year after the Effective Date, unless extended by the Director for cause.

(k)     The termination of the Consent Order shall not affect in any way: (i) any right to payment the Director may have on account of ANR's or the ANR Subsidiaries' self-bonded or bonded obligations that may arise from the revocation of any Alpha Self-Bond; (ii) the Director's right to recovery on account of the DEP Superpriority Claim or (iii) the Collateral Bond.

(l)     Except as expressly set forth therein, nothing in the Consent Order shall:  (i) relieve Alpha of the obligation to comply with applicable law; (ii) limit or impair any right of DEP to enforce all applicable environmental and reclamation laws and regulations; or (iii) limit or impair any right of Alpha to operate, not operate, idle, close, sell or otherwise dispose of their mines in West Virginia (or the rights of the Director to challenge any such determination or action).

## <u>Argument</u>

### *The Standard Under Bankruptcy Rule 9019*

19.     Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  The United States Supreme Court has noted that "[c]ompromises are a 'normal part of the process of reorganization.'"  <u>Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968) (citing <u>Case v. Los Angeles Lumber Prods. Co.</u>, 308 U.S. 106, 130 (1939)).  In <u>TMT Trailer</u>, the Supreme Court stated that compromises and settlements must be "fair and equitable."  390 U.S. at 424; <u>see also</u> <u>Martin v. Kane (In re A&C Props.)</u>, 784 F.2d 1377, 1381 (9th Cir. 1986); <u>Shaia v. Three Rivers Wood, Inc. (In re Three Rivers Woods, Inc.)</u>, No. 98-38685-T, 2001 WL 720620, at *6 (Bankr. E.D. Va. Mar. 20, 2001); <u>In re Frye</u>, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997); <u>In re Austin</u>, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995).

20.     In determining whether a proposed compromise and settlement is fair and

equitable, a court should consider various factors, including:  (a) the probability of success in

litigation or dispute resolution; (b) the potential difficulties, if any, in collection on a judgment;

(c) the complexity of the litigation or dispute resolution process involved and "the expense,

inconvenience and delay necessarily attending it;" and (d) the paramount interest of the creditors.

Frye, 216 B.R. at 174; see also Three Rivers Wood, 2001 WL 720620, at **5-6; Austin,

186 B.R. at 400.

21.     Additionally, the Court must determine whether the proposed settlement is

in the best interests of the Debtors and their estates.  Frye, 216 B.R. at 174 ("In order to approve

a compromise, this court must look at various factors and determine whether the compromise is

in the best interest of the estate and whether it is fair and equitable."); In re Energy Coop. Inc.,

886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a

bankruptcy settlement is whether the settlement is in the best interests of the estate.").

The factors that courts consider to determine the best interests of the estate are similar to the

factors to determine whether the settlement is fair and reasonable.  In re Bullis, 515 B.R. 284,

288 (Bankr. E.D. Va. 2014) ("The best interests of the estate are met by considering the same

factors a court considers in reviewing any proposed settlement:  (1) the probability of success on

the merits in the litigation; (2) possible difficulties of collecting any judgment which might be

obtained; (3) the complexity, expense, and likely duration of any ensuing litigation; and (4) the

interests of the creditors, giving proper deference to their reasonable views.").

22.     When reviewing a proposed settlement, however, the Court should not

substitute its judgment for that of the Debtors.  See In re Carla Leather, Inc., 44 B.R. 457, 465

(Bankr. S.D.N.Y. 1984).  Instead, the court must determine "whether the settlement falls below

the lowest point in the range of reasonableness" Three Rivers Woods, 2001 WL 720620, at *6

(quoting Austin, 186 B.R. at 400).  Where a proposed settlement is not below the lowest point of

what is fair and reasonable and represents the best interests of the estate as a whole, the court

should approve it pursuant to Bankruptcy Rule 9019.  Three Rivers Woods, 2001 WL 720620,

at *6.

***This Bonding Resolution Satisfies the Relevant Standard***

23.     The Bonding Resolution represents a sound exercise of the Debtors'

business judgment, falls well within the range of reasonableness and is in the best interests of the

Debtors' estates.  Although the Debtors dispute, given the commencement of these cases, DEP's

authority to require the posting of approximately $244 million in collateral or a replacement

bond as a condition to the Debtors' continued operation in West Virginia, the Debtors cannot be

certain that they will prevail in such a dispute.  If the Debtors were to litigate this dispute and fail,

they likely would be faced with the limited options of closure or fire sale of the West Virginia

Mines, which could potentially impact the Debtors' operations in other states and would, at a

minimum, be very disruptive to their restructuring efforts and the livelihood of the employees

who work at the West Virginia Mines.

24.     The Bonding Resolution resolves the issues presented by the Substitution

Demand with effectively no net expense to the Debtors' estates, because the Debtors are required

to fulfill their reclamation obligations in connection with operating their business pursuant to

28 U.S.C. § 959 in any event.  Moreover, the Bonding Resolution limits to $15 million the

amount of the Bonding Letter of Credit that the Debtors are required to provide to DEP, which

amount the Debtors are authorized to provide under the terms of the Credit Agreement and DIP

Order.  Finally, the Bonding Resolution addresses the public's environmental concerns by

expressly providing for the continuation of the Debtors' ongoing reclamation activities in West

Virginia and reserving DEP's right to enforce all applicable environmental laws.

25.     Accordingly, the Bonding Resolution is fair and reasonable, well above

the lowest point in the range of reasonableness and in the best interests of the Debtors' estates

and creditors.  The Debtors therefore believe that the Court should approve the Bonding

Resolution pursuant to Bankruptcy Rule 9019.

### Notice

26.     In accordance with the *Order Establishing Certain Notice, Case*

*Management and Administrative Procedures* (Docket No. 111) (the "<u>Case Management Order</u>"),

notice of this Motion has been given to (a) DEP, (b) all parties on the Master Service List

(as defined in the Case Management Order) and (c) any party that has requested notice pursuant

to Bankruptcy Rule 2002 as of the time of service.  In light of the nature of the relief requested,

the Debtors submit that no further notice is necessary.

### <u>No Prior Request</u>

27.     No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter the

Order; and (ii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: December 7, 2015               Respectfully submitted,
      Richmond, Virginia

/s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## Exhibit A

Order

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Attorneys for Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., <u>et al.</u>, | Case No. 15-33896 (KRH) |
| Debtors. | (Jointly Administered) |

## ORDER CONCERNING RECLAMATION BONDING OF THE
## DEBTORS' SURFACE COAL MINING OPERATIONS IN WEST VIRGINIA

This matter coming before the Court on the *Motion of the Debtors, Pursuant to Bankruptcy Rule 9019, for Entry of an Order Concerning Reclamation Bonding of Their Surface Coal Mining Operations in West Virginia* (the "<u>Motion</u>"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>"); the Court having reviewed the Motion and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court (the "<u>Hearing</u>"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is core proceeding

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

pursuant to 28 U.S.C. § 157(b)(2); (c) notice of the Motion and the Hearing was sufficient under

the circumstances and (d) the proposed Bonding Resolution set forth in the Consent Order

attached hereto as <u>Annex I</u> (i) represents a sound exercise of the Debtors' business judgment,

(ii) is fair and equitable and (iii) is in the best interests of the Debtors' estates; and the Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Bonding Resolution is approved, pursuant to Bankruptcy Rule 9019,

and the Debtors are authorized to enter into the Consent Order, the terms of which are approved

in all respects.

3.      DEP shall have, pursuant to, as applicable, sections 105, 364 and 503 of

the Bankruptcy Code and solely in the manner and to the extent as permitted as a "Bonding

Superpriority Claim" under the DIP Order, an allowed superpriority claim having priority over

any or all administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code

in the amount of $24 million (the "<u>DEP Superpriority Claim</u>") against the estates of ANR and the

ANR Subsidiaries, to secure Alpha's self-bonded reclamation obligations to DEP (provided that

under no circumstances will DEP recover more than $24 million on account of the DEP

Superpriority Claim).  Upon the revocation of any self-bonded Permit and declaration of

forfeiture and demand for payment of the associated Alpha Self-Bond in accordance with

applicable law and the Consent Order, DEP shall be entitled to payment of the DEP

Superpriority Claim, solely to the extent of the self-bonded obligations owing under such Permit,

within five business days after the delivery by the Director to Alpha of a notice of declaration of

forfeiture and demand for payment of such self-bonded obligations in accordance with the Act

and the rules promulgated thereunder and without further notice or order.

        4.      The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

Dated: _____, 2015        _____
        Richmond, Virginia        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Respectfully submitted,

  /s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Attorneys for Debtors and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

  /s/  Henry P. (Toby) Long, III

## **Annex I**

Consent Order



west virginia department of environmental protection

Division of Mining and Reclamation
601 57th Street, Southeast
Charleston, West Virginia  25304
Phone: (304) 926-0440
Fax:   (304) 926-0446

Earl Ray Tomblin, Governor
Randy C. Huffman, Cabinet Secretary
www.dep.wv.gov

## CONSENT ORDER

The following findings are made and this Consent Order is issued pursuant to the authority vested in the Secretary of the Department of Environmental Protection pursuant to W. Va. Code § 22-1-6(d)(3) and delegated to the Director of the Division of Mining and Reclamation (the "Director") pursuant to W. Va. Code § 22-1-6(b).

### FINDINGS OF FACT

In support of this Consent Order, the Director makes the following Findings of Fact:

A.  Under the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code § 22-3-1, et seq. (the "Act"), no person may engage in surface mining operations unless such person has first obtained a permit from the Director. W. Va. Code § 22-3-8(a).

B.  In accordance with the Act, after the Director approves a surface mining permit, but before he or she issues such permit, the operator must furnish a penal bond, payable to the State of West Virginia, which bond secures the operator's obligations to comply with the requirements of the Act and the operator's surface mining permit(s). W. Va. Code § 22-3-11(a).

C.  The Director may accept a bond of the applicant itself without separate surety (any such bond, a "Self-Bond") if the applicant demonstrates to the satisfaction of the Director, among other things, a history of financial solvency and continuous operation sufficient for authorization to self-insure. W. Va. Code § 22-3-11(d).

D.  The Alpha Natural Resources, Inc. ("ANR") subsidiaries listed in Exhibit 1 (collectively, the "ANR Subsidiaries" and, collectively with ANR, "Alpha") attached hereto and incorporated by reference herein currently hold mining permits (collectively, the "Permits") issued by the Director for coal mines and related facilities in West Virginia that are covered, in part, by Self-Bonds (collectively, the "Alpha Self-Bonds").

E.  As of October 1, 2015, the Director calculates the total bonding requirements in West Virginia for all direct and indirect subsidiaries of ANR were approximately $317,798,455.

F.  Of that amount, certain direct and indirect subsidiaries of ANR have posted or caused to be posted surety bonds totaling approximately $73,422,621 as of October 1, 2015.

G.    Alpha has self-insured or self-bonded the remainder of its reclamation bonding obligations, in accordance with the West Virginia Surface Mining Reclamation Rule (the "Rule"), in an amount totaling $244,375,833 as of October 1, 2015.  W. Va. Code R. § 38-2-11.3.d.

H.    On August 3, 2015, ANR and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), including all of the ANR Subsidiaries, commenced cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").

I.    By a letter dated August 5, 2015, ANR advised the Director that it may no longer satisfy one or more of the criteria for self-bonding under the Act and the Rule.

J.    By a letter dated September 1, 2015, the Director advised Alpha that, within 90 days, Alpha must post an alternate form of bond in total amount equal to the aggregate amount of the Alpha Self-Bonds.

K.    Alpha has asserted, however, that, as a result of the commencement of the Chapter 11 Cases, ANR and the ANR Subsidiaries do not have the ability at this time to comply with their statutory obligations to post acceptable penal bonds for all the Permits.

L.    Currently, the ANR Subsidiaries are in general compliance with, and are continuing to perform their ongoing reclamation obligations in accordance with, the Act, the Rule and all of the Permits.

M.    DEP enters into this Consent Decree with the expectation that the ANR Subsidiaries will continue to comply fully with their reclamation and other environmental obligations in West Virginia in accordance with West Virginia law and expressly reserves the right under this Consent Order to fully enforce such obligations separate and apart from this Consent Order.

N.    Absent this Consent Order being agreed to and becoming effective, the Director intends to issue Notices of Violation to the ANR Subsidiaries for failing to post alternative bonds as required by the September 1, 2015 letter.

## ORDER FOR COMPLIANCE

Now, THEREFORE, in accordance with the authority cited above, it is hereby agreed by the parties and ORDERED by the Director:

1.    For the duration of this Consent Order, the ANR Subsidiaries may satisfy their statutory reclamation bonding requirements as provided herein.

2.    Alpha shall take the following steps:

    a.    Post a collateral bond (the "Collateral Bond") that meets the requirements of W.Va. Code St. R. § 38-2-11.3.b as further described in Paragraph 3 below.

b.  Obtain approval of the "DEP Superpriority Claim" as defined in Paragraph 4 below.

c.  Reduce the total amount of their self-bonding reclamation obligations as set forth in Paragraph 5 below.

d.  Identify and begin reclamation of at least one currently inactive site as set forth in Paragraph 6 below.

e.  Schedule and participate in meetings with the Director at least once per quarter (the "Quarterly Meeting") to discuss the status of the activities required by the Consent Order as well as the status of the efforts to replace the Alpha Self-Bonds as part of the plan(s) of reorganization in the Chapter 11 Cases.

3.  Within five (5) business days of Alpha receiving authorization to enter into this Consent Order from the Bankruptcy Court (the "Effective Date"), Alpha shall post as a collateral bond a letter of credit that meets the requirements of W.Va. Code St. R. § 38-2-11.3.b in the amount of fifteen million dollars ($15,000,000.00). Until the ANR Subsidiaries have replaced the Alpha Self-Bonds with penal bonds that satisfy applicable law, the Collateral Bond will remain in place and may be drawn down and applied by West Virginia Department of Environmental Protection ("DEP) in whole or in part upon its revocation of any of the issued and outstanding self-bonded Permits and declaration of forfeiture and demand for payment of the associated Alpha Self-Bonds. The Collateral Bond shall be released by DEP only upon the posting of penal bonds that satisfy applicable law in an aggregate amount equal to then-existing Alpha Self-Bonds.

4.  Upon the Bankruptcy Court's entry of an order authorizing the Debtors to enter into this Consent Order, (a) DEP shall have, pursuant to, as applicable, sections 105, 364 and 503 of the Bankruptcy Code and solely in the manner and to the extent as permitted as a "Bonding Superpriority Claim" under the final order entered by the Bankruptcy Court on September 17, 2015 approving the Debtors' postpetition financing [Doc 465] (the "DIP Order"), an allowed superpriority claim having priority over any or all administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code in the amount of twenty-four million dollars ($24,000,000.00) (the "DEP Superpriority Claim") against the estates of ANR and each of the ANR Subsidiaries, to secure Alpha's self-bonded reclamation obligations to DEP (provided that under no circumstances will DEP recover more than $24 million on account of the DEP Superpriority Claim) and (b) Alpha agrees that the DEP Superpriority Claim will not be terminated, as permitted under the DIP Order or otherwise, except as set forth in paragraph 13 below. Subject to paragraph 13 below, until the Alpha Self-Bonds have been replaced with penal bonds that satisfy applicable law, the DEP Superpriority Claim shall apply to all or any portion of the self-bonded reclamation obligations under all issued and outstanding Permits. Upon the revocation of any self-bonded Permit and declaration of forfeiture and demand for payment of the associated Alpha Self-Bond in accordance with applicable law and this Consent Order, DEP shall be entitled to payment of its DEP Superpriority Claim, solely to the extent of the self-bonded obligations owing under such Permit, within five (5) business days after the delivery by the Director to Alpha of a notice of declaration of

-3-

forfeiture and demand for payment of such self-bonded obligations in accordance with the Act and the rules promulgated thereunder and without further notice or order.

5.      Beginning immediately after the Effective Date of this Consent Order, the ANR Subsidiaries shall use their reasonable best efforts to reduce the total amount of their Alpha Self-Bonds as such existed on that date by at least ten million dollars ($10,000,000.00) (the "Target Reduction"). The ANR Subsidiaries may reduce their Alpha Self-Bonds by any manner permitted by the Act and the rules promulgated thereunder, including, without limitation, (a) obtaining bond releases or reductions with respect to any currently self-bonded Permits that are eligible therefor, (b) transferring self-bonded Permits to another operator in accordance with the Act and the rules promulgated thereunder, or (c) replacing the Alpha Self-Bonds with penal bonds that satisfy applicable law. The Director shall promptly consider any such requests from Alpha. Nothing in this paragraph shall require Alpha to use cash for reclamation to meet the Target Reduction. For the avoidance of doubt, Alpha may not satisfy its obligations under this paragraph 5 by abandoning mining sites, whether consensually, pursuant to the Bankruptcy Code, or otherwise, or by revocation and/or bond forfeiture, whether consensually or otherwise.

6.      The ANR Subsidiaries shall evaluate Permits that are currently categorized as inactive by DEP within 60 days of the Effective Date of this Consent Order. A minimum of one such Permit shall be selected by the applicable ANR Subsidiary, after consultation with the Director, and reclamation shall commence on that Permit or Permits prior to the expiration of the inactive status period for such Permit or Permits. The Director shall be notified of the identity of this Permit prior to the ANR Subsidiary beginning reclamation activity and shall be updated on the progress of reclamation during the Quarterly Meetings.

7.      Unless and until this Consent Order terminates in accordance with paragraph 14 below, DEP and the Director shall not seek additional collateral or revoke, terminate, refuse to grant or amend or take any other adverse action with respect to the Permits on account of Alpha's self-bonded obligations for the Permits under the Act or the Rule, except in accordance with the provisions of this Consent Order. The ANR Subsidiaries acknowledge their obligation to provide for the replacement in full of all of their then-remaining Alpha Self-Bonds by posting acceptable bonds, collateral or other assurances to the Director on or before the effective date of any confirmed chapter 11 plan and will make reasonable efforts to satisfy the Director with respect to any such obligations as part of any plan or plans it submits to the Bankruptcy Court. The Director reserves the right to object to (i) any chapter 11 plan that fails to provide for the replacement in full of the then remaining Alpha Self-Bonds by posting acceptable bonds, collateral or other assurances or that DEP believes is contrary to applicable state law or the Bankruptcy Code, or (ii) to any sale, transfer, or abandonment of assets, the assumption or rejection of any lease, or any other matter in the Chapter 11 Cases.

8.      Except as specifically set forth herein, nothing in this Consent Order shall in any way limit or impair the rights of the Director to enforce all applicable environmental and reclamation laws and regulations, and neither Alpha nor the Director waive or release any

-4-

legal or factual argument, claim, doctrine or defense applicable to any dispute related thereto, including without limitation any argument, claim, doctrine or defense under applicable bankruptcy laws.

9.    This Consent Order is without prejudice to:  (a) any claims or causes of action that DEP may assert against Alpha independently of or over and above the Collateral Bond and DEP Superpriority Claim on account of any obligation to perform reclamation or any other obligation of Alpha, including with respect to the amount and priority of any such claims or causes of action; and (b) any defenses or objections to such claims by Alpha or other parties, including with respect to the amount and priority of such claims or causes of action, all of which defenses and/or objections are expressly preserved.  Without limiting the Consent Order and excluding the DEP Superpriority Claim, nothing in the Consent Order or in any order of the Bankruptcy Court approving Alpha's entry into this Consent Order shall limit, enhance or modify the validity, priority, classification or treatment of any claim that may be asserted by the Director in the Chapter 11 Cases (including in connection with any chapter 11 plan) or the Debtors' defenses thereto. Whether pursuant to the Bankruptcy Code or otherwise, the ANR Subsidiaries' shall have no right to satisfy or seek to satisfy any of their direct or indirect reclamation obligations under applicable law by application of or reference to the Collateral Bond of the DEP Superpriority Claim; provided, however, that to the extent the Collateral Bond or the DEP Superpriority Claim is, as applicable, drawn by DEP and paid by Alpha pursuant to paragraph 4 above, such draw and payment will reduce DEP's claims against, as applicable, ANR and the ANR Subsidiaries' on a dollar for dollar basis.

10.    Until all of the ANR Subsidiaries have replaced all of their Alpha Self-Bonds with penal bonds that satisfy applicable law:

a.    The Director will not approve any new permits, amendments or incidental boundary revisions (IBRs) without the submission of an acceptable penal bond;

b.    Upon receiving notification from the Director that is not in compliance with the currently applicable contemporaneous reclamation standards on any Permit not already subject to a Reclamation Agreement (1) no ANR Subsidiary shall create any new disturbances on such Permit , unless such ANR Subsidiary can demonstrate to the Director that the disturbance is necessary to facilitate reclamation and (2) within ten (10) days of receipt of the notice shall submit a plan to bring such Permit back into compliance with the applicable contemporaneous reclamation standard for the Director's approval and upon approval by the Director shall take the steps necessary to bring the Permit back into compliance under the approved plan;

c.    With respect to any active self-bonded Permit pursuant to which coal is being removed, and where the Director has a good faith basis to believe that the relevant ANR Subsidiary is likely to fall out of compliance with its Permit, upon notification from the Director, such ANR Subsidiary must submit an updated mining and reclamation plan, subject to the Director's approval, that identifies the anticipated activity during the pendency of this Consent Order and demonstrates

that the ANR Subsidiary's activities will meet or exceed the then current applicable contemporaneous reclamation standards. Such updated mining and reclamation plan shall be submitted within 30 days of receipt by the ANR Subsidiary of notification from the Director that the ANR Subsidiary may not be in compliance with its Permit; and

d.      With respect to any self-bonded Permit pursuant to which mining activity has not commenced as of the date hereof, the relevant ANR Subsidiary shall submit, or cause to be submitted, an acceptable penal bond before commencing any mining activity under such permit.

11.     Except as specifically provided herein, nothing in this Consent Order shall limit Alpha's rights, through an ANR subsidiary, to operate, not operate, idle, close, sell or otherwise dispose of its mines in West Virginia or the rights of the Director to challenge any such determination or action whether pursuant to regulatory action or in connection with the Chapter 11 Cases. In the event that ANR, through an ANR Subsidiary, sells or otherwise disposes of one or more mines in West Virginia during the pendency of the Chapter 11 Cases, any then-existing Collateral Bond or DEP Superpriority Claim shall remain in place without reduction and shall secure the ANR Subsidiaries' obligations under their then-remaining self-bonded Permits unless and until such obligations are reduced in the aggregate to less than the aggregate amount of the Collateral Bond and Superpriority Claim, at which time the amount of the Superpriority Claim will be reduced accordingly.

12.     It shall be a condition precedent to the effectiveness of this Consent Order that, within 30 days after the date hereof, the Bankruptcy Court shall have entered an order – in form and substance acceptable to the Director and upon notice in accordance with the Bankruptcy Code, the Bankruptcy Rules and the local rules of the Bankruptcy Court – (a) authorizing ANR and the ANR Subsidiaries to enter into this Consent Order and perform their obligations thereunder including the posting of the Collateral Bond, (b) allowing the Superpriority Claim in accordance with the terms hereof and (c) approving to the extent necessary the terms and provisions of this Consent Order, including without limitation the provisions of paragraph 4 hereof with respect to payment by Alpha of the DEP Superpriority Claim.

13.     Unless (a) DEP has initiated steps leading to revocation of a self-bonded Permit(s) and is not in breach of this Consent Order or (b) Alpha has initiated steps leading to the abandonment of a self-bonded Permit(s), whether pursuant to section 554 of the Bankruptcy Code or otherwise, and solely to the extent of the affected Alpha Self-Bond(s), the DEP Superpriority Claim shall terminate upon the earlier of (i) one year from the Effective Date of the Consent Order unless it is extended by the Director for good cause or (ii) the date that (I) the Director or DEP breaches this Consent Order and fails or refuses to remedy such breach within fifteen (15) days after written notification of such breach from Alpha; (II) the Office of Surface Mining Reclamation and Enforcement revokes, terminates, refuses to grant or amend or takes any other adverse action with respect to any Permit on account of one or more ANR Subsidiaries' failure to comply with applicable reclamation self-bonding obligations; (III) Alpha or a third party replaces the DEP Superpriority Claim with penal bonds that satisfy applicable law; and (IV) a plan

-6-

of reorganization for ANR or any of the ANR Subsidiaries providing for the replacement of the DEP Superpriority Claim with new and additional penal bonds that satisfy applicable law is consummated.

14.    This Consent Order shall only terminate upon the first to occur of the following:

(a)    If ANR or any of the ANR Subsidiaries breach their obligations under this Consent Order and, except as to the failure to timely post the Collateral Bond or to timely make any payment on account of the DEP Superpriority Claim, fails or refuses to remedy such breach within fifteen (15) days after written notification of such breach from the Director;

(b)    the DEP Superpriority Claim is terminated in accordance with paragraphs 4 and 13 hereof;

(c)    ANR or any of the ANR Subsidiaries' chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code;

(d)    the lenders under the Credit Agreement dated as of August 6, 2015 (as it may be amended or modified, the "Credit Agreement") exercise any remedies upon an Event of Default under the Credit Agreement;

(e)    the confirmation of a chapter 11 plan or plans of ANR or any of the ANR Subsidiaries that does not provide for the replacement of the DEP Superpriority Claim through the posting of acceptable penal bonds in accordance with applicable law where (i) the Director has objected to such plan and (ii) the objection has not been consensually resolved by confirmation; or

(f)    One year from the Effective Date of the Consent Order, unless extended by the Director for good cause.

15.    Except as expressly set forth in paragraph 13 above, the termination of this Consent Order in accordance with paragraph 14 above shall not affect in any way (a) any right to payment the Director may have on account of ANR's or the ANR Subsidiaries' self-bonded or bonded obligations that may arise from the revocation of any self-bonded Permit at any time, subject to any defenses that ANR or the ANR Subsidiaries may have thereto, (b) the Director's right to payment or recovery on account of the DEP Superpriority Claim, subject to any defenses that ANR or the ANR Subsidiaries may have thereto, or (c) the Collateral Bond.

## OTHER PROVISIONS

1.    Alpha waives its right to appeal this Consent Order under W. Va. Code § 22-3-17(e). Alpha agrees to take all actions required by the terms and conditions of this Consent Order.  However, Alpha does not admit to any factual or legal determinations made by the Director and reserves all rights and defenses available regarding liability or

-7-

responsibility in any proceeding regarding Alpha other than proceedings, administrative or civil, to enforce this Consent Order.

2.    Except as expressly set forth herein, the Director reserves the right to take further action if compliance with the terms and conditions of this Consent Order does not adequately address the violations, if any, noted herein and further reserves all rights and defenses that he may have pursuant to any legal authority, as well as the right to raise, as a basis for supporting such legal authority or defenses, facts other than those contained in the Findings of Fact herein.

3.    If any event occurs that delays Alpha's ability to comply with the requirements of this Consent Order, Alpha shall have the burden of proving that such delay was caused by circumstances beyond its reasonable control and that could not have been overcome by due diligence (i.e., force majeure). Force majeure shall not include delays caused or contributed to by the lack of sufficient funding unless such lack of funding is due (a) limitations imposed on Alpha by the Bankruptcy Code or order of the Bankruptcy Court or (b) to the actions of an entity not within the control of Alpha. Within three working days after Alpha becomes aware of such a delay, it shall notify the Director and, within ten working days of such initial notification, Alpha shall submit (a) a detailed written explanation of the anticipated length and cause of the delay, (b) the means taken and/or to be taken to prevent or minimize the delay and (c) a timetable by which Alpha intends to implement such measures. If the Director agrees that the delay has been or will be caused by circumstances beyond the reasonable control of Alpha (i.e., force majeure), the time for performance hereunder shall be extended for a period of time equal to the delay resulting from such circumstances. A force majeure extension granted by the Director shall be considered a binding extension of the relevant requirements under this Consent Order. The Director's determination shall be final and not subject to appeal.

4.    Except as provided above, compliance with the terms and conditions of this Consent Order shall not in any way be construed as relieving Alpha of the obligation to comply with any applicable law, permit, order or any other requirement otherwise applicable. Violations of the terms and conditions of this Consent Order may subject Alpha to additional penalties and injunctive relief in accordance with applicable law.

5.    The provisions of this Consent Order are severable. In the event that a court or board of competent jurisdiction declares any provision hereof to be invalid or unenforceable, all other provisions of this Consent Order shall remain in full force and effect; provided that, if such declaration results from a challenge or proceeding brought by a third party then either the Director or Alpha may choose to terminate this Consent Order (and the DEP Superpriority Claim) in its entirety.

6.    This Consent Order is binding on Alpha on the Effective Date of this Consent Order.

Alpha Natural Resources, Inc., on behalf of
itself and the ANR Subsidiaries,

By: _____

Richard H. Verheij, Executive Vice President
General Counsel and Corporate Secretary
ALPHA NATURAL RESOURCES
One Alpha Place
Bristol, Virginia  24209

Date: _____12-7-15_____

Department of Environmental Protection

By: _____

Harold D. Ward, Acting Director
DIVISION OF MINING AND RECLAMATION
601 57th Street, Southeast
Charleston, West Virginia  25304

Date: _____12-7-15_____