JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Attorneys for Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., et al., | Case No. 15-33896 (KRH) |
| Debtors. | (Jointly Administered) |

## ORDER (I) AUTHORIZING PAYMENTS UNDER
## 2015 ANNUAL INCENTIVE BONUS PLAN AND (II) APPROVING KEY
## EMPLOYEE INCENTIVE PLAN FOR CERTAIN INSIDER EMPLOYEES FOR 2016

This matter coming before the Court on the *Motion of the Debtors for Entry of an Order*

*(I) Authorizing Payments Under 2015 Annual Incentive Bonus Plan and (II) Approving Key*

*Employee Incentive Plan for Certain Insider Employees for 2016* (Docket No. 1038)

(the "Motion"),[1] filed by the debtors and debtors in possession in the above-captioned cases

(collectively, the "Debtors"); the following objections (collectively, the "Objections") to the

relief requested in the Motion having been filed:

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

(a)   the *Objection to Debtors' Motion for Entry of an Order (I) Authorizing Payments Under 2015 Annual Incentive Bonus Plan; and (II) Approving Key Employee Incentive Plan for Certain Insider Employees for 2016* (Docket No. 1067) (the "<u>Retiree Committee Objection</u>"), filed by the official committee of retired employees appointed in these chapter 11 cases (the "<u>Retiree Committee</u>");

(b)   *The United States Trustee's Combined Opposition to Debtors' Motions: (1) For Approval of Key Employee Incentive Plan, and (2) To Seal Appendix 2 to Declaration of Robert Romanchek* (Docket No. 1280);

(c)   the *Objection of the United Mine Workers of America to Debtors' Motion (I) Authorizing Payments Under 2015 Annual Incentive Bonus Plan and (II) Approving Key Employee Incentive Plan for Certain Insider Employees for 2016* (Docket No. 1291); and

(d)   the *UMWA Health and Retirement Funds' Objection to the Debtors' Motion for Entry of an Order Authorizing (I) Payments Under 2015 Annual Incentive Bonus Plan and (II) Approving Key Employee Incentive Plan* (Docket No. 1303).

The Debtors having filed:

(a)   the *Reply in Support of Debtors' Request for Authority to Make Payments Under 2015 Annual Incentive Bonus Plan* (Docket No. 1111) (the "<u>AIB Reply</u>") and the supplemental declaration of Robert Romanchek, which was attached as <u>Exhibit A</u> thereto (the "<u>Supplemental Romanchek Declaration</u>" and, collectively with the Hassey Declaration, the Romanchek Declaration and the Carmody Declaration, the "<u>Declarations</u>"); and

(b)   the *Reply in Support of Motion of the Debtors for Entry of an Order (I) Authorizing Payments Under 2015 Annual Incentive Bonus Plan and (II) Approving Key Employee Incentive Plan for Certain Insider Employees for 2016* (Docket No. 1318) (the "<u>KEIP Reply</u>" and together with the AIB Reply, the "<u>Replies</u>").

The Court having reviewed the Motion, the Declarations, the Objections and the Replies and

having considered the statements of counsel and the evidence adduced with respect to the Motion

at a hearing before the Court (the "Hearing"); the Court being advised that (a)(i) the official

committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors'

Committee") has agreed not to object to the relief requested in the Motion and (ii) the Retiree

Committee has agreed not to pursue the Retiree Committee Objection, subject, in each case, to

the Debtors' agreement to revise the terms of the KEIP as described on the chart attached hereto

as Annex 1 (such program, as revised, the "Revised KEIP") and (b) the Debtors have agreed to

the terms of the Revised KEIP; the Court finding that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), (c) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409,

(d) notice of the Motion and the Hearing was sufficient under the circumstances, (e) the Debtors

may make payments under the AIB with respect to the Executive Insiders for 2015 in the

ordinary course of their businesses, (f) the Revised KEIP is an actual and necessary cost or

expense of preserving the Debtors' estates, (g) the Revised KEIP is not designed primarily for

retentive effect, and, therefore, the limitations of section 503(c)(1) of the Bankruptcy Code do

not apply to the Revised KEIP and (h) the Revised KEIP is justified by the facts and

circumstances of these chapter 11 cases within the meaning of section 503(c)(3) of the

Bankruptcy Code, and a sound business purpose exists for the Debtors' implementation of the

Revised KEIP, because the Revised KEIP is narrowly tailored to incent the remaining KEIP

Participants who are vital to the Debtors' successful restructuring and the maximization of value

for the benefit of all parties in interest; and the Court finding that the relief sought in the Motion,

as revised, is in the best interests of the Debtors, their estates, creditors and all parties in interest;

and the Court having determined that the legal and factual bases set forth in the Motion, the

Declarations and the Replies and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1.      For the reasons set forth by the Court on the record at the Hearing, the Motion is GRANTED as set forth herein, the Retiree Committee Objection is RESOLVED, and the other Objections are OVERRULED.

2.      The Debtors are authorized, but not directed, to make payments to the Executive Insiders under the 2015 AIB in the ordinary course of business; provided, however, that the Debtors will provide the Creditors' Committee, the Retiree Committee and the DIP Agent (collectively, the "Review Parties") with five business days' written notice (the "AIB Notice Period") or obtain a further order of the Court prior to paying any bonus or other amount pursuant to the AIB (a "Proposed AIB Payment").  The Debtors will simultaneously provide the Review Parties with the amount of the Proposed AIB Payment, together with information establishing the basis for such Proposed AIB Payment (in the form of the applicable performance goals, levels of achievement, payout metrics and all other relevant information).  Should any of the Review Parties object to the Proposed AIB Payment, the applicable Review Party shall file an objection (an "AIB Payment Objection") to such Proposed AIB Payment within the AIB Notice Period setting forth the basis for such AIB Payment Objection, which shall be heard on an expedited basis.  If each of the Review Parties either (a) indicates in writing (including email) that it does not object to a Proposed AIB Payment or (b) fails to file an AIB Payment Objection within the AIB Notice Period, the Debtors may make the Proposed AIB Payment.  If an AIB Payment Objection is filed, the Debtors shall not make the Proposed AIB Payment unless and until such AIB Payment Objection is overruled or resolved by agreement between the Debtors and the applicable Review Party.

3.      Pursuant to section 363(b)(1) and 503(c)(3) of the Bankruptcy Code, the Revised KEIP is approved in its entirety, and the Debtors are authorized to implement the Revised KEIP and to make any payments thereunder to the remaining KEIP Participants; provided, however, that the Debtors will provide the Review Parties with five business days' written notice (the "KEIP Notice Period") or obtain a further order of the Court prior to paying any bonus or other amount pursuant to the Revised KEIP (a "Proposed KEIP Payment"). The Debtors will simultaneously provide the Review Parties with the amount of the Proposed KEIP Payment, together with information establishing the basis for such Proposed KEIP Payment (in the form of the applicable performance goals, levels of achievement, payout metrics and all other relevant information).  Should any of the Review Parties object to the Proposed KEIP Payment, the applicable Review Party shall file an objection (a "KEIP Payment Objection") to such Proposed KEIP Payment within the KEIP Notice Period setting forth the basis for such KEIP Payment Objection, which shall be heard on an expedited basis.  If each of the Review Parties either (a) indicates in writing (including email) that it does not object to a Proposed KEIP Payment or (b) fails to file a KEIP Payment Objection within the KEIP Notice Period, the Debtors may make the Proposed KEIP Payment.  If a KEIP Payment Objection is filed, the Debtors shall not make the Proposed KEIP Payment unless and until such KEIP Payment Objection is overruled or resolved by agreement between the Debtors and the applicable Review Party.

4.      Any and all payment obligations of the Debtors under the AIB and the Revised KEIP shall constitute administrative expenses of the Debtors' estates.

5.      The authorization hereunder to make payments to the remaining KEIP Participants pursuant to the Revised KEIP, and to the Executive Insiders pursuant to the AIB,

shall not create any obligation on the part of the Debtors or their officers, directors, attorneys or

agents to make payments under the Revised KEIP or the AIB, respectively, unless the

participants meet the necessary conditions under the Revised KEIP or the AIB, as applicable.

6.      The Debtors are authorized to execute and deliver all instruments and

documents, and take all such other actions as may be necessary or appropriate to implement,

effectuate and fully perform under and in accordance with this Order, the Revised KEIP and the

AIB.

7.      The terms and conditions of this Order shall be immediately effective and

enforceable upon entry.

8.      This Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.

Dated: Jan 27 2016
_____, 2016
Richmond, Virginia

/s/ Kevin R. Huennekens
_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:1/27/16

WE ASK FOR THIS:

Respectfully submitted,

__/s/ Henry P. (Toby) Long, III_____
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218

and

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Attorneys for the Debtors*
*and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

__/s/ Henry P. (Toby) Long, III_____

## ANNEX 1

### COMPARISON OF KEY EMPLOYEE INCENTIVE PROGRAM AS PROPOSED AND AS REVISED[1]

| Metric | Weight | Aggregate Target Opportunity | Period | Payout Levels and Percentage of Performance Opportunity | Performance Goals | Weight | Aggregate Target Opportunity[2] | Period[3] | Payout Levels and Percentage of Performance Opportunity[4] | Performance Goals[5] |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost Savings[6] | 15% | $1.11 million | 1/1/16 – 3/31/16 | Threshold (50%) | $42 million | 30% | $2.04 million | 1/1/16 – 6/30/16 | Threshold (50%) | $64 million |
| | | | | Target (100%) | $50 million | | | | Target (100%) | $75 million |
| | | | | Maximum (200%) | $55 million | | | | Maximum (175%) | $82 million |
| | 15% | $1.11 million | 4/1/16 – 6/30/16 | Threshold (50%) | $64 million | | | | | |
| | | | | Target (100%) | $75 million | | | | | |
| | | | | Maximum (200%) | $82 million | | | | | |
| Liquidity[7] | 27.5% | $2.035 million | 1/1/16 – 3/31/16 | Threshold (50%) | $750 million | 55% | $3.75 million | 1/1/16 – 6/30/16 | Threshold (50%) | $675 million |
| | | | | Target (100%) | $850 million | | | | Target (100%) | $775 million |
| | | | | Maximum (200%) | $900 million | | | | Maximum (175%) | $825 million[8] |
| | 27.5% | $2.035 million | 4/1/16 – 6/30/16 | Threshold (50%) | $675 million | | | | | |
| | | | | Target (100%) | $775 million | | | | | |
| | | | | Maximum (200%) | $800 million | | | | | |
| Safety | 3.75% | $0.278 million | 1/1/16 – 3/31/16 | Threshold (50%) | 2.78 | 7.5% | $0.511 million | 1/1/16 – 6/30/16 | Threshold (50%) | 2.78 |
| | | | | Target (100%) | 2.42 | | | | Target (100%) | 2.42 |
| | | | | Maximum (200%) | 2.18 or less | | | | Maximum (175%) | 2.18 or less |
| | 3.75% | $0.278 million | 4/1/16 – 6/30/16 | Threshold (50%) | 2.78 | | | | | |
| | | | | Target (100%) | 2.42 | | | | | |
| | | | | Maximum (200%) | 2.18 or less | | | | | |
| Environmental | 3.75% | $0.278 million | 1/1/16 – 3/31/16 | Threshold (50%) | 23.0 | 7.5% | $0.511 million | 1/1/16 – 6/30/16 | Threshold (50%) | 23.0 |
| | | | | Target (100%) | 20.0 | | | | Target (100%) | 20.0 |
| | | | | Maximum (200%) | 18.0 or less | | | | Maximum (175%) | 18.0 or less |
| | 3.75% | $0.278 million | 4/1/16 – 6/30/16 | Threshold (50%) | 23.0 | | | | | |
| | | | | Target (100%) | 20.0 | | | | | |
| | | | | Maximum (200%) | 18.0 or less | | | | | |
| Total | 100% | $7.402 million | | | | 100% | $6.816 million[9] | | | |

---

[1]  Capitalized terms not otherwise defined herein have the meanings given to them in the *Motion of the Debtors for Entry of an Order (I) Authorizing Payments Under 2015 Annual Incentive Bonus Plan and (II) Approving Key Employee Incentive Plan for Certain Insider Employees for 2016* (Docket No. 1038) (the "Motion").

[2]  Award entitlement shall be made as of June 30, 2016 with any award payments to be made as follows:  (a) 75% to be paid within 30 days of the determination date; and (b) 25% to be paid upon confirmation of a chapter 11 plan, if such a plan is confirmed by December 31, 2016 (otherwise the 25% payment is forfeited).  Under the KEIP as proposed in the Motion, incentive award payments were to be split into thirds with:  (a) one-third to be paid within 30 days following the conclusion of the applicable Performance Period; (b) one-third to be paid on September 30, 2016 or, if earlier, the date of a confirmed chapter 11 plan; and (c) one-third to be paid upon confirmation of a chapter 11 plan, if such a plan is confirmed by December 31, 2016 (otherwise such portion would have been forfeited as above).

All award payments shall be deemed earned at target levels upon the occurrence of either of the following prior to June 30, 2016: (a) confirmation of a chapter 11 plan; or (b) one or more sales or change of control transactions, or combinations thereof (including by way of a credit bid) for assets representing more than 50% of the Debtors' assets on the basis of 2015 full year revenues or operating cash flow (which is defined as coal margin less capital expenditures plus an addback of any expenses associated with asset retirement obligations less all cash asset retirement obligation costs).  Under the KEIP as proposed in the Motion, upon the occurrence of:  (a) confirmation of a chapter 11 plan; (b) sale of substantially all (more than 70%) of the Debtors' assets, as measured by revenues or EBITDA; or (c) any change of control transaction, including a transaction involving a credit bid for more than 50% of the Debtors' assets on the basis of revenues or EBITDA, all award payments were to be deemed earned at target levels with respect to each Performance Period that is outstanding on the date of such transaction.

Any KEIP Participant who is terminated without cause will remain eligible to receive payments in the normal course under the KEIP based on actual performance.  Any KEIP Participant who is terminated for cause will forfeit any entitlement to any incentive award payout under the KEIP.  All KEIP Participants shall be deemed to have waived any claim against the Debtors' estates on account of any retention agreement that had not expired as of the Petition Date.

[3]  The Performance Periods proposed in the Motion have been combined into a single Performance Period from January 1, 2016 to June 30, 2016.  Except as noted, the targets attributable to the Performance Period ending June 30, 2016 under the KEIP, as originally proposed, are applicable to the KEIP, as revised.

[4]  The payout percentage at the maximum level has been reduced from 200% to 175% under the revised KEIP.

[5]  If threshold is met or exceeded, performance and award payout shall be determined through proration between levels up to maximum.  Performance targets shall be adjusted upon consummation of asset sales or other financing related transactions to neutralize the impact from such transactions.

[6]  The costs savings metric was designated as the "Value Enhancement Plan" (the "VEP") in the Motion and has been redesignated as the "Alpha Performance Enhancement Plan" (the "APEP") in the KEIP, as revised.  Just as with respect to the VEP, the APEP measures annualized savings realized through executed initiatives.  The DIP Agent, the Creditors' Committee and the Retiree Committee shall have the right to review performance against all KEIP targets under the procedures set forth in the order approving the Motion, including with respect to (a) the calculation of APEP savings initiatives and (b) confirmation that such APEP initiatives do not duplicate 2015 AIB savings initiatives.  Consistent with the statements of the Debtors' counsel on the

-2-

record at the hearing on the Motion, any cost savings achieved by the Debtors prior to June 30, 2016 through (a) the rejection or modification of collective bargaining agreements pursuant to section 1113 of the Bankruptcy Code or (b) the modification of retirement benefits pursuant to section 1114 of the Bankruptcy Code will be excluded from the APEP for the purpose of calculating performance under the KEIP.

[7] The liquidity metric has been redesignated simply as "Adjusted Ending Book Cash" under the revised KEIP. Adjusted Ending Book Cash is calculated as: (a) the sum of all amounts in all bank accounts in the Debtors' Cash Management System plus all Managed Securities Accounts (as such terms are defined in the *Final Order, Pursuant to Sections 345, 363(c)(1), 503(b)(1) and 553 of the Bankruptcy Code and Bankruptcy Rules 6003(b) and 6004(h): (A) Approving the Continued Use of the Debtors' Cash Management System, Bank Accounts and Business Forms; (B) Granting a Waiver of the Requirements of Section 345(b) and Certain of the US Trustee's Operating Guidelines; (C) Permitting Continued Intercompany Transactions; (D) Preserving and Permitting the Exercise of Intercompany Setoff Rights; and (E) Authorizing Banks to Honor Certain Transfers and Charge Certain Fees and Other Amounts* (Docket No. 624), excluding any amounts held in restricted accounts to collateralize letters of credit; (b) less all outstanding checks as of the measurement date; (c) plus all payments made with respect to any State liability settlements prior to or on the measurement date. Adjusted Ending Book Cash includes cash from the liquidation of shares of Rice Energy Company ("Rice Energy") held by the Debtors as of the Petition Date but excludes the value of Rice Energy shares still held by the Debtors or the proceeds of postpetition sales of Rice Energy shares. Adjusted Ending Book Cash further excludes, on a dollar-for-dollar basis: (a) any payments for non-union retiree benefits the Debtors would have made prior to June 30, 2016 but do not make as requested in the *Motion of the Debtors, Pursuant to Section 363 of the Bankruptcy Code, for an Order Authorizing Debtors to Terminate Certain Unvested Non-Pension Benefits* (Docket No. 797); and (b) any payments arising under collective bargaining agreements or for retirement benefits that the Debtors would have made prior to June 30, 2016 but do not make as a result of (i) the rejection or modification of collective bargaining agreements pursuant to section 1113 of the Bankruptcy Code or (ii) the modification of retirement benefits pursuant to section 1114 of the Bankruptcy Code.

[8] The maximum goal under the liquidity metric has been increased from $800 million to $825 million under the revised KEIP.

[9] The decrease of approximately $0.586 million in the aggregate target opportunity under the KEIP, as revised, results from the departure of two KEIP Participants since the filing of the Motion. The total exceeds the sum of the cells above as a result of rounding.