IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(**Richmond Division**)

In re

Alpha Natural Resources, Inc, *et al*.,                    Chapter 11

    Debtor(s).                                              Case No. 15-33896-KRH

                                                                                        (Jointly Administered)

**NOTICE OF MOTION OF THE UNITED STATES TRUSTEE TO COMPEL
MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S.,
TURNAROUND ADVISOR FOR THE DEBTORS, TO COMPLY
WITH THE REQUIREMENTS OF BANKRUPTEYC RULE 2014**

    PLEASE TAKE NOTICE THAT the United States Trustee has filed with the Court a **Motion To Compel McKinsey Recovery & Transformation Services, U.S., Turnaround Advisor For The Debtors, To Comply With The Requirements of Bankruptcy Rule 2014** (the "Motion") in the above-captioned case.

    **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

    If you do not want the Court to grant the relief sought in the Motion or if you want the Court to consider your views on the Motion, you or your attorney must:

        ( X )   File with the Court, at the address below, a written request for a hearing [or a written response pursuant to Local Bankruptcy Rule 9013-1(H)].  You must mail or otherwise file it early enough so the Court will **receive** it on or before the date stated above.

                            Clerk of Court
                            United States Bankruptcy Court
                            701 East Broad Street – Suite 4000
                            Richmond, Virginia 23219

    You must also mail a copy to:

                            Robert B. Van Arsdale, AUST
                            Office of the United States Trustee
                            701 East Broad Street - Suite 4304
                            Richmond, VA 23219

---

Robert B. Van Arsdale, Esq., AUST (Va. Bar No. 17483)
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (804) 771-2330

  ( x ) Attend a hearing, which may be scheduled at a later date.  You will receive a separate notice of hearing.

  If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting the relief requested.

              JUDY A. ROBBINS
              United States Trustee
              Region Four

Date:  May 3, 2016      By: /s/ *Robert  B. Van Arsdale*
              Robert B. Van Arsdale (Va. Bar No. 17483)
              Office of the United States Trustee
              701 East Broad Street, Suite 4304
              Richmond, Virginia 23219
              (804) 771-2310
              robert.b.van.arsdale@usdoj.gov

              By: /s/ *Hugh M. Bernstein*
              Hugh M. Bernstein (Md. Fed. Bar No. 23489)
              Office of the United States Trustee
              101 W. Lombard Street, Suite 2650
              Baltimore, Maryland 21201
              (410) 962-4300
              hugh.m.bernstein@usdoj.gov

              By: /s/ *Elisabetta G. Gasparini*
              Elisabetta G. Gasparini (SC Fed. Bar No. 11548)
              Office of the United States Trustee
              1835 Assembly Street, Ste. 953
              Columbia, South Carolina 29201
              (803)765-5227
              elisabetta.g.gasparini@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2016, a true copy of the foregoing was delivered via electronic mail pursuant to the Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the Eastern District of Virginia to all necessary parties.

/s/ Robert B. Van Arsdale
Robert B. Van Arsdale (Va. Bar No. 17483)
Assistant U.S. Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**(Richmond Division)**

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., *et al.*, | Case No. 15-33896-KRH |
| Debtors. | (Jointly Administered) |

**MOTION OF THE UNITED STATES TRUSTEE TO COMPEL
MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S.,
TURNAROUND ADVISOR FOR THE DEBTORS, TO COMPLY
WITH THE REQUIREMENTS OF BANKRUPTCY RULE 2014**

Judy A. Robbins, the United States Trustee for Region Four (the "U.S. Trustee"), which includes the Eastern District of Virginia, Richmond Division, pursuant to sections 105 and 327 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014 ("Bankruptcy Rule 2014"), files this motion (the "Motion") for an order compelling McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS") to comply with the disclosure requirements of Bankruptcy Rule 2014. In support of the Motion, the U.S. Trustee states as follows:

**INTRODUCTION**

Bankruptcy Rule 2014 requires that professionals to be employed file a verified statement of "all of the person's connections" to the debtor, creditors, and any other parties interest. The Debtors retained McKinsey RTS as their turnaround advisor, but its declarations disclosed only vague and amorphous connections to creditors and other major parties in interest—first lien lenders, other secured creditors, and the Debtors' major competitors. McKinsey RTS has neither

---
Robert B. Van Arsdale, AUST (Va. Bar No. 17483)
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (804) 771-2330

identified these connections by name nor provided any insight into the nature of the connections. But Bankruptcy Rule 2014 requires that disclosures be sufficiently explicit for a court and other parties to determine whether a professional is disinterested or holds or represents an adverse interest. An indeterminate statement of connections with a creditor does not satisfy Bankruptcy Rule 2014. Rather, "complete and candid disclosure . . . is indispensable to the court's discharge of its duty to assure the [professional's] eligibility for employment under section 327(a) . . . ." In re eToys, Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005). Rigorous compliance with Rule 2014 is critical to the integrity and transparency required of the bankruptcy system. And in the context of the debtors' current push toward major asset sales and plan confirmation, these disclosures are of particular and concrete importance. Accordingly, McKinsey RTS should be compelled to comply with Bankruptcy Rule 2014 like other professionals by filing a supplemental declaration stating, at a minimum, (a) the identity of the entities on the Interested Parties List (as defined below) with which McKinsey RTS and any of its affiliates have a connection (even if unrelated to the Debtors or these chapter 11 cases) and (b) a general description of the connection with or work performed for these entities.[1]

## FACTS AND BACKGROUND

1.  On August 3, 2015, the Debtors filed chapter 11 petitions. The Debtors' cases are jointly administered.

2.  The Debtors operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee or examiner has been appointed.

---

[1] The U.S. Trustee and McKinsey RTS are engaged in continuing discussions regarding these matters.

### A. Retention of McKinsey RTS as Turnaround Advisor

3.      On August 24, 2015, the Debtors filed an application seeking to employ McKinsey RTS as Turnaround Advisor for the Debtors (Docket No. 212, the "Application").[2] Kevin Carmody, the Practice Leader for McKinsey RTS, submitted a declaration in support of the Application (the "Original Declaration"). The Original Declaration explained the procedures that McKinsey undertook to complete its conflict check. See Original Declaration at ¶¶ 19 and 24.

4.      In addition to a vague and generalized disclosure about the materiality of McKinsey's connections,[3] the Original Declaration also alluded to the existence of known connections with interested parties. But those disclosures do not identify any specific interested parties by name, nor do they provide any useful context. In particular, Mr. Carmody stated that:

- Members of the McKinsey RTS Team[4] serve or have served in the last three years, on matters that did not relate to coal and were not related to the Debtors or the Chapter 11 cases: (a) two Major Competitors, (b) ten Revolving Facility Lenders; (c) nine Secured Term Loan Lenders;[5]

- One member of the McKinsey RTS Team was previously employed, in the

---

[2]    Paragraph 10 of the Application provides further information about the contemplated scope of McKinsey RTS's services.

[3]    The Original Declaration stated that "McKinsey RTS and certain of its affiliates may have in the past provided services for, may presently be providing services for, and may in the future provide services for entities that are determined to be creditors, lenders, shareholders, insurers, customers, competitors, vendors or contract counterparties of the Debtor or of Interested Parties named on the Interested Parties List. However, to the best of my current knowledge, subject to the disclosure set forth herein, such services do not focus *on direct commercial relationships or transactions between such companies and the Debtors*." See Original Declaration at ¶¶ 21, 25 (Emphasis added).

[4]    According to the Original Declaration, "McKinsey RTS Team" refers to certain employees of McKinsey RTS, along with certain consultants borrowed from affiliates of McKinsey RTS, together serving the Debtors. See Original Declaration at ¶ 2.

[5]    The Interested Parties List attached as Schedule 1 to the McKinsey Application lists, among others, 26 "Major Competitors," 17 "Revolving Facility Lenders", and 43 "Secured Term Loan Lenders."

>   past three years, by a Major Competitor;
>
> - A member of the McKinsey RTS Team attended a proposal meeting and submitted a proposal to a Major Competitor that was not accepted.

See id. at ¶ 20. Moreover, "McKinsey RTS and its affiliates may have in the past been represented by, may currently be represented by, and may in the future be represented by attorneys, law firms, or financial advisors who are involved in these proceedings, including law firms and financial advisors representing the Debtors." Id. at ¶ 29.

5.  The Original Declaration was twice supplemented. On November 9, 2015, McKinsey RTS filed a supplemental declaration (the "First Supplement" Docket No. 865), which purported to supplement the firm's original disclosures of connections.[6] The First Supplement stated that:

- Members of the McKinsey RTS Team (and in one instance, members of a McKinsey RTS affiliate) currently serve or in the past three years have served a total of five Major Competitors [First Supplement, ¶ 7(a) and (e)];

- A member of the McKinsey RTS Team currently serves or in the past three years has served a portfolio company of one Revolving Facility Lender and a portfolio company of one Secured Term Loan Lender [First Supplement, ¶ 7(b)]; and

- A member of the McKinsey RTS Team served, through a past employer in the past three years, three Revolving Facility Lenders or their affiliates and three Secured Term Loan Lenders [First Supplement, ¶ 7(d)].

In each instance, McKinsey RTS contended these connections were unrelated to the Debtors' cases, but did not provide any factual disclosures to support its contentions.

6.  On March 25, 2016, McKinsey RTS filed a second supplemental declaration (the "Second Supplement," Docket No. 1854, and together with the Original Declaration and the First Supplement, the "Carmody Declarations"). The Second Supplement referenced additional

---

[6] The First Supplement also expanded the scope of McKinsey's retention pursuant to an amendment to the Engagement Letter (effective as of October 19, 2015) to include additional financial advisory services.

- 4 -

known connections. Specifically, it provided that members of the McKinsey RTS Team currently serve or in the past three years have served, among other entities: (a) one of the Major Competitors and one of its affiliates; and (b) one of the Revolving Facility Lenders.[7] See Second Supplement, ¶ 4(a)(v) and (viii).

7. Taking the information in ¶¶ 4-6 together, the Carmody Declarations indicate that McKinsey RTS has connections to as many as:

    a. Seven (7) to eight (8) major competitors;

    b. Fourteen (14) revolving facility lenders; and

    c. Fourteen (14) secured term loan lenders.[8]

See supra at ¶¶ 4-6.

**B. Case Proceedings**

8. On March 7, 2016, the Debtors filed a Joint Plan of Reorganization of Debtors and Debtors in Possession (the "Plan") and Disclosure Statement with Respect to Plan of Reorganization of Debtors and Debtors in Possession (the "Disclosure Statement") (Docket No. 1703). This Court will consider approving the Disclosure Statement on May 17, 2016.

9. The Plan contemplates the sale of the Debtors' core mining assets and a related settlement of disputes with prepetition senior secured lenders (the "Proposed Plan Transactions"). See Disclosure Statement, pp. 100 of 165. As part of the Proposed Plan Transactions, the First Lien Lenders submitted a stalking horse credit bid for the purchase of the

---

[7] Similar to the First Supplement, the Second Supplement contends that McKinsey RTS's services for these parties do not relate to the Debtors' cases.

[8] The Debtors' Disclosure Statement indicates that the Debtors' senior secured indebtedness "is generally comprised of two sub-facilities: (a) a senior secured term loan facility … and (b) a secured revolving credit facility." See Disclosure Statement, Docket No. 1703, pp. 83 of 165. Thus, it appears that both sets of lenders identified as connections in the Carmody Declarations hold pre-petition senior secured claims.

Debtors' core mining assets.[9] See id. In addition, the Debtors propose to compromise disputes regarding the (a) extent to which the First Lien Lenders hold perfected secured claims and (b) "methodology for calculating the First Lien Lenders' claim for the diminution of the value of their interests in collateral." Id.

## ARGUMENT

### A.  Statutory Framework.

Section 327 provides that the trustee or debtor in possession may employ, with court approval, professionals who are disinterested and who do not hold or represent interests adverse to the estate.  11 U.S.C. § 327.  Bankruptcy Rule 2014 imposes a complementary duty of disclosure so that courts and parties can determine whether a professional to be employed satisfies section 327's ethical requirements. Said differently, Bankruptcy Rule 2014 has one primary purpose—to facilitate compliance with section 327.  But Bankruptcy Rule 2014 is also much broader than section 327:  "[T]he requirements of Fed. R. Bankr. P. 2014 are more-encompassing than those governing the disinterestedness inquiry under section 327.  For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed." In re Leslie Fay Companies, Inc., 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).  Thus, professionals must disclose "all of the [professional's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States trustee." See Bankruptcy Rule 2014. "Bankruptcy

---

[9]  More recently, on April 12, 2016, the Debtors (with the support of the First Lien Lenders who agreed to modify the previous stalking horse purchase agreement) filed a motion seeking entry of an order designating Rice Drilling B LLC, an affiliate of Rice Energy, as the stalking horse bidder for a portion of the core mining assets (Docket No. 2055). On April 26, 2016, the Court granted the motion (Docket No. 2237).

Rule 2014 disclosure is not optional; it's mandatory." In re Dickson Properties, LLC, 2012 WL 2026760, *8 (Bankr. E.D. Va. June 5, 2012).

These statutory provisions which prohibit conflicting interests in bankruptcy "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance." Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994). "Because '[t]he objective of requiring disclosure is not so much to protect against prejudice to the estate, but to ensure undivided loyalty and untainted advice from professionals . . . . [L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice." In re Byington, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011) (quoting Midway Indus. Contractors, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001)). Professionals must "be meticulous in disclosing 'all connections' with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action." Id.; see also In re EBW Laser Inc., 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) (quotation omitted) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required.").

The requirement to disclose all connections is not subjective, "whereby the professional discloses only those 'connections' that he/she/it concludes are relevant." In re Matco Elec. Group, Inc., 383 B.R. 848, 853 (Bankr. N.D.N.Y. 2008). Said differently, "the existence of a conflict of interest is not the *quid pro quo* for whether or not disclosure must be made. Id.; see also In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) (court should not have to "rummage through files or conduct independent fact finding investigations" to determine whether a professional should be disqualified). And the duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and "requires 'spontaneous, timely, and

complete disclosure.'"  In re The Harris Agency, 462 B.R. 514, 524 (E.D. Pa. 2011) (citation omitted).

### B. Vague Disclosures That Do Not Identify Connections Do Not Comply with the Bankruptcy Rules and Bankruptcy Code

Rule 2014 requires that disclosures be sufficiently explicit for a court and other parties to determine whether a professional is disinterested or holds or represents an adverse interest.  In re Lewis Road, LLC, 2011 WL 6140747, *8 (Bankr. E.D. Va. 2011).  An indeterminate statement of "connections with a creditor" does not satisfy Rule 2014.  Id. at *12.  In other words, disclosing the existence of a connection without disclosing the identity of the connection is insufficient.  In re Brennan, 187 B.R. 135, 144 (Bankr. D.N.J.), rev'd on other grounds sub nom, In re First Jersey Securities, Inc., 180 F.3d 504 (3d Cir. 1999) ("must also be disclosure of the identities").  Rather, "complete and candid disclosure . . . is indispensable to the court's discharge of its duty to assure the [professional's] eligibility for employment under section 327(a) . . . ."  In re eToys, Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005).

In Lewis Road, LLC, this Court found that the statement that a firm had "connections with a creditor" did not comply with Rule 2014. The debtor filed an application to employ counsel (without a verified statement) that disclosed that "[p]roposed counsel has connections with the debtor (including prepetition advice concerning the debtor's financial situation and the preparation and filing of its chapter 11 petition) and *connections with a creditor*."  2011 WL 6140747, *2 (emphasis in original).  The professional firm "did not disclose with whom it held connections nor did it describe what those connections were in its Application." Id. at *9.

> The purported "disclosure" that was made was woefully inadequate and not in compliance with the requirement that the disclosure be "explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." [citation omitted].  This lack of proper disclosure alone warrants the firm's disqualification from the case.

- 8 -

Id. The firm's failure to provide "any information concerning the identity, nature, or scope of its 'connections with a creditor'" compelled this Court's conclusion that the purported disclosure did "not contain the detail sufficient to comply with Rule 2014." Id. at *2, *12. Based on a finding of an actual conflict of interest as well as the failure to disclose the actual conflict and all connections, the Court ordered complete disgorgement of all amounts paid to counsel.[10]

Other courts presented with similarly vague or boilerplate disclosures have rightly disapproved them too. See Matco Elect. Group, 383 B.R. 848; In re Filene's Basement, Inc., 239 B.R. 845 (Bankr. D. Mass. 1999); Leslie Fay Cos., 175 B.R. at 537; see also In re Digerati Tech., Inc., 524 B.R. 666, 688 (Bankr. S.D. Tex. 2015) (denying final fee application for, among other things, failure to comply with the requirements of Bankruptcy Rule 2014 when the investment banker had failed to disclose connection with debtor's law firm). In Leslie Fay, the court found that boilerplate language that the firm at issue may have in the past represented, currently represents, and may in the future represent entities which are claimants of the debtors was insufficient to alert the court to the firm's representation of a large creditor. The court further stated that while "[t]he boilerplate is reasonable to cover inadvertent failures to disclose insignificant connections; it is not an adequate substitute for disclosure of representation of known and significant creditors." Id.

In Filene's Basement, the debtors filed an application to employ PricewaterhouseCoopers LLP ("PWC") as financial advisor and consultant. Another of PWC's clients, T.A.C. Group, Inc. ("TAC"), filed a motion to reconsider PWC's appointment as advisors, alleging that PWC

---

[10] The connection and conflict issue arose in connection with a Rule 60(b) motion filed by the chapter 11 trustee to set aside an order approving a settlement that included, among other provisions, payment of attorney's fees incurred by the debtor-in-possession before the trustee was appointed. After the settlement had been approved, the United States Trustee learned and informed the Court that DIP's counsel was representing both the DIP and a junior creditor.

was not disinterested because it had served as TAC's advisor in a prepetition state court action brought by TAC against the debtors. PWC's disclosure declaration stated, among other things:

> In the spring of 1999, a PricewaterhouseCoopers LLP partner was retained by the plaintiff's law firm to potentially provide expert witness testimony in a litigation matter that involved the Debtors [as] defendants. When PricewaterhouseCoopers LLP was subsequently retained by the Debtor to provide financial advisory and consulting services, both parties to that litigation were notified. . . . That litigation is now stayed as a result of the Debtors filing for Chapter 11 protection.

Id. at 847. Missing from PWC's Rule 2014 disclosures was the identity of the plaintiff, the nature of the litigation, or any other fact which could have alerted the court to any potential problem. The Court ultimately disqualified PWC and held that "[PWC's] failure to include TAC in its list of clients and the inconspicuous and anonymous disclosure regarding that litigation fails to satisfy the requirements of the rule." Id. at 850.

Similarly, in Matco Elect. Group, the affidavit in support of the retention of the Unsecured Creditors Committee's counsel disclosed that "[m]ember(s) and/or employees of [the firm] may from time to time maintain *de minimis* stock holdings in creditors(s) of the Debtors, which stock is publicly traded on national markets and an attorney is related to and [sic] officer and shareholder of one of the general unsecured creditors of the Debtors." Matco, 383 B.R. at 850. But it was later discovered that the attorney referred to in the affidavit was a partner who, at the time of the execution of the affidavit, was the son-in-law of the Chief Executive Officer and President of a significant creditor, who petitioned for the debtors' involuntary bankruptcy and became an active member of the creditors' committee. Upon a motion for the review and disallowance of professionals' fees, the court was ultimately faced with the question of whether the disclosure was "a sufficient compliance with the requirements of Fed. R. Bankr. P. 2014 in light of facts which were known only to the firm at the time the disclosure was made." Id. at

853.

The firm's argument in its defense was that somehow the adequacy of the disclosure required by Bankruptcy Rule 2014 should be judged by the failure of any party in interest to request additional information from the firm beyond the statement in its declaration. Id. at 853. The court, however, dismissed the argument and condemned the gamesmanship:

> Fed. R. Bankr. P. 2014 is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court or other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure.

Id. at 853-54; see also Filene's Basement, Inc., 239 B.R. at 856 (indicating that "'coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient.'") (quotations omitted). The Matco Elect. Group court ultimately concluded that the disclosures appeared to have been purposefully vague and denied some of the requested fees. Id. at 856.

So too here. McKinsey RTS filed not one, not two, but three declarations that are similarly vague; they disclose the existence of various connections without disclosing the identity of the connections. See supra at ¶¶ 4-7. Even if such connections ultimately prove unrelated to the Debtors or these chapter 11 cases, McKinsey RTS's disclosures are insufficient to satisfy Bankruptcy Rule 2014. There is no information regarding the identity, nature, or scope of the connections. Stated another way, the Carmody Declarations give the appearance of compliance without actually complying with Bankruptcy Rule 2014. As in Lewis Road, they are not "explicit enough."

McKinsey RTS's failure to provide complete disclosures may also cast a cloud over the Debtors' restructuring strategy. From the outset of these cases, the Debtors (with the assistance

of McKinsey RTS)[11] negotiated the terms of a debtor-in-possession financing agreement and the Debtors' overall restructuring strategy with their existing secured lenders (some of whom have connections to McKinsey). And since that time, the Debtors' continued engagement and negotiation with these same lenders set the stage for the proposed Disclosure Statement and Plan currently before this Court. The core asset sale process and the settlement of related disputes with the secured lenders carry profound consequences for all of the Debtors' stakeholders. The proposals will determine the size of significant senior claims against the estate and the degree to which lenders hold perfected secured claims in the Debtors' collateral. The core asset sale process includes agreed terms for the secured lenders' credit bid (including the fixture and allocation of reserve prices) and for the procedures that will govern the ongoing sale process. Accordingly, this Court should order McKinsey to supplement its disclosures so that all interested parties can meaningfully consider whether the Proposed Plan Transactions may be tainted by divided loyalties.

To be clear, the U.S. Trustee has no information that any of the undisclosed McKinsey connections amount to a disabling conflict under section 327(a). But the U.S. Trustee also has no information that the undisclosed McKinsey connections are not a conflict under section 327(a) either—and that is precisely the point. To borrow a colloquialism: "You don't know what you don't know." Fortunately, the requirements of Bankruptcy Rule 2014 "transcend those of § 327, as they mandate disclosure of all connections with the named parties, rather than being limited to those which deal with disinterestedness." Filene's Basement, 239 B.R. at 849. Once the disclosures are properly made, the Court and the parties can objectively satisfy themselves

---

[11] The first fee application of McKinsey RTS (Docket No. 1101) demonstrates that McKinsey RTS directly engaged with the Debtors' senior lenders on the Debtors' behalf. For example, on October 8, 2015, Sam Jacobs billed 2.8 hours for "Participat[ing] in meeting with first lien and second lien principals and advisors to discuss ANR business plan and bankruptcy process." See Docket No. 1101, pp. 114 of 168.

that there are no conflicts or disabling connections.

### C. McKinsey RTS Cannot Circumvent the Requirements of Bankruptcy Rule 2014 on the Grounds of Confidentiality

Although McKinsey RTS has stated that its client engagement letters typically contain confidentiality provisions which prohibit the disclosure of client names, it has provided no specific evidence that any of its clients implicated here have such an agreement.[12] Nevertheless, regardless of the evidence, McKinsey's private contractual agreements do not and cannot supersede the ethics and disclosure requirements of the Bankruptcy Code and Rules. Client confidentiality is a common concern with other professionals, including law firms which are also bound by the duties of professional responsibility and confidentiality, yet other professional firms routinely satisfy their disclosure requirements. McKinsey RTS, to the U.S. Trustee's knowledge, is the only professional firm claiming contractual confidentiality is a blanket shield from, and superior to, the disclosure requirements applicable to every bankruptcy professional under the Bankruptcy Code and Bankruptcy Rules.[13]

When a professional chooses to be employed in the bankruptcy forum, different rules and disclosure requirements apply, and the agreements that a firm may have entered cannot supplant the requirements imposed by the Bankruptcy Code and Rules. Said differently, McKinsey RTS agreed to the engagement with the Debtors and acknowledged that in connection with the filing

---

[12] McKinsey RTS conceded that it could not represent that all of its engagement letters contain such language, and it is not clear to the U.S. Trustee what the specific language provides. Of note, the engagement letter in this case (which was attached to the Original Application) provided that "Confidential Information shall not include information that is … legally required to be disclosed." Original Application, pp. 21 of 65.

[13] The U.S. Trustee recognizes that other professional firms may have withheld the identity of a select client when a particular confidentiality agreement precluded the firm from disclosing the information. But setting aside whether any such actions were proper under Rule 2014, this Court does not face that issue here for two reasons. Here, McKinsey RTS's assertions of client confidentiality amount to a blanket waiver of Rule 2014's requirements that extends far beyond the identity of a single entity. And even if non-bankruptcy engagement letters could supplant Rule 2014 (which they cannot), McKinsey RTS has not provided any evidence in these cases that it is actually restricted in disclosing the information as to each and every unnamed entity.

of these chapter 11 cases, the Debtors "will apply to the Bankruptcy Court as soon as practicable to obtain approval of McKinsey RTS"s retention and Retainer, *nunc pro tunc* to the date of the filing." See Engagement Letter at ¶ 10. McKinsey chose to accept the engagement with the Debtors and to have its retention approved by this Court. It cannot now seek special treatment to deviate from the requirements of Bankruptcy Rule 2014.

By analogy, courts have held that conflict waivers obtained from a creditor by a law firm do not, by contractually permitting the firm to represent the debtor on some matters adverse to creditors, trump the statutory requirements governing the estate's employment of professionals. See In re Project Orange, 431 B.R. 363 (Bankr. S.D.N.Y. 2010). In that case, debtor's counsel argued that because General Electric ("GE") had contractually permitted the firm to represent the debtor on some matters adverse to GE, the waiver cured all conflicts for purposes of section 327(a). But the Court held that "an agreement between [the firm] and GE, *i.e.*, the Conflicts Waiver, cannot trump the requirements of section 327(a). Even if GE agreed that [the firm] could act against GE on all issues, through litigation, negotiation or otherwise, [the firm] must still satisfy the statutory requirements of section 327(a) to be retained as general bankruptcy counsel." Id. at 374; see also Granite Partners, 219 B.R. at 34 (Bankr. S.D.N.Y. 1998) (observing that while clients may, in some instances, waive conflicts, "the mandatory provisions of section 327(a) do not allow for waiver."). Similarly, here, McKinsey RTS cannot rely on its engagement letters to avoid doing what the Bankruptcy Code and Rules require of every bankruptcy professional.

### D. Conclusion

The U.S. Trustee respectfully requests that the Court compel McKinsey RTS, pursuant to sections 105(a) and 327 of the Bankruptcy Code and Bankruptcy Rule 2014, to file a

- 14 -

supplemental declaration setting forth, at a minimum, (a) the identity of the entities on the Parties in interest List with which McKinsey RTS and any of its affiliates have a connection (even if unrelated to the Debtors or these Chapter 11 cases), and (b) a general description of the work performed for or connections with these entities. The U.S. Trustee hereby reserves her right to respond to any supplemental disclosures and seek any further relief including, without limitation, disgorgement or disallowance of fees or disqualification of McKinsey RTS.

                                      Respectfully Submitted,

Dated: May 3, 2016                Judy A. Robbins
                                      United States Trustee, Region Four

                                      By: /s/ *Robert B. Van Arsdale*
                                      Robert B. Van Arsdale (Va. Bar No. 17483)
                                      Office of the United States Trustee
                                      701 East Broad Street, Suite 4304
                                      Richmond, Virginia 23219
                                      (804) 771-2310
                                      robert.b.van.arsdale@usdoj.gov

                                      By: /s/ *Hugh M. Bernstein*
                                      Hugh M. Bernstein (Md. Fed. Bar No. 23489)
                                      Office of the United States Trustee
                                      101 W. Lombard Street, Suite 2650
                                      Baltimore, MD 21201
                                      (410) 962-4300
                                      hugh.m.bernstein@usdoj.gov

                                      By: /s/ *Elisabetta G. Gasparini*
                                      Elisabetta G. Gasparini (SC Fed. No. 11548)
                                      Office of United States Trustee
                                      1835 Assembly Street, Ste. 953
                                      Columbia, South Carolina  29201
                                      (803) 765-5227
                                      Elisabetta.g.gasparini@usdoj.gov

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on May 3, 2016, a true copy of the foregoing was delivered via electronic mail pursuant to the Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the Eastern District of Virginia to all necessary parties.


                        By: /s/ *Robert B. Van Arsdale*
                             Robert B. Van Arsdale (Va. Bar No. 17483)
                             Assistant U.S. Trustee