IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ALPHA NATURAL RESOURCES, INC., *et al.*, | Case No. 15-33896-KRH <br> Chapter 11 <br> (Jointly Administered) |
| | Debtors. | |

### MEMORANDUM OPINION

This matter first came before the Court on a motion filed by the Debtors seeking authority under §§ 363 and 365 of the Bankruptcy Code[1] to reject three nonqualified deferred compensation plans (the "Deferred Compensation Plans")[2] and two executive retirement plans (together with the Deferred Compensation Plans, the "Nonqualified Plans") (the "Motion to Terminate"). In connection therewith, the Debtors requested pursuant to §§ 541 and 542 of the Bankruptcy Code the return of the monies that had been set aside in trust to fund the Nonqualified Plans.

Three of the participants in the Alpha Natural Resources Inc. and Subsidiaries Deferred Compensation Plan (the "ANR Employee Plan") filed an objection (the "Objection" or "Objectors") to the Motion to Terminate. The Objectors contended that the Debtors could not terminate the ANR Employee Plan because it was subject to the protections of the Employee Retirement Income Security Act ("ERISA").[3] The Objectors argued that the Debtors had failed to meet their evidentiary burden that the ANR Employee Plan was exempt from the requirements

---

[1] All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

[2] The Deferred Compensation Plans consisted of: (i) the Alpha Natural Resources Inc. and Subsidiaries Deferred Compensation Plan; (ii) the Alpha Appalachia Holding Company Executive Deferred Compensation Plan and Excess Benefit Plan (the "Massey Plan"); and (iii) the Alpha Natural Resources Inc. Non-Employee Directors Deferred Compensation Plan (the "ANR Director Plan").

[3] Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.

of ERISA. After conducting an evidentiary hearing on proper notice (the "Evidentiary Hearing"), the Court overruled the Objection, finding that the Nonqualified Plans including the ANR Employee Plan were not subject to the substantive requirements of ERISA. An order issued granting the Motion to Terminate (the "Termination Order").

Now before the Court is a motion filed by the Objectors seeking reconsideration of the Court's Termination Order (the "Motion to Reconsider") under Federal Rules of Bankruptcy Procedure 9023 and 9024. The Objectors suggest that the Court committed a manifest error of law when it granted the Motion to Terminate without requiring the Debtors to commence an adversary proceeding under Bankruptcy Rule 7001. The Objectors maintain that an action to recover money or property of the estate under § 542 of the Bankruptcy Code must be brought as an adversary proceeding. Fed. R. Bankr. P. 7001(1). The Debtors oppose the Motion to Reconsider, arguing that the Objectors waived any argument they might have had under Rule 7001 by failing to raise the issue during the Evidentiary Hearing. The Debtors maintain that an adversary proceeding was not required in any event, as the Debtors merely sought a consensual turnover of property held by the trustee of the ANR Employee Plan. Following a hearing conducted on June 28, 2016, the Court entered an order denying the Motion to Reconsider (the "Reconsideration Order"). This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in support of the Reconsideration Order in accordance with Rule 7052.[4]

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for

---

[4] Federal Rule of Bankruptcy Procedure 7052 is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014. *See* Fed. R. Bankr. P. 9014. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

## Factual Background

In support of the Motion to Terminate, the Debtors offered the declaration and supplemental declaration of Gary W. Banbury ("Banbury"), the Debtors' Executive Vice President and Chief Administrative Officer.[5] The Objectors did not offer any evidence in support of their position.[6] The Objectors are former employees of the Debtors who participated in the ANR Employee Plan, one of the three Deferred Compensation Plans.

The Debtors established the ANR Employee Plan to allow certain highly compensated employees of the Debtors to voluntarily defer self-designated portions of their compensation to a later date. Under such deferred compensation plans, a participant pays no income tax on the compensation the participant elects to defer. Participants are able to avoid recognition of the deferred income until the year it is actually received. Deferred compensation plans are governed by § 409A of the Internal Revenue Code. *See* 26 U.S.C. § 409A.

In 2014 and 2015, the Debtors offered sixty-one employees the opportunity to enroll in the ANR Employee Plan. The number of employees offered enrollment represented less than 1% of the Debtors' total workforce.[7] Only employees with the title of at least Vice President or General Manager were eligible to participate in the ANR Employee Plan. The average salary for

---

[5] Counsel for the Objectors was given an opportunity to cross-examine Banbury about his declarations at the Evidentiary Hearing, but counsel chose to forego this right. *See* Fed. R. Bankr. P. 9014(d).

[6] At the Evidentiary Hearing on the Motion to Terminate, the Objectors informally requested the Court for an adjournment of the Evidentiary Hearing to allow them to pursue discovery. However, the Objectors failed to offer any explanation for why they had not initiated discovery prior to the Evidentiary Hearing. Bankruptcy Rule 9014 governing contested matters makes the discovery provisions set forth in Part VII of the Bankruptcy Rules applicable in all contested matters.

[7] The Debtors employed 10,523 individuals in 2014 and 8,874 individuals in 2015.

3

an employee eligible to participate in the ANR Employee Plan was approximately $270,000. The ANR Employee Plan allowed a participant to defer up to 35% of base salary, up to 100% of the annual incentive bonus,[8] and up to 35% of any other compensation. Under the ANR Employee Plan, the deferred income was paid into and held by certain "rabbi" trusts (the "Trusts") administered by Bank of America N.A., as trustee (the "Trustee").[9] The Trusts were established and governed by three trust agreements (the "Trust Agreements").

All of the Trusts are grantor rabbi trusts. By the terms of the Trust Agreements, the funds in the Trusts are subject to the claims of the Debtors' general creditors. This was required in order for the deferred income to avoid recognition in the year it was earned and maintain its favorable tax treatment until the year it is paid. The Trust Agreements clearly provide that the rights of the plan participants under the Trust Agreements "shall be mere unsecured contractual rights of Plan participants and their beneficiaries against each applicable Participating Company. All assets held by the Trust will be subject to the claims of the Participating Companies' general creditors . . . ." The Trust Agreements require that the Trustee cease any payments to the beneficiaries of the Trusts in the event that a "Participating Company is subject to a pending proceeding as a debtor under the United States Bankruptcy Code." The Trustee has not distributed any funds since the Debtors filed their voluntary petition. The Trustee is holding over $9 million in funds (the "Trust Funds"). The Trustee does not object to the relief sought in the Motion to Terminate.

---

[8] The Debtors' annual incentive bonus program offered certain employees a bonus based on the Debtors' performance relative to a number of financial and operational metrics.

[9] Only the ANR Employee Plan and the Massey Plan called for the deferred compensation to actually be placed into the Trusts. In contrast, no funds were put into the Trusts under the ANR Director Plan, and instead the Debtors booked a general liability on its balance sheet.

The fact that the Trust Funds are subject to the Debtors' creditors in the event of insolvency should not have come as a surprise to the Objectors or any other beneficiary under the ANR Employee Plan. The "Welcome Letters" that invited the sixty-one employees to participate in the ANR Employee Plan clearly stated that the deferred compensation would be held in a rabbi trust, and that "[t]o avoid current income tax recognition to you, the amounts contributed to a Rabbi Trust must remain subject to the claims of your employer's general creditors." A brochure that explained the benefits of the ANR Employee Plan also stated that the plan was "not secured by a trust that is beyond the reach of your employer's general creditors" and that the claims of a beneficiary for benefits "would have no preference over a general unsecured creditor of the company." The deferral agreement form that each plan participant had to endorse also contained a clear statement that the participant was "a general unsecured creditor of the Company and that the Plan constitutes a mere promise by the Company to make benefit payments in the future." Each Objector executed one of the deferral agreement forms.

## Analysis

The Objectors' initial challenge to the Motion to Terminate rested on the argument that the Debtors were prohibited from terminating the Trusts and distributing the Trust Funds in accordance with the Trustee Agreements because ERISA preempts state trust law. The Objectors contended that, in order for the ANR Employee Plan to be exempt from the substantive requirements of ERISA, it must qualify as a "top hat" plan. The Objectors argued that the Debtors had failed prove that the ANR Employee Plan was a top hat plan. Therefore, the Trust Funds could not be used to satisfy the claims of the Debtors' creditors and must instead be used solely for the beneficiaries of the Trusts.

The Debtors disagreed, arguing that the Court need not consider whether the ANR Employee Plan qualified as a top hat plan. They suggested that the Court could grant the Motion to Terminate based solely on the terms of the Trust Agreements and the ANR Employee Plan. Nevertheless, the Debtors asserted that the ANR Employee Plan did satisfy all of the requirements for a top hat plan. The Court found that (i) the Debtors were authorized under the Trust Agreements to terminate the Trusts, and (ii) that the ANR Employee Plan was a top hat plan that was exempt from the substantive requirements of ERISA.

*The Termination Order*

No reference to the term "top hat" plan appears anywhere in ERISA. It is a "colloquial term used to refer to certain unfunded plans specially exempted from ERISA's participation, vesting, funding, and fiduciary requirements." *Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 658 (E.D. Va. 2006). A top hat plan "is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). A top hat plan is not subject to the substantive requirements of ERISA relating to participation, vesting, funding, and fiduciary requirements. *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).[10] The rationale for excluding top hat plans from the substantive requirements of ERISA is that "certain individuals, by virtue of their positions or compensation level, have the ability to affect or substantially influence, through negotiations or otherwise, the design and operation of their deferred compensation plan . . . would therefore, not need the substantive rights and protections of ERISA." *Alfa Laval Inc. v. Nichols*, No. 3:06CV306, 2007 WL 984111, at *9 (E.D. Va. Mar. 29, 2007) (quoting *Bakri v. Venture Mfg.*

---

[10] But a top hat plan is still subject to some reporting, disclosure administration, and enforcement requirements of ERISA. 11 U.S.C. §§ 1021-1029, 1131-1145. The Secretary of Labor has promulgated regulations that only impose minimal reporting requirements for top hat plans. *See* 29 C.F.R. § 2520.104-23; *see also Dorsey v. Aetna Life Ins. Co.*, No. 2:12cv90, 2013 WL 1288165, at *22 (E.D. Va. Mar. 26, 2013).

6

*Co.*, 473 F.3d 677, 678 (6th Cir. 2007)); *see* DOL, Office of Pension & Welfare Benefits Programs, Opinion No. 90-14A, 1990 WL 123933 (May 8, 1990). If a compensation plan is not a top hat plan, then the substantive requirements of ERISA apply and the "assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants." 29 U.S.C. § 1103(c)(1). Additionally, under the substantive requirements of ERISA, a fiduciary can only act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A).

Upon entering its Termination Order, the Court found that the Debtors had the authority under the Trust Agreements to terminate the Trusts and to collect funds held in the rabbi trusts for the benefit of their creditors. Section 1(d) of each of the Trust Agreements provided that the beneficiaries would "have no preferred claim on, or any beneficial ownership interest in any assets of the Trust" and that the assets of the Trust would be subject to the Debtors' general creditors. Section 3 of each of the Trust Agreements prohibited the Trustee from making any payments to beneficiaries after the Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code. Moreover, the Trustee was required to "discontinue payments . . . and hold all assets of the Trust for the benefit of the general creditors of the" Debtors following the filing of their voluntary petition.

The Court concluded that applicable law in the Fourth Circuit required this result. Section 1 of each of the Trust Agreements plainly states that the "[t]he Trust is intended to be a grantor trust." As a grantor or rabbi trust, the Debtors were deemed to be the owners of the Trust Funds. In order to avoid taxation, the beneficiaries could not have any ownership interest in the deferred compensation. As the Trust Funds remained property of the Debtors, the funds were subject to the Debtors' creditors. *See Goodman v. Resolution Tr. Corp.*, 7 F.3d 1123, 1127 (4th

7

Cir. 1993) ("Federal tax law conditions the beneficial tax treatment of a grantor trust on the requirement that the trust fund remains subject to the claims of the employer's creditors as if the assets were the general assets of the employer."). The Fourth Circuit described a rabbi trust as a simple "gamble" where "the recipients of grantor or 'rabbi trusts' are unsecured creditors, who [take] the risks of being subject to the claims of general creditors for the benefits of favorable tax treatment." *Id.* at 1129.

The Court also found that the statutory provisions of ERISA posed no obstacle to the Debtors' Motion to Terminate. There are two statutory requirements that must be met for a court to find that a compensation plan is a top hat plan. The plan must be (i) "unfunded" and (ii) "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).

The determination of whether a plan is unfunded is based on whether there is a separate and distinct set of funds or assets that a general creditor of the employer could not otherwise reach. *See Davis v. Old Dominion Tobacco Co. Inc.*, 755 F. Supp. 2d 682, 704 (E.D. Va. 2010); *Guiragoss*, 44 F. Supp. 2d. at 659-60; *Alfa Laval Inc.*, 2007 WL 984111, at *9-10. "If there is no separately maintained account distinct from the company's general assets, then the plan is unfunded." *Guiragoss*, 444 F. Supp. 2d. at 660. The Court of Appeals for the Third Circuit has adopted a two-part test that asks "(1) whether the beneficiaries of the plan can look to a res separate from the general assets of the corporation to satisfy their claims; (2) whether beneficiaries of the plan have a legal right greater than that of general unsecured creditors." *In re IT Grp. Inc.*, 448 F.3d 661, 669 (3d Cir. 2006); *see also Demery v. Extrebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286-87 (2d Cir. 2000); *In re New Century Holdings, Inc.*, 387 B.R. 95,

8

110 (Bankr D. Del. 2008); *In re Silicon Graphics Inc.*, 363 B.R. 690, 697-98 (Bankr. S.D.N.Y. 2007).

The Trust Agreements evidence a clear intent to make the ANR Employee Plan an unfunded plan.[11] Although the Trust Funds were set aside and out of the reach of the Debtors, the Debtors' creditors can still reach the funds. *See, e.g.*, *IT Grp. Inc.*, 448 F.3d at 669-70 (finding a rabbi trust to be unfunded); *New Century Holdings, Inc.*, 387 B.R. at 110-11 (same). There were no other funds or assets to which the beneficiaries could look to satisfy their claims. Thus, the beneficiaries had no greater right than a general unsecured creditor. The ANR Employee Plan was clearly an "unfunded plan." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Accordingly, the Court concluded that the ANR Employee Plan satisfied the first ERISA statutory requirement.

The second statutory requirement – that the plan be "maintained by [the] employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1) – is met upon a showing that the deferred compensation plan was offered to (i) a select group; of (ii) management or highly compensated employees. *See Guiragoss*, 444 F. Supp. 2d at 660. The Court employed both a quantitative and qualitative analysis in determining that this requirement had been satisfied. *See In re New Valley Corp.*, 89 F.3d 143, 148 (3d Cir. 1996); *Guiragoss*, 444 F. Supp. 2d at 660. "In number the plan must cover relatively few employees. In character, the plan must cover only high level employees." *New Valley Corp.*, 89 F.3d at 148.

The ANR Employee Plan was offered to only sixty-one employees during the 2014 and 2015 plan years, which represented less than 1% of the Debtors' employees in both years. While

---

[11] Each of the Trust Agreements states "it is the intention of the parties that this Trust shall constitute an unfunded arrangement."

9

no bright line test has been firmly established to determine when a group of employees no longer qualifies as a select group – courts have generally determined that a plan will keep its top hat status so long as the number of plan participants does not exceed 16% of the employer's total workforce. *See Guiragoss*, 444. F. Supp. 2d at 660 ("A review of the published cases reflects that there is no existing authority that affirms top hat status for a plan representing more than 16% of the total workforce"); *The IT Grp., Inc. v. Bookspan*, 305 B.R. 402, 410 (Bankr. D. Del. 2004) ("[T]he highest percentage of employees covered by a plan found to have been a 'top hat' plan, while not a bright line test, has been 15%."); *see also Alexander v. Bringham & Women's Physicians Orgs. Inc.*, 467 F. Supp. 2d 136, 144 (D. Mass. 2006) (collecting cases with approved limits). The Court found that the ANR Employee Plan met the quantitative threshold because it had been offered to less than 1% of the Debtors' total employees. *See Sikora v.UPMC*, No. 12-01860, 2015 WL 9288174, *4 (W.D. Penn. Dec. 22, 2015) ("[T]he proper inquiry is what percentage of [the employer's] total workforce participated in the Plan.").

The ANR Employee plan was offered exclusively to senior management and highly compensated employees of the Debtors. Only employees with the title of Vice President or General Manager or greater were eligible to participate in the ANR Employee Plan. The average salary for an employee who was eligible to enroll in the ANR Employee Plan was approximately $267,000 to $272,000. The average salary for non-eligible employees was $86,000. *See also In re Alpha Nat. Res.*, No. 15-33896, 2016 WL 3093039, *2 (Bankr. E.D. Va. May 24, 2016) (detailing the average salaries of non-union and union employees). "Courts which have examined the qualitative analysis have focused their inquiry on the salaries of all employees, and the job titles and/or job functions of the participating employees." *New Century Holdings, Inc.*, 387 B.R. at 112 (citing *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007)).

10

Supervisor responsibilities are not required but "there must be some well established basis for designating eligible [p]lan members as 'high level' employees." *Guiragoss*, 444 F. Supp. 2d at 661. A proponent has failed to satisfy this factor when eligible employees include individuals who have no managerial capacity such as a clerk or secretary. *See, e.g.*, *Guiragoss*, 444 F. Supp. 2d at 663 (salesclerk did not have "managerial duties"); DOL, Office of Pension &Welfare Benefit Programs, Opinion No. 85-37A, 1985 WL 32831, at *2 (Oct. 28 1985) (plan with an assistant, department clerk, expediter, inventory controller did not meet the requirements for a top hat plan).

The Court found that the ANR Employee Plan was limited to an appropriate subset of the Debtors' most senior employees. There was no evidence that the eligible participants were not managers, supervisors, or key employees of the Debtors. But, even if one or two of the Debtors' employees had failed to meet the qualitative threshold, such a finding would not have been fatal so long as the plan was found to be "*primarily* for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1) (emphasis added); *Demery*, 216 F.3d at 289 (emphasizing that a plan will not lose its top hat status merely because a small number of participants fail to meet one of the criteria); *Guiragoss*, 444 F. Supp. 2d at 663-64 ("[N]ot every member of a top hat plan must be highly compensated or in a management position . . . ."). The Court found that, on average, the ANR Employee Plan participants received more than double the average salary that non-eligible employees received. *See Demery*, 216 F.3d at 289 (finding a top hat plan where the average salary of the plan participants was more than double that of the average for all the company's employees). After considering both the quantitative and qualitative factors, the Court concluded that the ANR Employee Plan satisfied the second ERISA statutory requirement.

Many courts, including a number in this District, have adopted an additional non-statutory factor that asks whether "employees participating in the alleged top hat plans have sufficient influence within the company to negotiate compensation agreements that will protect their interests where ERISA provisions do not apply." *Old Dominion Tobacco Co.*, 755 F. Supp. 2d at 704; *see Dorsey v. Aetna Life Ins. Co.*, No. 2:12cv90, 2013 WL 1288165, at *22 (E.D. Va. Mar. 26, 2013); *Alfa Laval, Inc.*, 2007 WL 984111, at *9; *Guiragoss*, 444 F. Supp. 2d at 658-59.[12] The Court found that the ANR Employee Plan satisfied this third non-statutory factor as well.[13]

The key to this non-statutory factor is the employee's overall ability to negotiate his or her compensation; it is irrelevant whether in fact the employee negotiated the agreement at issue. *Old Dominion Tobacco Co.*, 755 F. Supp. 2d at 705. ("[T]he issue is whether plaintiff had sufficient influence within the company to negotiate an agreement that would protect his interests where ERISA provision did not apply . . . ."). A high-level member of management is generally presumed to possess sufficient bargaining power and influence to negotiate deferred compensation. *Id.* Courts, applying this factor, have found top hat status as a matter of law when the first two statutory requirements have been satisfied and no evidence was presented on the bargaining power factor. *See Demery*, 216 F.3d at 290-91 (affirming the grant of summary judgment finding a top hat plan when the challengers presented no evidence about the absence of

---

[12] While Courts in the Eastern District of Virginia have largely adopted this factor, it has not been applied universally. *Compare, e.g.*, *Old Dominion Tobacco Co.*, 755 F. Supp. 2d at 705; *Guiragoss*, 444 F. Supp. 2d at 658-59 *with Alexander v. Brigham & Women's Physicians Orgs., Inc.*, 513 F.3d 37, 46-48 (1st Cir. 2008); *Sikora*, 2015 WL 9288174, at *8; *Tolbert v. RBC Capital Mkts Corp.*, No. 11-0107, 2015 WL 2138200, *5-9 (S.D. Tex. April 28, 2015); *In re The Colonial BankGroup Inc.*, 436 B.R. 695, 709 (Bankr. M.D. Ala. 2010).

[13] The non-statutory factor was adopted by many courts in response to a 1990 Opinion Letter from the Department of Labor (the "DOL Opinion Letter") that emphasized the importance of an employee's influence and negotiating power when determining whether a compensation plan should be exempt from ERISA. DOL, Office of Pension & Welfare Benefits Programs, Opinion No. 90-14A, 1990 WL 123933 (May 8, 1990); *see Alexander*, 513 F.3d at 47 (recognizing the DOL Opinion Letter as the source of the non-statutory factor); *Guiragoss*, 444 F. Supp. 2d at 658-59 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)) (giving deference to the DOL Opinion Letter).

bargaining power); *Old Dominion Tobacco Co.*, 655 F. Supp. 2d at 705 (granting summary judgment against a vice president who failed to offer any evidence in support of his insufficient bargaining power).

In the case at bar, the Debtors did present uncontroverted evidence sufficient to satisfy the bargaining power element. Banbury, the Debtors' Chief Administrative Officer, offered testimony to the effect that all the participants in the ANR Employee Plan had sufficient influence and bargaining power to negotiate their compensation agreements. The Court found that, as in *Old Dominion Tobacco Co.*, the three Objectors were well-compensated, high-level executives (a former Vice President, General Manager, and Executive Vice President). Furthermore, the Objectors put forth no evidence on the record that established that they did not have sufficient bargaining power.[14] *Old Dominion Tobacco Co.*, 755 F. Supp. 2d at 705. Accordingly, the Court found that the ANR Employee Plan participants had sufficient influence and bargaining power to negotiate their compensation packages.

Finding that the ANR Employee Plan was not subject to the substantive requirements of ERISA, the Court concluded that the Debtors did have the right (i) to reject the ANR Employee Plan under §§ 363 and 365 of the Bankruptcy Code, (ii) to terminate the rabbi trusts in accordance with the Trust agreements, and (iii) to recover the funds held by the Trustee for the benefit of the creditors of the bankruptcy estate.

---

[14] It is telling that the Objectors never asserted that they did not have sufficient bargaining power to negotiate their own compensation agreements. Instead, without any supporting evidence, the Objectors attempted to assert the rights of other hypothetical ANR Employee Plan participants, and claimed that the other participants might have lacked sufficient bargaining power. *C.f. Singleton v. Wulff*, 428 U.S. 106, 113 (1976) ("Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation"). Nevertheless, like with the statutory factors, the Court is not convinced that a single employee who fails the sufficient bargaining power test would necessarily destroy the top hat status of the ANR Employee Plan.

*Motion to Reconsider*

The Objectors raise a new argument in their Motion to Reconsider. The Objectors claim that the relief requested by the Debtors should not have been brought as a contested matter under Bankruptcy Rule 9014 but rather as an adversary proceeding under Bankruptcy Rule 7001 because it included a request for turnover of property under § 542 of the Bankruptcy Code. The Objectors maintain that this ascribed procedural shortcoming is a manifest error of law that requires the Court to alter or amend the Termination Order under Bankruptcy Rule 9023 of the Federal Rules of Bankruptcy Procedure. The Objectors further argue that the Termination Order is void under Bankruptcy Rule 9024, as the Debtors' failure to commence an adversary proceeding deprived the Objectors of their due process rights. The Court declines to revisit its Termination Order, as the commencement of an adversary proceeding was unnecessary and as the Objectors have not been procedurally prejudiced.

The Court has addressed previously the standards for vacating or reconsidering an order under Bankruptcy Rules 9023 and 9024. *See In re Andrews*, No. 14-36384, 2015 WL 4470069, at *4-5 (Bankr. E.D. Va. July 21, 2015) (denying a debtor's motion to vacate a dismissal of his Chapter 7 case). Under Bankruptcy Rule 9023, the Objectors must demonstrate that this Court's Termination Order constituted a manifest error of law.

> Bankruptcy Rule 9023 incorporates Federal Rule of Civil Procedure 59. Relief under Rule 59(e) is an extraordinary remedy. Exercise of this power must of necessity be used sparingly. When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based. (citations and internal quotations marks omitted). The purpose of such a motion "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985).

*Andrews*, 2015 WL 4470069, at *4.

To prevail under Rule 9024, which incorporates Rule 60 of the Federal Rules of Civil Procedure, a movant must meet four threshold requirements: (i) the motion must be timely; (ii) the movant must have a meritorious defense to the action; (iii) the opposing party must not be unfairly prejudiced by having the judgment set aside; and (iv) exceptional circumstances must warrant the requested relief. *Andrews*, 2015 WL 4470069, at *5 (citing *Summit City Limits, LLC v. AMF Bowling Worldwide (In re AMF Bowling Worldwide)*, No. 12-36495, 2013 WL 5575470, at *3 (Bankr. E.D. Va. Oct. 9, 2013); *see Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). After satisfying these four threshold requirements, a movant must meet one of six grounds set forth in Rule 60(b):

> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The Objectors argue that the failure to bring this action as an adversary proceeding resulted in the deprivation of their rights of due process, and therefore the Termination Order is void as a matter of law. However, they ignore completely the four threshold requirements.

The Objectors do not claim that there are any newly discovered or otherwise unaddressed facts. The Objectors simply argue that the Debtors' failure to initiate the action as an adversary proceeding to recover the Trust Funds held in the rabbi trusts constitutes a manifest error of law. This argument was not advanced by the Objectors at the Evidentiary Hearing. It is being

15

asserted for the first time now. As a general matter, reconsideration is not permitted when parties are attempting to raise arguments which could have been raised prior to the entry of the Termination Order. *See First Cmty. Bank v. E.M Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.)*, No. 08-30054, 2009 WL 2211727, at *1-2 (Bankr. E.D. Va. July 17, 2009). A party may not use a motion to reconsider simply "to ask the Court to rethink what the Court has already thought through." *Id.* at *1 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983).

Disputes within a bankruptcy case typically fall into one of two categories: (i) contested matters or (ii) adversary proceedings. Contested matters are governed by Bankruptcy Rule 9014 and are normally initiated by filing a motion for relief. Adversary proceedings are governed by Part VII of the Federal Rules of Bankruptcy Procedure and are initiated by filing a summons and complaint. Bankruptcy Rule 7001 sets forth a list of various claims and proceedings that must be brought as an adversary proceeding rather than a contested matter. Included in this list is a "proceeding to recover money or property." Fed. R. Bankr. P. 7001(1). Section 542 of the Bankruptcy Code provides that any entity holding property of a debtor's estate must turnover such property to the debtor-in-possession. 11 U.S.C. § 542. The Objectors argue that the Debtors' Motion to Terminate was a "proceeding to recover money or property" brought under § 542, and, consequentially, it should have been brought before the Court as an adversary proceeding. A closer analysis reveals the Objectors' analysis is misguided.

No adversary proceeding was required in this case because the party holding the Debtors' property consented to the relief. An adversary proceeding to "recover money or property" is only required when the party holding the property contests the estate's entitlement to the property and refuses to return it. Fed. R. Bankr. P. 7001(a). In the case at bar, the Trustee: (i)

16

acknowledges the Debtors have an unimpaired right to the Trust Funds; (ii) consents to the relief in the Motion to Terminate; and (iii) fully cooperated with the Debtors.  Nothing in the Federal Rules of Bankruptcy Procedure requires the commencement of an adversary proceeding every time a voluntary turnover of estate property is requested.  Section 542 of the Bankruptcy Code is designed to be self-effectuating.  It requires an entity in possession, custody, or control of estate property to deliver the property to the bankruptcy estate.  No legal procedure need be commenced.  To do so would be a waste of estate resources.

The Debtors' reference to § 542 in their Motion to Terminate as authority for the relief they requested by no means mandated the commencement of an adversary proceeding simply to obtain the return of the funds to which they are entitled.  Parties are permitted (and expected) to voluntarily comply with § 542 and other provisions of the Bankruptcy Code prior to the commencement of litigation.  This Court has long encouraged consensual agreement as a means of resolving disputes and saving estate resources.  The Court is not aware of any authority that would require the Debtors to bring an adversary proceeding against the Trustee when the interests of both of the parties are fully aligned.  Because the Court finds that the Motion was properly brought as a contested matter and that an adversary proceeding was not necessary, the Court determines the Objectors have received all the due process to which they are entitled under the law.[15]  The Motion to Terminate was properly noticed, the Objectors appeared at the Termination Hearing, the Objectors had the opportunity to present evidence and cross examine the proffered witness.[16]

---

[15] The Objectors, in a desperate ploy, attempt to raise the due process rights of the Trustee by arguing that the Trustee was improperly served with the Motion to Terminate. The Objectors do not have Article III standing to raise the rights of the Trustee. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (detailing the requirements of third party standing).

[16] The Court would note that Bankruptcy Rule 9014 affords parties a plethora of procedural protections in contested matters.  Many of the Rules that apply to adversary proceedings under part VII of the Bankruptcy Rules

17

The Court finds that there are no grounds to reconsider the Termination Order under Rules 9023 and 9024 because the Motion to Terminate was properly brought before the Court as a contested matter and an adversary proceeding was not required.  Accordingly, the Court denied the Motion to Reconsider and entered the Reconsideration Order.

Entered: Aug 5 2016

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 8/5/16

---

automatically apply to contested matters.  *See* Fed. R. Bankr. P. 9014(c), (d).  The Court also has the authority to direct at any stage of a contested matter that one or more of the other rules in Part VII apply.  Fed. R. Bankr. P. 9014(c).  There is simply no procedural protection afforded under an adversary proceeding that was not available to the Objectors in the contested matter.