IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ALPHA NATURAL RESOURCES, INC., *et al.*, | Case No. 15-33896-KRH Chapter 11 (Jointly Administered) |
| | Debtors. | |

## MEMORANDUM OPINION

The Court has before it the motion of the Debtors (the "Motion") seeking authority to reject under § 365 of the Bankruptcy Code[1] an agreement between and John and Eunice Organ (the "Organs") and Ayrshire Collieries Corporation ("Ayrshire"), a predecessor in interest to one of the Debtors (the "Agreement").  Successors in interest to the Organs (the "Objectors")[2] filed an objection to the Motion claiming the Agreement conveyed to the Organs an interest in property which was not subject to termination under § 365 of the Bankruptcy Code (the "Objection").  On June 28, 2016, the Court conducted a hearing on the Objection to the Motion; at the conclusion of which, the Court took the matter under advisement.

After considering the applicable statutory authority, the case law, the pleadings, and the arguments of counsel, the Court now concludes that the Debtors can reject the Agreement under § 365 of the Bankruptcy Code.  This Memorandum Opinion sets forth the Court's findings of fact and conclusion of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[3]

---

[1] All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

[2] The Objectors are Mary Evelyn Amstutz, Anne E Franklin, Mary Evelyn Amstutz Testamentary Trust, Nancy P. Gettinger, John Paul Organ, Judith Lynn Organ, and David J. Pierce Trust U/A dated February 23, 2011.

[3] Federal Rule of Bankruptcy Procedure 7052 is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.  *See* Fed. R. Bankr. P. 9014.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

**Jurisdiction and Venue**

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

**Factual Background**

The Organs and Ayrshire entered into the Agreement titled "Letter of Proposed Settlement" on January 22, 1969 (the "Acceptance Date"). The settlement addressed "certain differences between Ayrshire Collieries Corporation and [the Organs] respecting certain coal interests" involving coal seams in three areas.[4] The Agreement, as drafted by John Organ, states that "Mrs. Organ and I will accept the interests set out hereinafter as full settlement of our claims." The Agreement obligated Ayrshire to pay the Organs an amount calculated based upon a percentage of the coal mined and subsequently sold from each of the three separate areas. At issue in the case at bar is the area comprised of North and South Gillette in the state of Wyoming (the "North and South Gillette Areas"). Ayrshire was obligated to make monthly installment payments at the rate of one-half of one percent of the net realization (as defined in the Agreement) from coal mined and sold from the North and South Gillette Areas until December 31, 2019 (the "Payment Obligation").[5] John Organ agreed to assist Ayrshire in the use of coal across the three separate areas, and the Organs agreed to waive all claims against Ayrshire.

---

[4] The first area identified in the Agreement was the Illinois No. II coal seam in the state of Vermont, the second area was the Illinois No. VI coal seam in the state of Illinois, and the third area consisted of the Smith and Roland coal seams in North and South Gillette, Wyoming.

[5] The Agreement initially set a periodic payment amount for which Ayrshire was obligated for all three areas at a fixed rate of $30,000 per year payable in monthly installments until June 1, 1977, at which time the yearly obligation decreased to $18,000 payable in monthly installments until January 1, 1988.

Ayrshire also agreed to cancel an outstanding note made by John Organ, which note had an unpaid balance of $22,692.38.

On the Acceptance Date of the Agreement, Ayrshire mined coal in the North and South Gillette Areas as a tenant under two federal leases between Ayrshire and the United States Department of Interior Bureau of Land Management (the "Federal Leases"). The Federal Leases are nowhere referenced in the Agreement. More than five years after the Acceptance Date, the Organs unilaterally recorded a document titled "Memorandum of Understanding" in the Campbell County, Wyoming, clerk's office (the "Memorandum").[6] The Memorandum summarizes pertinent terms of the Agreement between Ayrshire and the Organs, including the Payment Obligation. The Memorandum also includes a description of the underlying real property. The Memorandum notes that the described property is subject to "U.S. Government coal leases," but it does not identify the Federal Leases. Both of the Federal Leases were readjusted effective September 1, 2015. Alpha Wyoming Land Company LLC is the current lessee under the Federal Leases ("Alpha Wyoming Land Company"). The readjusted Federal Leases do not contain any reference to the Agreement between Ayrshire and the Organs.

On August 3, 2015, Alpha Natural Resources, Inc., and 149[7] of its direct and indirect subsidiaries, including Alpha Wyoming Land Company, (the "Debtors") commenced bankruptcy cases by each filing a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia. As the current lessee under the Federal Leases, and as successor in interest to Ayrshire, Alpha Wyoming Land

---

[6] The Memorandum is not executed by either Ayrshire or the United States Department of Interior Bureau of Land Management, but rather is endorsed solely by the Organs.

[7] The chapter 11 petition for one of the Debtors' subsidiaries, Grey Hawk, has since been withdrawn. Order Dismissing Case, *In re Alpha Natural Resources, Inc.*, No. 15-33896 (Bankr. E.D. Va. Oct. 8, 2015) (ECF No. 638).

Company seeks to assume and assign the Federal Leases in connection with the Debtors' reorganization. *See* 11 U.S.C. § 365(a). In connection with that transaction, the Debtors want to reject the Agreement with the Organs.

The Objectors argue that the Agreement cannot be rejected as an executory contract under § 365 of the Bankruptcy Code. The Objectors maintain that the Payment Obligation due under the Agreement is not a contractual obligation owed by Ayrshire, but instead constitutes an interest in real property to which they have become seized. The Objectors argue that the Agreement must be assumed and assigned as part of the Federal Leases.

**Analysis**

Section 365 of the Bankruptcy Code allows a debtor in possession to assume, assign, or reject any lease or executory contract.[8] 11 U.S.C. § 365(a). The Debtors seek to reject the Agreement under § 365 of the Bankruptcy Code in exercise of their business judgment as a burdensome executory contract that provides no value to the Debtors' estate. *See Id.* The rejection of an executory contract under § 365 of the Bankruptcy Code results in a breach. 11 U.S.C. § 365(g).

---

[8] The Supreme Court has observed that Congress intended the term "executory" to apply to contracts "on which performance remains due to some extent on both sides." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522-23 n.6 (1984) (quoting H.R. Rep. No. 95–595 p. 347 (1977)). The Fourth Circuit has expanded on this definition and adopted the test first articulated by Professor Vern Countryman. *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1021-22 (4th Cir.1984); *In re RoomStore, Inc.*, 473 B.R. 107, 110-11 (Bankr. E.D. Va. 2012). Under the Countryman Test, an executory contract is one "under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." *Gloria Mfg. Corp.*, 734 F.2d at 1022 (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. at 460). The Court finds that the Agreement was executory as each party owed a material obligation to the other party. *Id.* Under the Agreement, the Debtors have a material obligation to tender the Payment Obligation to the Organs until December 31, 2019. Both parties also have a material obligation to refrain from bringing the underlying claims that the Agreement purported to resolve. *See Everex Sys. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673, 677 (9th Cir. 1996) (holding the obligation not to sue under a patent license agreement is a material obligation); *In re W.B. Care Center, LLC*, 419 62, 73 (Bankr. S.D. Fla. 2009) ("[A] waiver of the right to sue is a covenant not to sue . . . that . . . is an ongoing obligation."); *In re Access Beyond Tech., Inc.*, 237 B.R. 32, 43 (Bankr. D. Del. 1999) (finding the duty to refrain from suing to be a material obligation); *see also Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1045-46 (finding a breach of a "duty of forbearance" to be material beach); *RoomStore Inc.*, 473 B.R. at 112-13.

The Objectors claim that the Payment Obligation set forth in the Agreement constitutes an overriding royalty interest in the Federal Leases that Ayrshire conveyed to the Organs. The Debtors disagree. They characterize the Payment Obligation as contractual in nature. The Debtors argue that the periodic amount that Ayrshire was obligated to pay was calculated based upon the amount of coal mined and sold from the coal seams in the three areas referenced in the Agreement but did not convey a property interest in the land or minerals. The Court finds that the Agreement did not convey an overriding royalty interest or any other interest to the Organs in the North and South Gillette Areas. The Payment Obligation Agreement is a contractual one that can be rejected under § 365 of the Bankruptcy Code.

Whether the Agreement conveyed an interest in real property or whether it constitutes a contractual right to periodic payments is a question of state law. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979); *see Tidewater Fin. Co. v. Kenney*, 531 F.3d 312, 318-19 (4th Cir. 2008). This Court should apply the underlying substantive law that gave rise to the obligation in question. *Raleigh v. Illinois Dept. of Rev.*, 530 U.S. 15, 20 (2000) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."). The Court will look to Wyoming law to determine the nature of the obligation in the Agreement.[9]

Under Wyoming law, the intent of the parties is the "prime focus in interpreting or construing a contract." *Boley v. Greenough*, 22 P.3d 854, 858 (Wyo. 2001). "If an agreement is

---

[9] The Court notes that the Agreement, which contains no choice of law provision, purports to have been drafted in Arizona and appears to have been accepted in Indiana. The real property interests at issue, however, involve areas within the state of Wyoming. *See* Restatement (Second) of Conflicts § 223.

5

in writing and its language is clear and unambiguous, the parties' intention is to be secured from the words of the agreement." *Id.* Deeds in Wyoming are interpreted according to principles similar to those applicable to contracts. *Gilstrap v. June Eisele Warren Tr.*, 106 P.3d 858, 862 (Wyo. 2005). "The ultimate goal of . . . interpretation of any contract, including a deed, is to discern the intention of the parties to the document." *Mullinnix LLC v. HKB Royalty Tr.*, 126 P.3d 909, 919 (Wyo. 2006); *Caballo Coal Co. v. Fid. Exploration & Prod. Co.*, 84 P.3d 311, 314 (Wyo. 2004). Even when interpreting unambiguous mineral contracts, Wyoming courts are permitted to look to the "surrounding circumstances, facts showing the relations of the parties, the subject matter of the contract, and the apparent purpose of making the contract." *Id.*; *see Mathisen v. Thunder Basin Coal Co., LLC*, 169 P.3d 61, 67 (2007). "The language of the parties expressed in their contract must be given effect in accordance with the meaning which that language would convey to reasonable persons at the time and place of its use." *Sawyer v. Guthrie*, 215 F. Supp. 2d 1254, 1260-61 (D. Wyo. 2002) (citing *Klutznick v. Thulin*, 814 P.2d 1267, 1271 (Wyo. 1991)).

For an instrument to convey an interest in real property such as an overriding royalty, it "must contain sufficient words to show an intention to convey." *DeWitt v. Balben*, 718 P.2d 854, 860-61 (Wyo. 1986) (quoting *Whalon v. Northe Platte Canal & Colonization Co.*, 11 71 P. 995, 999 (1903)). Operative words of conveyance, including such terms as transfer, sell, or assign, indicate an intent to transfer an interest of property. *Id.* (concluding an instrument that used the words "transfer" and "sell" demonstrated an intent to constitute a conveyance). Wyoming courts have held that "[a]lthough no particular words are required to convey real property, the language of the document must indicate a specific intention to convey the property." *Mullinnix*, 126 P.3d at 922 (Wyo. 2006).

6

An overriding royalty under Wyoming law is "a share of production, free of the costs of production, carved out of the lessee's interest under the oil gas lease." Wy. Stat. § 30-5-304. Although overriding royalties are more typically employed in connection with oil and gas leases, they are used with coal leases as well. *See, e.g.*, *ANR Western Coal Dev. Co. v. Basin Elec. Power Co-Op.*, 276 F.3d 957, 960-61 (8th Cir. 2002); *Valley Camp of Utah Inc. v. Babbitt*, 24 F.3d 1263, 1270 (10th Cir. 1994). The term "overriding royalty" has developed a well-understood meaning in Wyoming. That meaning was well entrenched several years prior to the date of the Agreement. *See Cities Serv. Oil Co. v. Pubco Petroleum Corp.*, 497 P.2d 1368, 1372 (Wyo. 1972); *Dame v. Wileski*, 340 P.2d 205, 208 (Wyo. 1959). An overriding royalty is a non-possessory interest in real property carved out of the lessee's interest in a lease. *See Connaghan v. Eighty-Eight Oil Co.*, 750 P.2d 1321, 1324 (Wyo. 1988). The royalty is deemed to be "overriding" because it is paid in addition to the royalty a lessee normally pays to the lessor. *See Boley*, 22 P.3d at 860. An overriding royalty is entirely dependent on the underlying mineral lease, as it is a direct carve out of the lessee's interest in a mineral lease. *See, e.g.*, *Piamco, Inc. v. Shell Oil Co.*, 799 F.2d 262, 264 (7th Cir. 1986) ("There can be no doubt that as a general matter overriding royalty obligations end with the termination of the estate from which the interests were carved."); *Meeker v. Ambassador Oil Co.*, 308 F.2d 875, 882 (10th Cir. 1962) *rev'd on other grounds*, 375 U.S. 160 (1963) ("It is an interest carved out of the lessee's share of the oil and gas, ordinarily called the working interest, as distinguished from the owner's reserved royalty interest.").

Wyoming law recognizes that not all royalty conveyances involve the transfer of a separately identifiable real property interest with its own recognized incidents. An interest in the proceeds of coal production can also be "a contractual right that is personal to the parties." *See*

7

*Ferguson v. Coronado Oil Co.*, 884 P2.d 971 976-977 (Wyo. 1994) (finding an interest in the net profits of oil produced was not real property). To determine the type of interest created, a court must look to the parties' intent and to the instrument creating the interest. *Id.* at 976.

The Agreement does not show a clear intention to transfer a real property interest. *Mullinnix LLC*, 126 P.3d at 922 (citing *Dewitt*, 718 P.2d at 860). The Agreement is devoid of any words of conveyance. There is no evidence that the parties intended to grant an overriding royalty. The words overriding royalty do not appear anywhere in the Agreement or the Memorandum. Words such as "grant," "transfer," "convey," or "reserve" are notably absent from the Agreement and the Memorandum. The Agreement states only that Mr. Organ "will accept the interests set out hereinafter as full settlement of our claims." The term "accept" does not evidence the clear intent to convey an interest in the lease or real property that Wyoming law requires. *Mullinnix LLC*, 126 P.3d at 922 (emphasizing the importance of words of conveyance).[10]

An overriding royalty is a carve out of a portion of a lessee's interest in a real property lease in favor of another party. *See Connaghan*, 750 P.2d at 1324 (describing an overriding royalty as an interest "carved out of the lessee's working interest in an oil and gas lease"). As an overriding royalty is an interest in an underlying mineral lease, the underlying lease should be described in the conveyance. Neither the Agreement nor the Memorandum identifies the Federal Leases. Ayrshire's only interest in the real property was its interest under the Federal Leases.

---

[10] The term "acceptance" is a contractual term used to demonstrate the offeree's assent, so that a binding contract can be formed. *Acceptance*, Black's Law Dictionary (10th ed. 2014).

The lack of any description of the Federal Leases leads the Court to conclude the Payment Obligation in favor of the Organs is contractual in nature.[11]

Consistent with the principle that an overriding royalty is a carve out from the underlying mineral lease, courts in Wyoming limit the duration of an overriding royalty to the lifetime of the underlying mineral lease. *See Sawyer v Guthrie*, 215 F. Supp. 2d 1254, 1257 n.1 (D. Wyo. 2002) (citing 2 Howard R. Williams & Charles J. Meyers, Oil & Gas Law § 418 (1991)); *see also Torgeson v. Connelly*, 348 P.2d 63, 69 (Wyo. 1959) ("[L]eases for a limited term of years had been held to be personalty."). "[T]he fate of an overriding royalty is inextricably intertwined with that of the underlying lease." *In re Bronco Hazelton Co.*, No. 06-70378, at ¶2 (Bankr. S.D. Ind. Jan. 18, 2008) (ECF No. 724). Here, the Payment Obligation to the Organs under the Agreement lasted approximately forty-five years, terminating on December 31, 2019. The Federal Leases, on the other hand, had an initial term only of twenty years. *See* 30 U.S.C. § 207. The obligation in the Agreement was temporary and did not mirror the term of the Federal Leases. *C.f. Torgeson*, 348 P.2d at 68 ("[A] royalty interest in oil if of a permanent nature is ordinarily considered to be real and not personal property.").

The Federal Leases require that the Bureau of Management approve "any assignment or transfer made of this lease whether by direct assignment, operating agreement, working or royalty interest or otherwise." There is no evidence that the Bureau of Land Management

---

[11] In the cases where the Wyoming Supreme Court has found an obligation constituted an overriding interest in real property, the claimant was more intimately connected to the property. Many of these claimants had held title to the underlying real estate or were the predecessor lessee under a coal lease. There is no evidence the Organs ever had title to North and South Gillette Area. There is no evidence the Organs were ever lessees under the Federal Leases. In other cases finding an overriding interest in real property, a fee simple estate or the underlying mineral lease was involved. *See, e.g.*, *Torgeson v. Connelly*, 348 P.2d 63, 68-69 (Wyo. 1959) (mineral interest arose when lessee assigned its rights in a federal lease and reserved a royalty); *Denver Joint Stock Land Bank of Denver v. Dixon*, 122 P.2d 843 (Wyo. 1942) (mineral interest arose from a reservation in a conveyance of the underlying real estate); *Matter of Sellens' Estate*, 637 P.2d 483, 484 (Kan. Ct. App. 1981) (mineral interest was granted directly in the oil and gas lease). Here, the obligation to the Organs arises solely from a settlement agreement that merely makes reference to coal production associated with separate areas in three states. There is no evidence the Organs ever possessed more than the contractual rights they acquired under the Agreement.

approved the assignment of any interest in the Federal Leases. *See also* 30 U.S.C. § 187 (giving the Secretary of Interior discretion in approving a lessee's relinquishment of rights of a federal lease).

The Objectors focus on the terms "interest" and "earned royalty" in the Agreement. They argue that any royalty interest is an impediment to the real property as a matter of law.[12] But the Wyoming Supreme Court rejected this *ipso facto* approach in favor of a factual approach in *Coronado Oil*. *See Coronado Oil Co.*, 884 P.2d at 976. The Wyoming Supreme Court held that a royalty interest could be a contractual right or it could be an interest in personal property depending on the "instrument creating the interest." *See id.* at 976-77 (discussing the nature of a net profit interest). The Court has examined the Agreement and determined that in light of (i) the lack of any granting clause or words of conveyance, (ii) the lack of any reference to the Federal Leases, and (iii) the lack of approval to any assignment or transfer by the Bureau of Land Management, the parties intended the Payment Obligation in the Agreement to be entirely contractual in nature.[13]

Under Wyoming law the Court finds that the intent of the Organs and Ayrshire in the Agreement was to create a contractual obligation that was defined by the amount of coal mined and sold. The Agreement contains no terms of conveyance, and does not otherwise evidence any intent to convey an overriding royalty or an interest in real property. Contrary to the Objectors'

---

[12] If the Objecting Parties claim that "earned royalties" has a different trade usage and instead it was meant to convey a property interest or an overriding royalty, the burden of proof falls on them. The "party asserting a particular trade usage of a term has the burden of proving the existence of the trade usage." *Mullinnix LLC*, 126 P.3d at 917 (Wyo. 2006) (citing *Mountain Fuel Supply Co. v. Central Eng'g & Equip. Co.*, 611 P.2d 863, 869 (Wyo. 1980)).

[13] The Wyoming Supreme Court in *Coronado Oil* indicates that a real property interest can only arise in favor of a grantee of a mineral interest when the grantee has "title to the mineral while they are *in situ*." *Coronado Oil Co.*, 884 P.2d at 977. The Agreement in this case does not purport to give the Organs title to the minerals while they are in the ground, but rather a small percentage of earned royalties based on the amount mined and sold. The case at bar is analogous to *Coronado Oil* because it "involve[s] the disposition of the proceeds due to the royalty owner after the oil and gas has been removed from the ground and sold." *Coronado Oil Co.*, 884 P.2d at 976-77.

claim, the mere fact that the obligation to the Organs resembles a royalty does not necessarily result in an impediment to the real property. The Wyoming Supreme Court has recognized that interests in mineral proceeds can be "a contractual right that is personal to the parties." *Coronado Oil Co.*, 884 P.2d at 976.[14]

The Fourth Circuit has determined that a debtor's decision to assume or reject a contract should be "accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors." *Lubrizol Enters. Inc.*, 756 F.2d at 1046. A court should not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease unless there is a showing of bad faith or gross abuse of discretion. *See id.* at 1047.

The Court finds that the rejection of the Agreement is within the Debtors' sound business judgment because the Agreement is not necessary to the Debtors' ongoing restructuring efforts. The Debtors no longer receive any benefits from the Agreement, and the Agreement imposes an undue burden on the Debtors' estate. Accordingly, in the sound exercise of their business judgment, the Debtors have determined that the rejection of the Agreement is in best interest of their estate and their creditors.

A separate order shall issue.

Entered: Aug 11 2016

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 8/11/16

---

[14] The Objectors also relied on *In re Bronco Hazelton*, an unpublished decision of the United States Bankruptcy Court for the Southern District of Indiana. *In re Bronco Hazelton Co.*, No. 06-70378 (Bankr. S.D. Ind. Jan. 18, 2008) (ECF No. 724). In *Bronco Hazelton* a lessee assigned its interest in certain coal leases to a third party. Part of the consideration for the assignment was that the lessee reserved an overriding royalty in favor of certain individuals. Later, the bankruptcy court found that the overriding royalty must be assumed with the underlying lease. *Bronco Hazelton* contains all the elements that are absent in the case at bar because (i) the assignment used the term "overriding royalty;" (ii) the overriding royalty directly referred to the underlying leases from which the overriding royalty was carved; and (iii) performance under the lease was subject to the payment of the overriding royalty.