**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| ALPHA NATURAL RESOURCES, INC., *et al.*, | ) | Case No. 15-33896 (KRH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MAR-BOW VALUE PARTNERS, LLC'S
MOTION FOR RELIEF FROM JUDGMENTS AND FOR INDICATIVE RULING**

Pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024 and

Federal Rule of Civil Procedure ("Civil Rule") 60(d)(3), creditor Mar-Bow Value Partners, LLC

("Mar-Bow"), by counsel, respectfully moves for relief from the orders denying Mar-Bow's

requests for additional disclosures and public disclosures by McKinsey Recovery &

Transformation Services US, LLC (collectively with its affiliates unless otherwise indicated,

"McKinsey"), approving McKinsey's fee applications without reductions on account of

disclosure violations, and finding that McKinsey fully complied with Bankruptcy Rule 2014.

Docs. 2895 (¶¶ 2-4 only), 3055, 3060, 3416, 3664, 3665, 3666.

Because the merits of the disclosure and fee orders are on appeal to the U.S. Court of

Appeals for the Fourth Circuit, Mar-Bow also respectfully moves for an indicative ruling under

Bankruptcy Rule 8008(a)(3). If this Court makes an indicative ruling that this motion raises a

Local Counsel for Mar-Bow Value Partners, LLC
David R. Ruby (VSB #22703)
William D. Prince IV (VSB #77209)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 698-6220
Facsimile: (804) 780-1813
Email: druby@t-mlaw.com
Email: wprince@t-mlaw.com

substantial issue, Mar-Bow will request a limited remand from the Fourth Circuit.[1]  Although the

final decree has been entered closing this case, it does not affect the Court's jurisdiction to

address these issues, which concern only McKinsey.[2]  And Civil Rule 60(d)(3) motions are

commonly raised years after a case is closed.

## I.      Additional Gravely Troubling Disclosure Violations Have Come to Light.

### A.      Disclosures About McKinsey's Pension Investments in Interested Parties, Particularly Senior Lenders Recovering Most Estate Value Under the Plan, Was Sought, Ordered, and Should Have Been Fully and Publicly Made.

As the Court is well aware, the United States Trustee initially sought to compel

McKinsey's compliance with Bankruptcy Rule 2014, arguing in part that McKinsey's failure to

provide full disclosure of its connections with senior secured lenders cast a cloud over the

Debtors' restructuring strategy of a credit bid sale to those senior lenders, negotiated with

McKinsey's assistance.[3]  The U.S. Trustee sought supplemental disclosures so that interested

parties could meaningfully consider whether the proposed Plan transactions "may be tainted by

divided loyalties."[4]

McKinsey's Third Supplemental Declaration, filed in response, provided additional

information about some of its client senior secured lenders.  It also said that "MIO Partners, Inc."

---

[1] Fed. R. Bankr. P. 8008(c); *see, e.g. Gitter v. Gitter*, 396 F.3d 124, 136 (2d Cir. 2005) (appellate limited remand to determine facts relevant to appeal, with liberty to vacate and amend judgment, with appellate jurisdiction over appeal retained for consideration of the district court's report); *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994) (appellate procedure to obtain supplemental determinations by trial court while retaining jurisdiction).

[2] Doc. 4108 (Mar-Bow's statement of position: not objecting to closing of case because doing so did not alter the Court's retained jurisdiction, including pursuant to remands from the Fourth Circuit).

[3] Doc. 2308 at 11-12.

[4] *Id*. at 12.

served "McKinsey's pension plans, partners and former partners by offering a portfolio of investment products" and that

> MIO does not make any investment decisions based on the use of McKinsey RTS and affiliates' client information.  Certain members of MIO's board of directors are also employees of McKinsey RTS and its affiliates, including one director who is also a director and officer of McKinsey RTS.[5]

Mar-Bow's motion to compel further disclosures from McKinsey argued in part that McKinsey violated Bankruptcy Rule 2014 by failing to disclose investments in Interested Parties in the bankruptcy case by the McKinsey pension affiliate named by McKinsey, MIO, especially in light of the members of MIO's board of directors that are employees of McKinsey RTS and its affiliates, including one director who was also a current director and officer of McKinsey RTS.[6]

At the hearing on Mar-Bow's motion to compel disclosures, this Court sought McKinsey's agreement that it should disclose McKinsey Investments' "investments in competitors or in other entities that may be involved in the case," and McKinsey's counsel acquiesced.[7]  McKinsey then resisted disclosure, arguing that "the investment arm or entity is walled off" and "the MIO entity that makes investments, we have no ability to get their information."[8]

The Court nevertheless ordered McKinsey to deliver to the Court *in camera* information about Interested Parties in which the pension and investment affiliate of McKinsey owned securities.  At the hearing on Mar-Bow's motion, the Court said:

---

[5] Doc. 2464 at ¶ 20.

[6] Doc. 2603 at 37.  *See also* TR 6/28/16 at 93, 95, 98 (Mar-Bow questioning whether the McKinsey investment office owned any stock of creditors or asset purchasers, noting that the plan calls for banks that are secured creditors to purchase the assets, but McKinsey's connection with those banks is unknown).

[7] TR 6/28/16 at 132.

[8] *Id.* at 142.

> The Court is going to require, since we have an employee on the board of
> McKinsey Investments, that investments in any of the interested parties be
> disclosed.  Again *in camera*, to the Court, and that can be handled separately.[9]

And the Court's order required, using the "MIO" term McKinsey had used in its supplemental

disclosure referencing the pension and investment affiliate's existence:

> c. Identification of Interested Parties in which MIO owns securities; provided,
> however, that (i) where MIO invests in or with funds of funds, funds, or third
> party managers, and has no input or control over investment decisions therein,
> McKinsey RTS shall disclose only which funds of funds, funds, and third party
> managers are on the list of Interested Parties, and (ii) where MIO has directed an
> investment with its investment discretion, McKinsey RTS shall disclose the
> Interested Parties whose names match with names on MIO's ledgers of
> investments;[10]

As set forth below, since these events, Mar-Bow has learned from public records

that McKinsey held a substantial interest in a group of hedge funds named Whitebox

during the *ANR* bankruptcy cases.  Although not included on the Interested Parties list,

public records show that Whitebox acquired secured lender positions during the

bankruptcy cases and thus became one of the largest equity owners of "NewCo" under

the plan, *i.e.* Contura Investments, Inc.  McKinsey profited over $50 million for its

partners and other pension beneficiaries as a result of its interest in Whitebox and the

plan transfer of assets to Whitebox and other senior secured lenders.  Mar-Bow asks this

Court to take judicial notice of the relevant public filings.[11]

Even if McKinsey did not have had "control" over Whitebox's investments in

senior secured lien claims in the *ANR* bankruptcy cases, this Court should be informed

about the nature and extent of McKinsey direct or indirect "input" in Whitebox's

---

[9] *Id.* at 157.

[10] Doc. 2895 at ¶ 2.

[11] Fed. R. Evid. 201(b), (c)(2).

4

investment in *ANR* secured lenders, and certainly about McKinsey's knowledge of that investment. McKinsey's ownership interest in Whitebox and thus indirect acquisition of estate assets under the plan has a direct bearing on McKinsey's disinterestedness and had to be fully disclosed.

While Mar-Bow lacks access to the *in camera* disclosures to ascertain how much, if anything, McKinsey disclosed about its interest in Whitebox and Whitebox's interest in one or more secured lender claims and plan distributions, Mar-Bow doubts that the Court would have found disinterestedness and kept disclosures out of the public record (or that the United States Trustee would not have recommended public disclosure) if adequate disclosures about the Whitebox involvement were made. The Court of Appeals should know what, if anything, McKinsey disclosed about its Whitebox interests and Whitebox's role in the *ANR* cases, and whether this Court determined to keep information about McKinsey's own indirect acquisition of estate assets out of the public record, when the appellate court rules on the propriety of the order to disclose only limited information and only *in camera*.

**B.      McKinsey's Pension and Investment Affiliate Indirectly Owned a Substantial Share of a Senior Lender, so McKinsey Profited by Some $50 Million as a Result of Plan Asset Transfers to Senior Lenders.**

The Debtors' confirmed Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, as Modified, provided for most of the Debtors' assets to be transferred to a new company "NewCo" owned by its senior secured lenders, who credit bid their collateral interests as consideration. Specifically, under the confirmed plan, the Equity Interests in "NewCo," named Contura Energy, Inc., were issued to holders of Claims in the *ANR* cases.[12]

---

[12] *See* Doc. 3139 at Annex A, Second Amended Exhibit IV.B.1 (final description of Restructuring Transactions) ¶ 18.

The NewCo/Contura Common Stock was issued on or prior to the Effective Date of the Plan to the "First Lien Lenders" (87.5%), Second Lien Noteholders participating in the NewCo Asset Based Lending Facility (7.5%) and General Unsecured Creditors (5%).[13]

Second Lien Noteholders also received potential Preferred Interests and Warrants and General Unsecured Creditors received Warrants.[14] The Plan provided that these distributions of NewCo Equity would be subject to dilution by a management incentive plan to be implemented by NewCo.[15] And it provided that Second Lien Noteholders could transfer all or a portion of their distributions.[16] As described in the Disclosure Statement, this part of the Plan and Second Lien Lender Settlement provided that 20% of the Second Lien Noteholder distribution of NewCo Equity (*i.e.* 1.5% of NewCo Equity) would be allocated to the four lenders that backstopped the NewCo ABL Facility, Steelhead Partners, LLC, Bain Capital Credit, Blue Mountain Capital Management, LLC and River Birch Capital, LLC.[17]

The Disclosure Statement did not identify the First Lien Lenders, as that phrase was used in the Plan, naming only Citicorp North America, Inc. as First Lien Agent.[18] The Debtors' list of Interested Parties likewise did not refer to First Lien Lenders – only Revolving Facility Lenders, Lenders under A/R Facility, Secured Term Loan Lenders, Second Lien Noteholders and Major

---

[13] Doc. 3038 App. 1 § I.A.¶ 43; *Id.* § I.A.¶ 115; *Id.* § I.A.¶ 223; *Id.* § II.B.3; *Id.* § IV.K.; *Id.* § IV.L.

[14] *Id.* § I.A ¶ 42, *Id.* ¶ 223; *Id.* § II.B.3; *Id.* §§ II.B.6, II.B.7, II.B.8.

[15] *Id.* § IV.L.

[16] *Id.* ¶ 124.

[17] Doc. 2528 at 53 – Second Amended Disclosure Statement at 45.

[18] *See* Doc. 3038 App.1 § I.A.¶ 109.

Unsecured Noteholders.[19] No Whitebox entity was on the Interested Parties list in any

category.[20]

Yet when Contura Energy filed a preliminary prospectus for an initial public offering on

July 31, 2017, and was required to disclose holders of 5% or more of its common stock, it

disclosed that several Whitebox Funds owned 11.1% of Contura's common stock, "issued on

account of prepetition claims in connection with a bankruptcy plan of reorganization."[21]

McKinsey was well aware that Whitebox was involved in *ANR* as a First Lien Lender.  When

asked the names of parties in that category in his August 16, 2016, deposition, McKinsey

Practice Leader Kevin Carmody, whose court declarations provided the factual support for the

court's finding of McKinsey disinterestedness and qualification for employment, named

Whitebox and three other entities, noting a possible fourth.[22] Carmody said that Whitebox was

not a McKinsey client; he said nothing about McKinsey's ownership interest in Whitebox.[23]

In fact, federal Department of Labor 5500 forms show that McKinsey held a significant

stake in the Whitebox group of hedge funds.  Throughout the pendency of the *ANR* bankruptcies,

the McKinsey Master Retirement Trust, sponsored and managed by McKinsey & Company, Inc.

with MIO Partners, Inc. as a service provider, owned shares in the Whitebox hedge funds. [24]

That ownership in Whitebox spanned the time McKinsey filed its first disclosure declaration of

Kevin Carmody on August 24, 2015, through Carmody's fourth declaration filed on August 5,

---

[19] Doc. 212 at Ex. B, Schedule 1 pp. 3-4.

[20] *Id.*

[21] Exhibit F, at 198-99, 201-02.

[22] Doc. 3360-1 at 110-11.

[23] *Id.* at 111.

[24] *See* Exhibits A-E.

2016.  Nowhere in any of Carmody's disclosures did McKinsey reveal its Retirement Trust's approximately $110 million interest in Whitebox.  Nowhere did Carmody disclose that Whitebox had become one of the Debtors' First Lien Lenders during the bankruptcy case.

A Whitebox Form 13F report, filed with the Securities and Exchange Commission a few days after the *ANR* chapter 11 petition filings (and securities de-listing), shows that on June 30, 2015, Whitebox owned an interest in *ANR* unsecured notes due in 2020.[25]  While it is possible that McKinsey was unaware of that initial interest in unsecured debt (although it should have inquired as part of its determination of disclosable connections at the outset of the case, and may have simply chosen not to disclose it), Carmody's deposition statement shows that McKinsey was aware of Whitebox's substantial interest in secured debt as of plan confirmation, and thus McKinsey's own indirect interest.

Over Mar-Bow's objection, whatever disclosures McKinsey made about MIO investments have not been publicly filed.  Mar-Bow's entitlement to access to these disclosures is central to its appeal.  Mar-Bow and the Fourth Circuit accordingly do not know if McKinsey made any disclosure about Whitebox at all in its *in camera* filing.  The United States Trustee, this Court and the Fourth Circuit, and all parties in interest are entitled to information about McKinsey's ownership interest in Whitebox, the status of Whitebox as one of the First Lien Lenders that took place at some point during the bankruptcy cases, McKinsey's knowledge of and communications with Whitebox about that interest, and the results for Whitebox – and indirectly McKinsey – of that ownership.

McKinsey's interest in Whitebox and Whitebox's acquisition of a First Lien Lender interest during the *ANR* bankruptcy cases turned out to be a lucrative position.  On August 18,

---

[25] *See* Exhibits H (Form 13F) and I (Prospectus for the unsecured notes).

2016, the first day that Contura Energy shares were traded over the counter, the trading price was

$16.88.[26]  On December 20, 2016, when the Court entered its order granting McKinsey's final

fee application and again finding that McKinsey complied with all Bankruptcy Rule 2014

requirements and was disinterested, the Contura trading price had increased some 327% to

$72.00.[27]  At year end on December 30, 2016, the price was $71.00, an increase of 321%.[28]  By

July 31, 2017, when the Contura Preliminary Prospectus was filed, the OTC trading price was

$69.40, an increase of 311% from the first trading day.[29]  The MIO Form 5500 for 2016, the

most recent available, shows that McKinsey's investment in Whitebox increased in value by

$50,488,357 as a result of its interest in Contura between the first Contura trading date and year-

end 2016.[30]

       In light of the U.S. Trustee's disclosure policies and requests to McKinsey, and this

Court's inquiries and orders, it is most unlikely that McKinsey disclosed its significant interest in

Whitebox, and Whitebox's undisclosed acquisition from First Lien Lender(s) of secured creditor

claim(s) during the bankruptcy cases, to the great benefit of Whitebox and McKinsey.  As the

Court held in *Lewis Road*, a professional's ownership interest in a secured claim against the

bankruptcy estate is disqualifying, had to be disclosed under Bankruptcy Rule 2014, and

---

[26] Exhibit G, listing OTC trading prices for Contura Energy, Inc.

[27] *Id.*; *see also* Exhibit 1 to this motion, which Mar-Bow attaches as a demonstrative exhibit only, to provide the Court with the numerical computations of the increased value of McKinsey's investment in Whitebox on account of Whitebox's interest in Contura acquired under the confirmed *ANR* reorganization plan.

[28] Exhibit G; demonstrative Exhibit 1 to this motion.

[29] Exhibit G; demonstrative Exhibit 1 to this motion.

[30] Exhibit A.

9

warrants relief under Civil Rule 60.[31]  In light of the extensive case law on professionals not

being disinterested when they advise or hold an interest in an acquirer of assets from the

bankruptcy estate, it is likely that this Court would have found that McKinsey was not

disinterested.  McKinsey's failure to disclose all relevant facts about Whitebox may constitute a

fraud on the court.

> **C.  McKinsey's Interest in First Lien Lender Claims and Acquisition of *ANR* Estate Assets, Through Whitebox, Should Have Been Disclosed.**

A professional approved by the court to assist the debtor on behalf of the bankruptcy

estate cannot advise a purchaser of bankruptcy estate assets, because of the inherent conflict.[32]

The professional's status in the bankruptcy case affords "unique access to inside information

concerning the nature and value of its assets, information that [the professional] could have used

(or been tempted to use) to enable his other client . . . to submit a better calibrated bid than

arm's-length bidders could venture."[33] As one bankruptcy court held, a debtor's financial advisor

who "performed a wide variety of tasks which largely shaped the companies' financial and

operational structure," and also advised a major secured creditor who was to buy the estates'

assets under the plan, became non-disinterested on account of the inherent conflict of interest.[34]

---

[31] *In re Lewis Road, LLC*, 2011 WL 6140747 *6, 8-9, 14 (Bankr. E.D. Va. Dec. 9, 2011) where the Court held that it would not have entered the settlement approval order at issue if it had been aware of the professional's one-third participation interest in a secured claim against the bankruptcy estate, and that the interest caused the professional to have an "interest materially adverse to the interest of the estate," which should have been disclosed under Bankruptcy Rule 2014, and warranted relief under Civil Rule 60(b).

[32] *Rome v. Braunstein*, 19 F.3d 54, 61 (1st Cir. 1994) ("[S]imultaneous representation of the buyer and the seller in the same transaction is a prototypical disqualifying conflict of interest"); *In re Freedom Solar Ctr., Inc.,* 776 F.2d 14, 16-17 (1st Cir.1985).

[33] *Rome*, 19 F.3d at 61.

[34] *In re Unitcast, Inc.*, 214 B.R. 979, 987-88 (Bankr. N.D. Ohio 1997).

A disqualifying adverse interest also exists when a bankruptcy court-approved professional itself possesses or asserts, as well as when it represents, a creditor's claim, an ownership interest, or status as a buyer.[35]  Involvement with investors acquiring or even attempting to acquire estate assets results in a disqualifying interest adverse to the estate that must be disclosed.[36]

The fiduciary duty of loyalty includes prohibits bankruptcy professionals from self-dealing with estate assets.[37]  When an officer of the court "knowingly purchases, directly or indirectly, any property of the estate of which the person is such an officer in a case under title 11," that professional commits a crime.[38]  For these reasons, many courts have held that neither a bankruptcy trustee, debtor-in-possession, nor their professionals (nor the professionals' employees) may directly or indirectly acquire estate assets, even at an auction.[39]  Virginia bankruptcy courts currently require that the fiduciary prove that the transaction was "inherently

---

[35] 11 U.S.C. § 327(a) (trustee may employ professionals "that do not hold or represent an interest adverse to the estate"); *see Rome*, 19 F.3d at 58 n. 1 ("[A]n 'adverse interest' has been described in pragmatic terms as the 'possess[ion] or assert[ion] [of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants . . . or (2) [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.'" (quoting *In re Roberts*, 46 B.R. 815, 826-27 (Bankr. D. Utah 1985)); *In re Crivello*, 134 F.3d 831, 835-36 (7th Cir. 1998) (similar wording).

[36] *In re New River Dry Dock, Inc.*, 497 Fed. App'x. 882, 887 (11th Cir. 2012) (broker agreed to manage estate marina and obtain ownership interest upon closing under plan); *In re W. Delta Oil Co.*, 432 F.3d 347, 356-57 (5th Cir. 2005) (lawyers' undisclosed potential acquisition); *Lewis Road*, 2011 WL 6140747 at *6, 8-9.

[37] *In re Brook Valley VII, Joint Venture*, 496 F.3d 892 (8th Cir. 2007); *In re Performance Nutrition, Inc.*, 239 B.R. 93 (Bankr. N.D. Tex. 1999); *see also In re Frazin & Oppenheim*, 181 F.307, 308 (2d Cir. 1910) (explaining as a rule of equity, public policy and disinterestedness in the disposition of assets that trustees and their agents and attorneys cannot purchase a bankrupt's property).

[38] 18 U.S.C. § 154.

[39] See discussion at *In re Chuck's Const. Co., Inc*., 424 B.R. 202, 205-06 (Bankr. D. S.C. 2010).

fair" instead of a *per se* violation of fiduciary duties.[40]  Hidden involvement and concealed profit

of a debtor in possession's CEO in a purchase of estate assets has been held a fraud on the court

because of that officer's fiduciary duty to act in the best interest of the estate.[41]

## II.    McKinsey's Failure to Disclose All Relevant Facts About Its Ownership Interest in Whitebox Presents a Colorable Issue of Fraud on the Court.

### A.    Bankruptcy Rule 2014 Disclosure Violations Have Been Held a Fraud on the Bankruptcy Court.

"The Supreme Court has long recognized the inherent equity power of courts to set aside

a judgment whenever its enforcement would be 'manifestly unconscionable' because of 'fraud

upon the court.'"[42]  Fraud on the court involves "corruption of the judicial process itself."[43]

Under the fraud-on-the court doctrine, court decisions are vacated in "egregious cases in which

the integrity of the court and its ability to function impartially is directly impinged."[44]

Fraud on the court differs from fraud on a particular litigant.  The Fourth Circuit has

emphasized that "not only must fraud on the court involve an intentional plot to deceive the

judiciary, but it must also touch on the public interest in a way that fraud between the parties

---

[40] *In re Stanley*, No. 15-70378, 2016 WL 6915522 (Bankr. W.D. Va. July 29, 2016) (discussing extensive case law).

[41] *In re Intermagnetics America, Inc.*, 926 F.2d 912, 914-18 (9th Cir. 1991).

[42] *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 130 (4th Cir. 2000) (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244–45 (1944)).

[43] *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987) (quoting *In re Whitney-Forbes*, 770 F.2d 692, 698 (7th Cir.1985)).

[44] *Id.* (internal quotation marks and alteration omitted); *see also Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1356 (4th Cir. 1982) ("'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud inter partes, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action." (internal quotation marks omitted)).

generally does not."[45]   The Fourth Circuit drew this principle from the U.S. Supreme Court's

discussion in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, which set out the fraud on the court

doctrine in the patent context:

> [T]ampering with the administration of justice in the manner indisputably shown
> here involves far more than an injury to a single litigant. It is a wrong against the
> institutions set up to protect and safeguard the public, institutions in which fraud
> cannot complacently be tolerated consistently with the good order of society.[46]

These principles apply to Bankruptcy Rule 2014 disclosures.   Accordingly, failure to

disclose disqualifying connections required by Bankruptcy Rule 2014 has been held to constitute

fraud upon the court.[47]   As one court observed:

> In this case it is alleged that the professionals did not disclose conflicts of interest
> that would have barred their retention. If this is true, it would constitute a fraud on
> the Court warranting relief even though more than a year has passed since the
> professionals were retained and their fees approved.[48]

Two characteristics of Bankruptcy Rule 2014 and the bankruptcy retention process justify

application of the fraud on the court doctrine for a professional's failure to disclose connections.

The first is that Bankruptcy Rule 2014 places affirmative duties of disclosure upon the

professional that a litigant would not ordinarily have toward his adversary in ordinary civil

---

[45] *Fox ex rel. Fox v. Elk Run Coal Co.*, 739 F.3d 131, 136 (4th Cir. 2014).

[46] *Hazel-Atlas,* 322 U.S. at 246.

[47] *See, e.g. Pearson v. First NH Mortg. Corp.*, 200 F.3d 30 (1st Cir. 1999) (colorable claim for fraud on
the court when conflicts of interest were not disclosed in Bankruptcy Rule 2014 statement, justifying
discovery and evidentiary proceedings); *Denison v. Marina Mile Shipyard, Inc.*, 2012 WL 75768 (S.D.
Fla. 2012); *In re M.T.G., Inc.*, 366 B.R. 730, 748-53 (Bankr. E.D. Mich. 2007),  *aff'd*, 400 B.R. 558, 568
(E.D. Mich. 2009) (all elements of fraud on the court claim met when attorneys failed to disclose potential
conflicts of interest, deceiving bankruptcy court); *In re eToys, Inc.*, 331 B.R. 176, 188 (Bankr. D. Del.
2005); *In re R & R Associates of Hampton*, 248 B.R. 1, 6-7 (Bankr. D. N.H. 2000).

[48] *eToys*, 331 B.R. at 188; *see also Crivello*, 134 F.3d at 839 (punishment should be "as severe[] as an
attempt to put forth a fraud upon the court").

litigation.[49]  The second is that the end to which that disclosure is aimed—the bankruptcy court's

ability to ensure retention only of disinterested professionals who will fairly fulfill their fiduciary

obligations to the estate—is one of public import that extends far beyond the interests of any two

adversarial parties.[50]

By failing to make adequate disclosures, a coy (or worse, conflicted) professional puts

the bankruptcy court in the position of having to make important retention decisions without the

benefit of the information it needs to act in the best interest of the estate.[51]  Granting a Civil Rule

60(b)(6) motion alleging fraud on the court due to inadequate disclosures about the magnitude of

an accounting firm's connections, the *Southmark* court explained:

> The court finds that Coopers' failure to fully disclose connections and activities
> with and regarding Drexel prevented the court from fully performing its function
> under the Bankruptcy Code and thereby frustrated the purposes of the Code to
> assure that the professional person employed by the examiner tenders undivided
> loyalty and provides untainted advice and assistance.[52]

As the Court is well aware, bankruptcy courts must rely on robust, forthcoming

disclosures by professionals with sufficient detail to ensure only disinterested professionals serve

---

[49] *Rome*, 19 F.3d at 59; *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012) ("The disclosure requirements of Rule 2014(a) are broader than the rules governing disqualification, and an applicant must disclose all connections regardless of whether they are sufficient to rise to the level of a disqualifying interest under Section 327(a)."); *M.T.G.*, 366 B.R. at 750–51 (bankruptcy professionals have a "clear and affirmative duty" under Rule 2014 to disclose connections, irrespective of whether another party-in-interest demands it of them) (internal quotation marks omitted); *see also Pearson*, 200 F.3d at 38 ("Moreover, even assuming Attorney Gannon had no affirmative obligation to disclose the conflict of interest at the time the chapter 7 case commenced, such a duty plainly would have arisen under the Bankruptcy Rules upon his appointment as special counsel to the chapter 7 estate.").

[50] *R & R Assocs. of Hampton*, 248 B.R. at 7 (quoting *Rome*, 19 F.3d at 58).

[51] *M.T.G.*, 400 B.R. at 568 ("Judge Graves stated that 'the court can determine disinterestedness only if all potential conflicts are fully disclosed.' Hence, based on that alone, this court can conclude that the Bankruptcy court was deceived, since it made rulings on motions and rendered Orders without full knowledge of Taunt's actual conflicts of interests.").

[52] *In re Southmark Corp.*, 181 B.R. 291, 296 (Bankr. N.D. Tex. 1995).

the estate and to carry out the court's "inherent obligation to monitor the debtor's estate and to serve the public interest."[53]

Submitting a Bankruptcy Rule 2014 statement averring to a lack of connections when one in fact exists constitutes a misrepresentation to the court under the fraud on the court doctrine.[54] And given the need for bankruptcy courts and parties-in-interest to rely on professionals' affirmative disclosures, failure to disclose deprives those parties of the ability to discover fraud so as to bring a motion within the one-year time frame of Civil Rule 60(b).[55]

McKinsey's failure to provide adequate disclosures—and, more specifically, to disclose that through its pension affiliate's interest in Whitebox, McKinsey acquired a significant interest in a secured lender and thus acquired estate assets under the plan to its great profit—"is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society."[56]  As in *M.T.G.*, "[i]t seems inconceivable that" this Court would have entered the orders retaining McKinsey, denying additional public disclosures, and approving McKinsey's fees in full had it known the

---

[53] *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994).

[54] *Pearson*, 200 F.3d at 38; *M.T.G.*, 366 B.R. at 752 (noting that the element of "concealment when one is under a duty to disclose" was clearly met where "Taunt and his attorneys concealed Taunt's fee agreement with Comerica when there was a clear duty to disclose it to the bankruptcy court").

[55] *eToys*, 331 B.R. at 188 ("If the professionals did not disclose their conflicts or other connections with others in the case to the Court, or did so in ways that clearly contravened the statutory requirements, then parties did not have sufficient notice to seek relief under Rule 60(b)(1), (2) or (3) within the prescribed one-year time limit.").

[56] *Id.*; *see M.T.G.*, 400 B.R. at 566 (district court agreement with bankruptcy court finding that when trustee obtained orders from the court approving employment, fees and settlement agreement with creditor without disclosing trustee's own compensation agreement with creditor, the act was "directed to the judicial machinery itself" (quoting *M.T.G.*, 366 B.R. at 749)).

true extent of McKinsey's stake in the Debtors' reorganization.[57]  Here, as there, it is apparent

that the Court was deceived when it entered those orders, warranting that they be vacated on

account of McKinsey's fraud on the court.

> **B.** **This Court May and Should Determine Whether McKinsey Committed a Fraud on the Court, on Mar-Bow's Motion.**

Federal Rule of Civil Procedure 60(d)(3) recognizes federal courts' power to "set aside a

judgment for fraud on the court," and is not subject to the one-year bar for requests to set aside

the judgment for fraud as between the parties.[58]  Civil Rule 60 applies to bankruptcy cases by

virtue of Bankruptcy Rule 9024.[59]

The merits of the Court's disclosure and fee approval rulings are currently on appeal to

the U.S. Court of Appeals for the Fourth Circuit.  But that does not preclude this Court from

considering this motion.  Bankruptcy Rule 8008(a)(3), the bankruptcy counterpart to the

relatively new Civil Rule 62.1(a)(3), allows this Court to issue an "indicative ruling":

> If a party files a timely motion in the bankruptcy court for relief that the court
> lacks authority to grant because of an appeal that has been docketed and is
> pending, the bankruptcy court may:
>
> . . .
>
> state that the court would grant the motion if the court where the appeal is
> pending remands for that purpose, or state that the motion raises a substantial
> issue.[60]

---

[57] *M.T.G.*, 400 B.R. at 568 ("It seems inconceivable that Judge Graves would have entered any of these orders at all, much less without a hearing, had Taunt fully disclosed his fee agreement with Comerica. Thus, the bankruptcy court was deceived when it entered these orders." (quoting 366 B.R. at 752–53)).

[58] *See Fox*, 739 F.3d at 136.

[59] Fed. R. Bankr. P. 9024 (providing that, subject to exceptions not relevant here, "Rule 60, F.R.Civ.P., applies in cases under the Code").

[60] Fed. R. Bankr. P. 8008(a)(3); *see also* Fed. R. Bankr. P. 9024 ("In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending.").

"If the [trial] court issues an indicative ruling—either that it would grant the motion or that there are substantial issues—the court of appeals then decides whether to remand the case for a ruling by the [trial] court."[61]  That is, "[a] statement that the motion raises substantial issues does not tie the district court to a particular ruling on the motion after remand."[62]

Courts are empowered to vacate judgments for fraud upon the court without procedural limitations because it seriously affects the integrity of the normal process of adjudication.[63]  In *Hazel-Atlas*, the Supreme Court held that the litigant could raise fraud on the court even if it "should have been expected to do more than it did to uncover the fraud" when the case was initially tried many years before.[64]  It reasoned:

> Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.[65]

Thus, a motion based upon fraud on the court is not barred by laches or unclean hands.[66] As one court noted, "[p]ublic policy demands that the court address claims that its procedures have been subverted regardless of how tainted the source of the information may be."[67]  "Law of

---

[61] *In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1066 (C.D. Cal. 2011), *rev'd on other grounds sub nom. Lombardi v. DirecTV, Inc.*, 546 F. App'x 715 (9th Cir. 2013), *and rev'd on other grounds and remanded sub nom. Lombardi v. DirecTV, Inc.*, 549 F. App'x 617 (9th Cir. 2013).

[62] *Id.*

[63] *Genesys Data*, 204 F.3d at 130 (internal quotation marks omitted)).

[64] *Hazel-Atlas*, 64 U.S. at 246.

[65] *Id.*

[66] *Id.* at 245-46; 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2870, at 575 (3d ed. 2012) (citing *Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 801 (2d Cir. 1960)).

[67] *M.T.G.*, 366 B.R. at 755, *on remand from* 291 B.R. 694 (E.D. Mich. 2003) (directing bankruptcy court to determine merits of creditor's motion, rejecting timeliness and law of the case objections).

the case" does not bar fraud on the court claims, even when the fraud, as here, is based on

Bankruptcy Rule 2014 disclosure omissions about hidden connections with creditors and the

professional has been sanctioned for disclosure violations.[68]  Nor is fraud on the court

constrained by normal standing requirements; the Court may even authorize an amicus curiae to

raise it.[69]

       In *Root Refining*, attorneys for parties indirectly affected by the questioned judgment

were appointed as amici to present the prosecution side of a fraud on the court claim they raised,

investigated by a special master.[70]  The Supreme Court implicitly approved the attorneys' role,

holding that "a federal court may bring before it by appropriate means all those who may be

affected by the outcome of its investigation."[71]  It held that the court could not require the alleged

wrongdoer to reimburse their attorneys' fees and costs for the investigation, while stating that the

entire cost could be assessed against guilty parties if fraud on the court was found after an

adequate opportunity for the alleged wrongdoer to be heard in a proper contest.[72]

### C.    Mar-Bow Has Presented a "Colorable Claim" of Fraud on the Court and Should Be Permitted Additional Discovery After an Indicative Ruling.

       The First Circuit has aptly noted that it is inappropriate to hold litigants alleging fraud on

the court to a "smoking gun" standard.[73]  Although the ultimate burden to prove fraud on the

---

[68] *M.T.G.*, 400 B.R. at 560-61, 565.

[69] *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575 (1946), on remand *Root Refining C. v. Universal Oil Products Co.*, 169 F.2d 514, 517, 523 (3d Cir. 1948) (court's duty to inquire upon facts coming to its attention even if no party should be willing to cooperate).  Mar-Bow also has standing as an *ANR* creditor, as the Court has previously held.  11 U.S.C. § 1109(b).

[70] 328 U.S. at 577-78.

[71] *Id.* at 580.

[72] *Id.* at 580-81.

[73] *Pearson*, 200 F.3d at 35.

court is one of clear and convincing evidence, "once the record evidence demonstrates a

'colorable' claim of fraud, the court may exercise its discretion to permit preliminary discovery

and evidentiary proceedings."[74]  The First Circuit explained:

> In fraud cases, the "colorable claim" standard is more appropriate than the
> "smoking gun" standard because claimants who have been denied both
> preliminary discovery and an opportunity to present witnesses may well be left
> with no meaningful access to direct evidence of fraudulent intent, notwithstanding
> an abundance of telltale circumstantial evidence.  In such circumstances, trial
> courts must be vested with adequate discretion to determine in the first instance
> whether the particular facts warrant discovery and post-discovery proceedings.[75]

Courts have allowed creditors and other interested parties to conduct discovery and

present evidence to the court in "show cause" hearings.[76]  In a Fourth Circuit case where fraud

on the court was not proved, "the court allowed post-judgment discovery [by counsel for a union,

an interested party who investigated and raised the fraud concerns] and held a two-day

evidentiary hearing."[77]

Mar-Bow has presented at least a "colorable claim" from publicly available documents

that McKinsey engaged in fraud on the court in withholding disclosure of its indirect interest in

secured lenders' claims, and thus acquisition of significant equity interests in Contura under the

plan, through its pension investment affiliate's interest in Whitebox.  A final determination of the

claim may entail adversary litigation, through order to show cause proceedings or otherwise.

---

[74] *Id.*

[75] *Id.*

[76] *E.g. Denison*, 2012 WL 75768 at *1, 2; *Root Refining*, 169 F.2d at 517, 519-21 (attorneys for interested parties took discovery as amici and examined witnesses at special master hearings, with successor amici prosecutors and a party in interest in other proceedings presenting evidence at show cause hearing after Supreme Court remand); *see also New River Dry Dock,* 497 Fed. App'x. at 885 (largest unsecured creditor alerted court about court-appointed realtor's relationship with estate asset buyers; court ordered realtor to show cause why commission should not be disgorged; "lengthy litigation ensued").

[77] *Great Coastal*, 675 F.2d at 1352.

In light of its colorable claim, Mar-Bow requests that at this time the Court review again McKinsey's *in camera* disclosures along with the attached public filings and demonstrative exhibit calculations.  Mar-Bow requests that based upon these documents, the Court issue an indicative ruling under Bankruptcy Rule 8008(a)(3) that Mar-Bow's motion raises a substantial issue.

If the Fourth Circuit remands jurisdiction in accordance with Federal Rule of Appellate Procedure 12.1(b), Mar-Bow requests that the Court exercise its discretion to allow discovery with respect to Whitebox's acquisition of secured lender claims during the *ANR* cases, McKinsey's knowledge of that lender status and direct and indirect communications with Whitebox before and after Whitebox's acquisitions of those claims about *ANR* and the reorganization plan, McKinsey's analysis of the impact of these transactions on disinterestedness and disclosure obligations, and any other relevant discovery.[78]

Mar-Bow further requests that in the event of a remand, the Court undertake further proceedings, either under an order to show cause contested matter or an adversary complaint and litigation as the Court may direct, to determine whether there was a fraud on the Court by McKinsey.

---

[78] Mar-Bow has also received credible evidence that McKinsey consultants with leadership positions in the ANR engagement and billing over $2 million to ANR were contemporaneously serving United States Steel on a cost reduction project that included the sourcing of coal supplied by ANR.  This is contrary to the McKinsey declaration by Carmody that work for "Major Customers of the Debtors…United States Steel" was on matters "unrelated and not adverse to the Debtors," and not on "matters involving clients acting or considering acting adverse to the Debtors." Doc. 3223 ¶¶ 5, 7(h).  In the event of a remand, Mar-Bow will ask the Court to allow discovery on this connection and other disqualifying connections it has discovered, including MIO's ownership of stock in ANR indirectly through its $600 million interest in BlackRock Funds (on the Interested Parties list as a Major Equity Holder as well as Major Unsecured Noteholder) and directly due to ANR's merger with Massey Energy.

Mar-Bow anticipates that the Fourth Circuit will want to know what, if anything, was disclosed *in camera* about the McKinsey-Whitebox-secured lender connections, and whether the Court concludes there was a fraud on the Court.

### Conclusion and Prayer for Relief

McKinsey has set forth a colorable claim for fraud on the court. Mar-Bow respectfully moves this Court to enter an indicative ruling that the motion raises a substantial issue, permitting the Fourth Circuit to consider granting a limited remand for this Court to allow discovery, conduct proceedings, and rule on Mar-Bow's Civil Rule 60(d)(3) motion.

Respectfully submitted,

MAR-BOW VALUE PARTNERS, LLC

By:    */s/ David R. Ruby*
            Local Counsel

David R. Ruby (VSB #22703)
William D. Prince IV (VSB #77209)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA   23219
Telephone: (804) 698-6220
Facsimile: (804) 780-1813
Email:  druby@t-mlaw.com
Email:  wprince@t-mlaw.com

*Local Counsel for Mar-Bow Value Partners, LLC*

-and-

Susan M. Freeman, Esquire (admitted *pro hac vice*)
Daniel A. Arellano, Esquire (admitted *pro hac vice*)
Lewis Roca Rothergerber Christie, LLP
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595
Telephone: (602) 262-5311
Email: sfreeman@lrrc.com
Email: darellano@lrrc.com

Steven Rhodes, Esquire (admitted *pro hac vice*)
Steven Rhodes Consulting, LLC
1610 Arborview Boulevard
Ann Arbor, Michigan 48103
Telephone: (734) 646-7406
Email: rhodessw@comcast.net

Sheldon S. Toll, Esquire (admitted *pro hac vice*)
Law Office of Sheldon S. Toll, PLLC
29580 Northwestern Hwy, Suite 100
Southfield, Michigan 48034
Email: sst@lawtoll.com

O*f Counsel for Mar-Bow Value Partners, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 18th day of July, 2018, a true and accurate copy of the foregoing Motion was served via First Class U.S. Mail (postage prepaid), via e-mail or via ECF in accordance with the Court's Order Establishing Certain Notice, Case Management and Administrative Procedures entered on August 5, 2015 (Doc. 111) and the Service List maintained by Kurtzman Carson Consultants in this case.  Service included the following persons:

| | |
|---|---|
| Alpha Natural Resources, Inc.<br>Attn: Richard H. Verheij, Esq.*<br>Executive Vice President,<br>General Counsel & Corporate Secretary<br>One Alpha Place<br>P.O. Box 16429<br>Bristol, Virginia 24209<br>Email: rverheij@alphanr.com<br>*[Debtors]* | Alpha Natural Resources, Inc.<br>Attn: Mark M. Manno<br>One Alpha Place<br>Bristol, Virginia 24202<br>*[Debtor]* |
| David G. Heiman, Esq.*<br>Carl E. Black, Esq.*<br>Thomas A. Wilson, Esq.*<br>Jones Day<br>North Point<br>901 Lakeside Avenue<br>Cleveland, Ohio 44114<br>dgheiman@jonesday.com;<br>ceblack@jonesday.com;<br>tawilson@jonesday.com<br>*[Counsel to the Debtors]* | Tyler P. Brown, Esq.*<br>Henry P. (Toby) Long, III, Esq.*<br>Hunton & Williams LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, Virginia 23219<br>*[Local counsel to Debtors]* |

Robert B. Van Arsdale, Esq.*
Shannon F. Pecoraro, Esq.*
Office of the United States Trustee,
Eastern District of Virginia
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
*[Office of United States Trustee]*

Elisabetta G. Gasparini, Esq.*
Office of the United States Trustee
1835 Assembly Street, Suite 953
Columbia, South Carolina 29201
Email: elisabetta.g.gasparini@usdoj.gov
*[Office of United States Trustee]*

Andrew L. LeBlanc, Esq.*
Milbank, Tweed, Hadley & McCoy LLP
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006
Email: aleblanc@milbank.com
*[Counsel to Creditors Committee]*

Lynn Lewis Tavenner, Esq.*
Paula S. Beran, Esq.*
David N. Tabakin, Esq.*
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
*[Counsel to Retiree Committee]*

Damian S. Schaible, Esq.*
Damon P. Meyer, Esq.*
Bradley A. Schecter,Esq.*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Email: damian.schaible@davispolk.com;
damon.meyer@davispolk.com;
bradley.schecter@davispolk.com
*[Co-counsel to DIP Agent and First Lien Agent]*

Paul M. Basta, Esq.*
Stephen E. Hessler, Esq.*
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Email: pbasta@kirkland.com;
stephen.hessler@kirkland.com
*[Counsel to Ad Hoc Committee of Second Lien
Noteholders]*

Hugh M. Bernstein, Esq.*
Office of the United States Trustee,
District of Maryland
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
Email: Hugh.M.Bernstein@usdoj.gov
*[Office of United States Trustee]*

Dennis F. Dunne, Esq.*
Evan R. Fleck, Esq.*
Eric K. Stodola, Esq.*
Milbank, Tweed, Hadley & McCoy LLP
28 Liberty Street
New York, NY 10005
Email: ddunne@milbank.com;
efleck@milbank.com;
estodola@milbank.com
*[Counsel to Creditors' Committee]*

William A. Gray, Esq.*
W. Ashley Burgess, Esq.*
Roy M. Terry, Jr., Esq.*
Sands Anderson P.C.
P.O. Box 1998
Richmond, VA 23218-1998
*[Local counsel to Creditors Committee]*

John R. Owen, Esq.*
Jeremy D. Capps, Esq.*
Melissa Y. York, Esq.*
Harman, Claytor, Corrigan & Wellman
P. O. Box 70280
Richmond, VA 23235
*[Counsel to Retiree Committee]*

Dion W. Hayes, Esq.*
Sarah B. Boehm, Esq.*
K. Elizabeth Sieg, Esq.*
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
*[Co-counsel to DIP Agent and First Lien Agent]*

Gregory F. Pesce, Esq.*
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Email: gregory.pesce@kirkland.com
*[Counsel to Ad Hoc Committee of Second Lien
Noteholders]*

Debra A. Dandeneau, Esq.*
John J. Dedyo, Esq.*
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: debra.dandeneau@weil.com
Email: john.dedyo@weil.com
*[Counsel to General Electric Credit Corporation]*

Michael A. Condyles, Esq.*
Peter J. Barrett, Esq.*
Jeremy S. Williams, Esq.*
KUTAK ROCK LLP
1111 East Main Street, Suite 800
Richmond, VA  23219-3500
*[Local counsel to Ad Hoc Committee of Second Lien
Noteholders]*

Jayne T. Goldstein, Esq.*
Kenneth Pasquale, Esq.*
Gabriel E. Sasson, Esq.*
Strook, Strook & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
Email: jgoldstein@strook.com;
kpasquale@strook.com;
gsasson@strook.com
*[Counsel to Second Lien Notes Trustee]*

Sharon L. Levine, Esq.*
Paul Kizel, Esq.*
Philip J. Gross, Esq.*
Nicole M. Brown, Esq.*
LowensteinSandler LLP
65 Livingston Avenue
Roseland, NJ 07068
Email: slevine@lowenstein.com;
pkizel@lowenstein.com;
pgross@lowenstein.com;
nbrown@lowenstein.com
*[Counsel to UMWA]*

Troy Savenko, Esq.*
Kaplan Voekler Cunningham & Frank, PLC
1401 East Cary Street
Richmond, VA 23219
*[Local counsel to UMWA]*

Kurtzman Carson Consultants LLC
Attn: Joe Morrow*
2335 Alaska Avenue
El Segundo, California 90245
Telephone: (310)-823-9000
Facsimile: (310) 751-1862
Email: AlphaNRinfo@kccllc.com
*[Claims and Noticing Agent]*

Harold L. Kaplan, Esq.*
Mark F. Hebbeln, Esq.*
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, Illinois 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Email: hkaplan@foley.com
Email: mhebbeln@foley.com
*[Counsel to the Indenture Trustees for the Debtors'
Secured and Unsecured Notes]*

Grant Crandall, Esq.*
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, Virginia 22172
*[United Mine Workers of America]*

McKinsey Recovery & Transformation Services U.S.,
LLC
55 East 52nd Street
New York, NY 10055
  Attn: Mr. Kevin Carmody
*[Turnaround Advisor]*

Edward C. Dolan, Esq.
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Email: edward.dolan@hoganlovells.com
*[Counsel to McKinsey]*

Peter A. Ivanick, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
Email: peter.ivanick@hoganlovells.com
*[Counsel to McKinsey]*

Bruce H. Matson, Esq.*
Christopher L. Perkins, Esq.*
LeClair Ryan
919 East Main Street
Richmond, VA 23219
*[Counsel to McKinsey]*

Martin J. Bienenstock, Esq.*
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
Email: mbienenstock@proskauer.com
*[Counsel to McKinsey]*

_____*/s/ David R. Ruby*_____
David R. Ruby

[* Indicates service by ECF or email.  All others served by First Class U.S. Mail, postage prepaid.]

### Schedule of Exhibits

1.      Attached hereto as **Exhibit A** is a true and correct copy of 2016 McKinsey Master Retirement Trust, Department of Labor, Form 5500, filed on October 11, 2017.  For all Form 5500s, *see* Department of Labor, Employee Benefits Security Administration, ERISA Filing Data, Form 5500 Search, available at:

https://www.efast.dol.gov/portal/app/disseminate?execution=e1s2 (last checked 7/6/2018).

2.      Attached hereto as **Exhibit B** is a true and correct copy of 2015 McKinsey Master Retirement Trust, Department of Labor, Form 5500, filed on September 28, 2016.

3.      Attached hereto as **Exhibit C** is a true and correct copy of 2014 McKinsey Master Retirement Trust, Department of Labor, Form 5500, filed on October 1, 2015.

4.      Attached hereto as **Exhibit D** is a true and correct copy of 2013 McKinsey Master Retirement Trust, Department of Labor, Form 5500, filed on October 8, 2014.

5.      Attached hereto as **Exhibit E** is a true and correct copy of 2012 McKinsey Master Retirement Trust, Department of Labor, Form 5500, filed on October 15, 2013.

6.      Attached hereto as **Exhibit F** is a true and correct copy of Contura Energy, Inc. Amendment N. 3 to Form S-1 Registration Statement under the Securities Act of 1933, Reg. No. 333-217766, Preliminary Prospectus 6,000,000 Shares filed July 31, 2017, publicly accessible at U.S. Securities and Exchange Commission, EDGAR, Contura Energy, S-1/A, 7/31/2017), available at:

https://www.sec.gov/Archives/edgar/data/1704715/000162828017007439/0001628280-17-007439-index.htm (last checked 7/6/2018).

7.      Attached hereto as **Exhibit G** is a true and correct copy of S&P Capital IQ chart of Contura Energy, Inc. (OTCPK:CNTE) Share Pricing, available at www.capitaliq.com/ciqdotnet/login-sso.aspx (last checked 7/6/2018).

8.      Attached as **Exhibit H** is a true and correct copy of the Whitebox Advisors LLC Form 13F filed at the United States Securities and Exchange Commission on August 6, 2015, just after the *ANR* bankruptcy petition filings and delisting of *ANR* securities, showing that on that June 30, 2015, Whitebox owned Alpha Natural Resources 4.875% 12/1 Notes, CUSIP 02076X AF9, valued at $466,000, available at

https://www.sec.gov/Archives/edgar/data/1257391/000095012315008120/0000950123-15-008120-index.htm (last checked 7/10/2018).

9.      Attached hereto as **Exhibit I** is the Issuer Free Writing Prospectus for Alpha Natural Resources, Inc. 4.875% Convertible Senior Notes due 2020, CUSIP 02076X AF9, available at

https://www.sec.gov/Archives/edgar/data/1301063/000119312513472242/d643672dfwp.htm (last checked 7/10/2018).

10.      Attached hereto as **Demonstrative Exhibit 1** is a chart providing the Court with the numerical computations of the increased value of McKinsey's investment in Whitebox on account of Whitebox's interest in Contura acquired under the confirmed *ANR* reorganization plan.