UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:<br><br>ALPHA NATURAL RESOURCES, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-33896-KRH<br>(Jointly Administered) |
| MAR-BOW VALUE PARTNERS, LLC,<br><br>Movant,<br><br>– against –<br><br>McKINSEY RECOVERY AND TRANSFORMATION SERVICES U.S., LLC,<br><br>Respondent. | Re: ECF Nos. 4122, 4124, and 4128 |

**SUPPLEMENTAL DECLARATION OF CASEY LIPSCOMB**

Casey Lipscomb declares under penalty of perjury:

1.) I am the General Counsel and Secretary of MIO Partners, Inc. ("MIO") and have held that position or its equivalent for more than 14 years. I make this declaration to supplement my prior declaration dated September 12, 2018 ("Lipscomb I"), which was submitted in connection with McKinsey's opposition to the motion of Mar-Bow Value Partners, LLC to re-open the Alpha Natural Resources Chapter 11 case in the Eastern District of Virginia, Richmond Division (Case No. 15-33896 (KRH)) (the "ANR Case")[1] and to provide

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in Lipscomb I.

information at the request of counsel to McKinsey in connection with certain follow-up questions posed by the Office of the United States Trustee to counsel for McKinsey.

2.) I make this declaration based on, and to the best of, my personal knowledge, except to the extent I identify business records of MIO maintained in the regular course of its activities from which I have obtained information reported here, or discussions with other knowledgeable MIO personnel with whom I have consulted to obtain information reported here.

3.) As explained in my prior declaration, MIO manages assets for (i) certain pension plans sponsored by McKinsey (defined previously as the "Plans") in which certain current and former McKinsey employees participate (defined previously as "Participants"), and (ii) privately offered investment vehicles (defined previously as the "Funds" [2]) in which McKinsey partners, former partners and their immediate family members (defined previously as "Investors") can invest.[3]

4.) I have been informed by counsel to McKinsey that certain questions from the United States Trustee seek information regarding the extent to which information regarding MIO investments is made available to Participants and Investors, many of whom provide consulting services to McKinsey clients and, the extent to which information regarding McKinsey consulting work may be shared with MIO. MIO is operated separately from McKinsey's consulting services, including those of RTS. The investment staff of MIO

---

[2] As set forth in Paragraph 10 below, many of these Funds use the brand name "Compass."

[3] Certain McKinsey affiliates, not including McKinsey RTS US LLC, have also invested in Compass Funds for the purpose of satisfying their obligations under certain of their defined-benefit pension plans, or incentive compensation plans for MIO personnel.

works only for MIO. No staff member of MIO is engaged in the client service activities of McKinsey, including RTS, or is an employee of any McKinsey affiliate that provides consulting services to clients. Based upon my fourteen years of experience at MIO and my discussions with knowledgeable MIO personnel, it is the deliberate practice of MIO not to use or access any client related insights generated by McKinsey from McKinsey's client engagements in making their investment decisions. The operational separation is intended to restrict the flow of information between MIO and McKinsey and ensure that McKinsey client engagements are not influenced by MIO's investments, and that MIO's investment decisions are not influenced by McKinsey's client engagements.

5.) I have been asked to address the extent to which electronically stored information relating to MIO investments may be available to anyone at McKinsey through shared information technology systems. In connection with preparing this Declaration, I conferred with MIO personnel knowledgeable about MIO's information technology systems. I have been advised that MIO maintains information (electronic documents and files) related to its past and existing investments on servers located in New Jersey and Illinois that are controlled by MIO, and that only New York based MIO employees have access to the information contained on these servers.[4] I have been further advised that MIO personnel do not have access to McKinsey's systems where client engagement materials are stored.

---

[4] MIO's investment team and operations are located in New York, and I have been advised that Non-U.S. based MIO personnel do not have access to the servers where MIO stores its past and present investment information.

3

6.) I have also been asked to address the ratification by the MIO Board of MIO investments in funds and Separate Accounts[5] managed by Third-Party Managers, and the materials provided to the MIO Board in connection with such ratification. On a quarterly basis, consistent with their fiduciary duties to the Funds managed by MIO, the Investment Committee of the MIO Board reviews a list of redemption and allocation decisions made by MIO's professional investment staff. Redemptions are decisions to reduce the amount of, or eliminate, an investment in a fund or Separate Account managed by a Third-Party Manager, and allocations are decisions to establish, or increase the amount of, an investment in a fund or Separate Account managed by a Third-Party Manager. In connection with this quarterly process, the Investment Committee reviews materials prepared by the MIO staff.

7.) In connection with preparing this declaration, I reviewed the portion of the materials prepared for the Investment Committee during 2015 that relate to the MIO Board's ratification process. The lists of allocations and redemptions that I reviewed do not refer to specific investments made by Third-Party Managers in the funds or Separate Accounts they manage. Whitebox is among the dozens of Third-Party Managers listed in the materials I reviewed.

8.) Prior to September 11, 2017, the Investment Committee was responsible for taking a vote to ratify the allocation and redemption decisions presented to the Investment Committee. After September 11, 2017, the Investment Committee continued to receive the same information for monitoring and oversight purposes but discontinued its practice of ratifying the allocations. The materials I reviewed reflect that, at each quarterly meeting, approximately

---

[5] As defined below in Paragraph 12.

15 minutes was typically allocated for discussion of these materials and the ratification procedure, and there were typically dozens of allocations and redemptions to be reviewed. The Investment Committee no longer ratifies the allocation and redemption decisions made by the MIO investment staff because it determined that such ratification was not necessary given other steps that are taken to discharge fully the MIO Board's monitoring and oversight duties.

9.) I have also been asked to explain what the MIO Compass Funds are, and the information available to MIO investment staff regarding the underlying investments made by the Compass Funds.

10.) Many of the Funds use the brand name "Compass." Certain of the Compass Funds were available to Investors from 2015 to the present (the "Investable Compass Funds"). Other Compass Funds are not open to Investors; they are only available to be invested in by the Investable Compass Funds and the Plans (the "Non-Investable Compass Funds").

11.) The Investable Compass Funds use a "fund-of-funds" approach to investment. The Investable Compass Funds may invest in funds managed by Third-Party Managers,[6] or in other Compass Funds. Third-Party Managers make investment decisions based on their own investment discretion.[7] With varying degrees of frequency and detail, some of these Third-Party Managers provide MIO investment staff with information identifying underlying

---

[6] See Lipscomb I at 5.i, 9.

[7] I stated in Lipscomb I that Third-Party Managers make their investment decisions without input from or consultation with MIO. The MIO investment staff, of course, confers on an as needed basis with Third-Party Managers in the exercise of their oversight responsibilities, including about particular investments in some cases. Nevertheless, the investment decision remains with the Third-Party Manager.

investments, while others do not provide any such information. MIO's investment staff may also make MIO Direct Investments on behalf of the Investable Compass Funds.[8] As set forth below in Paragraphs 14-23, MIO does not typically provide information to Investors regarding the identity of Third-Party Managers, specific investments made by those Third-Party Managers, or specific MIO Direct Investments.

12.) The Non-Investable Compass Funds may (i) invest in funds managed by Third-Party Managers[9]; (ii) invest in other Non-Investable Compass Funds; or (iii) allow a Third-Party Manager[10] to manage a specified sum of money in an account of the Non-Investable Compass Fund (a "Separate Account").[11] As part of its management and operation of the Non-Investable Compass Funds, MIO has visibility into the underlying holdings of Separate Accounts. MIO's professional investment staff may also make MIO Direct Investments on behalf of the Non-Investable Compass Funds.[12] Investors do not receive information from MIO regarding specific investments in the Non-Investable Compass Funds, except as provided below in Paragraphs 14 - 23.

13.) In connection with preparing this Declaration, I caused MIO Direct Investments (*i.e.*, the only investments where MIO professional investment staff made the investment decision) for

---

[8] *See* Lipscomb I at 6, 10.

[9] *See* Lipscomb I at 5.i. Such Third-Party Managers make investment decisions based on their own investment discretion. *See* n.7 above. With varying frequency and detail, some of these Third-Party Managers provide MIO with information identifying underlying investments, while others do not.

[10] Such Third-Party Managers make investment decisions based on their own investment discretion. *See* n.7 above.

[11] *See* Lipscomb I at 5.ii.

[12] *See* Lipscomb I at 6, 10.

the period 2010 through 2016 to be reviewed. That review did not identify any instance in which MIO directed a purchase, sale or holding of the stock of Alpha Natural Resources, or any instance during 2010 and 2011 in which MIO directed a purchase, sale or holding of the stock of Massey Energy.[13]

14.) Finally, I have been asked to address investment performance information that is made available to Participants and Investors by MIO.

15.) When Participants select investment options offered in the Plans, the Participants are given a choice of portfolios to which they can allocate portions of their balances in the Plan. Some examples of investment options available for selection by Participants are *Passive US Equities Portfolio*, *Passive US Bonds Portfolio,* and *Passive Inflation-Linked Bonds Portfolio.*

16.) Participants are provided with historical performance of the investment options available in the Plans and information regarding the appreciation or depreciation of their account balances based on the performance of the investment options they have selected. Since 2017, the Third-Party Manager for certain investment options in the Plans is identified to participants as State Street Global Advisors ("State Street"). State Street operates SEC-registered investment funds that I understand are widely used by U.S.-based retirement plans. State Street provides information to Participants that identifies the top ten holdings in its funds. In connection with preparing this declaration, I reviewed the materials that were used for 2015 and 2016 to prepare the website for U.S. Participants in the U.S. McKinsey sponsored Plans to make their investment allocation decisions on an annual basis. Based on

---

[13] I understand from press reports that Massey Energy merged with ANR in 2011.

that review, Participants did not receive any disclosures in 2015 or 2016 regarding Third-Party Managers directing investments in the Plans.

17.) The Investable Compass Funds are available to Investors for investment at different offering periods during the year, and Investors may request offering and subscription materials for the Funds in which they wish to invest. Those offering materials do not identify Third-Party Managers to whom the Investable Compass Funds allocate monies for investment, or the underlying investments made by such managers.

18.) Once an Investor makes an investment in an Investable Compass Fund, they receive (or can access on a website) from MIO several categories of performance-related information.[14]

19.) First, Investors receive (or have access to) periodic reports regarding the performance of the Funds, as well as the appreciation or diminution of their personal investment balances. These performance reports do not disclose the identities of Third-Party Managers, specific investments made by those Third-Party Managers, or specific MIO Direct Investments.

20.) Second, Investors receive (or have access to) annual financial statements for any Investable Compass Funds in which they are invested. The financial statements identify any MIO Direct Investments or allocations to Third-Party Managers that exceed 5% of the assets of the Investable Compass Fund. The financial statements do not disclose underlying investments made by Third-Party Managers.

21.) In connection with preparing this Declaration, I caused the annual financial statements of the Investable Compass Funds for 2015 and 2016 to be reviewed. That review did not

---

[14] This Declaration discusses information that MIO provides directly to Investors and Participants, and does not address information contained in publicly available filings that MIO is required to make under applicable laws and regulations.

identify any instance in which Whitebox Advisors was identified in the annual financial statements.

22.) Third, Investors in the Investable Compass Funds receive (or have access to) periodic newsletters, prepared by the MIO staff, about each Fund and its performance. In connection with preparing this Declaration, I caused the newsletters for the Investable Compass Funds for 2015 and 2016 to be reviewed. That review did not identify any instance in which Whitebox Advisors was identified in the newsletters. Indeed, the newsletters do not identify MIO Direct Investments, the Third-Party Managers to whom allocations have been made, or the underlying investments made by those Third-Party Managers, with one exception described in Paragraph 23 that has no relation to Whitebox or Alpha Natural Resources.

23.) As of 2015, certain of the Investable Compass Funds invest in private equity funds managed by Third-Party Managers (the "Compass Private Investment Funds"). Those externally managed private equity funds generally purchase portfolio companies, attempt to increase the value of those companies through active management, and then sell those companies at a profit. The newsletters for the Compass Private Investment Funds have occasionally identified portfolio companies that were already sold by a private equity fund in which the Compass Private Investment Fund had invested.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 9, 2018

_____