**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 16-10992 (SMB) |
| SUNEDISON, INC., *et al.*, | § | CHAPTER 11 |
| | § | (Jointly Administered) |
| Debtors. | § | |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-00302 (KRH) |
| OLD ANR, LLC, *et al.*, | § | MISCELLANEOUS PROCEEDING |
| | § | |
| Debtors. | § | |
| | § | |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 18-35672 |
| WESTMORELAND COAL COMPANY, *et al.*, | § | CHAPTER 11 |
| | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

**UNITED STATES TRUSTEES' STATEMENT IN SUPPORT OF SETTLEMENT
AGREEMENT BETWEEN UNITED STATES TRUSTEE PROGRAM AND MCKINSEY &
<u>COMPANY, INC. AND CERTAIN OF ITS AFFILIATES</u>**

Henry G. Hobbs, Jr., the Acting United States Trustee for Region 7, William K. Harrington,

the United States Trustee for Region 2, and John P. Fitzgerald, III, the Acting United States Trustee

for Region 4 (collectively, the "USTP"), provide these statements in support of the *Settlement Agreement Between United States Trustee Program and McKinsey & Company, Inc. and Certain of Its Affiliates* filed on March 7, 2019 (the "Settlement"). For the following reasons, each of the respective Courts should approve the Settlement.

**I.     The Courts Should Approve the Settlement Because it is a Good Faith Compromise and is Reasonable.**

1.     The USTP has alleged that McKinsey[1] has failed to satisfy its disclosure obligations under the Bankruptcy Code and Rules as an estate-retained professional and has repeatedly demonstrated a lack of candor with the Courts and the USTP in connection therewith. By approving the Settlement, each of the respective Courts will hold McKinsey accountable for its conduct right now—and the parties thereby avoid both the delay and risks of protracted discovery and litigation. It will also ensure a definitive consequence by requiring monetary payments that are among the largest ever by a professional in connection with disclosure disputes under Rule 2014. Most importantly, the Settlement neither excuses McKinsey from its obligation to be free from conflicts, nor does it dictate that McKinsey's employment be approved in the *Westmoreland* case. Instead, the Settlement ensures that McKinsey will either make retention disclosures in compliance with bankruptcy law (including in the *Westmoreland* case) or face further actions and potentially more severe consequences in the future. Furthermore, it preserves the USTP's ability to take action if McKinsey is conflicted in any case (either in the past or in the future), and it preserves the rights of all other interested parties to pursue whatever claims or causes of action they may have.

---

[1] "McKinsey," "Mar-Bow," and other terms not specifically defined herein shall have the meaning ascribed in the Settlement.

2. The Settlement was the product of a Court-ordered mediation before the Honorable Marvin Isgur.[2] Based on his observations of the parties' negotiations, Judge Isgur reported to these Courts that "the proposed settlement between the United States Trustee and McKinsey resolves the parties' good faith disputes concerning the application of Bankruptcy Rule 2014." *See* Mediator's Notice to Court, *In re Westmoreland Coal Company*, Case No. 18-35672, Docket No. 785.

3. The Settlement's terms are reasonable and reflect a good faith compromise of the disclosure-related disputes between McKinsey and the USTP that holds McKinsey accountable and eliminates the uncertainty and delay of protracted discovery and litigation.

4. First, the Settlement requires McKinsey to pay $15 million in these three cases to remedy inadequate disclosures of connections. The payment will be distributed to the creditors and other parties in these cases in accordance with applicable law, including the reorganization plans approved by these Courts.[3] This is one of the highest repayments made by a bankruptcy professional for its alleged failure to comply with disclosure requirements.

5. Second, McKinsey must make additional disclosures in the pending *Westmoreland* case that fully comply with bankruptcy law and otherwise demonstrate that it is eligible under section 327 to be retained in that case. The Settlement expressly carves out and preserves the rights of the Acting United States Trustee for Region 7 to contest the adequacy of any supplemental disclosures that McKinsey will make in the *Westmoreland* case.[4] And it does not

---

[2] The USTP is grateful to Judge Isgur for the time and expertise he shared with all parties to the mediation. Without his expert handling of strong disagreements between the parties, it is unlikely that a settlement could have been reached.

[3] As with all mediated disputes, the agreed monetary allocation was the product of negotiation between the parties. The Settlement requires McKinsey to make the monetary payments in these three open cases, thereby obviating the need to reopen earlier cases that have been closed and fully administered years ago.

[4] To be clear, nothing in the Settlement endorses or approves the disclosure protocol that McKinsey intends to

3

waive the Acting United States Trustee for Region 7's rights to challenge McKinsey's additional disclosures in *Westmoreland* or otherwise challenge its retention.

6. Third, the Settlement is limited to resolving the USTP's allegations that McKinsey failed to make disclosures in accordance with Bankruptcy Rule 2014 or other applicable law, and it contains critical safeguards applicable in both past and future cases. *See* Consent Order, Article III, ¶¶ 5-6. Importantly, if evidence later shows that McKinsey had actual conflicts of interest, or that McKinsey made material omissions, misrepresentations, or engaged in fraud, the USTP may undertake any additional action and seek appropriate relief in any case.[5] *See Id.* The Settlement also does not release claims for the inadequacy of future disclosures. If McKinsey's conduct repeats, the USTP will seek even more stringent remedies.

7. Fourth, as is standard in most settlements, the Settlement contemplates mutual releases between McKinsey and the USTP. McKinsey has never suggested that it holds any claim against the USTP, and the claims that the USTP brought and that are being released under the Settlement are limited to the USTP's civil enforcement claims relating to McKinsey's disclosure compliance in these three open cases and in 11 other cases that are all closed, some as long as nine years ago, in which there are no pending actions.

8. Finally, the Settlement does not bind or prejudice the rights and claims of any non-settling third party, including the 14 bankruptcy estates named therein. The releases included in the Settlement bind only the USTP and McKinsey. Specifically, the relevant release terms expressly

---

develop pursuant to a separate settlement agreement between the firm and the debtor in *Westmoreland*. Thus, approval of the Settlement does not affect the validity of McKinsey's contemplated process. Instead, the Acting United States Trustee for Region 7 will evaluate McKinsey's supplemental submissions in the same way that he does for any professional retention applicant.

[5] In addition, the Settlement also expressly provides that "claims with respect to any criminal liability are not released." Consent Order, Article III, ¶ 10.

state that only the USTP is releasing the relevant claims against McKinsey and that the releases do not bind or prejudice any other party. Settlement, Article III, ¶ 10. Nothing in the Settlement precludes Mar-Bow Value Partners, LLC ("Mar-Bow") from continuing to prosecute its claims against McKinsey, nor does it prevent any other non-party from pursuing whatever rights or claims it may have against McKinsey. Similarly, no governmental entity is restricted in any way from taking any action.

9.   All of these reasons justify approval of the Settlement and the resolution of the extant disputes between the USTP and McKinsey, which appear in the written record before these Courts.[6] Even with estate causes of action—which are in no way compromised here—case law establishes that "it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. 'The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision.'" *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (*quoting La Salle Nat'l Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)).

## II.   The Courts Should Decline Modifications Based on Mar-Bow's "Limited" Objection.

10.   Mar-Bow has asserted a "limited" objection to the Settlement (the "Limited Objection"). Unfortunately, Mar-Bow fundamentally misunderstands and misconstrues important

---

[6]   The USTP requests that pursuant to Fed. R. Evid. 201 (made applicable herein under Fed. R. Bankr. P. 9017), the Courts take judicial notice of the pleadings evidencing these disputes, including:
  (1) Comments of United States Trustee Regarding McKinsey RTS's Opposition to Mar-Bow Partners, LLC's (I) Motion to Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling, *In re Alpha Natural Resources, Inc.,* Case No. 15-33896, Docket No. 4164; and
  (2) Acting United States Trustee's (1) Objection to Debtors' Application for Entry of an Order Authorizing The Retention And Employment Of McKinsey Recovery & Transformation Services U.S., LLC as Performance Improvement Advisors to the Debtors *Nunc Pro Tunc* to the Petition Date; and (2) Response to Court's Order Dated November 30, 2018, *In re Westmoreland Coal Company,* Case No. 18-35672, Docket No. 785.

5

elements of the Settlement, which leads it to mistakenly conclude that modifications to the Settlement are warranted.

11. Mar-Bow first seeks to impose broad and sweeping additional language into the Settlement purporting to make "crystal clear" that Mar-Bow's rights and claims are not prejudiced as a result of the Settlement. *See, e.g., Westmoreland Objection* at ¶ 4. It proposes to impose an additional provision comprising not less than five different sub-parts that essentially restates in a very complicated and confusing manner that Mar-Bow's rights and claims are unaffected by the Settlement. Mar-Bow does not argue that the Settlement is vague or unclear as to its impact on third parties. Instead, it argues that the Settlement is not clear enough for Mar-Bow.

12. While the USTP understands Mar-Bow's desire to vigorously protect its rights, Mar-Bow has not articulated any substantive reason justifying its requested change. In fact, Mar-Bow's Limited Objection even posits that its requested changes are "clarifications" and does not argue that the Settlement prejudices non-party rights, but instead asserts that it wants to make "crystal" clear that Mar-Bow's rights and claims in particular are not prejudiced. *See Id.* Incorporating the suggested changes injects uncertainty and may lead to potential litigation by suggesting that the rights of non-parties other than Mar-Bow are somehow altered. The existing carve-out language in the Settlement *is* crystal clear in stating simply and directly that the Settlement does "not bind or prejudice the rights and claims of any non-party," which would include the rights and claims of Mar-Bow.

13. The other clarification requested by Mar-Bow relates to its desire to alter terms relating to the payments contemplated under the Settlement. Mar-Bow argues that the parties to the Settlement are improperly dictating the manner in which the "sanctions" are distributed. This is simply not the case. The only thing being submitted for the Courts' review and approval is a joint

consent order that embodies the USTP's and McKinsey's agreement. Mar-Bow posits that the parties are asking the Courts to independently enter sanctions against McKinsey and therefore argues that the payment of those sanctions is subject to the discretion of the Courts. Unfortunately, Mar-Bow's premise is fundamentally wrong as it conflates judicially imposed sanctions with the administration of settlement proceeds. *See Id.* at ¶ 8.

14. The parties have submitted the Settlement to the Courts for their review and approval as the product of the Court-ordered mediation. By its terms, the Settlement only seeks to have continuing jurisdiction of the Courts for enforcement and interpretation should disputes relating to the Settlement arise between the USTP and McKinsey, and to document the resolution of pending contested matters relating to the USTP's pending objections in the *ANR* and *Westmoreland* bankruptcy cases.[7] Most importantly, the Settlement is being submitted to ensure transparency in the resolution of those contested matters. However, the Settlement is not presented as a Bankruptcy Rule 9019 motion, as it does not resolve any claims of the bankruptcy estate or, as explained above, affect any rights of non-settling third parties.

15. Mar-Bow's position that the parties are improperly "dictating the distribution" of the payments required in Paragraph 3 of the Consent Order is also wrong because the Settlement contemplates nothing more than that the funds be distributed as **required** by applicable law. There are controlling plans in these cases, which mandate the treatment and distribution of estate property. Moreover, the Settlement provides that if applicable law warrants that the payments be distributed in some other fashion than under the confirmed plan, then the funds will be so distributed.

---

[7] And while no formal pleadings were filed, the issues were joined in the *SunEdison* case as well.

16. Although Mar-Bow's objection is purportedly limited to two points of clarification, two of Mar-Bow's most patent inaccuracies in the Limited Objection require correction.

17. First, Mar-Bow's Limited Objection asserts that the Settlement "violates" Rule 2014 by "illegally excusing" McKinsey from disclosing its confidential clients. *E.g., Westmoreland Objection* at ¶ 16. The Settlement does nothing even remotely consistent with that assertion. McKinsey will file new disclosures in the *Westmoreland* case and, as expressly stated in the Settlement, the Acting United States Trustee for Region 7 has every right to object to those disclosures should they be inadequate, incomplete, misleading, or improper. Proposed Consent Order at ¶ 9(a).

18. Second, Mar-Bow also appears to argue that the Settlement should be submitted to every bankruptcy court in which McKinsey was ever retained for review and approval. Here, too, Mar-Bow's position is patently wrong. Mar-Bow puzzlingly posits, without any authority, that if a party makes a reasoned determination to release potential claims, it is "illegal" if the party does not submit its decision to forego those possible claims to the courts in which the claims *may* have been asserted. Thus, Mar-Bow asserts that the Settlement "illegally deprives" bankruptcy judges in long-closed cases—where no disputes are even pending between the USTP and McKinsey as the only parties to the Settlement—of their "authority and responsibility" to review the Settlement. *Westmoreland Objection* at ¶ 18; *Old ANR Objection* ¶ 19; *SunEdison Objection* ¶ 17. No party requires a court's approval to release its own claims when there is no pending dispute or contested matter before the court. Unlike these three bankruptcy cases in which the Settlement was filed because the issues have been joined between the parties, there is no reason—much less an obligation—to submit the Settlement in long-closed cases where there are no pending disputes.

19. In sum, Mar-Bow's requested "clarifications" to the Settlement are unnecessary and inappropriate. And its musings on the propriety of the Settlement should be ignored both based on their inaccuracy and because Mar-Bow expressly states that they do not comprise an objection to the Settlement. *Westmoreland Objection ¶* 12; *Old ANR Objection ¶* 14; *SunEdison Objection ¶* 12.

### III. The Settlement Should be Approved Notwithstanding McKinsey's Characterizations of its Conduct.

20. The reasons stated herein provide ample bases for the Courts to approve the Settlement. McKinsey has nevertheless sought to excuse past violations as the product of a mere misunderstanding. *See* McKinsey's Response to Mar-Bow's Motion [Dkt. 1585] to (I) Reconsider the Court's Order Granting the Joint Motion in Furtherance of Mediation Agreement [Dkts. 1422, 1423, 1427] and (II) Set a Hearing Regarding Discovery on Mar-Bow's Amended Objection to the Debtors' Application to Employ McKinsey RTS, *In re Westmoreland Coal Company,* Case No. 18-35672, Docket No. 1659 at pp. 17-21. To dispel any doubt, the USTP has historically taken the position that: (1) bare identification of connections as "confidential clients" does not satisfy Rule 2014; and (2) the duty to disclose connections reaches all affiliates unless the professional firm can establish that the affiliates are sufficiently separate and that there are appropriate information barriers, especially with respect to investments.

21. Moreover, McKinsey's conduct only reinforces the need for a prompt settlement. As the USTP has alleged in its filings in these cases, McKinsey has failed to be candid with the Courts and USTP. For example, after agreeing in the *ANR* case that it would disclose "confidential client" names, McKinsey turned around and asserted in *Westmoreland* that it did not need to provide any information—not even under seal—about a client responsible for 17.5 percent of the

9

annual revenues of McKinsey RTS. Approving the Settlement allows the Courts to impose accountability now while preserving the right of further action if new facts emerge showing an impermissible conflict or if McKinsey repeats its unacceptable practices of non-disclosure in the future.

## IV. Conclusion.

22. The terms of the Settlement, the extensive legal and factual records before these Courts, and the totality of the facts and circumstances easily provide these Courts with the necessary basis to approve the Settlement. Doing so will hold McKinsey accountable for its conduct, promote transparency, and instill public confidence in the bankruptcy system.

**WHEREFORE,** for the reasons above, each of the respective Courts should approve the Settlement and grant any other relief as may be just and appropriate.

Respectfully submitted,

John P. Fitzgerald, III
Acting U.S. Trustee – Region Four


By: /s/ Robert B. Van Arsdale
  Robert B. Van Arsdale (VSB # 17483)
  701 East Broad Street, Suite 4304
  Richmond, VA 23219
  robert.b.van.arsdale@usdoj.gov

By: /s/Hugh M. Bernstein
  Hugh M. Bernstein (Md Fed Bar No. 23489)
  101 W. Lombard Street, Suite 2650
  Baltimore, Md. 20201
  hugh.m.bernstein@usdoj.gov

10

**SERVICE LIST**

David R. Ruby
William D. Prince, IV
ThompsonMcMullan, P.C.
100 Shockhoe Slip, Third Floor
Richmond, VA 23219
E-mail: druby@t-mlaw.com
E-mail: wprince@t-mlaw.com
    *Local Counsel for Mar-Bow Value*
    *Partners, LLC*

Steven Rhodes
Steven Rhodes Consulting, LLC
1610 Arborview Boulevard
Ann Arbor, MI 48103
E-mail: rhodessw@comcast.net

Judith K. Fitzgerald
Tucker Arensberg, PC
1500 One PPG Place
Pittsburg, PA 15222
E-mail: jfitzgeral(@tuckerlaw.com

Susan M. Freeman
Lewis Roca Rothgerber Christie LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
E-mail: sfreemanra).lrrc.com

Lois R. Lupica
Maine Law Foundation Professor of Law
University of Maine School of Law
246 Deering Avenue
Portland, ME 04012
E-mail: lupica(@maine.edu

Steven M. Biskupic
Biskupic & Jacobs, S.C.
1045 W. Glen Oaks Lane, Suite 106
Mequon, WI53092
E-mail: sbiskupic@biskupicjacobs.com

and

John A.E. Pottow
John Philip Dawson Collegiate
Professor of Law
University of Michigan Law School
625 South State Street
Ann Arbor, MI 48109
E-mail: pottow<@.umich.edu
    *Of Counsel for Mar-Bow Value*
    *Partners, LLC*

Richard H. Verheij
Alpha Natural Resources, Inc.
Executive Vice President, General Counsel
& Corporate Secretary
One Alpha Place
Bristol, VA 24209
E-mail: rverheij(@alphanr.com

Tyler P. Brown
J.R. Smith
Henry P. Long, III
Justin F. Paget
Hunton & Williams
951 East Byrd Street
Richmond, VA 23219
E-mail: tpbrown@hunton.com
E-mail: jrsmith(@hunton.com
E-mail: hlongra2hunton.com
E-mail: jpaget@hunton.com

12

**SERVICE LIST**

Carl E. Black
David G. Heiman
Thomas A. Wilson
Jones Day
Nmth **Point**
90 I Lakeside Avenue
Cleveland, OH 441 1 4
E-mail: ceblack@jonesday.com
 -mail: dghe iman (@.jonesday.com
E-mail: taw ilson(@, jonesday.com
   *Counsel for Debtors*

Hugh M. Bernstein
Onicc of the United Sta tes Trustee
District of Maryland
IO1 West Lombard Street, Suite 2625
Ba ltim ore, MD 2120 I
E-mail: Huuh.M.B ernstein@usdoj.gov

Elisabetta G. Gasparini
Office of the United States Trustee
1835 Assembly Street, Suit e 953
Columbia, SC 2920 I
E-mail: clisabetta.l!.gasparini(@,usdoj.gov

Dennis F. Dunne
Evan R. Fleck
Erick K. Stodola
Milbank, Tweed, Hadley & McCoy LLP
28 Liberty Street
New York , NY I 0005
E-mail: ddunne <w.mi lb ank.com
E-mail : cfleck<@.mi lbank.com
E-mail: estodola@milbank.com

Andrew L. LeB!anc
Milbank, Tweed, Hadley & McCoy LLP
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006
E-mail: aleblanc@m ilbank.com d

William A. Gray
W. Ashley Burgess
Roy M. Terry
Sands Anderson P.C.
P.O. Box 1998
Richmond, VA 23218-1998
E-ma il : 8Gray@sandsanderson.com
E-ma il: ABurges s@SandsAnderson.com
E-mail: RTerry@SandsAnderson.com
   *Counsel to Creditors Committee*

Lynn L. Tavenner
Paula S. Beran
David N. Tabakin
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
E-mail: ltavenner@tb-law.com
E-mail: pberan@tb- law.com
E-mail: dtabak in@tb -law.com

and

John R. Owens
Jeremy D. Capps
Melissa Y. York
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, VA 23235
E-mail: iowen@hccw.com
E-mail: jcapps@hccw.com
E-mail: myork@hccw.com
   *Counsel to Reliree Cammi/Jee*

Damian S. Schaible
Damon P. Meyer
Bradley A. Schecter
Davis Polk & Wardwell LLP
450 Lex ington Avenue
New York, NY 10117
E-mail: damian.schaible(@davispolk.com
E-mail: damon.meyer@davispolk.com
E-mail: Bradley.schecter@davispolk.com

13

Case 15-33896-KRH    Doc 4207    Filed 04/03/19    Entered 04/03/19 16:20:38    Desc Main
Document      Page 13 of 15

**SERVICE LIST**

Dion W. Hayes
Sarah 8. Boehm
K. Elizabeth Sieg
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
E-mail: dhayes@mcguirewoods.com
E-mail: sboehm@mceuirewoods.com
E-mail: bsieg@.mcguirewoods.com
*Counsel to DIP Agent and First Lien Agent*

Paul M. Basta
Stephen E. Hessler
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY I 0022
E-mail: paul.basta@kirkland.com
E-mai I: stephen.hessler@kirkland.com

Gregory F. Pesce
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
E-mail: gregory.pesce@kirkland.com

Michael A. Condyles
Peter J. Barrett
Jeremy S. Williams
Kutak Rock LLP
I I 11 East Main Street, Suite 800
Richmond, VA 23219-3500
E-mail: michael.condyles@kutakrock.com
E-mail: peter.barrettl@.kutakrock.com
E-mail: jeremy.williams@kutakrock.com
*Counsel to Ad Hoc Committee of Second Lien Noteholders*

Debra A. Dandeneau
John J. Dedyo
**Weil,** Gosthal & Manges LLP
767 Fifth Avenue
New York, NY 10153
E-mail: debra.dandeneaul@.weil.com
E-mail: john.dedyo@weil.com
*Counsel to General Electric Credit Corporation*

Jayne T. Goldstein
Kenneth Pasquale
Gabriel E. Sasson
Strook, Strook & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
E-mail:  jgoldstein@strook.com
E-mail:  kpasquale@strook.com
E-mail: gsassonl@.strook.com
*Counsel Jo Second Lien Notes Trustee*

Sharon L. Levine
Paul Kizel
Philip J. Gross
Nicole M. Brown
LowensteinSandler LLP
65 Livingston Avenue
Roseland, NJ 07068
E-mail: slevine(@,lowenstein.com
E-mail: pkizel@lowenstein.com
E-mail: pgross(@lowenstein.com
E-mail: nbrownr@lowenstein.com

Troy Savenko
Kaplan Voekler Cunningham & Frank, PLC
1401 East Cary Street
Richmond, VA 2319
E-mail:  tsavenkol@.kv-legal.com
*Counsel to UMWA*

14

## SERVICE LIST

Grant Crandall
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, VA 22172
E-mail: gcrandall@umwa.org
*United Mine Workers of America*

Kurtzman Carson Consultants LLC
Attn: Joe Morrow
2335 Alaska Avenue
El Segundo, CA 90245
E-mail: alphanrinfo(@.kccllc.com
*Claims and Noticing Agent*

Harold L. Kaplan
Mark F. 1-lebbeln
Foley & Lardner LL P
321 North Clark Street Suite 2800
Chicago, IL 60654-5313
E-mail: hkap lan(@.foley.com
E-mail: mhcbbeln@foley.com
*Counsel to the Indenture Trustee for the Debtors' Secured and Unsecured Notes*

Christopher L. Perkins
LeClairRyan, P.C.
919 East Main Street
Twenty-Fourth Floor
Richmond, VA 23219
Christopher.Perkins@leclairryan.com

Bruce H. Matson
LeClairRyan, P.C.
919 East Main Street
Twenty-Fourth Floor
Richmond, VA 23219
Bruce.Matson@leclairryan.com

McKinsey Recovery & Transformation Services U.S., L.L.C.
55 East 55nd Street
New York, N.Y. 10055
Attn: Kevin Carmody
Kevin_Carmody@mckinsey.com

## **SERVICE LIST**

Martin J. Bienenstock
Proskaur Rose LLP
Eleven Times Square
New York, New York 10036-8299
mbienenstock@proskauer.com

Edward C. Dolan
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Edward.dolan@hoganlovells.com

Peter A. Ivanick
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Peter. Ivanick@hoganlovells.com